**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO.: 3:12-CV-327-RLV**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **vs.** | **DEATH PENALTY § 2255** |
| **AQUILIA MARCIVICCI BARNETTE** | |

**PETITIONER AQUILIA MARCIVICCI BARNETTE'S**
**MOTION FOR DISCOVERY**

NOW COMES Petitioner Aquilia Marcivicci Barnette, through undersigned counsel and pursuant to the Fifth, Sixth, and Eighth Amendments to the U.S. Constitution and Rule 6 of the Federal Rules Governing § 2255 Proceedings, for discovery in furtherance of his § 2255 petition. The requested discovery, as set forth below, is essential to guarantee Petitioner a fair opportunity to litigate his § 2255 petition and ensure that this Court reviews and resolves his claims for relief with the benefit of a more fully developed factual record.

## I.     Procedural History

Aquilia Marcivicci Barnette (hereinafter "Petitioner" or "Mr. Barnette") was indicted by a federal grand jury in the Western District of North Carolina on eleven criminal charges arising out of the firebombing of the residence of Robin Williams in Roanoke, Virginia, the carjacking and murder of Donald Lee Allen in Charlotte, North Carolina, and the subsequent murder of Ms. Williams in Roanoke.  On January 27, 1998, following a three-week trial, a jury found Mr. Barnette guilty on all counts of the Indictment.  At sentencing, the jury recommended that Mr. Barnette be sentenced to death on Counts Seven, Eight, and Eleven.

1

Mr. Barnette's direct appeal to the United States Court of Appeals for the Fourth Circuit resulted in the reversal of the sentences of death on Counts Seven, Eight, and Eleven, and his case was remanded for resentencing. *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000). Following a new penalty phase trial in 2002, a jury again imposed the death penalty. On direct appeal, Mr. Barnette's new death sentences were affirmed. *United States v. Barnette*, 390 F.3d 775 (4th Cir. 2004).

On May 15, 2005, Mr. Barnette filed a Petition for a Writ of Certiorari with the United States Supreme Court. Soon thereafter, the Supreme Court decided *Miller-El v. Dretke*, 545 U.S. 231 (2005). A supplemental petition for a writ of certiorari was filed on Mr. Barnette's behalf in light of *Miller-El*. The Supreme Court thereafter granted the supplemental petition, vacated the judgment of the Fourth Circuit, and remanded the case in light of *Miller-El*. *Barnette v. United States*, 546 U.S. 803 (2005). Following remand to the Fourth Circuit, Mr. Barnette sought to remand the case to the District Court. After supplemental briefing on the issue, the Fourth Circuit entered an order granting his motion to remand the case to the District Court.

After additional briefing, an *in camera* review of jury questionnaires, and an additional hearing on the matter, the District Court refused to provide copies of the jury questionnaires to defense counsel. The Court then issued an Order on May 20, 2010, finding no *Batson* violation by the government, and further ruling that Mr. Barnette was not entitled to discovery under the Jencks Act. *United States v. Barnette*, Case No. 3:97CR23, 2010 WL 2085312 (W.D.N.C. May 20, 2010).

Mr. Barnette appealed this Court's Order to the Fourth Circuit Court of Appeals.  Following oral argument on January 27, 2011, the Fourth Circuit issued a published opinion affirming the District Court's ruling.  *United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011).  On March 19, 2012, the United States Supreme Court denied Mr. Barnette's Petition for a Writ of Certiorari.  *Barnette v. United States*, 132 S.Ct. 1740 (Mar. 19, 2012).

On May 23, 2012, the Court appointed the undersigned, *nunc pro tunc* to April 3, 2012, pursuant to the Criminal Justice Act as counsel in this capital § 2255 proceeding.  [Doc. 1]

On September 18, 2012, post-conviction counsel Henderson Hill and Jake Sussman appeared before the Court, along with former trial counsel Harold Bender, in connection with the status of Mr. Barnette's trial files.  Mr. Bender acknowledged on the record that he was the last attorney (among all of Mr. Barnette's prior counsel) to have trial files pertaining to Mr. Barnette and that he had not located or produced them to post-conviction counsel.[1]

On March 13, 2013, Mr. Barnette, through undersigned counsel, filed a *Notice of Stipulation to Extend Deadline for Filing Motion Under 28 U.S.C. § 2255 and Government Waiver of Statute of Limitations Defense and Motion for Order Confirming Agreed-Upon Extension of Time*. [Doc. 31]  In this pleading, Mr. Barnette stated that post-conviction and the government had reached an agreement whereby the government would waive, forfeit and/or relinquish any statute of limitations defense and consent to the extension of Mr. Barnette's § 2255 filing deadline from March 19, 2013 to June 19, 2013.

