# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL NO. 3:12CV327-RLV

AQUILIA MARCIVICCI BARNETTE     )
                           )
                 Petitioner,     )
                           )
       vs.                  )
                           )
UNITED STATES OF AMERICA,     )
                           )
               Respondent.    )
_____)

## GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR DISCOVERY

The United States of America, by and through Anne M. Tompkins, United States Attorney for the Western District of North Carolina, responds in opposition to Petitioner's Motion for Discovery, filed herein on July 19, 2013 (Doc 51). Each of Petitioner's broad claims for discovery either represent an impermissible fishing expedition based on conclusory allegations not connected to any specific factual allegations, or are premised on claims that fail as a matter of law. Because Petitioner fails to show good cause in support of his requests, this Court should, in its discretion, deny Petitioner's motion for discovery.

## **BACKGROUND**

On February 4, 1997, the Grand Jury for the Western District of North Carolina charged Petitioner Aquilia Marcivicci Barnette in an eleven-count bill of indictment with various crimes relating to the murders of Robin Williams and Donald Lee Allen. (Indictment, 3:97-cr-23, Doc. 1). Three of the counts in the indictment were death eligible offenses, including one count of carjacking resulting in death, in violation of 18 U.S.C. § 2119(3), and two counts of using a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. § 924(i)(1). Following trial, the jury found Petitioner guilty of all eleven counts and, in a bifurcated penalty hearing, recommended a death sentence as to each capital count. (Judgment, 3:97-cr-23, Doc. 323). In an opinion issued May 2, 2000, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's convictions but vacated the death sentences because of a procedural error during the penalty phase. *United States v. Barnette*, 211 F.3d 803, 825–26 (4th Cir. 2000).

On remand, following a new penalty phase trial, the jury once again recommended a death sentence as to each capital count. (Judgment, 3:97-cr-23, Doc. 600). The Fourth Circuit affirmed Petitioner's new death sentences on December 6, 2004. *United States v. Barnette*, 390 F.3d 775 (4th Cir. 2004). On October 3, 2005, the United States Supreme Court granted Petitioner's petition for

2

a writ of certiorari, vacated Petitioner's death sentence, and remanded for further consideration in light of *Miller-El v. Dretke*, 545 U.S. 231 (2005), in which the Court clarified the procedure for evaluating claims of purposeful discrimination in jury selection under *Batson v. Kentucky*, 476 U.S. 79 (1986). In turn, the Fourth Circuit remanded the matter to this Court for further proceedings. (Mandate, 3:97-cr-23, Doc. 632).

On remand, Petitioner sought a new jury selection and penalty phase trial or, in the alternative, a new evidentiary hearing on his *Batson* challenges. In connection with a new *Batson* hearing, Petitioner also requested that the district court order discovery, requiring the government to turn over all juror questionnaires, including any notes taken by the prosecutors; provide a description of and any materials related to training and instruction given to attorneys in the United States Attorney's Office for the Western District of North Carolina related to jury selection; and disclose the case name, number, and result of any cases in which the prosecutors' peremptory challenges were the subject of a *Batson* challenge. (Brief on Remand, 3:97-cr-23, Doc. 637). In response, this Court ordered the Government to submit unredacted copies of all juror questionnaires for in camera review, (Order, 3:97-cr-23, Doc. 645), but denied Petitioner's request for "broad and far-reaching discovery," concluding that Petitioner was not authorized

3

"to go on a fishing expedition through the Government's files in hopes of finding some damaging evidence." (Order, 3:97-cr-23, Doc. 649). After conducting an evidentiary hearing, this Court ruled that the prosecutors' use of peremptory strikes did not violate *Batson*. (Order, 3:97-cr-23, Doc. 660). The Fourth Circuit affirmed, finding "no merit in [Petitioner's] contentions that the district court committed prejudicial error in the manner in which it conducted the proceedings below or in its findings of fact and legal conclusions on the merits of [Petitioner's] *Batson* claims. *United States v. Barnette*, 644 F.3d 192, 196 (4th Cir. 2011). On March 29, 2012, the Supreme Court denied Petitioner's petition for a writ of certiorari. *Barnette v. United States*, 132 S. Ct. 1740 (2012).

