IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12cv327-V
(3:97cr23)

| | |
|---|---|
| AQUILIA MARCIVICCI BARNETTE, ) )| |
| Petitioner, ) ) | |
| vs. ) ) | ORDER |
| UNITED STATES OF AMERICA, ) ) | |
| Respondent. ) ) | |

**THIS MATTER** is before the Court upon Petitioner Aquilia Marcivicci Barnette's Motion for Discovery. ECF No. 51. He seeks discovery related to the claims raised in his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 48.

PROCEDURAL HISTORY

On January 27, 1998, Petitioner was convicted in the United States District Court for the Western District of North Carolina of various crimes relating to the murders of Robin Williams in Virginia, and Donald Lee Allen in North Carolina. Jury Verdict, 3:97cr23, Doc. 289. The trial jury recommended, and the court imposed, a death sentence for three of the convictions: one count of carjacking resulting in death, in violation of 18 U.S.C. § 2119(3), and two counts of using a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. § 924(i)(1). Special Jury Verdict, 3:97cr23, Doc. No. 309; Judgment, 3:97cr23, Doc. 323. The Fourth Circuit Court of Appeals affirmed Petitioner's convictions but vacated the death sentences because of a procedural error during the penalty phase. United States v. Barnette, 211 F.3d 803, 825–26 (4th Cir. 2000) (Barnette I).

Following new penalty proceedings before a different jury, Petitioner once again was

sentenced to death for each capital count.  Judgment, 3:97cr23, ECF No. 600.  The Fourth

Circuit affirmed.  United States v. Barnette, 390 F.3d 775 (4th Cir. 2004) (Barnette II).  The

United States Supreme Court granted Petitioner a writ of certiorari, vacated his death sentences,

and remanded his case to the Fourth Circuit for further consideration in light of Miller-El v.

Dretke, 545 U.S. 231 (2005), in which the Court clarified the procedure for evaluating claims of

purposeful discrimination in jury selection under Batson v. Kentucky, 476 U.S. 79 (1986).

Barnette v. United States, 546 U.S. 803 (2005) (mem.).  In turn, the Fourth Circuit remanded the

matter to this Court for further proceedings.  Judgment, United States v. Barnette, No. 02-20 (4th

Cir. Aug. 28, 2007), ECF No. 213.

On remand, the Court conducted an in camera review of the prosecutors' 2002 juror

questionnaires and jury selection notes, held a limited hearing focusing on the third prong of the

Batson test, and reaffirmed its ruling that the prosecutors' use of peremptory strikes during the

2002 jury selection did not violate Batson.  Order, 3:97cr23, ECF No. 660.  The Fourth Circuit

affirmed, United States v. Barnette, 644 F.3d 192, 196 (4th Cir. 2011) (Barnette III), and on

March 29, 2012, the Supreme Court denied Petitioner a writ of certiorari.  Barnette v. United

States, 132 S. Ct. 1740 (2012).

In an order dated May 23, 2012, this Court appointed counsel to pursue post-conviction

remedies on Petitioner's behalf.  ECF No. 1.  On September 17, 2012, the Court conducted a

sealed, ex parte hearing at which Petitioner's habeas counsel and Harold Bender, who had

represented Petitioner during the 2002 penalty phase and subsequent proceedings, appeared.

During the hearing, "it was confirmed that all of the attorneys who had represented [Petitioner]

in his underlying capital trial and [2002] sentencing proceedings . . . had transferred their case

files to Mr. Bender" and that Mr. Bender had been unable to locate any of those files.  Order 1,

ECF No. 17.  Nor was he able to find his own files from the 2002 penalty phase.  Order, supra, at 1.  Mr. Bender was semi-retired at the time of the hearing and had relocated from his active practice in Charlotte, North Carolina.  He has since died.  On October 5, 2012, the Court ordered the United States Attorney for the Western District of North Carolina to provide Petitioner's habeas counsel with a complete copy of all material previously provided by the U.S. Attorney to Petitioner's 1998 and 2002 trial and sentencing counsel, including all discovery materials and copies of all correspondence between prosecutors and defense counsel.  ECF No. 17.

