| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>AQUILIA MARCIVICCI BARNETTE | **DEATH PENALTY § 2255** |

**PETITIONER AQUILIA MARCIVICCI BARNETTE'S REPLY TO GOVERNMENT'S
RESPONSE TO COURT'S JANUARY 7, 2014 ORDER**

Despite the prosecution's reported "efforts made to comply" with the Court's order to produce critically important information to Petitioner Barnette, the Court's order remains unfulfilled. Appropriate diligence suggests as-yet-untaken steps that the government should pursue in order to satisfy the Court's order.

**It is critically important that the government satisfy the Court's order.** As alleged in his § 2255 motion, Petitioner Barnette's death sentences are constitutionally infirm. The majority of Petitioner Barnette's claims focus on the material errors and omissions of his trial counsel. Petitioner Barnette's right to establish these constitutional errors through this post-conviction litigation has been significantly impaired by the same trial counsel's inexcusable failure to maintain, and ultimately produce, Petitioner Barnette's trial files. In an effort to remedy this extraordinary impediment, the Court ordered the prosecution, which seeks to defend the death sentences previously imposed, to produce to post-conviction counsel whatever information it had previously produced to Petitioner Barnette's trial counsel (from both underlying trials). Petitioner Barnette has asserted that he must have this information in order to fully and fairly litigate his claims for relief. The Court's order, entered October 5, 2012, agrees:

1

> *Habeas counsel argued, and the Court agrees, that counsel need these materials to assist Barnette* in the preparation of a Motion to Vacate, Set Aside or Correct Sentence, 28 U.S.C. § 2255. Moreover, counsel has demonstrated to the Court's satisfaction that they have made diligent, but unsuccessful, attempts to obtain this information by other means.

**[Doc.17] (emphasis added)**

On January 7, 2014, by way of a separate written order, Court's granted the prosecution an additional thirty days "to conclude a search of trial, probation office, and any related law enforcement files for any and all interview statements, documents, recordings, reports, correspondence, etc., previously produced or ordered produced, including but not limited to the items identified in Petitioner's Motion for Discovery and Supplemental Brief." **[Doc. 61]** The order continued: "At the conclusion of the 30 days, the U.S. Attorney shall file a document with the Court attesting to the efforts made to comply with the Oct. 5, 2012 Order." **[Doc. 61]** Respectfully, the prosecution's showing to date neither establishes that it has "fully complied with the Court's order," nor attests to the diligence required to do so.

**The government has not taken logical, reasonable, and required steps to comply with the Court's order.** The Court's January 7, 2014 order required the prosecution "to conduct a final search of trial, probation office, and any related law enforcement files for any and all interview statements, documents, recordings, reports, correspondence, etc., previously produced or ordered produced to Petitioner's 1998 and 2002 trial counsel." **[Doc. 61]** The prosecution's recent filing makes clear that no such "final search" was conducted—in particular with respect to "any related law enforcement files."

For example, the prosecution explains that it contacted individuals from ATF, FBI, and Charlotte Mecklenburg Police Department—law enforcement agencies involved in Petitioner's 1998 and 2002 trials—"to determine whether they were aware of any additional materials."

**[Doc. 64 at 5]**  As a preliminary matter, the government fails to indicate what, if any, responses were made to this inquiry; the prosecution simply attests to having contacted these individuals. More notably, and surprisingly under these circumstances, the prosecution's efforts to comply with the Court's order to conduct a search of ATF and FBI records merely consisted of contacting two individuals from both agencies who had some involvement in the case over a decade ago to inquire  "whether [these two individuals] were aware of any additional materials." **[Doc. 64 at 5]**  These two agents apparently indicated that they had no files close at hand (although, as noted above, the prosecution's filing does not make clear what, if any, response was given).  Curiously, the prosecution apparently failed to formally request that these federal agencies produce their respective files—which surely still exist—to the prosecution in order to conduct the required "search of … any related law enforcement files."

