IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12cv327-V
(3:97cr23)

| | |
|---|---|
| AQUILIA MARCIVICCI BARNETTE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court in reference to Respondent's compliance with an order to provide Petitioner Aquilia Barnette's habeas counsel a complete copy of all material previously provided by the U.S. Attorney to Petitioner's 1998 and 2002 trial counsel. ECF No. 17. Respondent asserts that it has complied with the Order, ECF No. 64, whereas Petitioner maintains that Respondent has not fully complied, ECF No. 65.

PROCEDURAL HISTORY

On January 27, 1998, Petitioner was found guilty after a jury trial of eleven felony offenses, including three that carried a possible death sentence. Jury Verdict, 3:97cr23, Doc. 289. In a bifurcated penalty phase, the same jury recommended a death sentence for each capital count. Special Jury Verdict, supra, Doc. 309. The Fourth Circuit Court of Appeals affirmed Petitioner's convictions but vacated the death sentences. United States v. Barnette, 211 F.3d 803, 825–26 (4th Cir. 2000).

On remand, following a penalty phase trial before a new jury, Petitioner once again was sentenced to death for each capital count. Judgment, 3:97cr23, ECF No. 600. Petitioner's sentences ultimately were affirmed by the Fourth Circuit, United States v. Barnette, 644 F.3d

1

192, 196 (4th Cir. 2011), and judgment became final on March 29, 2012, when the Supreme Court denied Petitioner a writ of certiorari, Barnette v. United States, 132 S. Ct. 1740 (2012).

In an order dated May 23, 2012, this Court appointed habeas counsel to pursue post-conviction remedies on Petitioner's behalf. ECF No. 1. On September 17, 2012, the Court held a sealed, ex parte hearing at which habeas counsel and Harold Bender, who had represented Petitioner during the 2002 remand and subsequent proceedings, appeared. During the hearing, "it was confirmed that all of the attorneys who had represented [Petitioner] in his underlying capital trial and sentencing proceedings . . . had transferred their case files to Mr. Bender, and that Mr. Bender had been unable to locate any trial counsel files," including his own, from either the 1998 trial or 2002 penalty proceedings. Order 1, ECF No. 17. Mr. Bender was semi-retired at the time of the hearing and has since passed away. On October 5, 2012, the Court ordered the United States Attorney for the Western District of North Carolina to provide Petitioner's habeas counsel a complete copy of all material previously provided by the prosecution to Petitioner's 1998 and 2002 trial counsel, including all discovery, and copies of all correspondence between prosecutors and counsel. ECF No. 17.

Counsel for Respondent has attested that in response to the October 5, 2012 Order, he retrieved the combined case file for the 1998 and 2002 trials from the Federal Record Center, where it was archived. Resp. 4 ¶ 1, ECF No. 64. The file consisted of 16 bankers' boxes containing assorted correspondence, law enforcement reports, witness summaries, photographs, autopsy and medical examiner reports, transcripts of calls and interviews, trial exhibits, district court transcripts, and attorney work product. Resp., supra, at 4-5 ¶ 1. Counsel also contacted individuals from the law enforcement agencies involved with the case to determine whether additional discoverable materials existed. Resp., supra, at 5 ¶ 2. Those contacted were the

Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") case agent in charge of maintaining evidence for the 1998 trial, the Federal Bureau of Investigation ("FBI") case agent involved in the 2002 resentencing proceedings, and the Senior Assistant City Attorney for the Charlotte-Mecklenburg Police Department ("CMPD").  Resp., supra, at 5 ¶ 2.

After assembling the case file, counsel for Respondent and a paralegal examined all materials, individually and collectively, to determine whether they had been disclosed to defense counsel in connection with the 1998 or 2002 trials.  Resp., supra, at 5-6 ¶ 4.  Subsequently, the U. S. Attorney provided habeas counsel a computer diskette containing 3,444 pages of discovery and correspondence, including (1) assorted correspondence between the Government and various defense counsel[1]; (2) an index of discovery produced in connection with the 1998 trial, followed by a complete set of the corresponding Bates-stamped documents; (3) law enforcement reports; (4) witness statements; (5) Miranda consent forms; (6) transcripts of interviews and 911 calls; (7) crime scene and autopsy photographs; (8) medical reports; and (9) various trial exhibits.  Resp. 5, ECF No. 64.  The U.S. Attorney also provided habeas counsel sixteen compact discs containing recordings of interviews with Petitioner, interviews with various witnesses, and 911 calls related to the murder of Robin Williams, plus three additional discs containing only interviews with Petitioner.  Resp., supra, at 5-6.  These disclosures were made on November, 29, 2012, March 5, 2013, and March 12, 2013.  Resp., supra, at 6-7.  Additionally, the U.S. Attorney notified habeas counsel that it had produced all Jencks material.[2]  Mot. to Vacate 9, ECF No. 48.

