the vehicle was not disabled in violation of N.C.G.S. §20-161;

(d) He did not use ordinary care in stopping his automobile on the highway to prevent a collision with other vehicles;

(e) He was otherwise careless and negligent.

2. Upon information and belief, the Plaintiff and John Robert Graham, the operator of the motor vehicle occupied by the Plaintiff, were engaged in a joint enterprise at the time of the accident in question and shared a community of interest in the undertaking in question and, as such, the negligence of John Robert Graham is imputable to the Plaintiff.

3. Defendant Whetstine specifically pleads joint enterprise and contributory negligence in bar of any purported claim for relief against Defendant Whetstine in this action.

## FOURTH DEFENSE

1. At the time and place in question the Defendant was faced with a sudden emergency not of her own making, and as to this Defendant the accident was unavoidable. The doctrines of unavoidable accident and sudden emergency are expressly pleaded in defense of any claim for relief against this Defendant.

2. This Defendant was faced with a sudden emergency when the van driven by John Robert Graham stopped on the main-traveled portion of the highway without any lights or any other type of warning.

## THIRD-PARTY COMPLAINT

### (First Claim for Relief)

1. The Defendant/Third-Party Plaintiff, Deborah Voit Whetstine (hereinafter referred to as Whetstine), is a citizen and resident of Mecklenburg County, North Carolina.

2. Upon information and belief, the Third-Party Defendant, John Robert Graham (hereinafter referred to as Graham), is a resident of Mecklenburg County, North Carolina.

3. This action arises out of an automobile collision that occurred on or about May 17, 1994, on West Boulevard near its intersection with Brooks Valle Street, in Charlotte, Mecklenburg County, North Carolina, involving a 1987 Chevrolet automobile operated by Defendant/Third-Party Plaintiff, Whetstine, and a 1993 Ford van owned by K & K Limo and Shuttle Service and operated by Third-Party Defendant Graham.

PC - 003780

Bates No. 4596

4

4. Upon information and belief, at the aforementioned time and place, and at all times herein in question, K & K Limo and Shuttle was the owner of the 1993 Ford van, bearing license tag number: IC-3911. Upon information and belief, at the aforementioned time and place, and at all times herein in question, the Third-Party Defendant Graham, was the operator of the 1993 Ford van.

5. As the Defendant/Third-Party Plaintiff Whetstine, was proceeding in a lawful and prudent manner on West Boulevard, the 1993 Ford van driven by John Robert Graham had stopped in the curb side lane of West Boulevard to allow the Plaintiff Barnette, a passenger in the van to get off of the van. The brake lights on the 1993 Ford van were not illuminated as the van was stopped in the lane of traffic.

6. As a result of the Third-Party Defendant's actions, the Defendant/Third-Party Plaintiff Whetstine could not stop her vehicle in time to avoid striking the rear of the 1993 Ford van. As a result of this collision her car was bent, twisted, and otherwise damaged causing depreciation in value of the automobile of a sum less than Two Thousand and no/100s Dollars ($2,000.00).

7. The Third-Party Defendant Graham, was negligent on the occasion in question in that:

   (a) He failed to keep and maintain a reasonable and proper lookout;

   (b) He failed to keep the vehicle he was operating under reasonable and proper control;

   (c) He parked and left standing his vehicle upon the paved and main traveled portion of a highway when the vehicle was not disabled in violation of N.C.G.S. §20-161;

   (d) He did not use ordinary care in stopping his automobile on the highway to prevent a collision with other vehicles;

   (e) He was otherwise careless and negligent.

(Second Claim for Relief)

1. As a result of the accident, Plaintiff, Sonia Maria Cooper Barnette has filed a Complaint against the Defendant/Third-Party Plaintiff, Whetstine in which Plaintiff Barnette is seeking to recover damages for personal injuries. A copy of the Complaint of the Plaintiff Barnette is attached hereto as Exhibit A.

PC - 003781

5

2. If Defendant/Third-Party Plaintiff Whetstine is found negligent, which has been and is again denied, then the negligence of Third-Party Defendant Graham was active and primary and the real proximate cause of any purported injury of Plaintiff, and any negligence of the Defendant/Third-Party Plaintiff Whetstine, which is again denied, was passive and secondary.

3. The negligence of Third-Party Defendant Graham intervened, and superseded, any purported negligence on the part of Defendant/Third-Party Plaintiff Whetstine as a proximate cause of any injuries allegedly sustained by Plaintiff and Defendant Whetstine specifically pleads said intervening and superseding negligence in bar of any purported claim for relief against Defendant Whetstine in this action.

4. If this Defendant was in any way or manner negligent on the occasion referred to in the Complaint, which is again specifically and expressly denied, then Defendant Whetstine avers that Third-Party Defendant Graham was also negligent and that his negligence was active and intervening and proximately caused whatever damages, if any, Plaintiff may have sustained, and in such event Defendant Whetstine is entitled to full and complete indemnification from Third-Party Defendant Graham, of any amount by which Defendant Whetstine becomes liable to the Plaintiff.

(Third Claim for Relief)

1. The allegations contained in the immediately preceding defense are incorporated herein by reference and repleaded as fully as if completely set forth herein.

2. If the Court finds that Defendant/Third-Party Plaintiff Whetstine is not entitled to indemnification from Third-Party Defendant Graham, then Defendant/Third-Party Plaintiff is entitled to contribution in accordance with Chapter 1B of the North Carolina General Statutes to extend to any alleged liability of Defendant/Third-Party Plaintiff Whetstine to the Plaintiff.

WHEREFORE, the Defendant/Third-Party Plaintiff Whetstine, having responded to the allegations of the Complaint and complaining of the Third-Party Defendant Graham, prays:

1. That the Plaintiff Barnette have and recover nothing of the Defendant/Third-Party Plaintiff Whetstine in this action and that the same be dismissed with prejudice;

2. That, if the Plaintiff Barnette has any recovery from the Defendant/Third-Party Plaintiff Whetstine, that the Defendant/Third-Party Plaintiff Whetstine, have and recover judgment against the Third-Party Defendant Graham, for indemnity;

PC - 003782

6

3. In the alternative, that if the Plaintiff have any recovery from the Defendant/Third-Party Plaintiff Whetstine, the Defendant/Third-Party Plaintiff Whetstine, have and recover judgment against the Third-Party Defendant Graham, for contribution as provided by Chapter 1B of the North Carolina General Statutes;

4. That the Defendant/Third-Party Plaintiff Whetstine, have and recover the sum of Two Thousand and no/100s Dollars ($2,000.00) for property damage and her costs;

5. That all issues of fact, if any, be determined by a jury; and

6. That the Defendant/Third-Party Plaintiff Whetstine, have such other and further relief as to the Court may seem just and proper.

This __3rd__ day of ___January___, 1995.


_Betsy J. Jones_
Betsy J. Jones
Attorney for Plaintiff/Third-Party Plaintiff


OF COUNSEL:

GOLDING, MEEKINS, HOLDEN,
  COSPER & STILES
Suite 1200, Cameron Brown Building
301 S. McDowell Street
Charlotte, N.C. 28204
(704)374-1600

PC - 003783

7

## CERTIFICATE OF SERVICE

I, Betsy J. Jones, do hereby certify that I have this day served a copy of the foregoing document upon all counsel of record by placing a copy of same, addressed to such counsel, in the U.S. mail, postage prepaid.

This 3rd day of _____January_____, 1995.


_____Betsy J. Jones_____
Betsy J. Jones
Attorney for Defendant/Third-
Party Plaintiff

PC - 003784

# STATE OF NORTH CAROLINA

**MECKLENBURG** County

**File No.** 94 CVD 13253

**Film No.**

In The General Court Of Justice
☑ District ☐ Superior Court Division

**Plaintiff's Name**

SONIA MARIA COOPER BARNETTE

**Address**

**City, State, Zip**

## THIRD-PARTY
## CIVIL SUMMONS

### VERSUS

**Defendant**

DEBORAH VOIT WHETSTINE
VERSUS
JOHN ROBERT GRAHAM

Third-Party
* ☑ **Alias and Pluries Summons**
THIRD-PARTY
The summons originally issued against you
was returned not served.

| Date Last Summons Issued | * Disregard this section |
|---|---|
| **February 1, 1995** | unless the block is checked |

Third-Party
**Service Information for First Defendant**

TO: John Robert Graham
1541 Southwood Avenue
Charlotte, NC 28206

**Service Information for Second Defendant**

TO:

$P440$

## A Civil Action Has Been Commenced Against You!

Third-Party Third-Party
You are notified to appear and answer the complaint of the plaintiff as follows:

Third-Party Third-Party
1. Serve a copy of your written answer to the complaint upon the plaintiff or his attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy, or by mailing it, to the plaintiff at the plaintiff's last known address, and

Third-Party Third-Party
2. File an original of the written answer with the Clerk of Superior Court of the county named above.

Third-Party Third-Party
If you fail to answer the complaint the plaintiff will apply to the court for the relief demanded in the Third-Party complaint.

Third-Party
**Name and Address of Plaintiff's Attorney**
**If none, Address of Plaintiff**

Betsy J. Jones
Golding, Meekins, Holden, Cosper & Stiles
301 South McDowell Street, Suite 1200
Charlotte, NC 28204
(704) 374-1600

| Date Issued | Time Issued |
|---|---|
| 2-23-95 | 4:22 ☐ AM ☒ PM |

**Signature**

☐ Deputy CSC ☑ Assistant CSC ☐ Clerk Of Superior Court

| ☐ ENDORSEMENT | Date of Endorsement | Time Issued |
|---|---|---|
| This summons was originally issued on the date indicated above and was returned not served. At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days. | | ☐ AM ☐ PM |
| | **Signature** | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

PC-003705

## RETURN OF SERVICE

I certify that this summons and a copy of the complaint were received and served as follows:

### THIRD-PARTY Defendant 1

| Date Served | Name of Defendant |
|---|---|
| 3-15-95 | John Robert GRAHAM at Sheriffs' Dept. |

☒ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the Third-party defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and Third-party complaint to the person named below.

Name and address of person with whom copies left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

Third-Party

☐ Defendant WAS NOT served for the following reason.

### Defendant 2

| Date Served | Name of Defendant |
|---|---|
| | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name and address of person with whom copies left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Date Received | Name of Sheriff |
|---|---|---|
| $ | 3-3-95 | Jim Pendergraph |
| By | Date of Return | County |
| | 3-15-95 | Meck. |
| | | Deputy Sheriff Making Return |
| | | S. Hurd |

PC 003796

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                                         DISTRICT COURT DIVISION
COUNTY OF MECKLENBURG              94 CVD 13253

SONIA MARIA COOPER BARNETTE,      )

                     Plaintiff,              )

         v.                           )

                                        )     **THIRD PARTY ANSWER &**
DEBORAH VOIT WHETSTINE,          )     **COUNTERCLAIMS OF THIRD**
                                        )     **PARTY DEFENDANT GRAHAM**
             Defendant and         )
          Third Party Plaintiff,       )

                                        )
         v.                           )

                                        )
JOHN ROBERT GRAHAM,               )

                                        )
         Third Party Defendant.      )

        The third party defendant, John Robert Graham, by and through the undersigned counsel, answer the third party plaintiff's Complaint as follows:

<u>FIRST DEFENSE</u>

(First Claim for Relief)

        1.      The allegations of Paragraph 1 of the Third Party Complaint are admitted upon information and belief.

        2.      The allegations of Paragraph 2 of the Third Party Complaint are admitted.

        3.      The allegations of Paragraph 3 of the Third Party Complaint are admitted.

        4.      The allegations of Paragraph 4 of the Third Party Complaint are admitted.

        5.      It is admitted that the third party defendant Graham was operating the 1993 Ford van in the outside or curb lane of West Boulevard and was slowing and preparing to turn said vehicle in order to discharge his passenger, the plaintiff Barnette. Except as expressly admitted, the allegations of Paragraph 5 of the Complaint are denied.

        6.      It is admitted that the vehicle operated by the third party plaintiff Whetstine, collided with the vehicle operated by the third party defendant Graham and that the third party plaintiff's vehicle sustained some damage, the extent of which is unknown to this answering defendant.

PC - 003787

7. The allegations of Paragraph 7 of the Third Party Complaint and each sub-paragraph thereof, are denied.

(Second Claim for Relief)

1. The allegations of Paragraph 1 of the Second Claim for Relief are admitted.

2. The allegations of Paragraph 2 of the Second Claim for Relief are denied.

3. The allegations of Paragraph 3 of the Second Claim for Relief are denied.

4. The allegations of Paragraph 4 of the Second Claim for Relief are denied.

(Third Claim for Relief)

1. The allegations contained in Paragraphs 1 through 4 of this answering defendant's First Defense to the Third Party Plaintiff's Second Claim for Relief are adopted by reference and incorporated herein in response to the plaintiff's Third Claim for Relief.

2. The allegations of Paragraph 2 of the Third Claim for Relief are denied.

## SECOND DEFENSE

1. It is averred upon information and belief that a proximate result of the accident in question and any damages sustained by the third party plaintiff Whetstine was the negligence of the third party plaintiff Whetstine herself in the operation of her 1987 Chevrolet automobile in that:

a. That she failed to keep a proper lookout in the direction of travel of her vehicle;

b. That she failed to maintain the vehicle she was operating under proper control and failed to apply her brakes in time to avoid a collision;

c. That she drove the aforesaid 1987 Chevrolet vehicle upon a highway carelessly and heedlessly in willful or wanton disregard for the rights or safety of others, in violation of §20-140 of the North Carolina General Statutes;

d. That she drove her vehicle upon a public highway without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, in violation of §20-140(b) of the North Carolina General Statutes;

e. That she failed to decrease the speed of the vehicle she was driving to avoid colliding with any person, vehicle or other conveyance on the highway, and particularly the automobile being driven by Defendant Graham; such act is in violation of §20-141(m) of the North Carolina General Statutes;

PC - 003788

f.  That she operated her vehicle negligently by following Defendant Graham's vehicle more closely than is reasonable and prudent, without having due regard for the speed of such vehicle and the traffic upon and the condition of the highway, in violation of §20-152(a) of the North Carolina General Statutes;

g.  That she ignored the turn signal indicator lamp and brake indicator lamps on the rear of Defendant Graham's vehicle (which clearly showed his vehicle was slowing down or stopping, and preparing to make a right turn) thereby failing to use such care and caution as would be used by an ordinarily prudent person under the same or similar circumstances to avoid collision and injury;

h.  That she failed to see what she could have seen, had she looked and observed the conditions prevailing, whereupon she continued to operate her vehicle without modification to her course and/or speed, in violation of North Carolina General Statutes, §20-155 *et seq;*

i.  That upon information and belief, she failed in her duty to obey a duly erected traffic control signal, in that she entered the intersection of West Boulevard at Billy Graham Parkway from the west, while the traffic signal was changing from a steady yellow signal to a steady red signal for traffic in the eastbound lanes of travel.

2.  If the third party defendant Graham was negligent on the occasion in question, which has been and is again expressly denied, then it is averred that the above- referenced negligence on the part of the third party plaintiff Whetstine constitutes contributory negligence which is hereby pleaded in bar of her right to maintain any claim for property damage or indemnity or recover therein.

## COUNTERCLAIMS OF THIRD PARTY DEFENDANT JOHN GRAHAM AGAINST DEFENDANT DEBORAH WHETSTINE

By way of counterclaim against the defendant/third-party plaintiff Whetstine, the Third-party defendant Graham alleges and says:

1.  That all parties hereto are citizens and residents of Mecklenburg County, State of North Carolina, and that all have so been for more than six (6) months next preceding the filing of this action.

2.  That on or about May 17, 1994, at approximately 8:12 a.m. Defendant Graham was operating a 1993 Ford passenger van in a general easterly direction on West Boulevard, having just entered West Boulevard from Billy Graham Parkway, after completing a lawful right turn upon green traffic signal, at the intersection of West Boulevard and Billy Graham Parkway.

3.  That at the time and place described herein above, Defendant Graham was operating his vehicle in a lawful, reasonable, and prudent manner, in full compliance with the

PC - 003789

traffic laws of the State of North Carolina and the Code of the City of Charlotte, Mecklenburg County, North Carolina.

4. That at the same date and time and at the place described hereinabove, Defendant Deborah Whetstine (hereinafter referred to as "Defendant Whetstine") was owner and operator of a 1987 Chevrolet passenger vehicle, which she was operating in a general easterly direction on West Boulevard, in a careless and reckless manner and in violation of the law as hereinafter more specifically set forth.

5. That the vehicle operated by Defendant Graham was owned by K & K Limo, and the Defendant Graham was, at all times referred to herein, operating said 1993 Ford passenger van with the knowledge and consent of K & K Limo.

6. That West Boulevard is, and was at all times referred to herein, a four-lane, paved roadway with two lanes of travel designated for use by westbound traffic and two lanes of travel designated for use by eastbound traffic.

7. That the flow of traffic at the intersection of West Boulevard and Billy Graham Parkway is, and was at all times referred to herein, controlled by an electronic traffic signal light.

8. That on May 17, 1994, at 8:12 a.m., the ambient conditions were full daylight with clear skies, and the road surface of West Boulevard was dry and was without surface defects.