---

[1] As of this filing, Mr. Barnette, through post-conviction counsel, remains without his trial files.  Prior to his death on March 24, 2013, Mr. Bender had produced approximately 300 pages consisting of miscellaneous electronic documents that largely concerned post-trial matters.  The approximately 40 to 50 boxes of trial files that Mr. Bender and co-counsel Jean Lawson reportedly possessed at the time of Mr. Barnette's 2002 trial, inclusive of handwritten notes, memoranda, correspondence with the government and experts, etc., have not yet been located or produced.

On March 15, 2013, the government filed its *Notice of Government Stipulation to Extend Deadline for Filing Motion Under 28 U.S.C. § 2255* [Doc. 32], confirming its agreement to the three-month extension of the deadline.

On June 19, 2013, Mr. Barnette, through undersigned counsel, filed his motion under 28 U.S.C. § 2255.

As noted in the § 2255 petition, the parties conferred and agreed to a proposed litigation schedule by which Petitioner's motion for discovery would be filed by July 19, 2013. The government would have until August 19, 2013 to respond. [Doc. 48 at 5, n.2]

## II.     Discovery Under Rule 6

Petitioner's discovery requests are governed by Rule 6 of the *Rules on Motion Attacking Sentence Under Section 2255*. Rule 6 states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." A post-conviction petitioner establishes "good cause" whenever "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)); *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) ("Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief.").

4

When a petitioner establishes good cause, discovery must be allowed. The United States Supreme Court has explained that "[t]he very nature of the writ [of habeas corpus] demands that [habeas proceedings] be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris*, 394 U.S. at 291; *Johnston v. Love*, 165 F.R.D. 444, 445 (E.D. Pa. 1996) ("it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry.").[2]

In exercising its discretion and in determining whether Petitioner has established "good cause" for the requested discovery, this Court should be guided by the recognition that habeas corpus litigation is a civil proceeding, and the more limited rules addressing discovery in criminal cases do not control. *See*, *e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (habeas proceeding is "not part of the criminal proceeding itself, and it is in fact considered to be civil in nature") (citing *Fay v. Noia*, 372 U.S. 391, 423-424 (1963)); *Browder v. Director Department of Corrections*, 434 U.S. 257, 269 (1978) ("It is well settled that habeas corpus is a civil proceeding"). *See also* Fed.R.Civ.P. 81(a)(4) (Federal Rules of Civil Procedure "apply to proceedings for habeas corpus … to the extent that the practice in those proceedings is not specified in a federal statute … or the Rules Governing Section 2255 Cases").

---

[2] *Accord McDaniel v. United States District Court*, 127 F.3d 886, 888 (9th Cir. 1997) (where Petitioner "presented specific allegations … [he] is entitled to discovery"); *Johnston v. Love*, 165 at 445 (Rule 6's "history makes clear that its purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief." Accordingly, "a court may not deny a habeas corpus petitioner's motion for leave to conduct discovery if there is a sound basis for concluding that the requested discovery might allow him to demonstrate that he has been confined illegally."); *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) ("Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief.").

Since the purpose of post-conviction discovery "is to ensure that the facts underlying a [habeas] claim are adequately developed," a court must allow discovery whenever "a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief." *Id.* Accordingly, a court may not deny a petitioner's discovery motion "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" his entitlement to relief. *Id*. This is never more so than in the context of a capital case, where the unique finality and irreversibility of the sentence require heightened procedural safeguards. *See*, *e.g*., *Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (Court's "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case"). Because Petitioner is under sentence of death, broad discovery is necessary to ensure the extra measure of process that is demanded in capital cases. Accordingly, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33).

## III. Specific Discovery Requests[3]

### A. Trial and Appellate Files of the U.S. Attorney's Office for the Western District of North Carolina and the Department of Justice.