In an order dated May 23, 2012, this Court appointed counsel to pursue post-conviction remedies on behalf of Petitioner. (Doc. 1). On September 17, 2012, this Court conducted a sealed hearing, in which Petitioner's post-conviction counsel and trial counsel Harold Bender appeared. During the hearing, "it was confirmed that all of the attorneys who had represented [Petitioner] in his underlying capital trial and sentencing proceedings . . . had transferred their case files to Mr. Bender, and that Mr. Bender had been unable to locate any trial counsel files from the underlying capital case. (*See* Doc. 17 at 1). Subsequent to the ex parte hearing, the Court ordered the Government to provide Petitioner's

4

habeas counsel with a complete copy of all material previously provided by the United States Attorney to Petitioner's prior trial counsel, including all discovery materials, as well as a complete copy of all correspondence between prosecutors and Petitioner's prior counsel. (Doc. 17). In response to the Court's order, the Government produced several CDs containing thousands of pages of materials, as well as numerous CDs with audio and video files.

On June 19, 2013, in light of the Government's agreement to a three-month extension of time, Petitioner filed his initial motion for relief pursuant to 28 U.S.C. § 2255. (Doc. 48). In the motion, Petitioner raises seven claims for relief, including (1) that he received ineffective assistance of counsel during the penalty phase of his capital trial; (2) that prosecutors engaged in racial discrimination during jury selection and, relatedly, that the way in which this Court conducted the *Batson* proceedings was unconstitutional; (3) that he was deprived of a fair and impartial jury as a result of juror misconduct; (4) that prosecutors engaged in selective prosecution on the basis of race; (5) that prosecutors failed to disclose material exculpatory or impeachment information, in violation of *Brady, Giglio*, *Kyles*, and *Napue*; (6) that the federal death penalty is unconstitutional because it is sought on the basis of race and geography; and (7) that the manner of execution violates the Eighth Amendment's prohibition on cruel and unusual punishment.

(*Id.*).  That same day, Petitioner filed a motion for leave to conduct juror interviews in support of his claim of juror misconduct, (Doc. 49), which this Court denied in a written order on July 18, 2013, (Doc. 50).

On July 19, 2013, Petitioner filed the instant motion for leave to file discovery.  (Doc. 51).  In his motion, Petitioner requests discovery in seven broad categories, including (1) the trial and appellate files of the United States Attorney's Office for the Western District of North Carolina and the Department of Justice, (2) the prosecutorial file of the Mecklenburg County District Attorney's Office, (3) the complete investigative files of the Charlotte-Mecklenburg Police Department, the Roanoke Police Department, and the Federal Bureau of Investigation, (4) Petitioner's Bureau of Prisons Records, (5) information pertaining to jury selection in the Western District of North Carolina, (6) discovery related to the administration of the federal death penalty, and (7) discovery of all exculpatory material.  (*Id.*).

## STANDARD FOR DISCOVERY

A habeas petitioner, unlike a traditional civil litigant, is not entitled to discovery as a matter of course.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Discovery in this setting can occur only with leave of the court, upon a showing of good cause.  *See* Rule 6(a) of the Rules Governing § 2255 Cases.  A district court

6

possesses broad discretion in determining whether good cause exists. *United States v. Roane*, 378 F.3d at 403 (holding the district court acted within its discretion in denying discovery in a § 2255 capital case). Accordingly, a court should only allow a petitioner to engage in discovery "if, and to the extent that, the judge in the exercise of discretion and for good cause shown, grants leave to do so, but not otherwise." *Id.* at 402 (quoting Rule 6(a)). Good cause, under Supreme Court and Fourth Circuit precedent, exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (citing *Harris v. Nelson*, 394 U.S. 286, 295 (1969)). Thus, good cause does not exist if a defendant premises a discovery request on a claim that fails as a matter of law. *See Thomas v. Taylor*, 170 F.3d 466, 474 (4th Cir. 1999).

Under this standard, a request for discovery must rely on specific factual allegations. *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998); *see also Hall v. United States*, 30 F. Supp. 2d 883, 899 (E.D. Va. 1998) ("Good cause . . . requires specificity as to sought information."). Discovery will not be allowed so that the petitioner can "explore [his] case in search of its existence." *See Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir.1999). In short, "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'"

*Williams v. Bagley*, 380 F.3d 932, 976 (6th Cir. 2004) (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)) (holding, in a capital case, that the district court acted within its discretion in denying defendant's motion for discovery).