On June 19, 2013, Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  ECF No. 48.  In the motion, Petitioner raises seven claims for relief:  (1) that he received ineffective assistance of counsel during the 2002 penalty phase; (2) that prosecutors engaged in racial discrimination during the 2002 jury selection and, relatedly, that the way in which this Court conducted Batson proceedings on remand was unconstitutional; (3) that he was deprived of fair and impartial juries in 1998 and 2002 as a result of juror misconduct; (4) that prosecutors engaged in selective prosecution on the basis of race; (5) that prosecutors failed to disclose material exculpatory or impeachment information, in violation of Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Kyles v. Whitley, 514 U.S. 419 (1995), and Napue v. Illinois, 360 U.S. 264 (1959); (6) that the federal death penalty is unconstitutional because it is sought on the basis of race and geography; and (7) that the manner of federal execution violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Mot. to Vacate, ECF No. 48.  Petitioner also filed a motion for leave to conduct juror interviews in support of his claim of juror misconduct, ECF No. 49, which the Court denied in a written order on July 18, 2013, ECF No. 50.

STANDARD FOR DISCOVERY IN § 2255 PROCEEDINGS

On July 19, 2013, Petitioner filed the instant motion for discovery. ECF No. 51. Discovery requests in habeas proceedings are governed by Rule 6 of the Rules Governing § 2255 Proceedings. Unlike a traditional civil litigant, a habeas petitioner is not entitled to discovery as a matter of course. Bracy v. Gramley, 520 U.S. 899, 904 (1997). A petitioner may engage in discovery only with leave of the court, after having demonstrated good cause. Rules Governing § 2255 Cases, Rule 6(a), 28 U.S.C. foll. § 2255 (2013). "Good cause" for discovery exists when a petitioner establishes a prima facie case for relief. See Harris v. Nelson, 394 U.S. 286, 290 (1969). Specifically, discovery is warranted, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." Bracy, 520 U.S. at 908–09 (quoting Harris, 394 U.S. at 300).

Under this standard, a request for discovery must rely on specific factual allegations. Quesinberry v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998) (citing Harris, 394 U.S. at 300). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004) (quoting Rector v. Johnson, 120 F.3d 551, 562 (5th Cir. 1997)); see also Teti v. Bender, 507 F.3d 50, 60 (1st Cir. 2007) (observing that "[a] habeas proceeding is not a fishing expedition"). Moreover, good cause does not exist if a defendant premises a discovery request on a claim that fails as a matter of law. See Thomas v. Taylor, 170 F.3d 466, 474 (4th Cir. 1999) (finding that trial court did not abuse its discretion in denying discovery request related to claim that failed as a matter of law); Martinez v. United States, Nos. 10 Cv. 7561(RPP), 06 Cr. 591(RPP), 2012 WL 1071239, at *13 (S.D.N.Y. Mar. 30, 2012) (mooting motion for discovery because substantive claim failed as a matter of law).

PETITIONER'S DISCOVERY REQUESTS

Trial and Appellate Files of the U.S. Attorney's Office for the Western District of North Carolina and the Department of Justice

This discovery request is related to the U.S. Attorney's compliance with the Court's October 5, 2012 Order requiring the Government to provide Petitioner's habeas counsel with a complete copy of all material provided by the U.S. Attorney to Petitioner's 1998 and 2002 trial and sentencing counsel. ECF No. 17. The Court has addressed those compliance issues in a separate Order, filed on January 7, 2014. ECF No. 61.

Prosecutorial File of the Mecklenburg County District Attorney's Office

Following his arrest on June 25, 1996, Petitioner was remanded to state custody on murder and robbery with dangerous weapon charges. On February 4, 1997, Petitioner was indicted in federal district court for the murders of Allen and Williams. Indictment, 3:97cr23, Doc. 1. The state charges against Petitioner were dismissed on October 1, 1997. State v. Barnette, Nos. 96CRS33122-23 (Meck. Co. Superior Court 10/1/97).

Although the Mecklenburg County District Attorney dismissed the state charges against Petitioner once the federal government elected to pursue a prosecution, Petitioner claims a right to the District Attorney's case files. Petitioner cites a North Carolina law that requires "[t]he State . . . [to] make available to the defendant's counsel the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant," N.C. Gen. Stat. § 15A-1415(f). Disc. Mot. 10, ECF No. 51. That statute, however, applies only to defendants in state post-conviction proceedings. § 15A-1415(f).