Both the ATF and FBI maintain investigative files in central repositories, and both agencies most certainly have existing files related to Petitioner Barnette's underlying trials. Indeed, Petitioner Barnette's own efforts through Freedom of Information Act (FOIA) requests make clear that such files still exist (although, due to the strictures and limitations of FOIA, Petitioner Barnette has only received heavily redacted limited portions of such files).  The prosecution apparently has not requested the production of these files from these federal agencies.  The need to make these requests is obvious since, to date, the U.S. Attorney's Office has admittedly been unable to fully reconstruct its own files concerning Petitioner Barnette. Thus, as suggested by the Court's order, the prosecution must request the complete files of these federal law enforcement agencies in an effort to reconstruct its own file and comply with the Court's order.

3

As previously noted, the government's document production on November 15, 2013 provided a *single* witness statement from prosecution witness Alicia Chambers. As the Court is aware, Ms. Chambers was a powerful prosecution witness at both trials. Notably, the interview report of Ms. Chambers was conducted only two weeks prior to the start of jury selection in the first trial, and was clearly focused on eliciting information to be used at sentencing. Thus, it is logical and reasonable to believe that law enforcement conducted other such interviews in the lead up to trial. It would make very little sense if law enforcement conducted a *single* interview in the lead up to two federal capital trials. In the absence of requesting the complete files from the various law enforcement agencies involved (*e.g.*, ATF, FBI, etc.), it is unclear how the government can assert that no other such statements exist.

By way of further example of the prosecution's insufficient efforts to date, Petitioner Barnette previously detailed information that is missing with respect to prosecution experts and the raw data they relied upon. As previously noted, the report issued by prosecution experts Drs. Grant and Duncan explicitly stated that Dr. Grant spoke with four women—Tasha Heard, Kesha Heard, Alicia Chambers, and Crystal Dennis—who knew Petitioner Barnette. Drs. Grant and Duncan then selectively quoted from statements allegedly made by these witnesses in their joint report. **[Gov. Disc. 3767-3773]** Although these interviews constituted some of the important "raw data" relied upon by these prosecution experts, no record of these interviews—whether audio recorded or otherwise memorialized—has been produced by the government to post-conviction counsel.[1]

---

[1] The prosecution asserts that it "provided audio recordings of interviews conducted by Drs. Grant and Duncan on March 5, 2012." **[Doc. 64 at 10]** To be clear, the audio recordings provided were of Drs. Grant and Duncan's interview of Petitioner Barnette—not of any interviews with these important third-party witnesses.

4

The importance of this information cannot be overstated.  Dr. Duncan, who asserted that Petitioner Barnette was a psychopath, testified that his opinion was based, in part, on third-party interviews conducted by Dr. Grant, as well as one third-party interview that Drs. Duncan and Grant conducted together.

> Yes, sir.  I was personally involved in a face-to-face interview with Natasha Heard, the – an ex-girlfriend of the defendant and mother of his two children.  Dr. Grant interviewed Keesha [sic] Heard, the sister of Natasha, on the telephone and he and I had extensive conversation about that interview.
>
> Dr. Grant also interviewed Crystal Dennis, who was an ex-girlfriend of the defendant, and he also interviewed face-to-face with Alesha Chambers, who was an ex-girlfriend of the defendant.

**[Tr. 2/5/98 at 962-963]**  These witnesses and trial counsel's failures to investigate and utilize available information concerning their relationships with Petitioner, are central to his § 2255 claims of ineffective assistance of counsel.  Moreover, as reflected by the government's recent production, its expert witness during the 2002 trial—Dr. Park Dietz—relied on the report Drs. Duncan and Grant (and those underlying interviews) in rendering his own opinion.