On June 19, 2013, Petitioner filed a Motion for Discovery.  ECF No. 51.  In the Motion, Petitioner asserted that the U.S. Attorney had failed to comply fully with the Court's October 5,

---

[1] Counsel for Respondent has attested that any discovery-related email correspondence from 1998 and 2002 have been purged from the Government's system.  Resp. 5 ¶ 3, ECF No. 64.

[2] 18 U.S.C. § 3500(b); Jencks v. United States, 353 U.S. 657 (1957).

2012 Order. Disc. Mot. 8-9, ECF. No. 51. Specifically, Petitioner alleged that the Government had failed to turn over "witness interview summaries, reports, [or] FBI FD-302s" for the following sentencing witnesses: Brian Ard, Alesha Chambers,[3] Jasper Chambers, Joanna Baldwin Coleman, Crystal Dennis, Natasha Heard Tolbert, Shirley Williams Parker, and Angela Rosser. Additionally, Petitioner asserted that the Government had not produced any information concerning its expert witnesses, Dr. Scott Duncan, Dr. William Grant, Dr. Park Dietz, and Peter Carlson.

The parties conferred and agreed that the U.S. Attorney's Office would continue to review its trial and appellate files in search of discovery materials subject to the Oct. 5, 2012 Order. Reply 2, ECF No. 57; Resp. 7 ¶¶ 9(1)-(3), 10, ECF No. 64. On November 15, 2013, the U.S. Attorney provided habeas counsel with 165 additional pages of discovery, including (1) a report of an interview with Alesha Chambers by ATF Special Agent Modzelewski, conducted on December 30, 1997; (2) curriculum vitae of government experts Duncan, Grant, Dietz, and Carlson; (3) reports of government experts Duncan, Grant, and Dietz; and (4) a fax with accompanying letter from prosecuting counsel to defense counsel concerning government expert Dietz. Pet'r's Supplemental Br. 1-2, ECF No. 59. Counsel for Respondent attested that he located the expert-related materials in one of the boxes that he initially believed contained only attorney work product from the 2002 resentencing. Resp. 9 ¶ 10(3)(b), ECF No. 64. Counsel also contacted the FBI case agent to determine whether any of the sentencing witnesses identified by Petitioner were interviewed by law enforcement for the 2002 sentencing trial. Resp., supra, at 8 ¶ 10(1).

---

[3] Various filings and documents use alternate spellings - "Alesha" and "Alicia" – for Ms. Chambers' first name. At the 1998 trial, Ms. Chambers spelled her name – "Alesha" – for the record. Sent. Tr. 140, Jan. 30, 1998.

Petitioner subsequently filed a supplemental brief alleging that the Government's production pursuant to the Oct. 5, 2012 Order remained deficient. Pet'r's Supplemental Br. 2, ECF No. 59. Petitioner argued that it was logical to conclude that law enforcement conducted interviews with all of the sentencing witnesses listed in the discovery motion, not just with Alesha Chambers. Also missing from the Government's production, according to Petitioner, were "draft reports, communications (e.g., letters, emails, etc.) with counsel, raw data, and other materials" provided to and/or relied upon by the Government's mental health experts. Pet'r's Br., supra, at 2. Petitioner asserted that the "raw data" relied upon by the Government's experts included interviews Drs. Grant and Duncan conducted with Natasha Heard Tolbert, Alesha Chambers, Crystal Dennis, and Kesha Heard, and interviews Dr. Dietz conducted with Petitioner. Pet'r's Br., supra, at 3.

On January 7, 2014, the Court issued an Order providing the U.S. Attorney thirty days to conduct a final search of trial, probation office, and law enforcement files for any and all interview statements, documents, recordings, reports, correspondence, etc., previously produced or ordered produced to Petitioner's 1998 and 2002 trial counsel. Order 5-6, ECF No. 61. The Court also ordered the U.S. Attorney to file a document at the conclusion of the search, attesting to the efforts made to comply with the Oct. 5, 2012 Order. Order, supra, at 6.