9. That as Defendant Graham approached the driveway of a Plaintiff's residence dwelling-place, located on the south margin of the right-of-way of West Boulevard, Defendant Graham slowed his vehicle and indicated his intention to turn into said driveway by use of his vehicle's electric turn indicator signal lamp.

10. That suddenly and without warning, Defendant Whetstine, drove her vehicle into the rear of Defendant Graham's vehicle.

<u>FIRST COUNTERCLAIM FOR RELIEF</u>

11. That Paragraphs 1 through 10 are adopted and incorporated herein by reference.

12. That at the same time and place hereinbefore alleged, Defendant Whetstine operated her vehicle in a careless, negligent and unlawful manner, in that she drove her vehicle into the rear of Defendant Graham's vehicle, causing a collision between said vehicles as hereinbefore described.

13. That as a result of the aforesaid collision, Defendant Graham sustained severe, painful injuries to his person, including, but not limited to the following: Cervical sprain; thoracic sprain; cervicocranial syndrome; displacement of lumbar intervertebral discs.

PC - 003790

14. That as a result of the injuries sustained in the aforesaid collision, Defendant Graham suffered secondary symptomatology including, but not limited to: headaches; dizziness; nervousness; and sleep difficulties.

15. That all of the above injuries and symptoms necessitated that Defendant Graham seek medical treatment for reduction of pain and abatement of symptoms, thereby meeting his duty to mitigate his damages to the best of his ability.

16. That in spite of his reasonable efforts as described herein above, all of the aforesaid injuries and damages sustained by Defendant Graham have caused him to suffer great physical pain and mental anguish up to and including the present time.

17. That Defendant Graham has become obligated for the payment of large sums of money for doctor bills and other medical attention and treatment, as described hereinabove.

18. That all of the aforesaid injuries and damages of the Plaintiffs were directly and proximately caused by the negligence of Defendant Whetstine, whose acts and omissions of negligence consisted of the following:

a. That she failed to keep a proper lookout in the direction of travel of her vehicle;

b. That she failed to maintain the vehicle she was operating under proper control and failed to apply her brakes in time to avoid a collision;

c. That she drove the aforesaid 1987 Chevrolet vehicle upon a highway carelessly and heedlessly in willful or wanton disregard for the rights or safety of others, in violation of §20-140 of the North Carolina General Statutes;

d. That she drove her vehicle upon a public highway without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, in violation of §20-140(b) of the North Carolina General Statutes;

e. That she failed to decrease the speed of the vehicle she was driving to avoid colliding with any person, vehicle or other conveyance on the highway, and particularly the automobile being driven by Defendant Graham; such act is in violation of §20-141(m) of the North Carolina General Statutes;

f. That she operated her vehicle negligently by following Defendant Graham's vehicle more closely than is reasonable and prudent, without having due regard for the speed of such vehicle and the traffic upon and the condition of the highway, in violation of §20-152(a) of the North Carolina General Statutes;

g. That she ignored the turn signal indicator lamp and brake indicator lamps on the rear of Defendant Graham's vehicle (which clearly showed his vehicle was slowing down or stopping, and preparing to make a right turn) thereby failing to

PC - 003791

use such care and caution as would be used by an ordinarily prudent person under the same or similar circumstances to avoid collision and injury;

h. That she failed to see what she could have seen, had she looked and observed the conditions prevailing, whereupon she continued to operate her vehicle without modification to her course and/or speed, in violation of North Carolina General Statutes, §20-155 *et seq;*

i. That upon information and belief, she failed in her duty to obey a duly erected traffic control signal, in that she entered the intersection of West Boulevard at Billy Graham Parkway from the west, while the traffic signal was changing from a steady yellow signal to a steady red signal for traffic in the eastbound lanes of travel.

19. That as a direct and proximate result of the aforesaid negligence of Defendant Deborah Whetstine, Defendant Graham has sustained injuries and damages to his person, an amount not in excess of Ten Thousand and no/100 Dollars ($10,000.00).

## SECOND COUNTERCLAIM FOR RELIEF

20. That Paragraphs 1 through 19 are adopted and incorporated herein by reference.

21. That at the time of the aforesaid collision, Defendant Graham was gainfully employed.

22. That as a result of the injuries sustained in the accident, Defendant Graham sustained loss of earnings for time missed from work due to period(s) of convalescence from, and in order to seek treatment for, the injuries he sustained in the accident as hereinbefore described.

23. That as a direct and proximate result of the aforesaid negligence of Defendant Deborah Whetstine, Defendant Graham has sustained damages, to wit: loss of earnings, in an amount not in excess of $10,000.00.

WHEREFORE, HAVING FULLY ANSWERED AND COUNTERCLAIMED, the third party defendant Graham prays the Court as follows:

1. That the defendant and third party plaintiff Whetstine have and recover nothing of the third party defendant Graham;

2. That the third party defendant Graham have and recover of the defendant Whetstine an amount not in excess of $10,000.00 for third party defendant Graham's personal injuries and damages for medical expenses, lost wages, pain, suffering, discomfort and such other compensable matters as may be proven at trial;

PC - 003792

3. That all issues of fact be tried by a jury;

4. That the costs of this action be taxed against the defendant Whetstine;

5. That defendant Graham's attorneys be awarded attorneys fees in addition to the amount recovered by the third party defendant Graham in accordance with N.C.G.S.§6-21.1; and

6. For such other and further relief as the Court deems just and proper.

This the 11th day of May, 1995.

_____
Michael A. DeMayo
Attorney for Third Party Defendant Graham
Law Office Of Michael A. DeMayo P.C.
P. O. Box 34426
Charlotte, NC 28234
(704) 333-1000

_____
W. Lewis Smith, Jr.
Attorney for Third Party Defendant Graham
1014 Cameron Brown Building, 301 S. McDowell St.
Charlotte, NC 28204
(704) 374-1550

OF COUNSEL:
CRAIGHILL & SMITH

PC - 003793

## CERTIFICATE OF SERVICE

I certify that the foregoing document was duly served on the other parties to the above entitled action by mailing a copy of such pleading or document, enclosed in a postpaid wrapper properly addressed to the attorneys of record for such other parties at the business address of such attorneys as indicated below, in an official depository under the exclusive care and custody of the United States Post Office Department, on the _11th_ day of _MAY_, 1995.

_Michael A. DeMayo_
Michael A. DeMayo, Attorney

SERVED ON:

Brian deBrun
Law Offices of Chandler & debrun
1508 East Fourth Street
Charlotte, NC 28204

Betsy J. Jones
Golding, Meekins, Holden, Cosper & Stiles
301 South McDowell Street, Suite 1200
Charlotte, NC 28204

PC - 003794

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
94 CVD 13253

SONIA MARIA COOPER BARNETTE, )
)
        Plaintiff, )
)
vs. )
)
DEBORAH VOIT WHETSTINE, )
)
      Defendant and )
  Third-Party Plaintiff, )
)
vs. )
)
JOHN ROBERT GRAHAM, )
)
  Third-Party Defendant. )



**DEFENDANT/THIRD-PARTY PLAINTIFF
WHETSTINE'S REPLY TO COUNTERCLAIMS
OF THIRD-PARTY DEFENDANT GRAHAM**

     The Defendant/Third-Party Plaintiff, Deborah Voit Whetstine, answering the Counterclaims of Third-Party Defendant Graham, alleges and says:

<u>FIRST DEFENSE</u>

     1.   Upon information and belief, the allegations contained in paragraph 1 of the Counterclaims of Third-Party Defendant John Graham are admitted.

     2.   With respect to the allegations contained in paragraph 2 of the Counterclaims of Third-Party Defendant John Graham, it is admitted that on or about May 17, 1994, at approximately 8:12 a.m. Third-Party Defendant Graham was operating a 1993 Ford passenger van in a general easterly direction on West Boulevard. The remaining allegations contained in paragraph 2 are denied.

     3.   The allegations contained in paragraph 3 of the Counterclaims of Third-Party Defendant John Graham are denied.

     4.   With respect to the allegations contained in paragraph 4 of the Counterclaims of Third-Party Defendant John Graham, it is admitted that at the same date and time and at the place described above, Defendant Deborah Whetstine was owner and operator of a 1987 Chevrolet passenger vehicle which she was operating in a general easterly direction on West Boulevard. The remaining allegations of paragraph 4 are denied.

     5.   Upon information and belief, the allegations contained in paragraph 5 of the Counterclaims of Third-Party Defendant John Graham are admitted.

Bates No. 4611

2

6. Upon information and belief, the allegations contained in paragraph 6 of the Counterclaims of Third-Party Defendant John Graham are admitted.

7. Upon information and belief, the allegations contained in paragraph 7 of the Counterclaims of Third-Party Defendant John Graham are admitted.

8. Upon information and belief, the allegations contained in paragraph 8 of the Counterclaims of Third-Party Defendant John Graham are admitted.

9. With respect to the allegations contained in paragraph 9 of the Counterclaims of Third-Party Defendant John Graham, it is admitted that Third-Party Defendant Graham stopped his vehicle on West Boulevard. The remaining allegations are denied.

10. The allegations contained in paragraph 10 of the Counterclaims of Third-Party Defendant John Graham are denied.

11. The paragraphs comprising paragraph 11 of the Counterclaims of Third-Party Defendant John Graham are answered in the same manner as when set forth more fully above.

12. The allegations contained in paragraph 12 of the Counterclaims of Third-Party Defendant John Graham are denied.

13. The allegations contained in paragraph 13 of the Counterclaims of Third-Party Defendant John Graham are denied.

14. The allegations contained in paragraph 14 of the Counterclaims of Third-Party Defendant John Graham are denied.

15. The allegations contained in paragraph 15 of the Counterclaims of Third-Party Defendant John Graham are denied.

16. The allegations contained in paragraph 16 of the Counterclaims of Third-Party Defendant John Graham are denied.

17. The allegations contained in paragraph 17 of the Counterclaims of Third-Party Defendant John Graham are denied.

18. The allegations contained in paragraph 18 of the Counterclaims of Third-Party Defendant John Graham are denied.

19. The allegations contained in paragraph 19 of the Counterclaims of Third-Party Defendant John Graham are denied.

20. The paragraphs comprising paragraph 20 of the Counterclaims of Third-Party Defendant John Graham are answered in the same manner as when set forth fully above.

PC - 003796

3

21. The allegations contained in paragraph 21 of the Counterclaims of Third-Party Defendant John Graham are denied for lack of information sufficient to form a belief as to the truth or falsity.

22. The allegations contained in paragraph 22 of the Counterclaims of Third-Party Defendant John Graham are denied.

23. The allegations contained in paragraph 23 of the Counterclaims of Third-Party Defendant John Graham are denied.

WHEREFORE, the Defendant/Third-Party Plaintiff Whetstine, having responded to the allegations of the Counterclaims of Third-Party Defendant John Graham, prays:

1. That the Third-Party Defendant Graham have and recover nothing of the Defendant/Third-Party Plaintiff Whetstine in this action and that the Counterclaims be dismissed, with prejudice;

2. That all issues of fact, if any, be determined by a jury; and

3. That the costs of this action be taxed against Third-Party Defendant Graham; and

4. For such other and further relief as the Court deems just and proper.

This __30th__ day of __May__, 1995.

Betsy J. Jones
Attorney for Plaintiff/Third-Party Plaintiff

OF COUNSEL:

GOLDING, MEEKINS, HOLDEN,
  COSPER & STILES
Suite 1200, Cameron Brown Building
301 S. McDowell Street
Charlotte, N.C. 28204
(704)374-1600

Bates No. 4013

4

## CERTIFICATE OF SERVICE

I, Betsy J. Jones, do hereby certify that I have this day served a copy of the foregoing document upon all counsel of record by placing a copy of same, addressed to such counsel, in the U.S. mail, postage prepaid.

This _30th_ day of _May_, 1995.

Betsy J. Jones
Attorney for Defendant/Third-Party Plaintiff

Bates No. 4014

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

SONIA MARIA COOPER BARNETTE, )
                                )
                Plaintiff,       )
                                )
vs.                              )
                                )
DEBORAH VOIT WHETSTINE,          )
                                )
        Defendant and            )
   Third-Party Plaintiff,        )
                                )
vs.                              )
                                )
JOHN ROBERT GRAHAM,              )
                                )
   Third-Party Defendant.        )

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
94 CVD 13253


NOTICE OF DISMISSAL
WITHOUT PREJUDICE


The Third-Party Plaintiff, Deborah Voit Whetstine, pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, hereby dismisses her Third-Party Complaint against Third-Party Defendant John Robert Graham. This dismissal is without prejudice.

This __24__ day of ___May___, 1996.


_Betsy J. Jones_
Betsy J. Jones
Attorney for Third-Party Defendant
Golding, Meekins, Holden, Cosper & Stiles
Suite 1200, 301 S. McDowell Street
Charlotte, NC 28204
(704)374-1600

PC - 003799

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
94 CVD 13253

SONIA MARIA COOPER BARNETTE, )
)
Plaintiff, )
)
vs. )
)
DEBORAH VOIT WHETSTINE, )
)
Defendant and )
Third-Party Plaintiff, )
)
vs. )
)
JOHN ROBERT GRAHAM, )
)
Third-Party Defendant. )

### NOTICE OF DISMISSAL WITH PREJUDICE

The Third-Party Defendant, John Robert Graham, pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, hereby dismisses his Counterclaim against Defendant Deborah Voit Whetstine. This dismissal is with prejudice.

This 24 day of May, 1996.

Michael A. DeMayo
Attorney for Plaintiff
PO Box 34426
Charlotte, NC 28234
(704)333-1000

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

FILED
96 AUG 13 AM 9:22

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

CASE NUMBER _9 Y CVA /3 2 5¯3_

Barnette, Sonia, Maria

_____
Plaintiff(s)

BY_____

vs.

ORDER OF DISMISSAL

Whetstine, Deborah, Voit
Graham John Robert
_____
Defendant(s)

..............................................................................................................................

      The above captioned cause having come before the undersigned Judge, the cause having been calendared and called for hearing, and the Court finding that this cause should be dismissed pursuant to G.S. 1A-1, Rule 41, Rules of Civil Procedure:

IT IS SO ORDERED:

1.     That the above captioned cause is hereby DISMISSED

    ( ✓ ) With Prejudice
    (   ) Without Prejudice

2.     That all counterclaims, cross claims, third party actions and all other claims in this cause are also DISMISSED

    ( ✓ ) With Prejudice
    (   ) Without Prejudice

3.     That the costs of this action be paid by the

    (   ) Plaintiff(s)
    (   ) Defendant(s)
    (   ) Respective Parties

IT IS SO ORDERED THIS __/2__ day of _____Aug_____, 19 _96_.

_____
Presiding Judge

Form CCF-25

PC - 003801

| | |
|---|---|
| File No. 4SCVM 18461 | **STATE OF NORTH CAROLINA** |
| Film No. 45 - 141 - 293 | _____ County |
| Judgment Docket Book And Page No. | In The General Court Of Justice<br>District Court Division-Small Claims |

**JUDGMENT
IN ACTION FOR
SUMMARY EJECTMENT**

G.S. 7A-210(2), 7A-224; 42-30

Name And Address Of Plaintiff

United Dominion Realty Trust, Inc.
D/B/A The Highlands Apts.
639 Archdale Dr
Charlotte, NC 28217
Fed. Tax ID# 54-0857512

| County | Telephone No. |
|---|---|

**VERSUS**

Name And Address Of First Defendant
SONIA BARNETTE M
6.23 C ARCHDALE M
CHARLE TE, NC 28217

| County | Telephone No. |
|---|---|

Name And Address Of Second Defendant

| County | Telephone No. |
|---|---|

Name And Address Of Plaintiff's Attorney
United Dominion Realty Trust, Inc.
D/B/A The Highlands Apts
639 Archdale Dr.
Charlotte NC 28217
Fed. Tax ID# 54-0857512

AOC-CVM-401
Rev. 4-90

This action was tried before the undersigned on the cause stated in the complaint. The record shows that the defendant was given proper notice of the nature of the action and the date, time and location of trial.