Petitioner has raised ineffective assistance of counsel claims (Claim I), a *Brady/Giglio* claim (Claim V), and other claims pertaining to the conduct of the government in prosecuting this capital case (Claims II, IV, and VI) in his § 2255 petition.

---

[3] Should the Government assert that any of the following items are subject to a privilege and are therefore protected from disclosure in full or in part, Petitioner requests that the Government comply with Fed.R.Civ.P. 26(b)(5). Thus, should the Government assert a privilege in response to any of the following requests, it should: "describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Should the Government assert a privilege as to portions of a document, communication or thing that is requested, Petitioner requests that the Government describe the ostensibly protected portion as required under Rule 26(b)(5), and disclose those portions not covered by the privilege being asserted.

As a preliminary matter, Petitioner's on-going investigation of these claims has been impeded by the absence of Petitioner's trial files. Moreover, while the U.S. Attorney's Office has produced information in response to the Court's order to provide Petitioner with trial discovery and correspondence with prior trial counsel [Doc. 17], Petitioner respectfully believes that additional information exists that the government "possessed" or should have "possessed" and which has not yet been produced. This includes witness interview summaries, reports, FBI FD-302s, as well as information concerning its experts and those experts' raw data and materials. It is unclear whether this missing information was not produced to trial counsel, or perhaps was produced to trial counsel but has inadvertently not been produced to Petitioner in post-conviction.[4]

As part of the government's earlier production, Petitioner did not receive (and, thus, does not possess) any witness statements generated by law enforcement during the course of its investigation into the murders of Robin Williams and Donnie Allen concerning a number of witnesses, including, but not limited to: Brian Ard, Alesha Chambers, Jasper Chambers, Joanna Baldwin Coleman, Crystal Dennis, Natasha Heard (Tolbert), Shirley Parker, and Angela Rosser. Thus, Petitioner's request includes, but is not limited to, any and all records regarding:

> (1) Government witnesses offered in support of aggravation, including but not limited to prosecution, police, investigative, incarceration, medical, mental health, drug treatment, employment, welfare, social services, and child protective services records regarding prosecution witnesses in the possession or control of the Office of the United States Attorney, Federal Bureau of Investigation, and/or the Charlotte-Mecklenburg Police Department.

---

[4] On June 25, 2002, the Court ordered, *inter alia*, that the government "shall provide" the defendant with "[a]ll raw data pertaining to any mental health test administered to the defendant during the testing by the mental health experts"; "[a]ll documents pertaining to any mental health or physical examination conducted on the defendant which the mental health expert relies upon to any extent for his report"; and "[a]ll tape recordings or transcripts made during the course of the examinations." [Doc. 546]

7

In addition, as noted above, Petitioner did not receive any information from the government concerning its expert witnesses, including Dr. Scott Duncan, Dr. William Grant, Dr. Park Dietz, and Peter Carlson.[5] Information concerning these witnesses is critically important for purposes of establishing the alleged ineffective assistance of counsel claims, and assessing the extent to which a *Brady/Giglio* claim exists.

For example, the government called Dr. Park Dietz, a forensic psychiatrist, to testify in rebuttal on August 8, 2002. During the government's qualifying of Dr. Dietz as an expert, the prosecution noted that Dr. Dietz was "an expert in the case of Andrea Yates, the woman who drowned her children in the bathtub[.]" [2002 Tr. 3793-94] Not mentioned during Dr. Dietz's testimony was the fact that Dr. Dietz, prior to his testimony in Petitioner's 2002 trial, had given materially false testimony in the Yates case (which later resulted in a reversal of her convictions).

At a minimum, information concerning Dr. Dietz's false statements "would have been relevant to demonstrate the doctor's fallibility." *United States v. Purkey*, 428 F.3d 738, 759 (8th Cir. 2005). Given the critical role that Dr. Dietz played in the government's case—"I contend to you, ladies and gentlemen, that the clearest explanation of Marc came from Dr. Dietz, Marc Barnette is narcissistic, he sees himself as the center of the universe and all things revolve around him and his needs; if anything gets out of whack, he reacts violently" [2002 Tr. 3935]—any information concerning his credibility would have been particularly important and material.[6] Whether the government failed to disclose this information and/or whether trial counsel unreasonably failed to utilize this information is as yet unknown in the absence of discovery.[7]

---

[5] The only reference to any of these prosecution experts contained in the materials produced to post-conviction counsel thus far is in a letter dated December 24, 1997 from the Bureau of Prisons to the U.S. Attorney's Office that references scheduling a time for Dr. Grant and Dr. Duncan to conduct their evaluation of Petitioner.