**RESPONSE TO PETITIONER'S DISCOVERY REQUESTS**

1. <u>Trial and appellate files of the United States Attorney's Office for the Western District of North Carolina and Department of Justice</u>.

Petitioner is not entitled to an order directing the Government to provide additional discovery related to the Government's trial files, where in its order dated October 5, 2012, this Court already directed the Government to produce the very files Petitioner now seeks. (*See* Doc. 17). In response to this Court's order, the Government undertook an extensive review of its files and has produced CDs containing thousands of pages of documents, as well as other audio/video recordings. In so doing, the Government believes it has fully complied with the Court's order. To the extent Petitioner has specific concerns, the Government will continue, as it has thus far, to work with Petitioner post-conviction counsel to resolve those issues. There is simply no need for an additional order from this Court directing the Government to provide that which it has already been directed to produce.

2. <u>Prosecutorial files of the Mecklenburg County District Attorney's Office</u>.

Petitioner fails altogether to identify specific factual allegations to support

8

his request for discovery related to the prosecutorial files of the Mecklenburg County District Attorney's Office. Petitioner asserts, without elaboration, that he needs discovery of these materials to investigate his various claims. Petitioner's sweeping request amounts to nothing more than an impermissible fishing expedition. At this point, given the Government's extensive production of its original trial files, Petitioner is not entitled to rest on "broad and unspecific" assertions to support his request for discovery but instead must tie those requests to specific factual allegations demonstrating that he is entitled to relief. *See United States v. Wilson*, 901 F.2d 378, 382 (4th Cir. 1990) (affirming the denial of § 2255 discovery requests where "[t]he requests were far too broad and unspecfic"). Because Petitioner's broad request fails to satisfy the good cause standard, his request should be denied.

3. <u>Investigative files of the Charlotte-Mecklenburg Police Department, the Roanoke Police Department, and the Federal Bureau of Investigation.</u>

Similarly, Petitioner makes no effort whatsoever to connect his request for the investigative files of the various law enforcement agencies to his alleged claims for relief. This failure is fatal to his request for discovery. In light of his conclusory allegations, Petitioner has not demonstrated good cause, and his request should be denied.

9

4. <u>Bureau of Prison Records</u>.

Again, Petitioner fails to specifically connect his request for Bureau of Prison Records to any of his alleged claims to relief. In short, Petitioner is simply unable to demonstrate how the requested discovery ties to any specific factual allegations. Furthermore, as Petitioner acknowledges, he has access to and has in fact already requested the BOP records via a Freedom of Information Act records request. As such, Petitioner has not shown good cause to justify the exercise of this Court's discretion to enter an order directing discovery of these records.

5. <u>Information related to jury selection</u>.

Petitioner's request for discovery related to jury selection is tied to a claim that fails as a matter of law. Courts have long held that a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered" on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); *see also Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring) (collecting cases). Petitioner's claim of racial discrimination in jury selection has been fully litigated both in this Court and on direct appeal. In fact, this Court rejected the very requests for discovery that Petitioner now asserts when the case was remanded for reconsideration in light of *Miller-El*. (Order, 3:97-cr-23, Doc. 660). On appeal, the Fourth Circuit affirmed both the procedure adopted

10

by this Court for addressing Petitioner's *Batson* challenge, as well as its conclusion that there was no evidence of racial discrimination. *See Barnette*, 644 F.3d at 196. Accordingly, Petitioner is now barred from relitigating these issues in this collateral attack, and his claim, therefore, fails as a matter of law. Because Petitioner's request is premised on a meritless claim, he is unable to show good cause, and his request should be denied. *See Taylor*, 170 F.3d at 474–75 (concluding that the district court properly exercised its discretion in denying requests for discovery where the requested information would have no bearing on the petitioner's substantive § 2255 claim).

6. Discovery related to the administration of the federal death penalty.

In connection with his claim of selective prosecution, Petitioner requests extensive discovery from the Department of Justice related to the administration of the death penalty from 1988 to the present. Petitioner claims that he has demonstrated good cause for such sweeping requests by providing national statistics related to the federal death row population by race and geographic location. (*See* Doc. 48 at 100–01). As demonstrated below, however, because Petitioner's claim is insufficient as a matter of law he is unable to show good cause for his broad request.