Furthermore, Petitioner has not identified which factual allegations in his habeas petition would be supported by information in the Mecklenburg County District Attorney's files. See United States v. Wilson, 901 F.2d 378, 382 (4th Cir. 1990) (affirming the denial of § 2255

discovery requests where "[t]he requests were far too broad and unspecific"). Consequently, Petitioner has not shown "good cause" to warrant discovery of any of the District Attorney's files. His discovery request, therefore, is denied.

<u>The Complete Investigative Files of the Charlotte Mecklenburg Police Department, the Roanoke Police Department, and the Federal Bureau of Investigation</u>

Petitioner indicates that this request is related to his ineffective assistance of counsel claims (Claim I), <u>Batson</u> claim (Claim II), selective prosecution claim (Claim IV), <u>Brady</u>/<u>Giglio</u> claim (Claim V), and his claim that the federal death penalty is unconstitutional (Claim VI). He does not tie his discovery request to any of the factual allegations made in those claims, however.

Petitioner may not obtain discovery based upon a generalized request untethered to specific factual allegations demonstrating that he is entitled to relief. See <u>Wilson</u>, 901 F.2d at 382. His discovery request, therefore, is denied.

<u>Bureau of Prison Records</u>

Petitioner seeks discovery of all documents, files, materials and other information in the possession or control of the Federal Bureau of Prisons ("BOP") concerning his incarceration through August 13, 2002. Petitioner states that habeas counsel have attempted to obtain all of his BOP records by way of authorized release and Freedom of Information Act requests but have not received all responsive documents and materials from the BOP.

Petitioner has not identified the documents and/or materials that counsel have not received from the BOP. Moreover, during the 2002 penalty phase, this Court denied Petitioner access to some of his prison records after determining that they had no bearing on the issue of Petitioner's future dangerousness. Sealed Order, 3:97cr23, ECF No. 474. Petitioner has not provided sufficient information for the Court to order release of BOP records covering Petitioner's incarceration through August 13, 2002. Consequently, this request is denied.

Information Pertaining to Petitioner's Jury Selection and Composition Claims

In Claim II of his Motion to Vacate, Petitioner claims that the Batson proceeding conducted by the District Court on remand was unconstitutional under the Fifth, Sixth, and Eighth Amendments. Mot. to Vacate 88-92, ECF No. 48. Specifically, Petitioner contends that the limited hearing held by the Court was a critical stage of the capital trial and that he was denied the effective assistance of counsel and due process at that hearing because counsel were denied copies of juror questionnaires used during the 2002 voir dire. Mot. to Vacate, supra, at 89-92. He asserts entitlement to all of the materials he was denied during the remand proceedings.

When Petitioner's case was remanded for review of his 2002 Batson challenges, he sought a new penalty phase or, in the alternative, an evidentiary hearing on his Batson challenges. Br. on Remand at 14-15, 3:97cr23, ECF No. 637. Petitioner also requested that the Court order the Government to turn over copies of juror questionnaires it had retained from Petitioner's trial, including any notes taken by the prosecutors; provide any materials related to training and instruction given to attorneys in the United States Attorney's Office for the Western District of North Carolina related to jury selection; and disclose the case name, number, and result of all cases in which his prosecutors' peremptory challenges were the subject of a Batson challenge. Br. on Remand, supra, at 13-14. In response, this Court ordered the Government to submit unredacted copies of its juror questionnaires for in camera review, Order, 3:97cr23, ECF No. 645, but denied Petitioner's other discovery requests, concluding that Petitioner was not authorized "to go on a fishing expedition through the Government's files in hopes of finding some damaging evidence," Order at 12, 3:97cr23, ECF No. 649. Subsequent to its in camera review of the Government's juror questionnaires and jury selection notes, which prosecutors also

7

provided, the Court conducted a limited hearing, after which it reaffirmed its trial ruling that the prosecutors' use of peremptory strikes did not violate Batson. Order, 3:97cr23, ECF No. 660.

The Fourth Circuit affirmed, finding "no merit in [Petitioner's] contentions that the district court committed prejudicial error in the manner in which it conducted the proceedings [on remand] or in its findings of fact and legal conclusions on the merits of [Petitioner's] Batson claims." Barnette III, 644 F.3d at 196. Specifically, the court held that this Court did not err in refusing to order disclosure of the prosecutors' copies of juror questionnaires, with accompanying notes. Id. at 209, 211 (noting that Petitioner "was no more entitled to examine the work product of his trial prosecutors during the hearing on remand than he would have been (had he asked to do so) at the initial Batson hearing in 2002"). Moreover, although the Fourth Circuit held that this Court erred on remand in denying Petitioner clean copies of the original juror questionnaires, it found the error harmless. Id. at 212, 213. In other words, the Fourth Circuit concluded that this Court's actions did not affect Petitioner's substantial rights and prejudice the outcome of the remand. See United States v. Harbin, 250 F.3d 532, 542 (7th Cir. 2001) (citing United States v. Olano, 507 U.S. 725, 734 (1993)).