In an apparent effort to track down this information, the prosecution's response indicates that an unsuccessful attempt was made "to contact Dr. Duncan, who is retired from the Bureau of Prisons."  **[Doc. 64 at 10]**  There is no indication that the prosecution attempted to contact Dr. Grant—the expert who actually participated in all four interviews—nor is there any indication that the prosecution contacted the Bureau of Prisons—the entity that employed both government experts at the time—in an effort to retrieve its file.[2]

---

[2] At the time they testified for the prosecution in Petitioner Barnette's case, Dr. William Grant was the Chief of Psychiatry at the U.S. Penitentiary in Atlanta, Georgia and Dr. Scott Duncan was the Forensic Studies Coordinator at the U.S. Penitentiary in Atlanta, Georgia.  During his testimony, Dr. Duncan confirmed that he was an employee of the federal prison system.  **[Tr. 2/5/98 at 994]**

Undersigned counsel recognize the challenges present here; reconstructing a discovery file from trials occurring in 1998 and 2002 is difficult. Such are the challenges, however, that Petitioner Barnette has been facing and diligently seeking to address during post-conviction—making litigation that is "unique and complex" all the more difficult. *McFarland v. Scott*, 512 U.S. 849, 855-56 (1994). As post-conviction counsel have established in previously filed *ex parte* submissions and hearings, the absence of trial files and complete discovery from the underlying capital trials—through no fault of Petitioner Barnette—creates an impediment and obstacle of the first magnitude. Despite the fact that Petitioner Barnette has "been pursuing his rights diligently," the absence of trial files and complete discovery creates an "extraordinary circumstance" that threatens to "[stand] in his way" as he endeavors, through counsel, to litigate matters of constitutional importance relating to his death sentences. *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) (internal quotes and citations omitted).

The government does not, because it cannot, assert that Petitioner Barnette now possesses "[a] complete copy of all material previously provided by the United States Attorney to Barnette's prior trial counsel," as well as "[a] complete copy of all correspondence and/or communications between prosecutors in the United States Attorney's Office and prior counsel for Barnette." Indeed, there is no question that information is still missing. Moreover, as noted above, there is no question that reasonable diligence has not been exercised in order to recover this information. Thus, by all accounts, the Court's order remains unfulfilled.

Accordingly, Petitioner Barnette, through undersigned counsel, respectfully requests that the Court direct the ATF, the FBI, and CMPD to locate all files related to Petitioner and have those files produced to the U.S. Attorney's Office for a thorough review in light of the Court's order.

Petitioner Barnette, through undersigned counsel, further respectfully requests that the Court order the Bureau of Prisons to produce any and all information concerning Drs. Grant and Duncan's work in Petitioner Barnette's case to the U.S. Attorney's Office for a thorough review in light of the Court's order.

Petitioner Barnette, through undersigned counsel, further respectfully requests that, following its aforementioned reviews, the U.S. Attorney's Office provide post-conviction counsel with the balance of information described in the Court's order.  **[Doc. 17]**

Dated: February 24, 2014

/s/ Mark E. Olive
N.C. State Bar No. 10615
LAW OFFICES OF MARK OLIVE
320 W. Jefferson Street
Tallahassee, FL 32301
850-224-0004 (tel)
850-224-3331 (fax)
meolive@aol.com

/s/ Jacob H. Sussman
N.C. Bar No. 31821
TIN FULTON WALKER & OWEN PLLC
301 East Park Avenue
Charlotte, NC 28203
704-338-1220 (tel)
704-338-1312 (fax)
jsussman@tinfulton.com

/s/ Ross Richardson
Ross Richardson
FEDERAL DEFENDERS OF WESTERN
  NORTH CAROLINA, INC.
129 West Trade Street, Suite 300
Charlotte, NC 28202
704-374-0720 (tel)
704-374-0722 (fax)
ross_richardson@fd.org

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has served the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

William M. Miller
William.Miller@usdoj.gov

Dated: February 24, 2014

/s/ Jacob H. Sussman
Counsel for Mr. Barnette