On February 6, 2014, the U.S. Attorney provided Petitioner's habeas counsel with audio recordings of Dr. Dietz's interviews with Petitioner and notebooks containing the material Dr. Dietz relied upon for his 2002 report and testimony. Resp. 9 ¶ 10(3)(a), ECF No. 64. Counsel for Respondent attested that after reviewing the trial testimony regarding the sources of information on which Dr. Dietz relied, he determined that these expert-related materials would have been disclosed to defense counsel. Resp., supra, at 9 ¶ 10(3)(b) (citing Order, 3:97-cr-23,

ECF No. 546).

Also on February 6, 2014, Respondent filed a response to the January 7, 2014 Order, attesting to the steps taken to comply with the Oct. 5, 2012 Order and addressing the specific discovery-related items referenced in Petitioner's supplemental brief. Resp., ECF No. 64. Respondent seeks a finding by the Court that the U.S. Attorney's Office has complied with the Court's Oct. 5, 2012 Order.

Petitioner filed a reply, maintaining that Respondent has not fully complied with the Court's Order. Petitioner asserts that Respondent has not diligently attempted to obtain certain evidence that he contends would have been disclosed to trial counsel in 1998 and/or 2002. He seeks an order requiring the ATF, the FBI, the CMPD, and the Federal Bureau of Prisons ("BOP") to locate all files related to Petitioner and provide them to the U.S. Attorney's Office for a thorough review for discoverable material. ECF No. 65.

DISCUSSION

As previously noted, the October 5, 2012 Order required the U.S. Attorney's Office to turn over to Petitioner's habeas counsel all material <u>previously disclosed</u> to Petitioner's 1998 and 2002 trial counsel. Order 2, ECF No. 17. Such material would include all witness statements covered by the <u>Jencks</u> Act, 18 U.S.C. § 3500(b); all statements and documents produced pursuant to the Federal Rules of Criminal Procedure or the Federal Rules of Evidence; all <u>Brady</u>[4] material; and all documents, statements, and/or data ordered by the Court to be produced to trial counsel.

Petitioner contends that Respondent has failed to exercise due diligence to locate and produce the following items: (1) law enforcement interview reports for several of the witnesses

---
[4] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

6

who testified in the 2002 sentencing proceedings; and (2) recordings or notes from interviews conducted by Government experts Grant and Duncan with several 1998 sentencing witnesses.[5] ECF No. 65. Counsel for Respondent attested to why Respondent could not, or would not, produce requested items to habeas counsel. ECF No. 64.

Petitioner contends that Respondent has failed to exercise due diligence in the search for law enforcement interview reports for Brian Ard, Alesha Chambers, Jasper Chambers, Joanna Baldwin Coleman, Crystal Dennis, Natasha Heard Tolbert, Shirley Williams Parker, and Angela Rosser, who were sentencing witnesses for the Government in 1998, 2002, or both. Petitioner asserts that both the ATF and the FBI maintain investigative files in central repositories, that both have existing files related to Petitioner's 1998 and 2002 trials, and that he has received heavily redacted, limited portions of such files through the Freedom of Information Act ("FOIA"). He argues that to fully comply with the October 5, 2012 Order, the U.S. Attorney's Office must search those files for discoverable material. The Court disagrees.

The ATF assisted in the federal criminal investigation prior to the 1998 trial and produced one or more case reports. Sent. Tr. 480, 3:97cr23, Feb. 2, 1998; Post-sentence Investigation Report, supra, at 4 ¶ 5, ECF No. 346 (sealed). The ATF also is the custodian of the evidence from the 1998 trial. Letter from AUSA Thomas Walker, 3:97cr23, Doc. No. 350. The FBI's involvement in the case prior to the 2002 resentencing was largely limited to the search for Petitioner and his arrest on a federal unlawful flight warrant. Suppression Hr'g Tr. 75-76, 114-115, 116, 3:97cr23, Sept. 29, 1997. The FBI agent who arrested Petitioner on the fugitive warrant and interviewed him did not file an interview report (FD-302) in the case. Suppression

---

[5] In his supplemental brief, Petitioner also asserted that the Government had not produced the grand jury testimony of witnesses who subsequently testified in the 1998 trial and/or 2002 penalty proceedings. Pet'r's Supplemental Br. 2, ECF No. 59. Counsel for Respondent attested that none of the witnesses from the 1998 and 2002 trials testified before the grand jury. Resp. 8, ECF No. 64. Petitioner does not raise the issue again in his Reply, ECF No. 65.

7

Hr'g Tr., supra, at 114-115, 116.