**FINDINGS**

The Court finds that:

☐ the plaintiff has proved his case by the greater weight of the evidence.
☐ the plaintiff has failed to prove his case by the greater weight of the evidence.
☐ Other:

**ORDER**

It is ORDERED that:

☐ the defendant(s) be removed from and the plaintiff be put in possession of the premises described in the complaint.
☐ this action be dismissed with prejudice.
☐ this action be dismissed with prejudice because the defendant tendered the rent due and the court costs of this action.
☐ the plaintiff recover rent of the defendant(s) at the rate listed below, plus damages in the amount indicated. The plaintiff is also entitled to interest on the total principal sum from this date until the judgment is paid.
☐ Other: *(specify)*

☐ Costs of this action are taxed to the ☑ plaintiff ☐ defendant.

| Rate Of Rent<br>$ 557 per ☒ Month ☐ Week | Amount Of Rent Owed To Date<br>$ | |
|---|---|---|
| Amount Of Other Damages $ | Date 8/4/95 | |
| Total Amount ► $ | Signature Of Magistrate | |

**ENTRY OF APPEAL**

| Name Of Appealing Party | ☐ Given In Open Court<br>☐ Given In Writing | ☐ Jury Trial Not Requested<br>☐ Jury Trial Requested |
|---|---|---|
| Date Appeal Given | Date Court Costs Paid | Amount Court Costs Paid<br>$ |

PC - 003840

Bates No. 4618

File No. _____

# COMPLAINT
# IN SUMMARY EJECTMENT

G.S. 7A-216, 7A-232; Ch. 42, Art. 3

**Name And Address Of Plaintiff**

United Dominion Realty Trust, Inc.
D/B/A The Highlands Apts.
639 Archdale Dr.
Charlotte, NC 28217
Fed Tax ID# 54-0857512

**Social Security No./Taxpayer ID No.**

| County Mecklenburg | Telephone No. 525-0184 |
| --- | --- |

## VERSUS

**Name And Address Of First Defendant**

Senia Barnette
623 c Archdale DR
Charlotte NC 28217

| County Mecklenburg | Telephone No. |
| --- | --- |

**Name And Address Of Second Defendant**

| County Mecklenburg | Telephone No. |
| --- | --- |

**Name And Address Of Plaintiff's Attorney Or Agent**
United Dominion Realty Trust, Inc.
D/B/A The Highlands Apts.
639 Archdale Dr.
Charlotte, NC 28217
Fed Tax ID# 54-0857512

AOC-CVM-201
Rev. 10/93

## STATE OF NORTH CAROLINA

Mecklenburg _____ County

In The General Court Of Justice
District Court Division-Small Claims

1. The defendant is a resident of the county named above.

2. The defendant entered into possession of premises described below as a lessee of plaintiff.

**Description Of Premises (Include Location)** 2 Bedroom Garden Apartment at
623-C Archdale Dr. Charlotte, N.C. 28217

| Rate Of Rent | | | Date Rent Due | Date Lease Ended | Type Of Lease |
| --- | --- | --- | --- | --- | --- |
| $ 557.00 per | [x] Month | ☐ Week | 7-1-95 | 6-30-95 | ☐ Oral [x] Written |

3. [x] The defendant failed to pay the rent due on the above date and the plaintiff made demand for the rent and waited the 10-day grace period before filing the complaint.

☐ The lease period ended on the above date and the defendant is holding over after the end of the lease period.

[x] The defendant breached the condition of the lease described below for which re-entry is specified.

**Description Of Breach**
Failure To Pay Rent When Due

The plaintiff has demanded possession of the premises from the defendant, who has refused to surrender it, and the plaintiff is entitled to immediate possession.

4. The defendant owes the plaintiff for the following:

**Description Of Any Property Damage**

15.00    Late Fee

| Amount Of Damage | Amount Of Rent Past Due | Total Amount |
| --- | --- | --- |
| $ | $ 557.00 | $ 572.00 |

I demand to be put in possession of the premises and to recover the total amount listed above and daily rental until entry of judgment plus interest and reimbursement for court costs.

| Date 7-17-95 | Signature Of Plaintiff/Attorney/Agent _Deborah Richardson_ |
| --- | --- |

**CERTIFICATION WHEN COMPLAINT SIGNED BY AGENT OF PLAINTIFF**

I certify that I am an agent of the plaintiff and have actual knowledge of the facts alleged in this Complaint.

| Date 7-17-95 | Signature _Deborah Richardson_ |
| --- | --- |

(Over)

PC - 003841

# STATE OF NORTH CAROLINA

File No. 18461

95 CVM

_____ County

In The General Court Of Justice
District Court Division-Small Claims

Plaintiff ~~United Dominion Realty Trust, Inc.~~
~~Highlands Apts.~~
~~Archdale Dr~~
~~NC 28217~~
~~64-0857512~~

VERSUS

Defendant(s)

Sonia Barnette

## MAGISTRATE SUMMONS

☐ **Alias and Pluries Summons.** The summons originally issued against you was returned not served. *(Disregard this section unless the block is checked.)*

G.S. 7A-217, 232; 1A-1, Rule 4

Date Last Summons Issued

---

**TO:**

Name And Address Of First Defendant

Sonia Barnette
623 C Archdale Dr.
Charlotte NC. 28217

**TO:**

Name And Address Of Second Defendant

J 335

---

## A Small Claim Action Has Been Commenced Against You!

You are notified to appear before the magistrate at the specified place, date and time of trial listed below. You will have the opportunity at the trial to defend yourself against the claim stated in the attached complaint.

You may file a written answer, making defense to the claim, in the office of the Clerk of Superior Court not later than the time set for trial. Whether or not you file an answer, the plaintiff must prove his claim before the magistrate.

If you fail to appear and defend against the proof offered, the magistrate may enter a judgment against you.

| Location Of Court | Date Of Trial | Time Of Trial |
|---|---|---|
| ~~700 E. Trade St. Room 104~~ | 8-4-95 | 10:00 ☐ AM ☐ PM |
| Name And Address Of Plaintiff/Plaintiff's Attorney | Date Issued 7-18-95 | |
| Highlands Apts. | Signature | |
| NC 28217 | | |
| 64-0857512 | | |
| | ☐ Deputy CSC ☑ Assistant CSC ☐ Clerk Of Superior Court | |

A4B

AOC-CVM-100
Rev. 6-87

(Over)

PC - 003842

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Name Of Defendant |
|---|---|
|  | Sonia Barnette |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason :

### DEFENDANT 2

| Date Served | Name Of Defendant |
|---|---|
|  |  |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason :

## FOR USE IN SUMMARY EJECTMENT CASES ONLY

☒ Service was made by mailing by first class mail a copy of the summons and complaint to the defendant(s) and by posting a copy of the summons and complaint at the following premises.

| Date Served | Name(s) Of The Defendant(s) Served By Posting |
|---|---|
| 623-C Archdale | Sonia Barnette |

Address Of Premises Where Posted

| Service Fee Paid $ | Date Received 7-19-95 | Name Of Sheriff Tim Pendergraph |
|---|---|---|
| By | Date Of Return 8-2-95 | County Meck |
| AOC-CVM-100, Side Two Rev. 6/87 | | Deputy Sheriff Making Return |

PC - 003843

**File No** 45CVM 18461

**Film No.** 45 - 141 - 293

**Judgment Docket Book And Page No.**

# JUDGMENT
# IN ACTION FOR
# SUMMARY EJECTMENT

G.S. 7A-210(2), 7A-224; 42-30

**Name And Address Of Plaintiff**

United Dominion Realty Trust, Inc.
D/B/A The Highlands Apts.
639 Archdale Dr
Charlotte, NC 28217
Fed Tax ID# 54-0857512

| County | Telephone No. |
|---|---|

## VERSUS

**Name And Address Of First Defendant**
SONIA BARNETTE M
6.23 C ARCHDALE M
CHARL TE, NC 28217

| County | Telephone No. |
|---|---|

**Name And Address Of Second Defendant**

| County | Telephone No. |
|---|---|

**Name And Address Of Plaintiff's Attorney**
United Dominion Realty Trust, inc.
D/B/A The Highlands Apts
639 Archdale Dr.
Charlotte NC 28217
Fed Tax ID# 54-0857512

AOC-CVM-401
Rev. 4 90

## STATE OF NORTH CAROLINA

**In The General Court Of Justice
District Court Division-Small Claims**

_____ County

This action was tried before the undersigned on the cause stated in the complaint. The record shows that the defendant was given proper notice of the nature of the action and the date, time and location of trial.

### FINDINGS

The Court finds that:

☐ the plaintiff has proved his case by the greater weight of the evidence.
☐ the plaintiff has failed to prove his case by the greater weight of the evidence.
☐ Other:

### ORDER

It is ORDERED that:

☐ the defendant(s) be removed from and the plaintiff be put in possession of the premises described in the complaint.
☐ this action be dismissed with prejudice.
☐ this action be dismissed with prejudice because the defendant tendered the rent due and the court costs of this action.
☐ the plaintiff recover rent of the defendant(s) at the rate listed below, plus damages in the amount indicated. The plaintiff is also entitled to interest on the total principal sum from this date until the judgment is paid.
☐ Other: *(specify)*

☐ Costs of this action are taxed to the ☑ plaintiff ☐ defendant.

| Rate Of Rent $ 557 per ☒ Month ☐ Week | Amount Of Rent Owed To Date $ | |
|---|---|---|
| Amount Of Other Damages $ | **Date** 8/4/45 | |
| Total Amount ▶ $ | **Signature Of Magistrate** | |

### ENTRY OF APPEAL

| Name Of Appealing Party | ☐ Given In Open Court ☐ Given In Writing | ☐ Jury Trial Not Requested ☐ Jury Trial Requested |
|---|---|---|
| Date Appeal Given | Date Court Costs Paid | Amount Court Costs Paid $ |

PC - 003840

Bates No. 4622

File No. _____ 16 4621

# STATE OF NORTH CAROLINA

**In The General Court Of Justice**
**District Court Division-Small Claims**

Mecklenburg ———— County

## COMPLAINT
## IN SUMMARY EJECTMENT

G.S. 7A-216, 7A-232; Ch. 42, Art. 3

**Name And Address Of Plaintiff**

United Dominion Realty Trust, Inc.
D/B/A The Highlands Apts.
639 Archdale Dr.
Charlotte, NC 28217
Fed Tax ID# 54-0857512

**Social Security No./Taxpayer ID No.**

**County** Mecklenburg **Telephone No.** 525-0184

## VERSUS

**Name And Address Of First Defendant**

Sonia Barnette
623 C Archdale DR
Charlotte NC 28217

**County** Mecklenburg **Telephone No.**

**Name And Address Of Second Defendant**

**County** Mecklenburg **Telephone No.**

**Name And Address Of Plaintiff's Attorney Or Agent**
United Dominion Realty Trust, Inc.
D/B/A The Highlands Apts.
639 Archdale Dr.
Charlotte, NC 28217
Fed Tax ID# 54-0857512

AOC-CVM-201
Rev. 10/93

1. The defendant is a resident of the county named above.

2. The defendant entered into possession of premises described below as a lessee of plaintiff.

**Description Of Premises (Include Location)** 2 Bedroom Garden Apartment at
623-C Archdale Dr. Charlotte, N.C. 28217

| Rate Of Rent | | Date Rent Due | Date Lease Ended | Type Of Lease |
|---|---|---|---|---|
| $ 557.00 per [x] Month [ ] Week | | 7-1-95 | 6-30-95 | [ ] Oral [x] Written |

3. [x] The defendant failed to pay the rent due on the above date and the plaintiff made demand for the rent and waited the 10-day grace period before filing the complaint.

[ ] The lease period ended on the above date and the defendant is holding over after the end of the lease period.

[x] The defendant breached the condition of the lease described below for which re-entry is specified.

**Description Of Breach**
Failure To Pay Rent When Due

The plaintiff has demanded possession of the premises from the defendant, who has refused to surrender it, and the plaintiff is entitled to immediate possession.

4. The defendant owes the plaintiff for the following:

**Description Of Any Property Damage**

15.00 Late Fee

| Amount Of Damage | Amount Of Rent Past Due | Total Amount |
|---|---|---|
| $ | $ 557.00 | $ 572.00 |

I demand to be put in possession of the premises and to recover the total amount listed above and daily rental until entry of judgment plus interest and reimbursement for court costs.

**Date** 7-17-95 **Signature Of Plaintiff/Attorney/Agent** Deborah Richardson

**CERTIFICATION WHEN COMPLAINT SIGNED BY AGENT OF PLAINTIFF**

I certify that I am an agent of the plaintiff and have actual knowledge of the facts alleged in this Complaint.

**Date** 7-17-95 **Signature** Deborah Richardson

(Over)

PC - 003841

# STATE OF NORTH CAROLINA

File No. _18461_

_95CVM_

_____ County

Plaintiff _United Dominion Realty Trust, Inc._
_The Highlands Apts._
_Archdale Dr_
_Charlotte NC 28217_
_704-0867512_

## MAGISTRATE SUMMONS

☐ **Alias and Pluries Summons.** The summons originally issued against you was returned not served.
(Disregard this section unless the block is checked.)

G.S. 7A-217, 232; 1A-1, Rule 4

**VERSUS**

Defendant(s)

Senia Barnette

BY

Date Last Summons Issued

---

**TO:**

Name And Address Of First Defendant

Senia Barnette
623 C Archdale Dr.
Charlotte NC. 28217

**TO:**

Name And Address Of Second Defendant

J-325

---

## A Small Claim Action Has Been Commenced Against You!

You are notified to appear before the magistrate at the specified place, date and time of trial listed below. You will have the opportunity at the trial to defend yourself against the claim stated in the attached complaint.

You may file a written answer, making defense to the claim, in the office of the Clerk of Superior Court not later than the time set for trial. Whether or not you file an answer, the plaintiff must prove his claim before the magistrate.

If you fail to appear and defend against the proof offered, the magistrate may enter a judgment against you.

---

Location Of Court _300 E. Trade St. Room 104_

Name And Address Of Plaintiff's Attorney
_The Highlands Apts._
_Archdale Dr_
_NC 28217_
_704-0867512_

| Date Of Trial | Time Of Trial |
| --- | --- |
| 8-4-95 | 10:00 ☐ AM ☐ PM |

Date Issued 7-18-95

Signature

☐ Deputy CSC  ☑ Assistant CSC  ☐ Clerk Of Superior Court

_A4B_

AOC-CVM-100
Rev. 6/87

(Over)

_2C#223_

PC - 003842

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Name Of Defendant |
|---|---|
| | *Sonia Barnette* |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason :

### DEFENDANT 2

| Date Served | Name Of Defendant |
|---|---|
| | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason :

### FOR USE IN SUMMARY EJECTMENT CASES ONLY

☒ Service was made by mailing by first class mail a copy of the summons and complaint to the defendant(s) and by posting a copy of the summons and complaint at the following premises.

| Date Served | Name(s) Of The Defendant(s) Served By Posting |
|---|---|
| *623-C Archdale* | *Sonia Barnette* |

Address Of Premises Where Posted

| Service Fee Paid $ | Date Received *7-19-95* | Name Of Sheriff *Jim Pendergraph* |
|---|---|---|
| By | Date Of Return *8-2-95* | County *Meck* |

AOC-CVM-100, Side Two
Rev. 6/87

Deputy Sheriff Making Return

PC - 003843

# STATE OF NORTH CAROLINA

<u>MECKLENBURG</u> _____ County

| | File No |
|---|---|
| | 95 CVM *30101* |
| | Film No |
| | 96-2- 61 |

In the General Court of Justice
☑ Small Claims ☐ District ☐ Superior Court Division

**Plaintiff**

CAROLINAS MEDICAL CENTER
P O BOX 32861
CHARLOTTE NC 28232-2861

**VERSUS**

**Defendant**

*Sonia C. Bacnette*

# NOTICE OF
# VOLUNTARY DISMISSAL

GS 1A-1, Rule 41

☑ The plaintiff gives notice of voluntary dismissal in this case as to all of the defendants.

☐ The plaintiff gives notice of voluntary dismissal in this case only as to the defendants named below:

This case remains open as to defendants not listed above.

| Date |
|---|
| October 9, 1995 |
| Plaintiff or Attorney |
| *Jo Halfwen* |
| *Legal Acct Rep.* |

AOC-CV-405
Rev. 2/82

Original File    Copy-Each Def.    Copy-Atty/Plf

PC - 003836

20101

# STATE OF NORTH CAROLINA

**MECKLENBURG** _____ County

File No.
GSCVM

In The General Court Of Justice
District Court Division-Small Claims

| Plaintiff | |
|---|---|
| CAROLINAS MEDICAL CENTER<br>P O BOX 32861<br>CHARLOTTE NC 28232 | |

## MAGISTRATE SUMMONS

☐ Alias and Pluries Summons. The summons originally issued against you was returned not served. (Disregard this section unless the block is checked.)

G.S. 7A-217, 232; 1A-1, Rule 4

**VERSUS** BY____

Date Last Summons Issued

Defendant

Sonia C. Barnette

**TO:**

Name And Address Of First Defendant

Sonia C. Barnette – ID#3__823
SSN –
3413 West Blvd.
Charlotte, Mecklenburg, NC  28208

**TO:**

Name And Address Of Second Defendant

A.496

## A Small Claim Action Has Been Commenced Against You!

You are notified to appear before the magistrate at the specified place, date and time of trial listed below. You will have the opportunity at the trial to defend yourself against the claim stated in the attached complaint.

You may file a written answer, making defense to the claim, in the office of the Clerk of Superior Court not later than the time set for trial. Whether or not you file an answer, the plaintiff must prove his claim before the magistrate.

If you fail to appear and defend against the proof offered, the magistrate may enter a judgment against you.

B. Lewis

| Location Of Court | Date Of Trial | Time Of Trial | |
|---|---|---|---|
| 700 East Trade Street     Room 102 | 11-95 | 9:00 | ☒ AM  ☐ PM |

| Name And Address Of Plaintiff Or Plaintiff's Attorney | Date Issued 8-9-95 |
|---|---|
| | Signature |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court |

B2A

AOC-CVM-100
Rev. 6/87

(Over)

PC - 003837
22393

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

Date Served

Name Of Defendant

Sonia C. Barreto

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☒ Defendant WAS NOT served for the following reason: Did not locate Def on Attempts made

### DEFENDANT 2

Date Served

Name Of Defendant

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## FOR USE IN SUMMARY EJECTMENT CASES ONLY

☐ Service was made by mailing by first class mail a copy of the summons and complaint to the defendant(s) and by posting a copy of the summons and complaint at the following premises.