[6] The government's reliance on Dr. Dietz's testimony, and their vouching for his credibility, permeated closing arguments. *See*, *e.g*., 2002 Tr. 3939: "Contrast that, ladies and gentlemen, with the Government's expert, Dr. Park Dietz. Dr. Dietz looked you in the eye and said, Marc Barnette was not psychotic at the time of these crimes, Marc Barnette's choices were not predetermined by he [sic] childhood, childhood risk factors do not cause adult behavior,

Thus, Petitioner's request includes, but is not limited to, any and all records regarding:

(2) Government experts offered during trial, including but not limited to reports, draft reports, communications (*e.g.*, letters, emails, etc.) with counsel, raw data, and other materials that were provided to such experts and/or relied upon by them.

In furtherance of this request, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33), to supplement whatever documentary production the government makes in response to this request.

### B. Prosecutorial File of the Mecklenburg County District Attorney's Office.

Petitioner has raised ineffective assistance of counsel claims (Claim I), a *Brady/Giglio* claim (Claim V), and other claims pertaining to the conduct of the government in prosecuting this capital case (Claims II, IV, and VI) in his § 2255 petition. In order to fully investigate and litigate these claims, Petitioner requires production of the prosecutorial file from the Mecklenburg County District Attorney's Office.

---

Marc Barnette's behavior was not programmed. He told you this was two crimes with two distinct motives, this was not a domestic homicide, and he told you that Marc Barnette has told so many stories in the past that it's not possible to know what happened. Plain language, plain opinions."

[7] Petitioner requests that the Court order the Government to require the F.B.I. to conduct a thorough search of the relevant computer systems to insure that Petitioner has been provided with all reports in this case. As part of its search, Petitioner also requests that the Government ascertain whether there are any written communications between law enforcement agents or the Government and any prisoner witness in this case and to provide any such documents.

Shortly following his arrest on June 25, 1996, Petitioner was remanded to state custody on murder and robbery with dangerous weapon charges in Mecklenburg County. *See* Case Nos. 96CRS33122-3. On February 4, 1997, Petitioner was federally indicted in the Western District of North Carolina for, *inter alia*, the murders of Donald Allen and Robin Williams. *See* Case No. 3:97cr23. The state charges against Petitioner were later dismissed on October 1, 1997. Although the Mecklenburg County District Attorney's Office subsequently dismissed state charges against Petitioner once the federal government elected to pursue a prosecution and bypass the state court system, Petitioner nevertheless has a right to the prosecutorial file of the Mecklenburg County District Attorney's Office. *Cf.* N.C.G.S. § 15A-1415(f).

Particularly in light of the fact that Petitioner still lacks volumes of information from his as-yet-unproduced trial files, only by the production of all relevant files will Petitioner, and, ultimately, this Court, be confident that Petitioner has been afforded every opportunity for discovery.

In furtherance of this request, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33), to supplement whatever documentary production the government makes in response to this request.

### C. Complete Investigative Files of the Charlotte-Mecklenburg Police Department, the Roanoke Police Department, and the Federal Bureau of Investigation.

In relation to Petitioner's Claims I, II, IV, V, and VI, and for the reasons asserted in the aforementioned requests for the prosecutorial files of the U.S. Attorney's Office for the Western District of North Carolina, the Department of Justice, and the Mecklenburg County District Attorney's Office, Petitioner is entitled to the complete investigative files of the Charlotte-Mecklenburg Police Department, the Roanoke Police Department, and the Federal Bureau of Investigation.

In furtherance of this request, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33), to supplement whatever documentary production the government makes in response to this request.

### D. Petitioner's Bureau of Prisons Records.

In relation to Claims I and V, Petitioner sees discovery of all documents, files, materials and other information in the possession or control of the Bureau of Prisons concerning his incarceration through August 13, 2002. Since the appointment of post-conviction counsel in this matter, Petitioner, through undersigned counsel, has sought to obtain all of Petitioner's Bureau of Prisons records by way of authorized release and Freedom of Information Act requests. To date, post-conviction counsel has not received all responsive documents and materials from the Bureau of Prisons. A Court Order directing the prompt production of these documents would likely produce the records in question.