A selective prosecution claim is "an independent assertion that the

11

prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). In *Armstrong*, the Court considered the showing necessary for a defendant to be entitled to discovery on a claim that the prosecutor singled him out for prosecution based on race. *Id.* at 458. The standard for selective prosecution is "a demanding one" because it asks a court "to exercise judicial power over a 'special province' of the Executive." *Id.* at 464. To satisfy this demanding standard, a claimant must show that the decision to prosecute had a discriminatory effect and was motivated by a discriminatory purpose. *Id.* at 465. "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.* In *Armstrong*, the Court concluded that the defendant's showing—including an affidavit of an employee of the Federal Public Defender that averred all crack defendants represented by the office were black and a newspaper article—did not suffice to warrant discovery on defendants' selective prosecution claim. *Id.* at 471.

The Court later applied *Armstrong* in the death penalty realm, rejecting a request for discovery based on statistics similar to those presented by Petitioner in this case. In *United States v. Bass*, 536 U.S. 862 (2002) (per curiam), the defendant asserted that the government sought the death penalty against him

12

because of his race.  The appellate court determined that the defendant had made a credible showing that similarly situated individuals of a different race were not prosecuted based upon his providing nationwide statistics demonstrating that "the United States charges blacks with a death-eligible offense more than twice as often as it charges whites."  *Id.* at 863.  The Supreme Court reversed the appellate court, holding as follows:

> Even assuming that the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decision-makers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*.

*Id.* at 863–64 (emphasis in original).  As in *Armstrong*, the Court found that the defendant's showing did not warrant discovery on his selective prosecution claim.

Similarly, in *United States v. Lighty*, 616 F.3d 321, 369–70 (4th Cir. 2010), the Fourth Circuit affirmed the district court's denial of the defendant's request for discovery in support of a claim of selective prosecution.  The defendant presented national statistics regarding the number of African-Americans on death row relative to the general population, as well as among the prison population.  *Id.* at 369.  Concluding that the statistics were insufficient, the *Lighty* court explained that "[i]n order to obtain discovery on a selective-prosecution claim, a defendant must make a 'credible showing of different treatment of similarly situated

13

persons,'" noting that "[t]his showing 'should itself be a significant barrier to the litigation of insubstantial claims.'"  *Id.* at 369–70 (quoting *Armstrong*, 517 U.S. at 464, 470)).  Furthermore, the Fourth Circuit affirmed the denial of the defendant's request for discovery, holding that he "made no showing that he was similarly situated to non-African-Americans who were not facing the death penalty for engaging in similar conduct" and that "[t]he lack of such evidence [was] fatal to his attempt to obtain discovery because such evidence is necessary to show that there were no 'distinguishable legitimate prosecutorial factors' that would justify a 'different prosecutorial decision.'"  *Id.* at 370 (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)); *see also United States v. Jones*, 287 F.3d 325, 332–35 (5th Cir. 2002) (declining to issue a certificate of appealability where petitioner's evidence in support of his claim of racial bias and geographic selectivity in the administration of the federal death penalty failed to show that he was singled out for prosecution while others who were similarly situated were not).

In sum, to establish a claim of selective prosecution based on race, Petitioner must demonstrate that he was similarly situated to other non-African-American defendants who did not face the death penalty.  And, in order to show good cause, Petitioner must present "specific allegations" that demonstrate he is entitled to relief before he can obtain discovery.  *See Bracy* 520 U.S. 908–09.  Accordingly,

14

because Petitioner fails altogether to raise any allegations regarding similarly situated individuals, he is not entitled to the sweeping discovery he requests in support of his selective prosecution claim.

7. <u>Unidentified exculpatory materials</u>.

Petitioner's final request for "all exculpatory evidence," like the *Brady* claim in his § 2255 motion, is speculative and devoid of any specific factual allegations. Accordingly, Petitioner is unable to show good cause and his claim fails.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that this Court deny Petitioner's motion for discovery.

RESPECTFULLY SUBMITTED, this the 9th day of September, 2013.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

<u>/s/William M. Miller</u>
Assistant United States Attorney
NC Bar No. 36946
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 704-344-6222 (phone)
(704) 344-6629 (fax)
William.Miller@usdoj.gov

15

# <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing ***Motion for Extension*** was served on counsel for Petitioner via electronic case filing.

This the 9th day of September, 2013.

s/ William M. Miller
Assistant United States Attorney

16