The constitutionality of the Batson remand procedure employed by the Court was resolved on direct appeal. Courts have long held that a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered" on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); see also Withrow v. Williams, 507 U.S. 680, 721 (1993) (Scalia, J., concurring) ("[A] prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim. If the claim was raised and rejected on direct review, the habeas court will not readjudicate it absent countervailing equitable considerations."). Consequently, Petitioner's claim fails as a matter of law, and good cause does

8

not exist to warrant the discovery Petitioner seeks. See Taylor, 170 F.3d at 474-75 (concluding that the district court properly exercised its discretion in denying requests for discovery where the requested information would have no bearing on the petitioner's substantive § 2255 claim).

In Claim IV, Petitioner contends that the Government's decision to prosecute him in federal court rather than in North Carolina state court unconstitutionally diluted the pool of eligible black jurors by 4%. Mot. to Vacate 95-6, ECF No. 48. This claim also fails as a matter of law.

The Supreme Court has held that "the selection of a petite jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial." Taylor v. Louisiana, 419 U.S. 522, 528 (1975). "[T]he Constitution does not require that the juror selection process be a statistical mirror of the community," however. United States v. Cecil, 836 F.2d 1431, 1445 (4th Cir. 1988). "It is sufficient that the selection be 'in terms of a fair cross-section' gathered without active discrimination." Id.

To establish a prima facie case that violation of the fair-cross-section requirement occurred, Petitioner must show that "(1) a group qualifying as 'distinctive' (2) is not fairly and reasonably represented in jury venires, and (3) 'systematic exclusion' in the jury-selection process accounts for the underrepresentation." Berghuis v. Smith, 559 U.S. 314, 327 (2010) (citing Duren v. Missouri, 439 U.S. 357, 364 (1979)). In other words, Petitioner must show that the source from which the federal district court in the Western District of North Carolina drew eligible jurors in 2002, [1] systematically excluded African-Americans and, therefore, was not representative of the community as a whole. See Taylor, 419 U.S. at 528.

---

[1] Petitioner's seeks discovery from the Clerk of Court and/or Jury Administrator of the United States District Court of the Western District of North Carolina for years 2000-2002. Disc. Mot. 12-13, ECF No. 51. He does not seek related discovery for years 1997-1999.

9

Juries in all four divisions of the Western District of North Carolina are selected according to the District Jury Selection Plan in which potential jurors are randomly selected from the voter registration lists ("VRLs") of the division where the trial is held. Congress has expressly sanctioned the use of VRLs as the source for jury selection in federal courts. See Cecil, 836 F.2d at 1445 (citing 28 U.S.C. § 1863(b)(2)); see also Taylor, 419 U.S. at 528-30 (approving, in dictum, use of VRLs). Furthermore, the Fourth Circuit has upheld the use of VRLs even though minority representation on voter rolls is sometimes less than in the general community. See Cecil, 836 F.2d at 1444-48; see also United States v. McGrady, 173 F.3d 426, *2-*3 (4th Cir. 1999) (unpublished table decision) (finding no fair cross-section violation in use of VRLs by the Western District of North Carolina as source for jury selection).

Petitioner was tried in the Charlotte division of the Western District. Census data provided by Petitioner demonstrates that in 2000, African-Americans comprised 23.9% of the population in the Charlotte division. Mot. to Vacate 97, ECF No. 48. Petitioner has not provided any information regarding the percentage of African Americans registered to vote in the Charlotte division or the percentage of African-Americans eligible to vote but who had not registered to do so. Consequently, Petitioner has failed to provide factual support for his assertion that African-Americans were not fairly and reasonably represented in jury venires in the Charlotte division around the time of his 2002 jury selection.