Counsel for Respondent attested that his review of the U.S. Attorney's case files produced the single, one-page summary of ATF Special Agent Modzelewski's December 30, 1997 interview with Alesha Chambers, which was provided to post-conviction counsel on November 15, 2013. Resp. 8 ¶ 10(1), ECF No. 64. Counsel also attested that he contacted ATF and FBI agents who were involved in the 1998 trial and/or 2002 penalty proceedings in search of case-related material, Resp., supra, at 5 ¶ 2, and that he has not identified any other reports of law enforcement interviews with the witnesses identified by Petitioner, Resp., supra, at 8 ¶ 10(1). Counsel for Respondent attested further that as part of their trial preparation, prosecutors from the 2002 resentencing, not law enforcement, conducted interviews of many of the witnesses identified by Petitioner. Resp., supra, at 8 ¶ 10(1). Counsel confirmed this fact with the FBI case agent. Resp., supra, at 8 ¶ 10(1). This Court, in its own review of the record, found evidence that the 1998 prosecutors also conducted at least some sentencing witness interviews. Sent. Tr. 110, 297, 3:97cr23, Jan. 30, 1998. Work product related to those interviews would not have been disclosed to the defense. See Fed. R. Crim. P. 16(a)(2), 26.2(a), (f).

Petitioner has not asserted that he has been denied copies of the 1998 ATF case reports. Nor has he asserted that the FOIA material he received from the ATF and the FBI indicates that one or both agency's files contain information that would, or should, have been disclosed to trial counsel. The Court will not order the ATF or FBI to send their case files to the U.S. Attorney for review absent evidence that they contain Brady or Jencks material that should have been disclosed to trial counsel. At Petitioner's request, this Court previously ordered the CMPD to provide habeas counsel copies of all of Petitioner's records related to criminal charges arising in Mecklenburg County. Ex Parte Order, ECF No. 46 (sealed). Petitioner has not provided any

8

reason that the records should now be sent to the U.S. Attorney's Office for review.

Petitioner also asserts that Respondent has failed to provide habeas counsel with recordings or notes from interviews Drs. Grant and Duncan conducted with Natasha Heard Tolbert, Kesha Heard, Alesha Chambers, and Crystal Dennis. Reply 4, ECF No. 65. Grant and Duncan were the Government's mental health experts for the 1998 trial, and Duncan testified on rebuttal during the sentencing phase.

Drs. Grant and Duncan included the substance of the four interviews in their 1998 psychological evaluation report. Report, 3:97cr23, ECF. No. 291 (sealed). Petitioner has not pointed to any evidence that Grant and/or Duncan recorded any of the interviews, some of which were conducted by telephone, although it is reasonable to assume that they made notes during or after the interviews.

It does not appear that any such notes, if they existed, were disclosed to trial counsel. The 1998 trial court gave the Government and the defense access to each other's experts' reports. Orders, 3:97cr23, Doc. Nos. 235, 261. The Court also ordered that Butner Federal Correctional Institution send sealed copies of its entire file on Petitioner to both sides' experts. Order, 3:97cr23, ECF No. 263.[6] The Court did not, however, order disclosure of any other material that the 1998 experts relied upon in preparing their reports.[7] While there are references to prosecutors requesting "raw data" from one of the defense experts, Sent. Tr. 548-49, 3:93cr23, Feb. 2, 1998; Sent. Tr., supra, at 622-23, Feb. 3, 1998; at 844, Feb. 4, 1998; at 1009-10, 1015, Feb. 5, 1998, it does not appear from the record that defense counsel requested anything of Grant

---

[6] Dr. Sally Johnson, head psychiatrist at Butner Federal Correctional Institution, conducted a competency evaluation of Petitioner for the 1998 trial. Order, 3:97cr23, ECF No. 199.

[7] The Court ordered the defense to provide Dr. Johnson the complete file of Dr. William Tyson, who had evaluated Petitioner for competency in 1994 for an unrelated state criminal charge. Order, 3:97cr23, ECF No. 199.

9

and Duncan other than copies of their audiotaped interviews with Petitioner, which prosecutors provided, Sent. Tr., supra, at 2, Jan. 29, 1998.[8]