Date Served

Name(s) Of The Defendant(s) Served By Posting

Address Of Premises Where Posted

| Service Fee Paid | Date Received | Name Of Sheriff |
| | 8-10-95 | |
| | Date Of Return | County |
| | 9-8-95 | |
| | | Deputy Sheriff Making Return |

PC - 003838

<table>
<tr><td colspan="2">File No.</td><td colspan="3"><strong>STATE OF NORTH CAROLINA</strong></td></tr>
</table>

| | |
|---|---|
| **COMPLAINT**<br>**FOR MONEY OWED**<br><br>G.S. 7A-216, 7A-232 | **STATE OF NORTH CAROLINA**<br><br>MECKLENBURG _____ County<br><br>In The General Court Of Justice<br>District Court Division-Small Claims |

| Name And Address Of Plaintiff | |
|---|---|
| CAROLINAS MEDICAL CENTER<br>P O BOX 32861<br>CHARLOTTE NC 28232-2861 | |

1. The defendant is a resident of the county named above.

2. The defendant owes me the amount listed for the following reason:

| | | |
|---|---|---|
| Principal Amount Owed | $ | 808.48 |
| Interest Owed *(if any)* | $ | |
| Total Amount Owed | $ | 808.48 |

| Social Security No./Taxpayer ID No. |
|---|
| 56-1398929 |

| County | Telephone No. |
|---|---|
| Mecklenburg | 704-355-3947 |

*(check one below)*

| | Date From Which Interest Due | Interest Rate |
|---|---|---|
| ☒ On an Account *(attach a copy of the account)* M | | |

| | Beginning Date | Ending Date | Interest Rate |
|---|---|---|---|
| ☐ For Goods Sold and Delivered Between M | | | |

**VERSUS**

| Name And Address Of First Defendant |
|---|
| Sonia C. Barnette - ID#3193823<br>SSN -<br>3413 West Blvd.<br>Charlotte, NC 28208 |

| | Date From Which Interest Due | Interest Rate |
|---|---|---|
| ☐ For Money Lent M | | |

| | Date Of Note | Date From Which Interest Due | Interest Rate |
|---|---|---|---|
| ☐ On a Promissory Note *(attach copy)* M | | | |

☐ For a Worthless Check *(attach a copy of the check)*

| County | Telephone No. |
|---|---|
| Mecklenburg | 399-5479 |

☐ For Conversion *(describe property)*

| Name And Address Of Second Defendant |
|---|
| |

☐ Other: *(specify)*

| County | Telephone No. |
|---|---|
| | |

| Name And Address Of Plaintiff's Attorney |
|---|
| |

I demand to recover the total amount listed above, plus interest and reimbursement for court costs.

| Date | Signature Of Plaintiff Or Attorney |
|---|---|
| AUG 0 3 1995 | *Jo Halheisen* |

AOC-CVM-200
Rev. 10/93

(Over)

CAROLINAS MEDICAL CENTER
P O BOX 32861
CHARLOTTE NC 28232-2861

PC - 003839

## STATE OF NORTH CAROLINA

MECHLENBURG _____ County

File No
95 CVM 20101

Film No
96-2- 61

In the General Court of Justice
☑ Small Claims ☐ District ☐ Superior Court Division

**Plaintiff**
CAROLINAS MEDICAL CENTER
P O BOX 32861
CHARLOTTE NC 28232-2861

### VERSUS

**Defendant**

*Sonia C. Bacnette*

## NOTICE OF
## VOLUNTARY DISMISSAL

GS 1A-1, Rule 41

☑ The plaintiff gives notice of voluntary dismissal in this case as to all of the defendants.

☐ The plaintiff gives notice of voluntary dismissal in this case only as to the defendants named below:

This case remains open as to defendants not listed above.

**Date**
October 9, 1995

**Plaintiff or Attorney**
*Jo Halfwin*
*Legal Acct. Rep.*

AOC-CV-405
Rev. 2/82

Original File    Copy-Each Def.    Copy-Atty/Plf

PC - 003836

# STATE OF NORTH CAROLINA

MECKLENBURG _____ County

File No.
GSCVM

In The General Court Of Justice
District Court Division-Small Claims

| Plaintiff | |
|---|---|
| CAROLINAS MEDICAL CENTER<br>P O BOX 32861<br>CHARLOTTE NC 28232 | |

## MAGISTRATE SUMMONS

☐ **Alias and Pluries Summons.** The summons originally issued against you was returned not served. *(Disregard this section unless the block is checked.)*

**VERSUS**                                    BY

G.S. 7A-217, 232; 1A-1, Rule 4

Defendant

Sonia C. Barnette

*Date Last Summons Issued*

---

**TO:**

*Name And Address Of First Defendant*

Sonia C. Barnette – ID#3193823
SSN –
3413 West Blvd.
Charlotte, Mecklenburg, NC  28208

**TO:**

*Name And Address Of Second Defendant*

A-496

---

## A Small Claim Action Has Been Commenced Against You!

You are notified to appear before the magistrate at the specified place, date and time of trial listed below. You will have the opportunity at the trial to defend yourself against the claim stated in the attached complaint.

You may file a written answer, making defense to the claim, in the office of the Clerk of Superior Court not later than the time set for trial. Whether or not you file an answer, the plaintiff must prove his claim before the magistrate.

If you fail to appear and defend against the proof offered, the magistrate may enter a judgment against you.

B. Lewis

| *Location Of Court* | *Date Of Trial* | *Time Of Trial* |
|---|---|---|
| 700 East Trade Street      Room 102 | | 9:00   ☒ AM  ☐ PM |

| *Name And Address Of Plaintiff Or Plaintiff's Attorney* | *Date Issued* 8-9-95 |
|---|---|
| | *Signature* |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court |

B2A

AOC-CVM-100
Rev. 6/87

(Over)

PC - 003837

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

Date Served

**Name Of Defendant**

Sonia C. Baraitta

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☑ Defendant WAS NOT served for the following reason: Did not locate Def on attempts made

### DEFENDANT 2

Date Served

**Name Of Defendant**

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### FOR USE IN SUMMARY EJECTMENT CASES ONLY

☐ Service was made by mailing by first class mail a copy of the summons and complaint to the defendant(s) and by posting a copy of the summons and complaint at the following premises.

Date Served

Name(s) Of The Defendant(s) Served By Posting

Address Of Premises Where Posted

| Service Fee Paid | Date Received | Name Of Sheriff |
| | 8-10-95 | |
| | Date Of Return | County |
| | 9-8-95 | |
| | | Deputy Sheriff Making Return |

PC - 003838

| | |
|---|---|
| **File No.** | **STATE OF NORTH CAROLINA** |

| | |
|---|---|
| **COMPLAINT** <br> **FOR MONEY OWED** <br><br> G.S. 7A-216, 7A-232 | |

**STATE OF NORTH CAROLINA**

MECKLENBURG _____ County

In The General Court Of Justice
District Court Division-Small Claims

1. The defendant is a resident of the county named above.

2. The defendant owes me the amount listed for the following reason:

*Name And Address Of Plaintiff*

CAROLINAS MEDICAL CENTER
P O BOX 32861
CHARLOTTE NC 28232-2861

| | | |
|---|---|---|
| Principal Amount Owed | $ | 808.48 |
| Interest Owed *(if any)* | $ | |
| Total Amount Owed | $ | 808.48 |

*Social Security No./Taxpayer ID No.*
56-1398929

*(check one below)*

| *County* | *Telephone No.* |
|---|---|
| Mecklenburg | 704-355-3947 |

**VERSUS**

*Name And Address Of First Defendant*
Sonia C. Barnette - ID#3193823
SSN -
3413 West Blvd.
Charlotte, NC 28208

| *County* | *Telephone No.* |
|---|---|
| Mecklenburg | 399-5479 |

*Name And Address Of Second Defendant*

| *County* | *Telephone No.* |
|---|---|

*Name And Address Of Plaintiff's Attorney*

| Reason | | Date From Which Interest Due | | Interest Rate |
|---|---|---|---|---|
| ☒ On an Account *(attach a copy of the account)* M | | | | |
| ☐ For Goods Sold and Delivered Between M | *Beginning Date* | *Ending Date* | | Interest Rate |
| ☐ For Money Lent M | Date From Which Interest Due | | | Interest Rate |
| ☐ On a Promissory Note *(attach copy)* M | *Date Of Note* | Date From Which Interest Due | | Interest Rate |

☐ For a Worthless Check *(attach a copy of the check)*

☐ For Conversion *(describe property)*

☐ Other: *(specify)*

I demand to recover the total amount listed above, plus interest and reimbursement for court costs.

| *Date* | *Signature Of Plaintiff Or Attorney* |
|---|---|
| AUG 0 3 1995 | *(signature)* |

*AOC-CVM-200*
*Rev. 10/93*

*(Over)*

CAROLINAS MEDICAL CENTER
P O BOX 32861
CHARLOTTE NC 28232-2861

PC - 003839

IN THE UNITES STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA,
CHARLOTTE DIVISION

UNITED STATES OF AMERICA

vs.                                                    No.  3:97CR-23

AQUILA MARCIVICCI BARNETTE,

     Defendant

_____/

DEFENDANT'S BRIEF ON WHAT THIS COURT SHOULD
CONSIDER UNDER *MILLER-EL V. DRETKE*, 545 U.S. 231 (2005)

Comes the Defendant, Aquila Marcivicci Barnette, by and through appointed counsel, and, pursuant to this Court's Order of November 30, 2007, presents the following brief on this Court's questions, to-wit: "Barnette shall file a brief with the Court stating how the Court should proceed in this matter, identifying the evidence that the Court can and should consider, and addressing the effect, if any, of waiver, *see e.g. Davis v. Baltimore Gas & Elec. Co.*, 160 F.3d 1023, 1027 (4th Cir. 1998)."   DN 634, p. 3.

I.  **INTRODUCTION**:   A *Batson* challenge sparks a three step inquiry.   *Rice v. Collins*, 126 S.Ct. 969, 973 (2006).  "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. If so, then the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question."  *Id*. (citations omitted).  Third, the trial court must "assess the plausibility of that reason in light of all of the evidence with a bearing on it."  *Miller El v. Dretke,* 545 U.S. 231, 252 (2005)(*Miller-El II*).  This final step involves evaluating the "'persuasiveness of the

1

HB 000001

Bates No. 4634

justification' proffered by the prosecutor ...." *Rice,* 126 S.Ct at 974 (*quoting Purkett v. Elem*, 514 U.S. 765, 768 (1995)(per curiam)).  As this Court noted in its November 30, 2007, Order, "only the third prong of the *Batson* test – whether there was purposeful discrimination on the part of the prosecutor – is before this Court on remand."  DN 634, p. 2.

**II.  The *Batson* Challenges**:  During voir dire in this case, 12 previously qualified potential jurors were placed in the jury box. The government exercised its first set of peremptory challenges.  Five jurors were struck, two of whom were African American women, Carla Bryson and Regina Sanders.   Defense counsel objected under *Batson*, arguing that "their answers were no different than anyone else" (R. 2254), and asked for the Court to conduct comparative juror analysis.  The government gave what on its face was a race-neutral basis for the strikes, and this Court held that "in both of these cases the government has made a race neutral explanation." R. 2299.  The credibility of the government's explanation was not expressly addressed.   These five jurors were replaced, whereupon the government exercised a peremptory challenge to Debra Moore, another African American female.  Defense counsel made a *Batson* challenge and argued that the government had with its first six challenges excused three African Americans.  (R. 2305) The government gave what on its face was a race-neutral explanation, and this Court found "that to be a race neutral explanation."  R. 2307.  The credibility of the government's explanation was not addressed.   When it was the government's turn to strike again, it struck three persons, among them David Miller (an African-American male) and Karen Sanders (an African American female).  Defense counsel challenged the strike of Ms. Sanders, the government gave an on-its-face  race-neutral explanation, defense counsel argued that cumulatively the government had exercised five of nine strikes against African Americans, and this Court held that the government

2

HB 000002

Bates No. 4635

"explanation is race neutral." R. 2319. The credibility of the government's explanation was not addressed. The next opportunity for the government to exercise a strike resulted in the dismissal of African-American juror Mark Blakeney. A *Batson* challenge was made, the government offered an explanation, and this Court found that "a race neutral explanation has been presented." R. 2323. This Court also stated that "even when one considers the overall pattern of strikes of the government" no racial purpose was shown. R. 2324. Again, this Court did not expressly consider whether the government's explanations were credible in light of the record as a whole.

### III. The Fourth Circuit's Remand

*A. The Appeal*: Barnette raised *Batson* claims on appeal. He argued, *inter alia*, that a comparison of the voir dire answers given by African-American jurors who were, with white jurors who were not, peremptorily struck by the Government, showed that the reasons provided by the government for peremptorily striking African-Americans were pretext. Based upon Fourth Circuit precedent that "'*Batson* is not violated whenever two veniremen of different races provide the same responses and one is excluded and the other is not,'" *United States v. Barnette*, 390 F.3d 775, 796 (4th Cir. 2004)(quoting *Matthews v. Evatt*, 105 F.3d 907, 918 (4th Cir. 1997)), the Circuit Court did not expressly consider side-by side juror comparisons. Rather, like this Court, upon determining that the prosecutor had given a facially race-neutral reason, *id.*, 390 F.3d at 795 - 797, the Circuit Court found no *Batson* violation.

*B. Miller-El II and the Supreme Court's remand to the Circuit Court*: Appellant filed a petition for writ of certiorari in the United States Supreme Court before *Miller-El II* was decided. That petition was pending when the Court issued its opinion in *Miller-El II*. In *Miller-El II*, the

Supreme Court held that step three of *Batson*, the step at which the Court must assess "'the totality of the relevant facts'" in determining the prosecutor's intent in striking black prospective jurors, *Miller-El II*, 545 U.S. at 239 (quoting *Batson*, 476 U.S., at 94), involves a penetrating court inquiry. To answer this Court's question in its November 30, 2007, Order, under *Miller-El II* this Court must "assess the plausibility" of the prosecutors' stated reasons for strikes "in light of all of the evidence bearing on it." 545 U.S. at 242 This includes: the percentages of black and white venirepersons peremptorily struck by the prosecution, 545 U.S. at 241; the characteristics, other than race, of blacks the prosecution struck and of whites the prosecution did not challenge, *id.*; the ways in which the prosecutor questioned black and white venirepersons, *i.e.*, whether they were asked different questions, *id.*, 545 U.S. at 255-264; and the reasons given by the prosecutor for the strikes of blacks, and the extent to which the record supports those reasons.

The Supreme Court also held in *Miller-El II* that the best evidence of what was on the prosecutor's minds when exercising peremptory strikes, "an undeniable explanation of what was going on," *Miller-El II*, 545 U.S. at 266, would be their own handwritten notes on their copies of the juror questionnaires or cards. "Prosecutors here 'marked the race of each prospective juror on their juror cards.'" *Id.*, 545 U.S. at 264 (citation omitted). "[T]he prosecutor's own notes" illustrate that "emphasis on race was on their minds as they considered each potential juror." *Id.*, 545 U.S. at 266.

Given the *Miller-El II* decision, Barnette filed a supplemental petition for writ of certiorari, noting that another North Carolina, Fourth Circuit, *Batson* case, *Kandies v. Polk*, 385 F.3d 457 (4th Cir. 2004), had been reversed and remanded in light of *Miller-El II*. *See Kandies v.*

4

*Polk*, 125 S.Ct. 2974 (2005). Barnette argued that the circuit precedent relied upon in *Kandies* and in his own case conflicted with *Miller-El II* in many ways. Thereafter, the Supreme Court reversed the Circuit Court decision herein and remanded the case in light of *Miller-El II*, just as it had done in *Kandies*.[1]

C. *Motion to Remand to District Court, and the Fourth Circuit's Ultimate Remand*

1. Motion for remand: Upon the Supreme Court's remand of this case to the Circuit Court, counsel for Appellant filed a motion asking that the case be remanded immediately to this Court for determination of the *Miller-El II* issue.[2] The government opposed this motion, but agreed to additional briefing in the Circuit Court. The Circuit Court ordered additional briefing but deferred action on the request for remand and oral argument.

2. Briefing – the matter of the prosecutor's race notations and remand order: In his brief on remand in the Circuit Court, Appellant first brought to the Circuit Court's attention that the prosecutors in the trial court had hand-noted the race and gender of the jurors on at least one and presumably all of the juror questionnaires:

---

[1]*Kandies* involves a 28 USC § 2254 action, not a direct appeal.

[2]Appellant asserted that:

> *Miller-El II* demonstrated that a careful and searching review of the entire record of the case is necessary to proper adjudication of a *Batson* claim. Indeed, such a review consumed a full twenty-six pages of the majority's slip opinion. *See also Miller-El*, 125 S. Ct. at 2339 ("It is true, of course, that at some points the significance of Miller-El's evidence is open to judgment calls, but when this evidence on the issues raised is viewed cumulatively its direction is too powerful to conclude anything but discrimination."). The district court is better positioned to undertake this extensive cumulative review in the first instance.