In furtherance of this request, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33), to supplement whatever documentary production the government makes in response to this request.

**E. Information Pertaining to Jury Selection in the Western District of North Carolina.**

In relation to Petitioner's jury-composition and selection related claims (Claims II and IV), Petitioner is entitled to the following information:

(1) Complete and unexpurgated copies of the government's copies of juror questionnaires in this case, including all notations regarding the race or gender of the jurors.

(2) Complete and unexpurgated copies of any notes, memoranda, and recordings of any kind made by the government in preparation for or during voir dire in this case.

(3) Complete and unexpurgated copies of the government's copies of juror questionnaires, with accompanying work product associated with jury selection and preparation for jury selection, in all cases in which the two Assistant U.S. Attorneys who prosecuted his case have participated as prosecutors.

(4) A description of any training and instruction, including topics, speakers, modes of presentation, and dates, that the United States Attorney's Office for the Western District of North Carolina provides to its attorneys regarding jury selection.

(5) Any training guide, manual, chapter, videotape, audiotape or other training material regarding jury selection in the possession of any attorney in the employ of the United States Attorney's Office for the Western District of North Carolina.

(6) The name and number of any case prosecuted by either of the Assistant U.S. Attorneys who prosecuted his case in which challenges were made under *Batson*.

(7) The title, forum, dates and written materials from any lecture, speech or panel regarding jury selection in which either of the Assistant U.S. Attorneys who prosecuted his case have participated.

Petitioner further requests a Court Order or permission to subpoena the following from the Clerk and/or Jury Administrator:

(1) Any and all summons, tapes, records or documents of prospective jurors for the years 2000, 2001, and 2002.

(2) Any and all documents, records, memoranda, correspondence or other records regarding the selection of prospective jurors for jury duty during the years 2000-2002, including but not limited to: records, documents, memoranda, correspondence regarding the race of jurors selected for jury duty during the years 2000-2002, and records, documents, memoranda, correspondence regarding the methods and procedures used for selection of prospective jurors during the years 2000-2002.

12

(3) Any and all documents, records, memoranda, correspondence or other records regarding the selection of prospective jurors during the specific trial term in which Petitioner was tried in July and August, 2002, including but not limited to: records, memoranda, correspondence or other records regarding the selection of the prospective jurors; the race of the prospective jurors; and, the methods and procedures for selecting that

In furtherance of this request, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33), to supplement whatever documentary production the government makes in response to this request.

### F. Discovery Related to the Racially Biased Manner in which the Federal Death Penalty is Administered.

Petitioner has alleged in Claim VI that the Federal Death Penalty Act is administered in a racially biased manner. Although the statistics proffered by Petitioner are compelling, he requires discovery regarding the role of race in the DOJ authorization process.

Petitioner asserts that the Government improperly relied upon his race as a reason for certifying this case as a death penalty case in the first instance, and as a reason why it was not decertified after the case was remanded for a second penalty phase trial. If either of these allegations are true, then he is entitled to a new trial or a reduction of his sentence to life in prison.

13

In *Wayte v. United States*, 470 U.S. 598 (1985), the Supreme Court held that "[i]t is appropriate to judge selective prosecution claims according to ordinary equal protection standards." *Id.* at 609 (footnote omitted). The same applies to the Petitioner's claims. To succeed on his claims, Petitioner must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Initially, Petitioner needs to show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. 79, 94 (1986). Once this case is made, the burden shifts to the prosecution to defend its conduct. To do so, the government must offer concrete factual explanations; "[t]he State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties." *Id.*

While Petitioner has proffered compelling statistics about the disproportionate use of the federal death penalty against racial minorities, *McCleskey v. Kemp*, 481 U.S. 279 (1987), held that such statistics alone were insufficient to demonstrate discriminatory application of the death penalty. *McCleskey* does not mean that Petitioner's proffer is irrelevant, but only that by itself, it may not be sufficient to prove his claim.