Furthermore, Petitioner has not alleged that North Carolina "systematically" or "intentionally" excluded African-Americans by its voter registration procedures. Nor has Petitioner alleged that this Court purposefully misapplied or violated the rules and procedures of its own District Jury Selection Plan in order to exclude eligible African-Americans from jury pools in the District, or the Charlotte division in particular.

Because Petitioner has not established a prima facie case that his prosecution in federal court violated the fair cross-section requirement of the Sixth Amendment, he has not established "good cause" for discovery on his claim that the decision to prosecute him in federal rather than state court unconstitutionally diluted the pool of eligible African-Americans in his juror pool. See Harris, 394 U.S. at 290. This discovery request is denied.

<u>Discovery Related to Petitioner's Selective Prosecution Claim</u>

In Claim VI, Petitioner contends that the Federal Death Penalty Act ("FDPA") is unconstitutional because, under it, decisions whether to seek the death penalty are based on the race of the defendant and victim(s) and on the locale in which the defendant is charged. Mot. to Vacate 100-01, ECF No. 48. Petitioner seeks discovery from the United States Attorney's Office and the Department of Justice to prove this claim.[2]

The equal protection guarantee embodied in the Fifth Amendment forbids basing prosecutorial decision-making "on an unjustifiable standard such as race, religion or other arbitrary classification." United States v. Armstrong, 517 U.S. 456, 464 (1996) (citation and internal quote omitted). To prevail on an equal protection claim, a claimant must prove the

---

[2] Petitioner seeks the following:

1. For each death penalty prosecution that was "death eligible" from 1988 to date, Petitioner requests that the Government provide it with the names of the defendants, location of the prosecution, the charges, gender and race of the victims and defendants, and the ultimate outcome of the prosecution (including whether there was a guilty plea).

2. For each case in sub-paragraph "1," Petitioner requests that the Government identify which such cases were referred to the Department of Justice for consideration of pursuit of the death penalty, and the DOJ's resolution of the referral.

3. For each case in sub-paragraph "1," any written protocols or standards used by the DOJ for evaluation of referrals for consideration of the death penalty.

4. For Petitioner's prosecution, he requests that the Government provide him with any memos, writings or communications between the local prosecutors and the DOJ regarding the question of whether to pursue the death penalty in his case, both before and after the Fourth Circuit vacated his death sentences in 2000.

Disc. Mot. 15, ECF No. 51.

existence of "purposeful discrimination" and "that the purposeful discrimination had a discriminatory effect on him." McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (citations and internal quotes omitted). To make this showing in the context of a selective prosecution claim, a claimant "must 'establish both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious, or in bad faith.'" United States v. Venable, 666 F.3d 893, 900 (4th Cir. 2012) (quoting United States v. Olvis, 97 F.3d 739, 743 (4th Cir. 1996)). Specifically, a claimant "must prove that the decisionmakers in his case acted with discriminatory purpose." McCleskey, 481 U.S. at 292.

Petitioner acknowledges that he has not provided sufficient evidence to prove an equal protection violation. Disc. Mot. 14, ECF No. 51. He contends, however, that the following is sufficient evidence of racial motivation to warrant discovery: (1) the federal interest in and connection to the case, in his opinion, was no greater than the state's; (2) his was the first capital prosecution brought in the Western District of North Carolina; (3) the decision to prosecute him in federal court rather than in North Carolina state court diluted the pool of eligible black jurors by 4%; (4) 68% of the federal defendants on death row on July 20, 2000 were black; and (5) 63% of the federal defendants on death row on July 20, 2000 had been convicted and sentenced to death in Southern states. Mot. to Vacate 97, 98, 100-01, ECF No. 48.[3]

"Because discovery imposes high costs on the government, the standard for obtaining discovery in support of a selective prosecution claim" is comparably high. Venable, 666 F.3d at 900. To obtain discovery, Petitioner must produce "some evidence making a credible showing

---

[3] Petitioner obtained the federal death row population demographics from a Department of Justice ("DOJ") survey of the administration of the federal death penalty from 1988 to July, 2000. U.S. Dep't of Justice, The Federal Death Penalty System: A Statistical Survey (1998-2000) (Sept. 12, 2000) [hereinafter DOJ Survey], available at http://www.justice.gov/dag/pubdoc/dpsurvey.html. A supplemental report was issued on June 6, 2001. U.S. Dep't of Justice, The Federal Death Penalty System: Supplementary Data, Analysis and Revised Protocols for Capital Case Review 10 (Jun. 6, 2001), available at http://www.justice.gov/dag/pubdoc/deathpenaltystudy.htm.