Moreover, this Court was unable to find anything in the record indicating that the U.S. Attorney's Office has ever had recordings or notes related to Grant's and Duncan's witness interviews. Counsel for Respondent's multiple searches through the U.S. Attorney's case files did not turn up notes or recordings related to Grant's and Duncan's interviews. Counsel for Respondent also attempted, unsuccessfully, to contact Dr. Duncan, who is retired, in an effort to determine if notes or recordings were made. Resp. 10 ¶ 10(3)(c), ECF No. 64. Additionally, it is evident from Petitioner's most recent filing, and the second sentencing transcript, that the Government's 2002 expert, Dr. Park Dietz, reviewed the Grant/Duncan's report but not any related notes or recordings of witness interviews. Reply 5, ECF No. 65; Sent. Tr. 3796, 3:97cr23, Aug. 8, 2002. It is logical to assume that if prosecutors had notes or recordings of that sort, they would have provided that material to Dr. Dietz, and Dr. Dietz would have included it in his raw data notebook(s), which were disclosed to habeas counsel on February 6, 2014.[9]

The Court's Oct. 5, 2012 order required the U.S. Attorney Office to turn over to Petitioner's habeas counsel material previously disclosed to Petitioner's 1998 and 2002 trial counsel. Order 2, ECF No. 17. This Court was unable to find evidence in the record that copies of Grant's and Duncan's interview notes, to the extent that they existed, were either requested by or disclosed to the defense in 1998 or 2002. Absent such evidence, the U.S. Attorney is not

---

[8] When listing the material they had reviewed in connection with their evaluations of Petitioner, the 1998 defense experts did not refer to any information from Drs. Grant and Duncan, other than their report. Sent. Tr. 634-35 (Dr. Faye Sultan); 696-97, 723, (Dr. Seymore Halleck), 3:93cr23, Feb. 3, 1998; Sent. Tr., supra, at 801-02, Feb. 4, 1998 (Dr. Mark Cunningham).

[9] Unlike the 1998 court, the 2002 court ordered that the mental health experts for both the Government and the defendant provide each other with "[a]ll documents pertaining to any mental health or physical examination conducted on the defendant which the mental health expert relies upon to any extent for his report." Order, 3:97cr23, ECF No. 546.

required to look further.

Nor will the Court order the BOP to locate all files related to Petitioner and send them to the U.S. Attorney to look for material Grant and Duncan relied upon for their 1998 evaluation and report. That course of action, in the Court's judgment, would result in a futile waste of time and resources. The report produced by Grant and Duncan was trial-related, not incarceration-related. Consequently, it is unlikely that Petitioner's personal BOP files include any of the material Grant and Duncan relied on in producing their 1998 report.[10]

It is equally doubtful that the material still exists elsewhere. A member of the undersigned's staff contacted the BOP in an effort to identify the appropriate official to whom the Court could direct an order, if justified, requiring a search of Grant's and Duncan's files. Among those contacted were the Federal Penitentiary in Atlanta, where Grant and Duncan worked, and the Psychology Services Branch, in Washington, D.C. Neither was able to locate open or archived files produced by Grant or Duncan relating to Petitioner.

Furthermore, the value of the time and resources spent on a search for notes or recordings that may no longer exist, if they ever existed at all, is not outweighed by the value of that material to Petitioner. The substance of the interviews was included in Grant's and Duncan's report; 1998 defense counsel interviewed Natasha Heard Tolbert; the 1998 defense mitigation investigator interviewed Crystal Dennis; and Natasha Heard Tolbert, Crystal Dennis, and Alesha Chambers testified at the 1998 sentencing. Petitioner's 2002 counsel had the Grant/Duncan report, the 1998 mitigation investigator's report, and the 1998 sentencing transcript, as well as their own mitigation investigator who interviewed at least some of the women before they

---

[10] In his Discovery Motion, Petitioner sought release of "all documents, files, materials and other information in the possession or control of the [BOP] concerning his <u>incarceration</u> through August 13, 2002." Motion 11, ECF No. 51 (emphasis added). The Grant/Duncan report and related materials fall outside the scope of this request.

testified in 2002. Moreover, Grant's and Duncan's report was just one of many sources that Dr. Dietz reviewed before preparing his own report. Notes or recordings of the interviews would have had no more than an attenuated connection to the 2002 sentences.

CONCLUSION

Based upon the foregoing procedural history and its own review of the record, the Court finds that the U.S. Attorney's Office has made reasonable efforts to comply with the Court's October 5, 2012 Order. The Court finds further that the U.S. Attorney's Office has complied with the Court's October 5, 2012 Order.

ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner shall have thirty (30) days from the entrance of this Order to file a motion for evidentiary hearing and supportive brief, as outlined in the Scheduling Order entered by this Court on August 9, 2013, ECF No. 53.

**IT IS FURTHER ORDERED** that the Government shall have sixty (60) days thereafter to file a motion, brief, answer, or other responsive pleading; and Petitioner shall have forty-five (45) days to reply.

Richard L. Voorhees
United States District Judge