*See* Motion To Remand To The United States District Court For The Western District Of North Carolina For Further Proceedings Or, In The Alternative, To Allow Supplemental Briefing And [Oral] Argument, p. 3, Circuit Docket Number 01-20.

5

HB 000005

Bates No. 4038

Every potential juror at Appellant's re-sentencing filled out a 129-question juror questionnaire well before trial began. Counsel reviewed those questionnaires in preparation for voir dire, and every potential juror was thanked for and/or quizzed about their written answers.

The prosecutors in this case read the 129 answers from its copies of each juror questionnaire and then handwrote on the top of the first page of at least one of them the most salient information taken from those answers:

**B/F**

for black female. The prosecutors then systematically and peremptorily removed five, qualified, black females, from juror service.[3]

In the conclusion of his Supplemental Brief, Appellant urged the Circuit Court to require

the prosecutors to explain themselves by remanding the case to this Court:

---

[3][footnote in brief in circuit court]: The government's copy of the questionnaire of juror Betty Campbell is in the government's Supplemental Joint Appendix at 143. Ms. Campbell checked boxes on page 2 (which is on the back of page 1) indicating that she was a black female. It is the very first question and answer. The government intentionally wrote on the top of page 1 that which plainly appeared on the back. A person looking at page 1 would know immediately the race and gender of the juror.

The reason the government's copy of the questionnaire is in its Supplemental Joint Appendix is that trial defense counsel Harold Bender, who is co-counsel on appeal, advises that the court copies of the juror questionnaires were placed under seal in the district court after jury selection. Because during jury selection every single juror was thanked for or questioned about his or her questionnaire, the questionnaires are pertinent to this appeal. The government put one complete copy of the questionnaires in its Supplemental Appendix, Ms. Campbell's, who was excused for cause and not peremptorily. The other six questionnaires included by the government in its Supplemental Appendix (and the two provided by the government and contained in the Second Supplemental Appendix) do not contain page one of the questionnaires. Perhaps that is because the government did not want to duplicate a page, page 1, that is a "form" page. Perhaps it is because every one of the first pages have the prosecutor's handwritten notation of the race/gender of the potential juror. Counsel for Appellant requested that the government provide the missing first pages, and the government complied by fax on August 9, 2006. However, counsel for the government advised undersigned counsel that he would or might edit or cover some handwritten notes on the pages, ostensibly as claimed work product. The faxed first pages thereafter received by Appellant's counsel did not have "B/F" or similar notes on them, but it is impossible to determine whether such notes were "whited out" or covered up before faxing.

6

HB 000006

Bates No. 4639

> As set out in footnote 2 and accompanying text, *supra*, the government noted at As previously shown, the top of at least one juror questionnaire that the juror was a "B/F." Why? The government ought to be required to explain why, and how often, the race of a potential juror was handwritten by the prosecutor at the top of the prosecutor's copy of that juror's questionnaire. That is best done in the district court. And the government ought to explain to this Court why it submitted six other copies of its juror questionnaires sans page 1 in its Supplemental Joint Appendix.

Supplemental Brief of Appellant, Circuit Case Number 02-20, p. 14 . The government filed a supplemental brief arguing that its handwritten notations were not grounds for a remand. The government's argument that "This Court Should Not Remand for Evidentiary Proceedings" based on its position that noting race and gender on questionnaires was not relevant to step three of *Batson*, Appellee's Supplemental Brief, pp. 17-18, Case No. 02-20, was rejected ten months later when the Circuit Court granted Appellant's Motion to Remand to this Court.

**III. This Court should order a new sentencing proceeding:** The overall pattern of strikes in a side-by -side comparison shows that the Government's stated reasons for their strikes were pretext.

(1) **Ms. Bryson**, an African-American potential juror, stated that her father was in law enforcement and she believed that people in law enforcement were more inclined to be honest than members of the general population. R. 1243. She said "I can't really say I'm for the death penalty or against it." R. 1245. She said she was "a straggler.... sometimes I'm for it; sometimes I'm against it. It's really nothing I've ever considered, you know, am I for it or am I against it." *Id*. She said that she could return a life sentence or the death penalty. R. 1247. The government said the basis for her excusal was that "she was not sure whether she favored abolishing the death penalty; and marked on the questionnaire that she was uncertain about how she felt on the death penalty... called herself a straddler." R. 2296.

<div align="center">7</div>

HB 000007

However, the government did not excuse juror **Edwards**, who is white, and who acknowledged  in her questionnaire "that no matter what the facts or circumstances are, . . .  you would always impose life imprisonment and not consider the potential death penalty as a punishment."  R. 1017.  Ms. Edwards stated, "I think what I was trying to go with there is to say always and never, you know, I don't know.  I think given - - I think I would have to hear the evidence and I think I would go with what the law dictated based on what I heard in a particular case." *Id.*   She also stated:  "Well, I think, as I said on there, I think it's - - I don't think anybody wins.  I think it's a sad situation for both sides.  I think if the situation warrants it beyond a shadow of a doubt in my mind and that's what the law allows in that case, I think I could impose it." *Id.*

And the government did not excuse white juror **Deana Stanford**.  In her answers on her questionnaire, Stanford said that she was not sure if she favored abolishing the death penalty, she was uncertain how she felt about the death penalty, and she left completely blank "what is your personal view about the death penalty?"  (2d Supp. J.A. 23 - 25).  Indeed, the government's copy of the questionnaire, made available for the court here, has that large "completely blank" space on the questionnaire circled because the government wanted to ask about it.  (*Id.* at 25.).  During voir dire the following exchanges occurred:

Would you please tell us your opinions on the death penalty?

A. I think in certain circumstances that it's probably warranted.

Q. However, you did note you don't feel strongly *at all* about it.  Would you tell us what has helped to formulate your opinions on the death penalty?

......

A.  I think what I meant is I don't feel a definite one way.  I think it would depend on the case.

8

HB 000008

Q. You said - - You did check here, "*I am uncertain* how I feel about the death penalty."

A. I think I was responding to uncertain whether I'm a solid - - *I'm not solid one way or the other*.

Q. Can you keep - - equally and fairly can you keep both punishments or penalties in your consideration?

A. Yeah.  Oh, yeah.

R. 1962 (emphasis added).

The government's actions with respect to jurors Stanford and Edwards--white, unexcused, jurors--when compared, side by side, with its actions with respect to excused, African-American potential juror Bryson–and with the following four other excused African-American potential jurors–reveal the government's race-neutral explanations to have been pretext. *Miller-El II*, 125 S.Ct at 2330 ("The fact that [the prosecutor's] reason also applied to these other panel members, most of them white, none of them struck, is evidence of pretext.").

(2) **Regina Sanders**, an African-American,  stated that she could impose the death penalty "depending on the case, it could be applied in one case and not applied in another."  R. 891.  She stated that in some cases the death penalty is applied "unfairly" based upon "socioeconomic backgrounds, certain race, certain age."  R. 893.  She did not say that she was opposed to the death penalty, and she said she would follow the law with an open mind.  R. 894. The government excused her, saying it was because of her belief that the death penalty is sometimes imposed unfairly and because the juror "was not sure she could be fair."  R. 2299.  In fact, Ms. Sanders said that she would be fair and keep an open mind, in direct response to the government's question.  R. 893.

(3) **Debra Moore**, an African-American, stated that "I don't have an opinion about" the

9

death penalty.  R. 1919.  She said her religion says that God, not people, determines life and death, but that "I don't think my religion would have any bearing on that."  R. 1921.  She was thoughtful in her responses, pausing, but she said that the parties were on an equal playing field and she would "fairly consider both potential penalties."  R. 1922.  The government excused this juror, stating she "hesitated" in answering the question of whether the parties would start on a level playing field, and that Moore had said that she did not know whether she would go against her religion.  R. 2306-07.[4]  Pausing before answering a question is being no more hesitant than saying, as not-excused Deana Stanford did:  "*I am uncertain* how I feel about the death penalty;" and "*I'm not solid one way or the other*."  R. 1962.

(4)  **Karen Sanders**, an African-American, stated that she was "kind of torn between the death penalty.  Just kind of depends, I guess, really on the case and just hearing the details and

---

[4]In fact, the actual exchange was:

Q.  Would you be able to go against your religion?

A.  I would be willing to listen to the facts, whatever is presented, and make a decision based on that.

Q.  What –

A.  I – I don't know.

Q.  What if the facts went a way that went against your religion?

A.  I'm sorry, what did you say?

Q.  What if the facts were in opposition given your position, given your religion, what then?

A.  I don't think my religion would have any bearing on that.

R. 1920-21.

10

HB 000010

Bates No. 4643

more information about it." R. 1075. "I don't really have a strong yes for death penalty and I don't have a strong no for the death penalty. It just depends on the situation." R. 1076. She said she had misunderstood the juror questionnaire, and that she would not always vote for life imprisonment. R. 1078. She considered herself to be conservative politically and stated that she would give equal consideration to either sentence. R. 1076 -78. Her answers were substantially similar to Juror Stanford's and Edwards'. However, the government stated that she was excused because of her hesitancy and uncertainty about the death penalty. R. 2319.

(5) **Mr. Blakeney**, an African-American, stated that he had not really thought much about the death penalty, that he did not strongly support it, and that he felt a little uncomfortable because "I don't want, you know, to sentence nobody to death," but that he would if the law and the facts required it. J.A. 1152b. The Government excused him, again because of hesitancy, but also because he had said he did not want to sentence anybody to death. But, it is to be hoped, *few* jurors *want* to sentence a person to death.

The government used five strikes to remove black jurors who said roughly the same thing that retained white jurors said, a "pattern" that *Batson* prohibits. Surely (1) the number of strikes[5] + (2) identical reasons + (3) side-by-side comparative juror analysis + *(4) hand-noting the race of jurors on questionnaires* when the face of the questionnaire already showed race, undermine the government's credibility at step three of *Batson*. "The whole of the voir dire testimony subject to consideration casts the prosecution's reasons for striking [these potential jurors] in an implausible light." *Miller-El II*, 545 U.S. at 252. "[W]hen th[e] evidence . . . is viewed cumulatively its direction is too powerful to conclude anything but discrimination."

---

[5]Removing 5 qualified black females ("B/F") has probative value because it is unlikely to occur by "happenstance." *Miller El II*, 545 U.S. at 240 (quoting *Miller-El I).*

11

HB 000011

Bates No. 4644

*Miller-El II*, 545 U.S. at 265.  The government's stated reasons were pretext, and Defendant is entitled to a capital sentencing before a new, constitutionally impaneled, jury.

**IV.  In the Alternative, the Court Should Unseal and Provide Counsel With All Juror Questionnaires, and Order the Government to Provide All *Brady* Evidence Bearing on the *Miller-El II* Issues, and Then Conduct a *Miller-El II* Hearing**

a.  In answer to the question posed in this Court's November 30, 2007, Order, *any* direct or circumstantial evidence that the government's stated reasons for excusing qualified African-American jurors were pretextual must be considered by this Court at step three of *Batson*.[6]

b.  One important source of pretext can be revealed by the Court and counsel learning the answers by jurors on their questionnaires and then comparing how jurors who answered the same

---

[6]This Court also asked the parties to address "the effect, if any, of waiver, *see e.g. Davis v. Baltimore Gas & Elec. Co.*, 160 F.3d 1023, 1027 (4th Cir. 1998)."  DN 634, p. 3.  In *Davis*, the Court found that once a party "offer[s] a legitimate reason for exercising the strikes" if there is "no further comment on the matter" then there is "a waiver of the initial objection."  160 F.3d at 1027.  This understanding of the matter was later repeated in *Kandies v. Polk*, 385 F.3d 457, 474 (4th Cir. 2004), in Judge Gregory's separate opinion in which he wrote that "[h]aving failed to argue that the State's proffered reasons were pretextual, Kandies waived his *Batson* challenge and thus I review it for plain error," citing *Davis*.  This understanding did not compel a majority in *Kandies* – Judges Michael and Traxler affirmed the denial of relief on the merits, not invoking plain error analysis.  *Kandies* was, like Defendant's case, reversed and remanded in light of *Miller-El II*, and, like this case, the Circuit Court remanded to the district court, the Middle District of North Carolina.  The Magistrate Judge in *Kandies* has ordered discovery on the *Batson* claim, including depositions of the prosecutor.  *See Kandies v. Polk*, No. 1:99CV00764.

*Davis*, and Judge Gregory's separate opinion in *Kandies*,  do not square with *Miller-El II*.  It is what is before the trial court judge at step three, not what is said about it by counsel, that matters.  "There can be no question that the transcript of voir dire, recording the evidence on which Miller-El bases his arguments and on which we base our result, was before the state court...."  *Miller-El*, 545 U.S. at 241, n2.  Similarly, this Court was present for all of voir dire and was aware of what transpired.

In any event, the defense in this case *did* object to the reasons given by the prosecution and complained about the cumulative nature of the strikes.  Perhaps as a consequence of all of these factors, the government did not argue that the defendant had waived anything in its brief on remand in light of *Miller-El II* in the Circuit Court.

12

HB 000012

way were asked different questions during voir dire based upon their race. *Miller-El*, 545 U.S. at 256-57. Counsel for Defendant does not have copies of the questionnaires and his memory is that the Court collected them at the end of voir dire. However, the government appears to have copies. Defendant requests that the Court determine whether it is possible to provide copies to counsel for Defendant.

      c. Another important source of information is evidence possessed by the government. Evidence of pretext cannot go unrevealed by the government, neither negligently nor intentionally, *see Brady v. Maryland*, 373 U.S. 83 (1963), and the government may not cast their true reasons for actions in a false light. *Napue v. Illinois*, 360 U.S. 264 (1959). It is incumbent under *Miller-El II* and *Brady* that the government reveal any evidence that this Court should consider at step three of the *Batson* inquiry. As an initial manner, Defendant requests that the Court require the government provide the following information:

      1. Complete and unexpurgated copies of the government's copies of juror questionnaires in this case, including all notations regarding the race/gender of the jurors. *See Miller-El*, 545 U.S. at 266 (prosecutor's notes on juror cards);[7]

      2. Complete and unexpurgated copies of any notes, memoranda, and recordings of any kind made by the government in preparation for or during voir dire in this case;

      3. Complete and unexpurgated copies of the government's copies of jury questionnaires with any notes placed thereon in preparation for (or during voir dire) conducted or to be conducted by prosecutors Anne M. Tompkins, Esq., and Jill Westmoreland Rose, Esq., in any and all other cases in which they have participated or are participating as prosecutors;

----

[7]*See* footnote 3, and accompanying text, *supra.*.

13

HB 000013

Bates No. 4646

4.  Any evidence that the United States Attorney's Office for the Western District of North Carolina provides training and instruction, formal or informal, either written, oral, or by electronic means, regarding jury selection to the attorneys in the office.  If the answer is yes, the government should be required to provide a description of this training and instruction, including topics, speakers, modes of presentations, and dates. *Id.* (the Sparling Manual);

5.  Whether the United States Attorney's Office for the Western District of North Carolina, or any of its attorneys, has or ever has had a training guide, manual, chapter, videotape, audiotape, or other training material regarding jury selection.  If yes, then the government should be required to provide all such material to Defendant.  *Id.*

6.   While prosecuting cases, have Anne M. Tompkins', Esq., and/or Jill Westmoreland Rose's, Esq., jury selection practices regarding peremptory challenges been the subject of a challenge under *Batson v. Kentucky* and its progeny?   If the answer is yes, the government should be required to provide the case name, number, and result of the challenges.

7.  Have Anne M. Tompkins, Esq., and/or Jill Westmoreland Rose, Esq., ever presented lectures or speeches, or participated on a panel, or written articles or papers or guides, regarding jury selection in criminal cases?  If yes, then the government should provide the title, forum, and dates for these activities, and copies of such articles, papers, or guides.

## V.  Conclusion

The defendant respectfully requests that this Court Order a new sentencing proceeding. In the alternative, Defendant respectfully requests that the Court require that the information sought herein be provided to counsel for Defendant and that the Court conduct an evidentiary

14

hearing pursuant to the remand from the Circuit Court.

This the 2nd day of January, 2008.

<div style="margin-left:45%">

s/Harold J. Bender
Harold J. Bender Bar Number: 0295
Attorney for Defendant
Law Office of Harold J. Bender
200 N. McDowell Street
Charlotte, NC 28204
Telephone: (704) 333-2169
Fax: (704) 333-0837
hjblaw@bellsouth.net

</div>

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above DEFENDANT'S BRIEF has been duly served on the attorney listed below by email service through ECF on this 2nd day of January, 2008.