In *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998), an African American defendant claimed that the government's decision to prosecute him in federal court instead of state case was discriminatory. The court recognized that "[o]bviously, a defendant need not prove his case in order to justify discovery on an issue." *Id.* at 978. Instead, the Court held, a defendant need only produce "some evidence" of discriminatory prosecution in order to obtain discovery. This "some evidence" standard reflects two competing considerations:

> Forcing the defendant to come forward with some evidence to support a charge of selective prosecution protects the interests in open and frank discussions within prosecutorial offices; protects the government from harassment or delay by criminal defendants; and frees the judicial system of criminal trials [from] irrelevant massive discovery. At the same time, the relatively low burden recognizes that "most of the relevant proof in selective prosecution claims will normally be in the Government's hands.

*United States v. Heidecke*, 900 F.2d 1155, 1158 (7th Cir. 1990) (citations omitted).

Petitioner's claim shows the wisdom of the "some evidence" standard for ordering discovery. On the one hand, he has certainly presented "some evidence" of discriminatory impact and discriminatory intent. On the other hand, he cannot develop this claim further without additional evidence that is in the Government's exclusive control.

Accordingly, Petitioner seeks the following discovery:

(1) For each death penalty prosecution that was "death eligible" from 1988 to date, Petitioner requests that the Government provide it with the names of the defendants, location of the prosecution, the charges, gender and race of the victims and defendants, and the ultimate outcome of the prosecution (including whether there was a guilty plea).

(2) For each case in sub-paragraph "1," Petitioner requests that the Government identify which such cases were referred to the Department of Justice for consideration of pursuit of the death penalty, and the DOJ's resolution of the referral.

(3) For each case in sub-paragraph "1," any written protocols or standards used by the DOJ for evaluation of referrals for consideration of the death penalty.

(4) For Petitioner's prosecution, he requests that the Government provide him with any memos, writings or communications between the local prosecutors and the DOJ regarding the question of whether to pursue the death penalty in his case, both before and after the Fourth Circuit vacated his death sentences in 2000.

In furtherance of this request, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33), to supplement whatever documentary production the government makes in response to this request.

### G.  Discovery of All Exculpatory Materials.

The Government remains under a continuing duty to disclose all exculpatory evidence in its possession regarding both the issue of guilt/innocence and the sentencing determination, including that evidence stored on the Federal Bureau of Investigation's "I drive." Accordingly, Petitioner requests that this Court issue an order directing the Government to provide any and all exculpatory evidence or materials in its possession or control.

In furtherance of this request, Petitioner seeks permission to employ the Federal Rules of Civil Procedure, including the use of depositions (Rule 30) and interrogatories (Rule 33), to supplement whatever documentary production the government makes in response to this request.

### CONCLUSION

WHEREFORE, for all of the above reasons, those contained in the § 2255 petition, and the entire record of these proceedings, Petitioner respectfully requests the following relief:

A. That the Government provide a written response to any item of requested discovery to which it objects;

B. That any such written objections include precise descriptions of the documents or things about which the Government objects, along with a description of any withheld item or document, in conformity with Fed.R.Civ.P. 26(b)(5);

C. That the Court permit Petitioner to file a reply memorandum following receipt of the Government's response;

D. That the Court conduct argument on Petitioner's motion;

E. That the Court conduct evidentiary hearings on any material fact in controversy that is relevant to the disposition of this discovery motion; and

F. That the Court grant Petitioner's discovery motion in all respects.

Dated: July 19, 2013

/s/ Mark E. Olive
N.C. State Bar No. 10615
LAW OFFICES OF MARK OLIVE
320 W. Jefferson Street
Tallahassee, FL 32301
850-224-0004 (tel)
850-224-3331 (fax)
meolive@aol.com

/s/ Jacob H. Sussman
N.C. Bar No. 31821
TIN FULTON WALKER & OWEN PLLC
301 East Park Avenue
Charlotte, NC 28203
704-338-1220 (tel)
704-338-1312 (fax)
jsussman@tinfulton.com

/s/ Henderson Hill
Henderson Hill
N.C. Bar No. 18563
FEDERAL DEFENDERS OF WESTERN
   NORTH CAROLINA, INC.
129 West Trade Street, Suite 300
Charlotte, NC 28202
704-374-0720 (tel)
704-374-0722 (fax)
henderson_hill@fd.org

17

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has served the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Amy Ray
Amy.Ray@usdoj.gov

William M. Miller
William.Miller@usdoj.gov

Dated: July 19, 2013

/s/ Jacob H. Sussman
Counsel for Mr. Barnette