12

that (1) similarly situated individuals of a different race were not prosecuted; and (2) the decision to prosecute was invidious or in bad faith." Id. (citing Olvis, 97 F.3d at 743).

Here, Petitioner has made no showing that as a death-eligible defendant he was treated differently from persons of other races who engaged in conduct similar to his. "[A]bsent an appropriate basis for comparison, statistical evidence of racial disparity alone cannot establish any element of a discrimination claim." Venable, 666 F.3d at 903 (citing Olvis, 97 F.3d at 745). The statistics Petitioner cites are merely snapshots of the federal death row population on a specific day. They do not reveal the number of non-black individuals who could have been, but were not, federally and capitally prosecuted prior to July, 2000 for committing homicides comparable to those Petitioner committed. See United States v. Bass, 536 U.S. 862, 864 (2002) (per curium) ("[R]aw statistics regarding overall charges say nothing about charges brought against similarly situated defendants."). Consequently, these statistics do not constitute "some evidence making a credible showing that . . . similarly situated individuals of a different race were not prosecuted." Venable, 666 F.3d at 900 (citation omitted).

Even if the Court were to hold that generalized national statistics were sufficient to meet the first test for discovery, Petitioner has failed to present evidence making a credible showing that "the decisionmakers in his case acted with discriminatory purpose." McCleskey, 481 U.S. at 292. As an initial matter, Congress defined the federal interest in Petitioner's case when it outlawed the conduct and made it punishable by death. Whether that interest was less than North Carolina's, or Virginia's, in prosecuting Petitioner is a matter of opinion. Moreover, Petitioner's status as the first federal death penalty defendant in the Western District of North Carolina[4] and

---

[4] Notably, prior to 1994, the federal death penalty was limited to those convicted under the federal Drug Kingpin Act. DOJ Survey, supra, at 1, 13. The availability of capital punishment in federal criminal cases expanded significantly in 1994 with enactment of the Federal Death Penalty Act, which provided that over 40 federal offenses,

13

the effect the federal prosecution may have had on the racial make-up of the jury pool do not indicate that his federal prosecution was based upon racial considerations rather than other factors, such as judicial economy and efficiency (i.e. one federal trial for two murders versus two state trials, each for a single murder).

Petitioner has failed to show "good cause" to warrant discovery for his claim that the Federal Death Penalty is unconstitutional. Therefore, this discovery request is denied.

All Exculpatory Materials

Petitioner contends that he is entitled to all exculpatory material related to guilt or sentencing in the Government's possession, including anything in the files of federal law enforcement agencies that participated in the investigation of his case. Disc. Mot. 16, ECF No. 51. Petitioner is incorrect.

In Brady v. Maryland, the Supreme Court held that the Due Process Clause requires the government to disclose "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment." 373 U.S. at 87. There is, however, "'no general constitutional right to discovery . . . , and Brady did not create one.'" United States v. Caro, 597 F.3d 608, 619 (4th Cir. 2010) (quoting Weatherford v. Bursey, 429 U.S. 545, 559 (1977)). Because Petitioner can only speculate as to what the requested exculpatory evidence, if it exists at all, might reveal, he cannot satisfy Brady's materiality requirement. See Caro, 597 F.3d at 619 (citing United States v. Agurs, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.")).

---

including those Petitioner was convicted of committing, could be punished as capital crimes, and in 1996 with enactment of the Antiterrorism and Effective Death Penalty, which added another four federal offenses to the list of capital crimes. Id.

Insofar as Petitioner's request is not predicated on Brady, he has not, in any event, established a prima facie case for relief tied to this discovery request. Consequently, Petitioner has not shown that "good cause" exists for granting his request. See Harris v. Nelson, 394 U.S. at 290 (establishing that "good cause" for post-conviction discovery exists when a petitioner establishes a prima facie case for relief).

CONCLUSION

Petitioner has not demonstrated good cause for the Court to order discovery under Rule 6(a) of the Rules Governing § 2255 Proceedings. His motion shall be denied.

ORDER

**IT IS, THERFORE, ORDERED** that Petitioner's Motion for Discovery, ECF No. 51, is **DENIED**.

Signed: January 22, 2014

Richard L. Voorhees
United States District Judge