<div style="text-align:center">15</div>

HB 000015

Bates No. 4648

Jill Rose
Assistant District Attorney
Room 223
100 Otis Street
Asheville, NC 28801

16

HB 000016

Bates No. 4049

IN THE UNITES STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA,
CHARLOTTE DIVISION

UNITED STATES OF AMERICA

vs.                                                    No.  3:97CR-23

AQUILA MARCIVICCI BARNETTE,

    Defendant

_____/

DEFENDANT'S BRIEF ON WHAT THIS COURT SHOULD
CONSIDER UNDER *MILLER-EL V. DRETKE*, 545 U.S. 231 (2005)

Comes the Defendant, Aquila Marcivicci Barnette, by and through appointed counsel,

and, pursuant to this Court's Order of November 30, 2007, presents the following brief on this

Court's questions, to-wit: "Barnette shall file a brief with the Court stating how the Court should

proceed in this matter, identifying the evidence that the Court can and should consider, and

addressing the effect, if any, of waiver, *see e.g. Davis v. Baltimore Gas & Elec. Co*., 160 F.3d

1023, 1027 (4th Cir. 1998)."   DN 634, p. 3.

I.  **INTRODUCTION**:   A *Batson* challenge sparks a three step inquiry.   *Rice v. Collins*,

126 S.Ct. 969, 973 (2006).  "First, the trial court must determine whether the defendant has made

a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.

If so, then the burden shifts to the prosecutor to present a race-neutral explanation for striking the

juror in question." *Id*. (citations omitted).  Third, the trial court must "assess the plausibility of

that reason in light of all of the evidence with a bearing on it."  *Miller El v. Dretke,* 545 U.S. 231,

252 (2005)(*Miller-El II*).  This final step involves evaluating the "'persuasiveness of the

Bates No. 4050

justification' proffered by the prosecutor ...." *Rice,* 126 S.Ct at 974 (*quoting Purkett v. Elem*, 514 U.S. 765, 768 (1995)(per curiam)).  As this Court noted in its November 30, 2007, Order, "only the third prong of the *Batson* test – whether there was purposeful discrimination on the part of the prosecutor – is before this Court on remand."  DN 634, p. 2.

**II.  The *Batson* Challenges**:  During voir dire in this case, 12 previously qualified potential jurors were placed in the jury box. The government exercised its first set of peremptory challenges.  Five jurors were struck, two of whom were African American women, Carla Bryson and Regina Sanders.    Defense counsel objected under *Batson*, arguing that "their answers were no different than anyone else" (R. 2254), and asked for the Court to conduct comparative juror analysis.  The government gave what on its face was a race-neutral basis for the strikes, and this Court held that "in both of these cases the government has made a race neutral explanation." R. 2299.  The credibility of the government's explanation was not expressly addressed.   These five jurors were replaced, whereupon the government exercised a peremptory challenge to Debra Moore, another African American female.  Defense counsel made a *Batson* challenge and argued that the government had with its first six challenges excused three African Americans.  (R. 2305) The government gave what on its face was a race-neutral explanation, and this Court found "that to be a race neutral explanation."  R. 2307.  The credibility of the government's explanation was not addressed.   When it was the government's turn to strike again, it struck three persons, among them David Miller (an African-American male) and Karen Sanders (an African American female).  Defense counsel challenged the strike of Ms. Sanders, the government gave an on-its-face  race-neutral explanation, defense counsel argued that cumulatively the government had exercised five of nine strikes against African Americans, and this Court held that the government

Bates No. 4651

"explanation is race neutral."  R. 2319.   The credibility of the government's explanation was not addressed.   The next opportunity for the government to exercise a strike resulted in the dismissal of African-American juror Mark Blakeney.  A *Batson* challenge was made, the government offered an explanation, and this Court found that "a race neutral explanation has been presented." R. 2323.  This Court also stated that "even when one considers the overall pattern of strikes of the government" no racial purpose was shown.  R. 2324.   Again, this  Court did not expressly consider whether the government's explanations were credible in light of the record as a whole.

### III.  The Fourth Circuit's Remand

*A.  The Appeal*:  Barnette raised *Batson* claims on appeal.  He argued, *inter alia*, that a comparison of the voir dire answers given by African-American jurors who were, with white jurors who were not,  peremptorily struck by the Government, showed that the reasons provided by the government for peremptorily striking African-Americans were pretext.   Based upon Fourth Circuit precedent that "'*Batson* is not violated whenever two veniremen of different races provide the same responses and one is excluded and the other is not,'" *United States v. Barnette*, 390 F.3d 775, 796 (4th Cir. 2004)(quoting *Matthews v. Evatt*, 105 F.3d 907, 918 (4th Cir. 1997)), the Circuit Court did not expressly consider side-by side juror comparisons.  Rather, like this Court, upon determining that the prosecutor  had given a facially race-neutral reason,  *id.*, 390 F.3d at 795 - 797, the Circuit Court found no *Batson* violation.

*B.  Miller-El II and the Supreme Court's remand to the Circuit Court*:  Appellant filed a petition for writ of certiorari in the United States Supreme Court before *Miller-El II* was decided. That petition was pending when the Court issued its opinion in *Miller-El II*.  In *Miller-El II*, the Supreme Court held that step three of *Batson*, the step at which the Court must assess "'the

Bates No. 4652

totality of the relevant facts'" in determining the prosecutor's intent in striking black prospective jurors, *Miller-El II*, 545 U.S. at 239 (quoting *Batson*, 476 U.S., at 94), involves a penetrating court inquiry. To answer this Court's question in its November 30, 2007, Order, under *Miller-El II* this Court must "assess the plausibility" of the prosecutors' stated reasons for strikes "in light of all of the evidence bearing on it." 545 U.S. at 242 This includes: the percentages of black and white venirepersons peremptorily struck by the prosecution, 545 U.S. at 241; the characteristics, other than race, of blacks the prosecution struck and of whites the prosecution did not challenge, *id.*; the ways in which the prosecutor questioned black and white venirepersons, *i.e.*, whether they were asked different questions, *id.*, 545 U.S. at 255-264; and the reasons given by the prosecutor for the strikes of blacks, and the extent to which the record supports those reasons.

The Supreme Court also held in *Miller-El II* that the best evidence of what was on the prosecutor's minds when exercising peremptory strikes, "an undeniable explanation of what was going on," *Miller-El II*, 545 U.S. at 266, would be their own handwritten notes on their copies of the juror questionnaires or cards. "Prosecutors here 'marked the race of each prospective juror on their juror cards.'" *Id.*, 545 U.S. at 264 (citation omitted). "[T]he prosecutor's own notes" illustrate that "emphasis on race was on their minds as they considered each potential juror." *Id.*, 545 U.S. at 266.

Given the *Miller-El II* decision, Barnette filed a supplemental petition for writ of certiorari, noting that another North Carolina, Fourth Circuit, *Batson* case, *Kandies v. Polk*, 385 F.3d 457 (4th Cir. 2004), had been reversed and remanded in light of *Miller-El II*. *See Kandies v. Polk*, 125 S.Ct. 2974 (2005). Barnette argued that the circuit precedent relied upon in *Kandies*

Bates No. 4653

and in his own case conflicted with *Miller-El II* in many ways.  Thereafter, the Supreme Court reversed the Circuit Court decision herein and remanded the case in light of *Miller-El II*, just as it had done in *Kandies*.[1]

C.  *Motion to Remand to District Court, and the Fourth Circuit's Ultimate Remand*

1.  Motion for remand:  Upon the Supreme Court's remand of this case to the Circuit Court, counsel for Appellant filed a motion asking that the case be remanded immediately to this Court for determination of the *Miller-El II* issue.[2]  The government opposed this motion, but agreed to additional briefing in the Circuit Court.  The Circuit Court ordered additional briefing but deferred action on the request for remand and oral argument.

2.  Briefing – the matter of the prosecutor's race notations and remand order:  In his brief on remand in the Circuit Court, Appellant first brought to the Circuit Court's attention that the prosecutors in the trial court had hand-noted the race and gender of the jurors on at least one and presumably all of the juror questionnaires:

Every potential juror at Appellant's re-sentencing filled out a 129-question juror

[1] *Kandies* involves a 28 USC § 2254 action, not a direct appeal.

[2] Appellant asserted that:

> *Miller-El II*  demonstrated that a careful and searching review of the entire record of the case is necessary to proper adjudication of a *Batson* claim.  Indeed, such a review consumed a full twenty-six pages of the majority's slip opinion. *See also Miller-El*, 125 S. Ct. at 2339 ("It is true, of course, that at some points the significance of Miller-El's evidence is open to judgment calls, but when this evidence on the issues raised is viewed cumulatively its direction is too powerful to conclude anything but discrimination.").  The district court is better positioned to undertake this extensive cumulative review in the first instance.

*See* Motion To Remand To The United States District Court For The Western District Of North Carolina For Further Proceedings Or, In The Alternative, To Allow Supplemental Briefing And [Oral] Argument, p. 3, Circuit Docket Number 01-20.

questionnaire well before trial began.  Counsel reviewed those questionnaires in preparation for voir dire, and every potential juror was thanked for and/or quizzed about their written answers.

The prosecutors in this case read the 129 answers from its copies of each juror questionnaire and then handwrote on the top of the first page of at least one of them the most salient information taken from those answers:

**B/F**

for black female.  The prosecutors then systematically and peremptorily removed five, qualified, black females, from juror service.[3]

In the conclusion of his Supplemental Brief, Appellant urged the Circuit Court to require

the prosecutors to explain themselves by remanding the case to this Court:

As set out in footnote 2 and accompanying text, *supra*, the government noted at

[3][footnote in brief in circuit court]:  The government's copy of the questionnaire of juror Betty Campbell is in the government's Supplemental Joint Appendix at 143.  Ms. Campbell checked boxes on page 2 (which is on the back of page 1) indicating that she was a black female.  It is the very first question and answer. The government intentionally wrote on the top of page 1 that which plainly appeared on the back.  A person looking at page 1 would know immediately the race and gender of the juror.

The reason the government's copy of the questionnaire is in its Supplemental Joint Appendix is that trial defense counsel Harold Bender, who is co-counsel on appeal, advises that the court copies of the juror questionnaires were placed under seal in the district court after jury selection.  Because during jury selection every single juror was thanked for or questioned about his or her questionnaire, the questionnaires are pertinent to this appeal.  The government put one complete copy of the questionnaires in its Supplemental Appendix, Ms. Campbell's, who was excused for cause and not peremptorily.  The other six questionnaires included by the government in its Supplemental Appendix (and the two provided by the government and contained in the Second Supplemental Appendix) do not contain page one of the questionnaires. Perhaps that is because the government did not want to duplicate a page, page 1, that is a "form" page.  Perhaps it is because every one of the first pages have the prosecutor's handwritten notation of the race/gender of the potential juror.  Counsel for Appellant requested that the government provide the missing first pages, and the government complied by fax on August 9, 2006.  However, counsel for the government advised undersigned counsel that he would or might edit or cover some  handwritten notes on the pages, ostensibly as claimed work product.  The faxed first pages thereafter received by Appellant's counsel did not have "B/F" or similar notes on them, but it is impossible to determine whether such notes were "whited out" or covered up before faxing.

HB 000022

Bates No. 4055

> As previously shown, the top of at least one juror questionnaire that the juror was a "B/F." Why? The government ought to be required to explain why, and how often, the race of a potential juror was handwritten by the prosecutor at the top of the prosecutor's copy of that juror's questionnaire. That is best done in the district court. And the government ought to explain to this Court why it submitted six other copies of its juror questionnaires sans page 1 in its Supplemental Joint Appendix.

Supplemental Brief of Appellant, Circuit Case Number 02-20, p. 14 . The government filed a supplemental brief arguing that its handwritten notations were not grounds for a remand. The government's argument that "This Court Should Not Remand for Evidentiary Proceedings" based on its position that noting race and gender on questionnaires was not relevant to step three of *Batson*, Appellee's Supplemental Brief, pp. 17-18, Case No. 02-20, was rejected ten months later when the Circuit Court granted Appellant's Motion to Remand to this Court.

**III. This Court should order a new sentencing proceeding:** The overall pattern of strikes in a side-by -side comparison shows that the Government's stated reasons for their strikes were pretext.

(1) **Ms. Bryson**, an African-American potential juror, stated that her father was in law enforcement and she believed that people in law enforcement were more inclined to be honest than members of the general population. R. 1243. She said "I can't really say I'm for the death penalty or against it." R. 1245. She said she was "a straggler.... sometimes I'm for it; sometimes I'm against it. It's really nothing I've ever considered, you know, am I for it or am I against it." *Id.* She said that she could return a life sentence or the death penalty. R. 1247. The government said the basis for her excusal was that "she was not sure whether she favored abolishing the death penalty; and marked on the questionnaire that she was uncertain about how she felt on the death penalty... called herself a straddler." R. 2296.

Bates No. 4656

However, the government did not excuse juror **Edwards**, who is white, and who acknowledged in her questionnaire "that no matter what the facts or circumstances are, . . . you would always impose life imprisonment and not consider the potential death penalty as a punishment." R. 1017. Ms. Edwards stated, "I think what I was trying to go with there is to say always and never, you know, I don't know. I think given - - I think I would have to hear the evidence and I think I would go with what the law dictated based on what I heard in a particular case." *Id.* She also stated: "Well, I think, as I said on there, I think it's - - I don't think anybody wins. I think it's a sad situation for both sides. I think if the situation warrants it beyond a shadow of a doubt in my mind and that's what the law allows in that case, I think I could impose it." *Id.*

And the government did not excuse white juror **Deana Stanford**. In her answers on her questionnaire, Stanford said that she was not sure if she favored abolishing the death penalty, she was uncertain how she felt about the death penalty, and she left completely blank "what is your personal view about the death penalty?" (2d Supp. J.A. 23 - 25). Indeed, the government's copy of the questionnaire, made available for the court here, has that large "completely blank" space on the questionnaire circled because the government wanted to ask about it. (*Id.* at 25.). During voir dire the following exchanges occurred:

Would you please tell us your opinions on the death penalty?

A. I think in certain circumstances that it's probably warranted.

Q. However, you did note you don't feel strongly *at all* about it. Would you tell us what has helped to formulate your opinions on the death penalty?
......

A. I think what I meant is I don't feel a definite one way. I think it would depend on the case.

Bates No. 4657

Q. You said - - You did check here, "*I am uncertain* how I feel about the death penalty."

A. I think I was responding to uncertain whether I'm a solid - - *I'm not solid one way or the other*.

Q. Can you keep - - equally and fairly can you keep both punishments or penalties in your consideration?

A. Yeah.  Oh, yeah.

R. 1962 (emphasis added).

The government's actions with respect  to jurors Stanford and Edwards--white, unexcused, jurors--when compared, side by side, with its actions with respect  to excused, African-American potential juror Bryson–and with the following four other excused African-American potential jurors–reveal the government's race-neutral explanations to have been pretext.  *Miller-El II*, 125 S.Ct at 2330 ("The fact that [the prosecutor's] reason also applied to these other panel members, most of them white, none of them struck, is evidence of pretext.").

(2)  **Regina Sanders**, an African-American,  stated that she could impose the death penalty "depending on the case, it could be applied in one case and not applied in another."  R. 891.  She stated that in some cases the death penalty is applied "unfairly" based upon "socioeconomic backgrounds, certain race, certain age."  R. 893.  She did not say that she was opposed to the death penalty, and she said she would follow the law with an open mind.  R. 894.  The government excused her, saying it was because of her belief that the death penalty is sometimes imposed unfairly and because the juror "was not sure she could be fair."  R. 2299.  In fact, Ms. Sanders said that she would be fair and keep an open mind, in direct response to the government's question.  R. 893.

HB 000025

(3) **Debra Moore**, an African-American, stated that "I don't have an opinion about" the death penalty. R. 1919. She said her religion says that God, not people, determines life and death, but that "I don't think my religion would have any bearing on that." R. 1921. She was thoughtful in her responses, pausing, but she said that the parties were on an equal playing field and she would "fairly consider both potential penalties." R. 1922. The government excused this juror, stating she "hesitated" in answering the question of whether the parties would start on a level playing field, and that Moore had said that she did not know whether she would go against her religion. R. 2306-07.[4] Pausing before answering a question is being no more hesitant than saying, as not-excused Deana Stanford did: "*I am uncertain* how I feel about the death penalty;" and "*I'm not solid one way or the other*." R. 1962.

(4) **Karen Sanders**, an African-American, stated that she was "kind of torn between the

[4]In fact, the actual exchange was:

Q. Would you be able to go against your religion?

A. I would be willing to listen to the facts, whatever is presented, and make a decision based on that.

Q. What –

A. I – I don't know.

Q. What if the facts went a way that went against your religion?

A. I'm sorry, what did you say?

Q. What if the facts were in opposition given your position, given your religion, what then?

A. I don't think my religion would have any bearing on that.

R. 1920-21.

HB 000026

death penalty. Just kind of depends, I guess, really on the case and just hearing the details and more information about it." R. 1075. "I don't really have a strong yes for death penalty and I don't have a strong no for the death penalty. It just depends on the situation." R. 1076. She said she had misunderstood the juror questionnaire, and that she would not always vote for life imprisonment. R. 1078. She considered herself to be conservative politically and stated that she would give equal consideration to either sentence. R. 1076 -78. Her answers were substantially similar to Juror Stanford's and Edwards'. However, the government stated that she was excused because of her hesitancy and uncertainty about the death penalty. R. 2319.

(5) **Mr. Blakeney**, an African-American, stated that he had not really thought much about the death penalty, that he did not strongly support it, and that he felt a little uncomfortable because "I don't want, you know, to sentence nobody to death," but that he would if the law and the facts required it. J.A. 1152b. The Government excused him, again because of hesitancy, but also because he had said he did not want to sentence anybody to death. But, it is to be hoped, *few* jurors *want* to sentence a person to death.

The government used five strikes to remove black jurors who said roughly the same thing that retained white jurors said, a "pattern" that *Batson* prohibits. Surely (1) the number of strikes[5] + (2) identical reasons + (3) side-by-side comparative juror analysis + *(4) hand-noting the race of jurors on questionnaires* when the face of the questionnaire already showed race, undermine the government's credibility at step three of *Batson*. "The whole of the voir dire testimony subject to consideration casts the prosecution's reasons for striking [these potential jurors] in an implausible light." *Miller-El II*, 545 U.S. at 252. "[W]hen th[e] evidence . . . is

[5]Removing 5 qualified black females ("B/F") has probative value because it is unlikely to occur

Bates No. 4060

viewed cumulatively its direction is too powerful to conclude anything but discrimination."

*Miller-El II*, 545 U.S. at 265. The government's stated reasons were pretext, and Defendant is

entitled to a capital sentencing before a new, constitutionally impaneled, jury.

### IV. In the Alternative, the Court Should Unseal and Provide Counsel With All Juror Questionnaires, and Order the Government to Provide All *Brady* Evidence Bearing on the *Miller-El II* Issues, and Then Conduct a *Miller-El II* Hearing

a. In answer to the question posed in this Court's November 30, 2007, Order, *any* direct

or circumstantial evidence that the government's stated reasons for excusing qualified African-

American jurors were pretextual must be considered by this Court at step three of *Batson*.[6]

by "happenstance." *Miller El II*, 545 U.S. at 240 (quoting *Miller-El I).*

[6]This Court also asked the parties to address "the effect, if any, of waiver, *see e.g. Davis v. Baltimore Gas & Elec. Co*., 160 F.3d 1023, 1027 (4th Cir. 1998)." DN 634, p. 3. In *Davis*, the Court found that once a party "offer[s] a legitimate reason for exercising the strikes" if there is "no further comment on the matter" then there is "a waiver of the initial objection." 160 F.3d at 1027. This understanding of the matter was later repeated in *Kandies v. Polk*, 385 F.3d 457, 474 (4th Cir. 2004), in Judge Gregory's separate opinion in which he wrote that "[h]aving failed to argue that the State's proffered reasons were pretextual, Kandies waived his *Batson* challenge and thus I review it for plain error," citing *Davis*. This understanding did not compel a majority in *Kandies* – Judges Michael and Traxler affirmed the denial of relief on the merits, not invoking plain error analysis. *Kandies* was, like Defendant's case, reversed and remanded in light of *Miller-El II*, and, like this case, the Circuit Court remanded to the district court, the Middle District of North Carolina. The Magistrate Judge in *Kandies* has ordered discovery on the *Batson* claim, including depositions of the prosecutor. *See Kandies v. Polk*, No. 1:99CV00764.

*Davis*, and Judge Gregory's separate opinion in *Kandies*, do not square with *Miller-El II*. It is what is before the trial court judge at step three, not what is said about it by counsel, that matters. "There can be no question that the transcript of voir dire, recording the evidence on which Miller-El bases his arguments and on which we base our result, was before the state court...." *Miller-El*, 545 U.S. at 241, n2. Similarly, this Court was present for all of voir dire and was aware of what transpired.

In any event, the defense in this case *did* object to the reasons given by the prosecution and complained about the cumulative nature of the strikes. Perhaps as a consequence of all of these factors, the government did not argue that the defendant had waived anything in its brief on remand in light of *Miller-El II* in the Circuit Court.

HB 000028

b.  One important source of pretext can be revealed by the Court and counsel learning the answers by jurors on their questionnaires and then comparing how jurors who answered the same way were asked different questions during voir dire based upon their race.  *Miller-El*, 545 U.S. at 256-57. Counsel for Defendant does not have copies of the questionnaires and his memory is that the Court collected them at the end of voir dire.  However, the government appears to have copies.  Defendant requests that the Court determine whether it is possible to provide copies to counsel for Defendant.

c.  Another important source of information is evidence possessed by the government. Evidence of pretext cannot go unrevealed by the government, neither negligently nor intentionally, *see Brady v. Maryland*, 373 U.S. 83 (1963), and the government may not cast their true reasons for actions in a false light.  *Napue v. Illinois*, 360 U.S. 264 (1959).  It is incumbent under *Miller-El II* and *Brady* that the government reveal any evidence that this Court should consider at step three of the *Batson* inquiry.  As an initial manner, Defendant requests that the Court require the government provide the following information:

1.  Complete and unexpurgated copies of the government's copies of juror questionnaires in this case, including all notations regarding the race/gender of the jurors.  *See Miller-El*, 545 U.S. at 266 (prosecutor's notes on juror cards);[7]

2.  Complete and unexpurgated copies of any notes, memoranda, and recordings of any kind made by the government in preparation for or during voir dire in this case;

3.  Complete and unexpurgated copies of the government's copies of jury questionnaires with any notes placed thereon in preparation for (or during voir dire) conducted or

---

[7]*See* footnote 3, and accompanying text, *supra.*.

HB 000029

to be conducted by prosecutors Anne M. Tompkins, Esq., and Jill Westmoreland Rose, Esq., in any and all other cases in which they have participated or are participating as prosecutors;

4. Any evidence that the United States Attorney's Office for the Western District of North Carolina provides training and instruction, formal or informal, either written, oral, or by electronic means, regarding jury selection to the attorneys in the office. If the answer is yes, the government should be required to provide a description of this training and instruction, including topics, speakers, modes of presentations, and dates. *Id.* (the Sparling Manual);

5. Whether the United States Attorney's Office for the Western District of North Carolina, or any of its attorneys, has or ever has had a training guide, manual, chapter, videotape, audiotape, or other training material regarding jury selection. If yes, then the government should be required to provide all such material to Defendant. *Id.*

6. While prosecuting cases, have Anne M. Tompkins', Esq., and/or Jill Westmoreland Rose's, Esq., jury selection practices regarding peremptory challenges been the subject of a challenge under *Batson v. Kentucky* and its progeny? If the answer is yes, the government should be required to provide the case name, number, and result of the challenges.

7. Have Anne M. Tompkins, Esq., and/or Jill Westmoreland Rose, Esq., ever presented lectures or speeches, or participated on a panel, or written articles or papers or guides, regarding jury selection in criminal cases? If yes, then the government should provide the title, forum, and dates for these activities, and copies of such articles, papers, or guides.

## V. Conclusion

The defendant respectfully requests that this Court Order a new sentencing proceeding.

In the alternative, Defendant respectfully requests that the Court require that the information

sought herein be provided to counsel for Defendant and that the Court conduct an evidentiary

hearing pursuant to the remand from the Circuit Court.


This the 2nd day of January, 2008.


<div style="margin-left: 40%;">

s/Harold J. Bender
Harold J. Bender Bar Number: 0295
Attorney for Defendant
Law Office of Harold J. Bender
200 N. McDowell Street
Charlotte, NC 28204
Telephone: (704) 333-2169
Fax: (704) 333-0837
hjblaw@bellsouth.net

</div>

HB 000031

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above DEFENDANT'S BRIEF has been duly served on the attorney listed below by email service through ECF on this 2nd day of January, 2008.

Jill Rose
Assistant District Attorney
Room 223
100 Otis Street
Asheville, NC 28801

HB 000032

Bates No. 4065

April 15, 2008


Aquilia Marcivicci Barnette
12599-058
P.O. Box 12015
Terre Haute, IN  47801


Dear Mark:

I am enclosing an Order from Judge Voorhees concerning our latest efforts to get you a new trial.  The Order sets forth all of the filings that have been made on your behalf.  I think this is going to show how the government acted during jury selection, thus a new trial.

I hope all is going well for you or as good as you can expect under the circumstances.  Please let me hear from you.  I still plan to visit soon.


Very truly yours,



Harold J. Bender


Enc.

HJB/mc

HB 000035

Bates No. 4066

HB 000036

*A. Barnette*
Name

*12599-058*
Reg. No.

~~Federal Prison Camp~~
~~P.O. Box 10014~~
~~Terre Haute, IN 47801~~

☑ *Federal Correctional ~~Institution~~ Complex*
*P.O. Box 33*
*Terre Haute, IN 47808*

~~U.S. Penitentiary~~
~~P.O. Box 12015~~
~~Terre Haute, IN 47801~~

**INMATE
IDENTIFICATION
CONFIRMED**

*Legal Mail*

*Special Mail*

2820442213-00 C004

TERRE HAUTE IN 478

19 OCT 2007 PM 1 L



41

*Harold J. Bender
— Attorney at Law —
200 N. McDowell St.
Charlotte, N.C.
28204*

Case 3:12-cv-00327-MOC   Document 76-4768   Filed 12/22/14   Page 73 of 100

HB 000041

# United States Court of Appeals
## for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Expenses

Page 1 of 1

Case Number 02-2

| Date | Brief Explanation of Expenses | Travel | Lodging | Meals | Other Travel Expenses | Copying | Postage | Toll Calls | Other Misc. Expenses |
|------|-------------------------------|--------|---------|-------|-----------------------|---------|---------|-----------|----------------------|
| 09/22/03 | Taxi Service | | | | | | | | 17.5 |
| 09/23/03 | Taxi | | | | | | | | 17.5 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | 35.0 |
| | PAGE TOTAL | | | | | | | | |

Case 3:12-cv-00327-MOC   Document 76-4769   Filed 12/22/14   Page 74 of 100

HB 000042

## United States Court of Appeals
## for the Fourth Circuit
### Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page 1 of ____

Case Number 02-2

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/12/02 | Prepared and filed Notice of Appeal | | | | | | | | | |
| 1.05 | | | | | | | | | | |
| 09/24/02 | tc with 4th Circuit | | .60 | | | | | | | |
| 09/26/02 | tc Clients Family | | .55 | | | | | | | |
| 09/30/02 | Conference with Lawson | | .85 | | | | | | | |
| 10/07/02 | tc with Lawson. | | .55 | | | | | | | |
| 10/07/02 | Prepare Docketing Statement | | | | | | | | | |
| 10/08/02 | tc with Clients Family | | .45 | | | | | | | |
| 1.40 | | | | | | | | | | |
| 10/11/02 | tc with Client | | .70 | | | | | | | |
| 10/28/02 | tc Lawson | | .80 | | | | | | | |
| 10/28/02 | tc with Federal Death Penalty Ct | | .45 | | | | | | | |
| | | | . | | | | | | | |
| 10/29/02 | tc with Federal Death Penalty Ct | | .65 | | | | | | | |
| 10/29/02 | prepare Motion to Extend | | | | | | | | | |
| 1.30 | | | | . | | . | | | | |
| 11/05/02 | Review Transcripts | | | | | | | | | |
| 1.90 | | | | | | | | | | |
| 11/06/02 | tc with Federal Capital Defender | | .55 | | | | | | | |
| 11/07/02 | Review Transcripts | | | | | | | | | |
| | | | | | | | | | | |
| **PAGE TOTAL** | | 9.00 | -0- | -0- | -0- | 3.95 | -0- | -0- | -0- |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.

4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.

7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 76-4670   Filed 12/22/14   Page 75 of 100

HB 000043

# United States Court of Appeals
## for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page __2__ of __6__

Case Number __02-2__

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/13/02 | Review Transcripts | | | | | | 2.30 | | | |
| 11/13/02 | tc with Co Counsel | | .55 | | | | | | | |
| 11/14/02 | tc with Federal Capital Defender | | .45 | | | | | | | |
| 11/26/02 | Review Transcripts | | | | | | 3.40 | | | |
| 12/03/02 | ltr to M | | | | | | | | | |
| 12/06/02 | Review Transcripts | | | | | | | | .-- | |
| 4.20 | | | | | | | | | | |
| 12/10/02 | Review Transcripts | | | | | | | | | |
| 2.30 | | | | | | | | | | |
| 12/17/02 | Legal Research | | .5 | | | | | | 2.35 | |
| 12/19/02 | tc with M. Olive | | 7.0 | | | | | | | |
| 12/19/02 | Obtain Documents | | | | | | 2.35 | | | |
| 12/20/02 | Mailed | | | | | | | | | |
| Documents | | | | | | | | | .55 | |
| 12/27/02 | ltr to | | | | | | | | | |
| Client | | | | | | | | | .35 | |
| 01/06/03 | tc with M. Olive | | 55 | | | | | | | |
| 01/13/03 | tc with M. Olive | | 55 | | | | | | | |
| | **PAGE TOTAL** | 4.10 | -0- | -0- | .30 | 16 40 | | -0- | 2 35 | -0- |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.
4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.
7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 76-4671   Filed 12/22/14   Page 76 of 100

HB 000044

| | United States Court of Appeals for the Fourth Circuit | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services | Page 3 of ___   Case Number 02-2 | | | | | | | | |
| **Date** | **Brief Description of Services** | 15(b)¹ | 15(c)² | 15(d)³ | 15(e)⁴ | 15(f)⁵ | 15(g)⁶ | 15(h)⁷ | 15(i)⁸ | 15(j)⁹ |
| 05/08/03 | tc with AUSA | | | | | | | | | |
| Rose | .40 | | | | | | | | | |
| 05/08/03 | tc with M. | | | | | | | | | |
| Olive | .55 | | | | | | | | | |
| 05/09/03 | tc with | | | | | | | | | |
| --- | --- | | | | | | | | | |
| 05/15/03 | tc with M. Olive | | .45 | | | | | | | |
| 06/04/03 | Preparing Motions | | | | | | | | | |
| 06/06/03 | Review and Gather Records | | | | | | | | | |
| 2.70 | | | | | | | | | | |
| 06/09/03 | tc with M. Olive | | .60 | | | | | | | |
| 06/09/03 | Obtained Records | | | | | | | | | |
| 06/12/03 | tc M. Olive | | .35 | | | | | | | |
| 09/08/03 | ltr to M. | | | | | | | | | |
| Olive | | | | | | | | | .45 | |
| 09/09/03 | Draft Motions | | | | | | | | | |
| 09/22/03 | tc with 4th Circuit | | 45 | | | | | | | |
| 09/22/03 | tc with Fed. Travel | | 50 | | | | | | | |
| 09/22/03 | Travel to Richmond | | | | | | | | | |
| **PAGE TOTAL** | | 5.05 | -0- | -0- | 4.40 | 1.65 | -0- | -0- | | .60 |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.
4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.
7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 76-4672   Filed 12/22/14   Page 77 of 100

HB 000045

## United States Court of Appeals
## for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page 4 of ___

Case Number 02-2 ___

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/22/03 | Review Briefs | | | | | | 1.85 | | | |
| 09/23/03 | Court Argument | | | | | | | | | |
| 1.50 | | | | | | | | | | |
| 09/23/03 | Conference with M. Olive | 1.30 | | | | | | | | |
| 09/23/03 | Travel to Charlotte | | | | | | | | | |
| 1.55 | | | | | | | | | | |
| 01/11/04 | lt to | | | | | | | | | |
| Client | | | | | | | | | .30 | |
| 02/17/04 | Review Olive Draft | | | | | | .55 | | | |
| 07/01/04 | Review Gov't Supplemental Filing | | | | | | 1.25 | | | |
| 12/08/04 | Review 4th Cir Opinion | | | | | 1.45 | | | | |
| 12/08/04 | lt to | | | | | | | | | |
| Client | | | | | | | | | .40 | |
| 01/04/05 | Review Rehearing Petition | | | | | | 1.70 | | | |
| 12/12/04 | Conference with Family re Rehearing | .90 | | | | | | | | |
| 01/19/05 | Review Order | | | | | .35 | | | | |
| 01/19/05 | tc with M Olive | | .40 | | | | | | | |
| 01/19/05 | lt to | | | | | | | | | |
| 06/02/05 | Review Petition Certi | | | | | | | | .30 | |
| **PAGE TOTAL** | | 4.55 | -0- | -0- | 1.80 | 6.65 | | -0- | -0- | .55 |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.

4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.

7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 6-46   Filed 12/22/14   Page 78 of 100

HB 000046

## United States Court of Appeals
### for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page 5 of ____

Case Number 02

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/28/05 | Review Government Brief | | | | | | | | | |
| 11/02/05 | Review Motion to | | | | | | | | | |
| Remand | | | | | | | | | | |
| 11/07/05 | Conference with Clients | | | | | | | | | |
| Family          or | | | | | | | | | | |
| 12/15/05 | Conference with | | | | | | | | | |
| 08/01/06 | tc with M. | | | | | | | | | |
| 08/07/06 | tc with M. | | | | | | | | | |
| Olive | | | .40 | | | | | | | |
| 08/07/06 | tc with Former Attorney | | | | | | | | | |
| Lawson | .45 | | | | | | | | | |
| 02/12/07 | lt to Client | | | | | | | | | |
| | PAGE TOTAL | 5.85 | | -0- | -0- | | | 1.45 | 6.25 | |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.
4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.
7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

.25

Case 3:12-cv-00327-MOC    Document 76-4674    Filed 12/22/14    Page 79 of 100

HB 000047

## United States Court of Appeals
## for the Fourth Circuit
#### Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page 6 of ____

Case Number 02-2

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/20/07 | tc with Clients Family | | .30 | | | | | | | |
| 08/28/07 | Review | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | PAGE TOTAL | | .30 | | | | | | | |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.
4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.
7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 6-4   Filed 12/22/14   Page 80 of 100

HB 000048

## United States Court of Appeals
## for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page _____ of _____

Case Number _____

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|------|------------------------------|----------|----------|----------|----------|----------|----------|----------|----------|----------|
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  | PAGE TOTAL |  |  |  |  |  |  |  |  |  |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.

4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.

7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 76-4676   Filed 12/22/14   Page 81 of 100

HB 000049

## United States Court of Appeals
## for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page _____ of _____

Case Number _____

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  | PAGE TOTAL |  |  |  |  |  |  |  |  |  |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.

4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.

7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 6-4677   Filed 12/22/14   Page 82 of 100

HB 000050

## United States Court of Appeals
## for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page _____ of _____

Case Number _____

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|------|------------------------------|----------|----------|----------|----------|----------|----------|----------|----------|----------|
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  | PAGE TOTAL |  |  |  |  |  |  |  |  |  |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.
4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.
7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

Case 3:12-cv-00327-MOC   Document 76-46   Filed 12/22/14   Page 83 of 100

HB 000051

## United States Court of Appeals
## for the Fourth Circuit
Court-Appointed Counsel Worksheet for Death Penalty Proceedings - Services

Page _____ of _____

Case Number _____

| Date | Brief Description of Services | 15(b)[1] | 15(c)[2] | 15(d)[3] | 15(e)[4] | 15(f)[5] | 15(g)[6] | 15(h)[7] | 15(i)[8] | 15(j)[9] |
|------|------------------------------|----------|----------|----------|----------|----------|----------|----------|----------|----------|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | PAGE TOTAL | | | | | | | | | |

1. Interviews and Conferences with Client.
2. Witness Interviews.
3. Consultation with Investigators and Experts.

4. Obtaining and Reviewing the Court Record.
5. Obtaining and Reviewing Documents and Other Evidence.
6. Consulting with Resource Center.

7. Legal Research and Writing.
8. Travel.
9. Other (Please describe).

A. Barnette
#2599-058
P.O. Box 33
Terre Haute, In.
47808

Harold J. Bender, Esq.
Law office of Harold J. Bender
200 N. McDowell Street
Charlotte, N.C. 28204

Mr. Bender,

First, let me offer my thanks and Congradulations for our victory in the appellate courts. I know you worked very close with Mr. Olive and I am much more greatful than words can express. You have my utmost gratitude and appreciation. Thankyou, Thankyou, Thankyou! I look foward to working up a plan to move foward and really would be grateful for any help you can offer. I would like a Channel Kept open to the "New" U.S. Attorney in hopes that I may offer something of a compromise. Hopefully she will play down the media angle so we all can have room to manuever. I have something to offer and I think they'd be open to hearing it. I'd be foolish to go against any of your advice, but I also have a million strategies and ideas

HB 000078

that I need to share with you
or whomever will be representing
me. If you need me to write a
letter to a possible candidate just
say the word. If there are any
concerns over my religious status, I
want it noted that my attempting
to convert to Islam lasted all of
two months! I want someone who
wants to represent me and isn't
scared to sweat a little. I may
offer up an unorthodox solution to
what lies ahead but I will
always be a team player.
    So please keep the back-channels
open and lets hope we see each
other very soon. Tell "J.B." I said
Hello! That Jim Comey is something.
Tell him I said Hi!

                    Sincerly,
                    Marc

HB 000079

Bates No. 4080

A. Barnette
12599-058
P.O. Box 33
Terre Haute, In.
47808

Harold J. Bender
– Attorney at Law –
200 N. McDowell St.
Charlotte, N.C. 28204

Mr. Bender,

Please bare with me but, I have been reviewing my legal judgements over and over to try and convince myself that my case is now just a simple matter of resentencing. However, after rereading the Supreme Courts descion several times, I am convinced that my Batson-Miller El claim is not just confined to the sentencing phase of my case. Justice Scalias ruling makes no differentiation between the first or second attempt at the Batson claim thus leaving the interpretation to be believed as a whole. We did file and reiterate my original Batson claim to both the Fourth circuit and more importantly in my first shot at Writ of Certori which Scalia granted. Both Jim Cooney and Marc Olive have argued to the courts that looking into both the all white jury as well as the resentencing jury selection Shananigans reveal determination by the

AB 000080

government to violate my civil rights and seek revenge instead of justice.

These attempts by the government have now been exposed as nothing more than an attempt at, "a high-tech lynching", to quote Justice Clarence Thomas. Even after I was willing to fall on the mercy of the court and basicly give them their entire case, they still sought to rig my jury from the very begining and in doing so, tried to murder me and not uphold my civil and constitutional rights but instead violated them.

This is why I think they are so intent on keeping this case so quiet. Saying that, I would like you to contact Jim Cooney to ask him if he would be willing to file a civil rights suit against the U.S. Attorney's office or at least file some sort of protest for prosecutorial misconduct against them. I know he is currently quite busy with the Duke "LAX" lawsuit but this case could be big for his firm. My case is the quintesential federal example of why the death penalty is severely flawed. Much like the "Jena 6" case, my case represents an over zealous prosecutor seeking re-election who went overboard when he didn't have to and

HB000081

then decided to do it again a second time. I think this may have been the reason you tried to get Mr. Ferguson to take my case because he may have ties to civil rights organizations that could cast more light on this attempt at misjustice. I might be wrong on this point but I do think we need to contact Charles Olgetree Jr. at Harvard Law school Institute for Race & Justice, to help advise us on this part of my case. He wrote the book on the Batson and Miller-EL cases. He also recently spoke to the House Judiciary Committee about such miscarriges of justice and the like against black men. I also hope you will contact Avery Friedman, a prominent Law Proffesor, who would be good for advice. I truely believe we have the upper hand and don't really have much to lose. I believe we can get the judge to declare a mistrial and push for the states to take over my case. I am not trying to flee my responsibility to the victims in this case but I don't wish to reward the Federal Government by lying down for them. I want you to know that I'd take a state plee with the hope that I'd make parole one day. This is my personal goal in this <del>case</del> at the moment. I'm

HB000082

only expressing it now because I am becoming suspicious of why I am still being held in Indiana. I have been hearing that defense attorneys are saying my case is being kept "hush hush." That could be good or bad. But I hope that like you said its possible to resolve my case favorably. After discovering the underhanded purposeful violations by my government, a life sentence in the federal system hardly seems like victory.

I simply need you to know what I am thinking so you can tell me straight up what you think even if we stringently disagree. We both agreed ~~that~~ I should do time but we also said I should be paroled one day, remember. Unless ofcourse you think there is an even better option, a hope that even I am stiffling. Maybe, just Maybe we can convince North Carolina to squeeze the Feds into letting my case go over to them where it belonged all the time. By putting pressure on Ms. Shappert with possible civil rights attention or a possible suit, even if we only threaten one, maybe we can persuade her to let North Carolina take over and she can go chase terrorists. These are just a small percentage of my stratigic ideas. I look forward to seeing you. Tell those Mashals to get a move on. ☺

HB 000083

Marc!

Bates No. 4084

**LAW OFFICE OF**
**MARK E. OLIVE, P.A.**
Attorney at Law
320 W. Jefferson Street
Tallahassee, Florida 32301
(850) 224-0004 (Voice)
(850) 224-3331 (Fax)

February 1, 2008

Ms. Patty Layne
Clerk's Office
1100 E. Main Street, Suite 501
Richmond, Virginia 23219-3517

> Re: CJA 30 Vouchers, *Barnette v. USA*, No. 02-20, Capital Direct
> Appeal,
> Petition for Writ of Certiorari, and Proceedings on Remand to Circuit
> Court

Dear Ms. Layne:

On January 17, I mailed the Court three (3) separate vouchers, with supporting worksheets, for services provided in Mr. Barnette's death penalty case. I have received your letter dated January 29, 2008, in which you requested the memorandum in support of the appeal proceeding claim, the petition for writ of certiorari to the Supreme Court claim, and the remand from the Supreme Court claim. I apologize for having not provided the memorandum with the vouchers. Please allow this letter to serve as my memorandum in support of the requested payment.

Please note that the maximum per hour rate when the case was on direct appeal was $125.00; that rate was increased to $160.00 per hour on February 1, 2005, and this higher rate is reflected on the vouchers covering Supreme Court work performed and work performed on remand.[1] I am requesting that the Court compensate me at these rates because of my experience in representing death-sentenced inmates in capital cases. I have represented more than 50 death-

---

[1]A portion of the work provided actually was subject to an hourly rate of $163.00, which became effective on January 1, 2006. I am not seeking that higher rate.

sentenced inmates during trial, direct appeal, and state and federal post-conviction proceedings in the United States Supreme Court, the United Sates Courts of

Ms. Layne
February 1, 2008
page 2
_____/

Appeals for the Fourth, Fifth, Sixth, and Eleventh Circuits (and the lower federal district courts), and in the state courts of California, Alabama, Texas, Tennessee, North Carolina, South Carolina, and Florida.

Mr. Barnette was tried and convicted of murder and other charges in the United States District Court for the Western District of North Carolina, Charlotte Division, in 1998.  The conviction was affirmed, but the sentence was reversed, and the case was remanded for a new capital sentencing proceeding.  *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000).  After a jury re-sentencing proceeding, Mr. Barnette was again sentenced to death in 2002.  He appealed.

I first became involved in this case at that point in time.  I had not had any involvement in the first trial and sentencing, the first appeal, or the re-sentencing proceedings.   Thus, I had to obtain the two records, the first from 1998 and the second from 2002.  I also had to read and outline portions of the 1998 trial and sentencing, and the briefs and the opinion attendant to the first appeal.  I also had to read and outline the complete re-sentencing record.

The first voucher submitted involves the appeal to this Court from re-sentencing. The issues in this case are complex, and research and writing, briefing, and oral argument required an extensive commitment of time and effort.  Compiling the Joint Appendix was time-consuming and difficult.  The complexities of the case are illustrated by the split opinions that resulted – two members of the panel, Judge Niemeyer and James Michael, Jr., Senior District Court Judge, joined one opinion, and Judge Widener wrote separately.  390 F.3d at 788 (Judge Widener contended that the majority holding "place[s] a cloud upon the statute.")(Widener, J. concurring).   The case presented issues of first impression, and a petition for rehearing en banc was appropriate, and time-consuming.

<p style="text-align:center">2</p>

<p style="text-align:center">HB 000085</p>

Bates No. 4086

The second voucher submitted involves certiorari proceedings before the Supreme Court. I researched, prepared, and filed a petition for writ of certiorari on May 19,

Ms. Layne
February 1, 2008
page 3
_____/

2005. That petition required extensive research and presented arguments that the federal circuit courts were split on federal constitutional questions central to the Federal Death Penalty Act, and that the Act was unconstitutional. The Government filed a Brief in Opposition in the Supreme Court, and I conducted additional research and filed a reply to the Brief in Opposition. While the petition for writ of certiorari was pending, the Supreme Court decided *Miller-El v. Dretke*, 125 S.Ct 2317 (2005). Because *Miller-El* involved an issue that had been raised in the appeal from re-sentencing , I prepared a Supplemental Petition for Writ of Certiorari and requested a reversal and a remand of the case in light of *Miller-El*. The Supreme Court did reverse and remand in light of *Miller-El*. In my January 17, 2008, letter I enclosed copies of the petition, the reply to the Government's Brief in Opposition, and the Supplemental Petition filed in the Supreme Court. Those proceedings were complex, and the research and writing was sophisticated.

The third voucher involves proceedings on remand to the Circuit Court. The several pleadings filed on remand centered mostly on the question of whether the case should simply be remanded to the district court. A motion seeking that relief was filed, and the Government responded. The Court then ordered supplemental briefing. Additional research and supplemental briefing was done, along with the filing of a supplemental appendix and, later, supplemental authorities. The Court did remand the case to the district court.

In sum, this was a complicated and time-consuming capital case with multiple pleadings and briefs being necessary. I hope that this memorandum will assist the Court in reviewing the amounts claimed and determining the rate and amounts of compensation. Please contact me if I can provide more assistance.

Sincerely,

HB 000086

Bates No. 4087

Mark E. Olive

4

HB 000087

Bates No. 4088

5

HB 000088

Bates No. 4089

February 12, 2008

Ms. Patty Layne
Clerk's Office
1100 E. Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *Barnette v. USA*, No. 02-20

Dear Ms. Layne,

On February 7, 2008, I mailed my voucher with supporting worksheets for services provided in the above entitled matter. I was not aware that a Memorandum in support of my worksheets was necessary. I apologize for not having provided that Memorandum to you.

Upon the filing of the Notice of Appeal in the Fourth Circuit Court of Appeals, Mark Olive was appointed lead counsel and I was appointed as co-counsel. However, I was lead counsel for the trial of *Barnette II.* I was asked by lead counsel to assist him with obtaining a certain document and reviewing transcripts to assist him in the Appeal. Also, I kept co-counsel at the trial level informed of the proceedings on appeal.

Since I was involved at the trial level, I was familiar with the client's family, and they consulted with me from time to time concerning the Appeal the Petition for Certiorari as well as the Remand from the Supreme Court. I was also asked by Mark Olive to review drafts of the Briefs and various Petitions that were filed.

Although Mark Olive had the "laboring oar" in this Appeal and Petition and Remand, I assisted whenever asked to do so and kept the client's family, as well as the client, informed of the various proceedings in this matter.

I trust that this letter serves as a Memorandum and will assist the court in reviewing the amounts claimed as well as the rate and the amounts of compensation.

Should you have any further questions, please do not hesitate to call me.

HB 000089

Bates No. 4690

Very truly yours,

Harold J. Bender

HJB/mc

HB 000090

Case 3:12-cv-00327-MOC   Document 76-17   Filed 12/22/14   Page 96 of 100

Bates No. 4091

# BARNETTE, AQUILLA
## TIMESHEET

| Date | Brief Description of Services | Out of Court | In Court | Paralegal | Expenses | Copies | LD/C Call | Travel | Other |
|------|------------------------------|-------------|----------|-----------|----------|--------|-----------|--------|-------|
| **2004** | | | | | | | | | |
| | | | | | | 0.00 | | | |
| 01/11/04 | lt to Client | 0.30 | | | | 0.00 | | | |
| 02/17/04 | Review Olive Draft | 0.55 | | | | 0.00 | | | |
| 07/01/04 | Review Gov't Supplemental Filing | 1.25 | | | | 0.00 | | | |
| 12/08/04 | Review 4th Cir Opinion | 1.45 | | | | 0.00 | | | |
| 12/08/04 | tc with Olive | 0.35 | | | | 0.00 | | | |
| 12/08/04 | lt to Client | 0.40 | | | | 0.00 | | | |
| 12/12/04 | Conf with Family re Rehearing | 0.90 | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | **COLUMN TOTALS** | 5.20 | 0.00 | 0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OUT OF COURT TOTAL TIME | 5.20 | | | | | | | |
| | **IN COURT TOTAL TIME** | 0.00 | | | | | | | |
| | PARALEGAL TOTAL TIME | 0.00 | | | | | | | |
| | **PAGE COMBINED TIME TOTAL** | 5.20 | | | | | | | |
| | EXPENSES | $0.00 | | | | | | | |
| | **COPIES** | $0.00 | | | | | | | |
| | LONG DISTANCE /COLLECT CALLS | $0.00 | | | | | | | |
| | **TRAVEL** | $0.00 | | | | | | | |
| | OTHER | 0.00 | | | | | | | |

HB 000100
Bates No. 4092

# BARNETTE, AQUILLA
## TIMESHEET

| Date | Brief Description of Services | Out of Court | In Court | Paralegal | Expenses | Copies | LD/C Call | Travel | Other |
|---|---|---|---|---|---|---|---|---|---|
| **2007** | | | | | | | | | |
| | | | | | | 0.00 | | | |
| 11/19/07 | tc with Client | 0.40 | | | | 0.00 | | | |
| 11/28/07 | tc with Client | 0.45 | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | **COLUMN TOTALS** | 0.85 | 0.00 | 0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OUT OF COURT TOTAL TIME | 0.85 | | | | | | | |
| | IN COURT TOTAL TIME | 0.00 | | | | | | | |
| | PARALEGAL TOTAL TIME | 0.00 | | | | | | | |
| | **PAGE COMBINED TIME TOTAL** | 0.85 | | | | | | | |
| | EXPENSES | $0.00 | | | | | | | |
| | COPIES | $0.00 | | | | | | | |
| | LONG DISTANCE /COLLECT CALLS | $0.00 | | | | | | | |
| | TRAVEL | $0.00 | | | | | | | |
| | OTHER | 0.00 | | | | | | | |

HB 000101

| | | TIME | | | EXPENSES |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| 2002 | | 40.25 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| 2003 | | 28.70 | | | 35.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| 2004 | | 5.20 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| 2005 | | 11.55 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| 2006 | | 6.50 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| 2007 | | 0.85 | | | |
| | | 1.00 | | | |
| | | | | | |
| | | | | | |
| TOTALS | | 94.05 | | | $35.00 |

HB 000103

Bates No. 4695