| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Docket No.  3:97CR-23 |
| v. | ) | |
| | ) | **UNDER SEAL** |
| AQUILIA MARCIVICCI BARNETTE, | ) | |
| Defendant | ) | |
| | ) | |

## AMENDED *EX PARTE* APPLICATION FOR AUTHORIZATION FOR NEUROPSYCHOLOGICAL EVALUATION

NOW COMES the Defendant, by and through his undersigned counsel, and respectfully requests that this Honorable Court authorize the defense to secure a neuropsychological evaluation of the Defendant, at government expense.  In support of this Application, the undersigned show unto the Court:

1.  The Defendant's capital re-sentencing hearing is scheduled to commence in July, 2002.   He is in the custody of the United States and is housed at the Mecklenburg County Jail Central.

2.  The Court has authorized the defense to retain the services of a psychiatrist, Dr. Seymour Halleck, to assist in this case.  Dr. Halleck has recommended that the Defendant have a neuropsychological evaluation as a component part of the psychiatric evaluation.  Counsel anticipated that such an evaluation might be necessary and included the costs of the testing in the defense case budget.

3.  Dr. Alexander A. Manning is a well-respected neuropsychologist in Charlotte and has agreed to perform the evaluation.  Dr. Manning charges $150 per hour for his services and estimates he can conduct between eight and ten hours of testing, review of

HB 000104

Bates No. 4596

voluminous records, and confer with Dr. Halleck and defense counsel for a sum not to exceed $5,000.

4. The neuropsychological evaluation must be conducted at Dr. Manning's office at 2610 E. 7th Street in Charlotte because the tests require use of special and bulky equipment including special tables and heavy wooden boxes. In addition, the only room in which the Mecklenburg County Sheriff will allow prisoners, including the Defendant, to have contact visits is too small to accommodate Dr. Manning, the Defendant and Dr. Manning's equipment.

5. Dr. Manning has evaluated prisoners charged with murder at his office in the past, so he is accustomed to the security procedures appropriate to the circumstances. The prisoner being tested cannot be shackled or handcuffed, but US Marshals providing security can sit just outside the room in which the tests are conducted. Counsel do not anticipate any security or behavior problems with the Defendant, who has been a model prisoner since his arrest in 1997.

6. The neuropsychological evaluation takes between eight and ten hours. The tests are exhausting and are therefore performed during two approximately four-hour sessions on separate days.

7. Subject to approval of the Court, defense counsel have tentatively scheduled the neuropsychological testing for the Defendant for April 30, 2002, from 8:00 a.m. until approximately noon and for May 1, 2002, from 8:00 a.m. until noon.

2

8.  It will be necessary for the United States Marshal's Service to transport the Defendant to and from the tests conducted at Dr. Manning's office and provide security during the testing.

9.  Because, at least at this point, the testing is part of privileged defense preparation, disclosure of which will be prejudicial to the Defendant and violate his rights under the Fifth, Sixth and Eighth Amendments to the Constitution of the United States, counsel respectfully request that this Application and any Order authorizing Dr. Manning's evaluation be *Ex Parte* and Under Seal.

Accordingly, the undersigned respectfully request that the Court authorize the defense to retain the services of Dr. Alexander A. Manning for a neuropsychological evaluation and possible related consultations in a total amount not to exceed $5,000.

Respectfully submitted on this the _____ day of April, 2002.

| | |
|---|---|
| _____ | _____ |
| Harold J. Bender | Jean B. Lawson |
| 200 N. McDowell Street | PO Box 472106 |
| Charlotte, NC 28204 | Charlotte, NC 28247 |
| (704) 333-2169 | (704) 341-1865 |

ATTORNEYS FOR AQUILIA MARCIVICCI BARNETTE

3

HB 000106

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

NO. 02-20
CAPITAL CASE

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

AQUILIA BARNETTE,

*Defendant-Appellant.*

## APPLICATION FOR TEN-DAY EXTENSION OF TIME IN WHICH TO FILE APPELLEE'S SUPPLEMENTAL BRIEF

Appellee, the United States of America, by and through its undersigned counsel, hereby moves this Court for a ten-day extension extension of time, to and including September 21, 2006, in which to file its Supplemental Brief, currently due September 11, 2006. Appellee also requests that the Court adjust the due date for Appellant's Supplemental Reply Brief to October 6, 2006.

///

///

///

///

HB 000107

Bates No. 4599

This Application is made for good cause as set for the in the attached

Declaration of Jeffrey B. Kahan.

Dated: September 7, 2006.

Respectfully submitted,

GRETCHEN C.F. SHAPPERT
United States Attorney,
Western District of North Carolina

JEFFREY B. KAHAN
Trial Attorney, Captial Case Unit
PA Bar No. 93199

United States Dept. of Justice
Capital Case Unit
1331 F. Street, NW; 3rd Fl.
Washington, D.C. 20530
(202) 305-8910
(202) 353-9779 fax

2

HB 000108

# DECLARATION OF JEFFREY B. KAHAN RE: APPLICATION FOR EXTENSION IN *UNITED STATES V. BARNETTE*

I, JEFFREY B. KAHAN, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

I am an attorney at law duly licensed to practice before this Court and the courts of the Commonwealth of Pennsylvania. I am a Trial Attorney employed in the Capital Case Unit of the Department of Justice, and am currently assigned to prepare the Appellee's Supplemental Brief in the case of *United States v. Barnette* (Fourth Circuit case no. 02-20).

The Supplemental Brief is presently due September 11, 2006. I respectfully request an extension of ten days, to and including September 21, 2006, in which to prepare, serve and file the brief. This Court has not previously granted Appellee any extension of time in this matter, nor has it calendared oral argument.

I have completed a draft of the brief, but the Department of Justice requires two reviews of the document before it can be filed with the Court. While I attempted to leave time for review, the demands on my supervisors' time simply have not allowed for them to complete their assessments and revisions.

I have contacted Mark Olive, counsel for Appellant at (850) 224-0004. Mr. Olive had no objection to this request for a ten-day extension of time in which to file

3

HB 000109

Bates No. 4761

Appellee's Supplemental Brief.

For the foregoing reasons, I respectfully request that this Court permit Appellee to and including September 21, 2006, to file its Supplemental Brief.

Executed at Washington, D.C. September 7, 2006:

JEFFREY B. KAHAN
Trial Attorney, Capital Case Unit

4

HB 000110

Bates No. 4702

# CERTIFICATE OF SERVICE

I hereby certify that true and correct photocopies of the above Application and Declaration were this day served upon counsel for Appellee addressed as follows:

Mark Olive, Esq.
Law Offices of Mark E. Olive, P.A.
320 W. Jefferson Street
Tallahassee, FL 32301

Harold J. Bender, Esq.
Law Office of Harold J. Bender
200 N. McDowell Street
Charlotte, NC 28204

This the 7th day of September, 2006,

JEFFREY B. KAHAN
Trial Attorney, Capital Case Unit

HB 000111

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | )     **Docket No. 3:97CR-23-V** |
| **v.** | ) |
| | ) |
| **AQUILIA MARCIVICCI BARNETTE,** | ) |
| **Defendant** | ) |
| _____ | ) |

### AMENDED *EX PARTE* APPLICATION FOR AUTHORIZATION FOR ADDITIONAL COSTS FOR THE DEFENSE

**NOW COMES** counsel and respectfully requests that the Court authorize additional costs for defense expert services in this case. In support of this Motion, the undersigned shows unto the Court:

1. The government incurred additional expenses for the use of California mental health expert Dr. Park Dietz. Due to their use of such a renowned expert, the experts for the defense had to work extra-long hours to prepare prior to the trial and during the trial.

2. The case budget calls for up to $30,000 for the services of the mitigation specialist, Alfonso Associates, Inc. At the outset, the Court granted these services with an initial cap of $15,000. Additional costs were authorized by the Court. Alphonso Associates, Inc. exceeded the cap and counsel requests that they be compensated for the work in the case in the amount of $15, 098.89. The total compensation in this case is $52,181.38.

3. The case budget calls for up to $15,000 for the services of the domestic violence expert, Dr. Ann Burgess. Dr. Burgess, who had worked with Dr. Park Dietz on prior matters, was prepared to be a rebuttal witness, if necessary. Her work in this case exceeded the cap by $5,395. Therefore, counsel requests that Dr. Burgess be compensated for her work in this case totaling $20,395.

4. The case budget calls for up to $12,000 for the services of the future dangerousness expert, Dr. Mark Cunningham. To date, Dr. Cunningham's work has totaled $11,009.18. Dr. Cunningham also consulted with counsel about Dr. Dietz's report and testimony. He was requested to arrange his schedule to be a rebuttal witness, if necessary. His final bill totals $21,683.43. Since Dr. Cunningham has $990.82 left in his approved budget, the cap was exceeded by $20,692.61. Therefore, counsel requests that Dr. Cunningham be allotted an additional $20,692.61 to cover his work in this case.

5. The case budget calls for up to $15,000 for the services of a psychiatrist, Dr. Seymour L. Halleck. Dr. Halleck spent many hours preparing for trial and, if necessary, rebuttal. Dr. Halleck's work in the case exceeded the cap by $12,395.70. Therefore, counsel requests that Dr. Halleck be compensated for his work in this case totaling $27,395.70.

6. The case budget calls for up to $2,000 for the services of a Bureau of Prisons expert, Walter Buer. Mr. Buer spent hours preparing for trial. His work in this case exceeded the cap by $3,107.00. Therefore, counsel requests that Mr. Buer be compensated for his work in this case totaling $5,107.00.

**WHEREFORE**, counsel requests that the above-mentioned experts be compensated for their work that exceeded their initial caps in this case.

Respectfully submitted, this the _____ day of November, 2002.

_____
HAROLD J. BENDER
Bender, Barnett & Falls
200 N. McDowell Street
Charlotte, North Carolina 28204
ATTORNEY FOR AQUILIA MARCIVICCI BARNETTE

Bates No. 4705

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Docket No.  3:97CR-23-V |
| v. | ) | |
| | ) | |
| AQUILIA MARCIVICCI BARNETTE, | ) | |
| Defendant | ) | |
| | ) | |

## *EX PARTE* APPLICATION FOR AUTHORIZATION FOR ADDITIONAL COSTS FOR THE DEFENSE

**NOW COME** counsel and respectfully request that the Court authorize additional costs for defense expert services in this case.  In support of this Motion, the undersigned show unto the Court:

1.  The government incurred additional expenses for the use of California mental health expert Dr. Park Dietz.  Due to their use of such a renowned expert, the experts for the defense had to work extra-long hours to prepare prior to the trial and during the trial.

2.  The case budget calls for up to $30,000 for the services of the mitigation specialist, Alfonso Associates, Inc.  At the outset, the Court granted these services with an initial cap of $15,000.  Additional costs were authorized by the Court.  Alphonso Associates, Inc. have exceeded the cap and counsel request that they be compensated for the work in the case in the amount of $15, 098.89.  The total compensation in this case is $52,181.38.

3.  The case budget calls for up to $15,000 for the services of the domestic violence expert, Dr. Ann Burgess.  Dr. Burgess, who had worked with Dr. Park Dietz on prior matters, was prepared to be a rebuttal witness, if necessary.  Her work in this case exceeded the cap by

HB 000114

Bates No. 4706

$5,395. Therefore, counsel request that Dr. Burgess be compensated for her work in this case totaling $20,395.

4. The case budget calls for up to $12,000 for the services of the future dangerousness expert, Dr. Mark Cunningham. To date, Dr. Cunningham's work has totaled $11,009.18. Dr. Cunningham also consulted with counsel about Dr. Dietz's report and testimony. He was requested to arrange his schedule to be a rebuttal witness, if necessary. His final bill totals $21,683.43. Therefore, counsel request that Dr. Cunningham be allotted an additional $21,683.43 to cover his work in this case.

5. The case budget calls for up to $15,000 for the services of a psychiatrist, Dr. Seymour L. Halleck. Dr. Halleck spent many hours preparing for trial and, if necessary, rebuttal. Dr. Halleck's work in the case exceeded the cap by $12,395.70. Therefore, counsel request that Dr. Halleck be compensated for his work in this case totaling $27,395.70.

6. The case budget calls for up to $2,000 for the services of a Bureau of Prisons expert, Walter Buer. Mr. Buer spent hours preparing for trial. His work in this case exceeded the cap by $3,107.00. Therefore, counsel request that Mr. Buer be compensated for his work in this case totaling $5,107.

**WHEREFORE**, counsel request that the above-mentioned experts be compensated for their work that exceeded their initial caps in this case.

Respectfully submitted, this the _____ day of September, 2002.

_____              _____
Jean B. Lawson                               Harold J. Bender
PO Box 472106                                200 N. McDowell Street
Charlotte, NC 28247                          Charlotte, NC 28204
(704) 341-1865                               (704) 333-2169

ATTORNEYS FOR AQUILIA MARCIVICCI BARNETTE

HB 000115

Bates No. 4807

HB 000116

Bates No. 4708

# UNITED STATES DISTRICT COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,　　　)
　　　　　　　Appellee, )
　　　　　　　　　　　　　　　)　Docket No.　02-20 (CR-97-23-V)
　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　)　MOTION TO BE EXCUSED FROM
AQUILIA MARCIVICCI BARNETTE,　)　　ORAL ARGUMENT
　　　　　　　Appellant　　　)
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿)

**NOW COMES,** Harold J. Bender**,** counsel for the Appellant, and respectfully requests that the Court excuse Harold J. Bender from Oral Argument in this matter.  In support of this Motion, the undersigned shows unto the Court:

1.　Harold J. Bender was one of the trial counsel for the Appellant and has been appointed as Appellant Counsel in this matter.

2.　Currently, Harold J. Bender is involved in the Penalty Phase of the capital murder case entitled *State v Jeffrey Neal Duke* in Gaston County, North Carolina..

3.　The penalty phase is expected to last through the end of this week.

4.　Mark Olive is the primary Appellant Attorney handling this matter and will be doing the entire argument for the Appellant.

5.　Mark Olive consents to excusing Harold J. Bender from Oral Arguments in this matter.

**WHEREFORE**, counsel requests to be excused from Oral Arguments in this matter.

HB 000117

Respectfully submitted, this the _____ day of September, 2003..

_____
HAROLD J. BENDER
Attorney at Law
200 N. McDowell Street
Charlotte, North Carolina  28204

HB 000118

Bates No. 4710

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she has served a copy of the foregoing Motion to be Excused from Oral Arguments upon the United States Court of Appeals, on this _____ day of September 2003, by faxing to:

Ms. Beth Walton
Case Manager
804-916-2796


_____
                                        Patty Fantetti
                                        Paralegal
                                        Law Office of Harold Bender
                                        200 N. McDowell Street
                                        Charlotte, NC 28204
                                        704-333-2169

HB 000119

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Docket No. 3:97CR-23 |
| v. ) | |
| ) | **UNDER SEAL** |
| AQUILIA MARCIVICCI BARNETTE, ) | |
| Defendant ) | (***EX PARTE***) |
| ) | |

## DEFENDANT'S EX PARTE REQUEST FOR TRAVEL AUTHORIZATION FOR COURT-APPROVED DEFENSE EXPERT

**NOW COMES** the defendant, by and through counsel, and respectfully requests that the Court issue a travel authorization for unlimited travel for defense expert DR. MARK CUNNINGHAM who must travel from Abilene, TX, and Charlotte, NC at least twice between this date and the start of trial on July 15, 2002. His trips are reasonably necessary to the defense of this case in which the defendant is indigent and faces capital re-sentencing. The Court has previously authorized the defense to retain Dr. Cunningham's services as an expert in future dangerousness.

**WHEREFORE**, counsel respectfully requests that the Court direct the Clerk to authorize DR. MARK CUNNINGHAM to travel at government rates between Abilene, TX and Charlotte, NC from the date of the Order through and including August, 2002, when he is providing services in this case.

Respectfully submitted on this the _____ day of June, 2002.

HB 000120

Bates No. 4712

_____      _____

Harold J. Bender                          Jean B. Lawson
200 N. McDowell Street              PO Box 472106
Charlotte, NC 28204                Charlotte, NC 28247
(703) 333-2169                      (704) 341-1865

ATTORNEYS FOR AQUILIA MARCIVICCI BARNETTE

HB 000121

Bates No. 4713

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Docket No. 3:97CR-23** |
| **v.** | ) | |
| | ) | **UNDER SEAL** |
| **AQUILIA MARCIVICCI BARNETTE,** | ) | |
| **Defendant** | ) | **(_EX PARTE)_** |
| | ) | |

### ORDER AUTHORIZING TRAVEL AT GOVERNMENT RATED FOR COURT-APPROVED DEFENSE EXPERT

**THIS MATTER** came on before the undersigned United States District Court Judge on the written, _ex parte_ application of the defendant for an order authorizing Dr. Seymour Halleck, the defense psychiatry expert, to have unlimited travel between Chapel Hill, NC and Charlotte, NC between now and the end of August, 2002 when he is performing work in this case.

It appears to the Court that it is reasonably necessary for Dr. Halleck to undertake this travel and it is therefore ORDERED that the Clerk will issue a travel authorization for Dr. Halleck for travel between Chapel Hill, MA and Charlotte, NC, as Dr. Halleck requests it, between now and the end of August, 2002.

This the _____ day of June, 2002.

_____
Richard L. Voorhees
United States District Court Judge

HB 000122

Bates No. 4714

Dr. Mark Cunningham
801 Hebron Parkway
#6103
Lewisville, TX 75057

HB 000123

Bates No. 4715

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Docket No. 3:97CR-23** |
| v. | ) | |
| | ) | **UNDER SEAL** |
| AQUILIA MARCIVICCI BARNETTE, | ) | |
| Defendant | ) | (***EX PARTE***) |
| | ) | |

## DEFENDANT'S EX PARTE REQUEST FOR TRAVEL AUTHORIZATION FOR COURT-APPROVED DEFENSE EXPERT

**NOW COMES** the defendant, by and through counsel, and respectfully requests that the Court issue a travel authorization for unlimited travel for defense expert DR. SEYMOUR HALLECK who must travel from Chapel Hill, NC and Charlotte, NC several times between this date and the start of trial on July 15, 2002. His trips are reasonably necessary to the defense of this case in which the defendant is indigent and faces capital re-sentencing. The Court has previously authorized the defense to retain Dr. Halleck's services as an expert in psychiatry.

**WHEREFORE**, counsel respectfully requests that the Court direct the Clerk to authorize DR. SEYMOUR HALLECK to travel at government rates between Chapel Hill, NC and Charlotte, NC from the date of the Order through and including August, 2002, when he is providing services in this case.

Respectfully submitted on this the _____ day of June, 2002.

HB 000124

Bates No. 4716

_____  
Harold J. Bender  
200 N. McDowell Street  
Charlotte, NC 28204  
(703) 333-2169  

_____  
Jean B. Lawson  
PO Box 472106  
Charlotte, NC 28247  
(704) 341-1865  

ATTORNEYS FOR AQUILIA MARCIVICCI BARNETTE

HB 000125

UNITED STATES OF AMERICA ) 

)    **Docket No. 3:97CR-23**

v. ) 

)    **UNDER SEAL**

AQUILIA MARCIVICCI BARNETTE, ) 

Defendant )    (***EX PARTE***)

) 

## ORDER AUTHORIZING TRAVEL AT GOVERNMENT RATED FOR COURT-APPROVED DEFENSE EXPERT

**THIS MATTER** came on before the undersigned United States District Court Judge on the written, *ex parte* application of the defendant for an order authorizing Dr. Seymour Halleck, the defense psychiatry expert, to have unlimited travel between Chapel Hill, NC and Charlotte, NC between now and the end of August, 2002 when he is performing work in this case.

It appears to the Court that it is reasonably necessary for Dr. Halleck to undertake this travel and it is therefore ORDERED that the Clerk will issue a travel authorization for Dr. Halleck for travel between Chapel Hill, MA and Charlotte, NC, as Dr. Halleck requests it, between now and the end of August, 2002.

This the _____ day of June, 2002.

_____
Richard L. Voorhees
United States District Court Judge

HB 000126

Bates No. 4718

| NAME/# | RACE/SEX | JOB/SUPERVISOR | ARREST | VICTIM | MURDER | MENTAL HEALTH | JUROR | COURT EXPERIENCE | POLICE TEST | ACCEPT VERDICT | DEATH PENALTY |
|--------|----------|----------------|--------|--------|--------|---------------|-------|------------------|-------------|----------------|---------------|
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |

HB 000127

Bates No. 4719

|  |  |  |  |  |  |  |  |  |  |  |  |
|--|--|--|--|--|--|--|--|--|--|--|--|
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |

HB 000128

Bates No. 4720

| Date | Brief Description of Services | Out of Court | In Court | Paralegal | Expenses | Copies | LD/C Call | Travel | Other |
|---|---|---|---|---|---|---|---|---|---|
| **2006** | | | | | | | | | |
| 08/01/06 | tc with M. Olive | 0.40 | | | | 0.00 | | | |
| 08/01/06 | Review File | 1.70 | | | | 0.00 | | | |
| 08/07/06 | tc with M. Olive | 0.40 | | | | 0.00 | | | |
| 08/07/06 | tc with former Atty Lawson | 0.45 | | | | 0.00 | | | |
| 08/09/06 | tc with M. Olive | 0.35 | | | | 0.00 | | | |
| 08/31/06 | Review Brief | 1.90 | | | | 0.00 | | | |
| 09/29/06 | tc with DOJ Atty | 0.30 | | | | 0.00 | | | |
| 09/29/06 | tc with M. Olive | 0.45 | | | | 0.00 | | | |
| 10/19/06 | tc with former Atty Lawson | 0.55 | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | | | | | | 0.00 | | | |
| | **COLUMN TOTALS** | 6.50 | 0.00 | 0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OUT OF COURT TOTAL TIME | 6.50 | | | | | | | |
| | **IN COURT TOTAL TIME** | 0.00 | | | | | | | |
| | PARALEGAL TOTAL TIME | 0.00 | | | | | | | |
| | **PAGE COMBINED TIME TOTAL** | 6.50 | | | | | | | |
| | EXPENSES | $0.00 | | | | | | | |
| | **COPIES** | $0.00 | | | | | | | |
| | LONG DISTANCE /COLLECT CALLS | $0.00 | | | | | | | |
| | **TRAVEL** | $0.00 | | | | | | | |
| | OTHER | 0.00 | | | | | | | |

HB 000129

SUBMITTED UNDER SEAL

**MEMORANDUM**

TO:                    The Honorable Richard L. Voorhees
FROM:          Harold Bender and Jean Lawson
DATE:     February 13, 2002
RE:                    USA v. AQUILIA MARCIVICCI BARNETTE
                    3:97CR-23

## DEFENDANT'S BUDGET PROJECTION FOR
## ATTORNEY FEES AND RELATED COSTS

**ATTORNEY HOURS**

The estimate covers the period of December 1, 2001 to the conclusion of the sentencing proceeding, including detailed review of discovery materials; reading and preparing summaries of the transcript of the defendant's first trial and sentencing hearing; contacting and hiring (as necessary) a fact investigator, mitigation specialist, mental health experts, neuropsychologist, neurologist, psychiatrist and other specialists.     Also covered is consultation time with the client, as well as consultation with co-counsel, investigators, witnesses, and experts. Counsel will have to prepare as if for a full guilt-innocence trial in order to meet the government's case on aggravation.     Travel time related to the case is included in this estimate.     It is also contemplated that during this time frame counsel will research and prepare pretrial motions that will require extensive research.     Time will also be consumed in consultation with Federal Death Penalty Resource Counsel.

The government predicts that trial will last six weeks.     This budget item includes time expended in a six-week trial.

| | | |
|---|---|---|
| Pre-Trial: | 1,080 hours per attorney @$125.00 per hour | $270,000 |
| In-Trial: | 720 hours per attorney @$125.00 per hour | $180,000 |
| TOTAL: | | $450,000 |

**PHOTOCOPYING & POSTAGE**

Copies will be made at the lowest possible rate considering time constraints.

Counsel may very well have need to duplicate additional sets of discovery as well as significant portions of the transcript of testimony from the defendant's first trial and sentencing hearing.     In addition, counsel must provide experts with sufficient data obtained from other sources, such as from the mitigation specialist and professionals who

have performed testing and/or evaluation of the defendant in the past.     In addition, from the transcript of the first trial, there was significant testimony and cross-examination about studies (such as the Hare Psychopathy Index) for which current counsel must prepare.     Counsel will have to be thoroughly familiar with the studies and literature in several disciplines and prepared for examination or cross-examination with copies of these treatises and studies.

To the extent the defense in the defendant's previous sentencing proceeding did not obtain certain medical and school records, defense counsel will also have to pay for those records.     We will have to obtain and copy records and distribute additional copies to experts.     Mailing of documents and records certain to be required.     We will also need to obtain photocopies directly from courts regarding past criminal conduct and/or convictions of various potential government witnesses.

In addition to the costs normally associated with gathering records to prepare for defense mitigation presentation, counsel will also need to obtain documents from the United States Bureau of Prisons concerning the defendant?' course in Prison including on Death Row in Terra Haute, IN.

| | |
|---|---|
| Copying and Postage | $ 6,000 |

## TRIAL AIDS

It may be necessary for counsel to generate charts, audio and video tapes, have documents enlarged or make evidentiary presentations that require equipment or the assistance of a professional to make.     Certainly the government has access to this assistance and the interests of justice may well require that the defense have this capacity.

| | |
|---|---|
| Trial Aids | $ 2,000 |

## COLLECT TELEPHONE, LONG DISTANCE CHARGES AND FAX EXPENSE

The only telephone to which the defendant has access is that at the Mecklenburg County Jail.     All his calls to counsel must be collect, and counsel should be in a position to accept collect calls of reasonable duration and frequency.     Counsel must consult with witnesses, investigators and experts by fax and telephone.     Counsel will also be in long distance telephone contact with Resource Counsel in South Carolina, Kentucky and Texas.

| | |
|---|---|
| Telephone Costs: | $1,500 |

## TRAVEL

*NOTE:     Travel costs for experts are included in their budget line items.*

2

HB 000131

Bates No. 4723

The undersigned anticipate that they will have to travel at least once to each of Virginia, Pennsylvania, Georgia, Florida, South Carolina, Butner, North Carolina and Terra Haute, Indiana to prepare for this sentencing hearing. This budget estimate is very tentative and subject to variables such as the actual cost of airline tickets at the time of travel and any additional trips that the mitigation investigation should disclose are necessary. However, counsel believe that the trips to South Carolina and Butner, North Carolina can be made by car, so estimate $300 for mileage costs. Assuming the average round-trip airfare at government rates for the remaining five travel destinations is $500 per ticket, counsel estimate those travel costs to be $5,000 plus $500 for car rental and $600 for per diem. Under these circumstances, counsel estimate up to $8,500 for this line item.

Travel Costs: $8,500

## ATTORNEY FEES AND RELATED COSTS
## RECAP

| | | |
|---|---|---|
| **Attorney Fees** | | **$ 450,000** |
| **Photocopying and Postage** | | 6,000 |
| **Trial Aids** | | 2,000 |
| **Collect, Long Distance Charges and Fax Expense** | 1,500 | |
| **Travel** | | 8,500 |
| **TOTAL:** | | **$ 468,000** |

Respectfully submitted on this the _____ day of February, 2002.

_____          _____

Harold J. Bender                                                          Jean B. Lawson
101 N. McDowell Street                                          PO Box 472106
Charlotte, NC 28204                                               Charlotte, NC 28247
(704) 333-2169                                                          (704) 341-1865

ATTORNEYS FOR AQUILIA MARCIVICCI BARNETTE

3

HB 000132

Bates No. 4724

4

HB 000133

Bates No. 4725

# JUROR QUESTIONNAIRE

<u>United States of America v. Aquilia Marcivicci Barnette, 3:97CR23-P</u>

     The information which you give in response to this questionnaire will be used only by the Court and the attorneys to select a qualified jury. After a jury has been selected, all copies of your response to this questionnaire will be returned to the Clerk of Court and kept in confidence. The attorneys are under orders to maintain the confidentiality of any information they learn in the course of reviewing these questionnaires.

     Please answer each question below as completely and as accurately as you reasonably can. Your complete written answers will save a great deal of time for the Judge, for the lawyers and for you.

     You are expected to sign your questionnaire, and your answers will be given the same effect as a statement given to the Court. What is needed is your very best, honest effort to answer the questions contained in this questionnaire.

RACE: _____, i.e., White, Black, Hispanic, Asian, Other

NAME: _____

Maiden Name: _____Sex: _____
Home Address: _____
_____

How long have you lived at this address: _____

List each address at which you have lived during the past five (5) years:
_____
_____
_____
_____
_____
_____

What is your date of birth: _____

City and State of birth: _____

Where do you work now: _____

Home Telephone Number: _____
Work Telephone Number: _____

HB 000134

Juror # _____

1. The Court and the parties estimate that after a jury is selected this case may last as long as four weeks. Jury service is one of the highest duties and privileges of a citizen of the United States. Mere inconvenience or the usual financial hardships of jury service will be insufficient to excuse a prospective juror. Do you wish to apply to the Court to be excused on the ground that jury service would be an extreme hardship?

    YES _____          NO _____

    If yes, briefly explain the hardship.

    _____
    _____
    _____

    Whether or not you are claiming a hardship, please complete the rest of the questionnaire.

2. Do you have any difficulty reading or understanding English?

    YES _____          NO _____

3. (a) Do you have a physical problem (for example, with your sight or hearing) that would interfere with your ability to serve?

    YES _____          NO _____

   b. If yes, please describe: _____
    _____

4. (a) Are you regularly taking a medication that could affect your ability serve as a juror?

    YES _____          NO _____

   b. If yes, please describe: _____
    _____

   c. Doctor's name and address who prescribed medication: _____
    _____

5. Name of employer: _____

HB 000135

Bates No. 4727

6.  Describe your current job, what do you do: _____
    _____
    _____

7.  List all of the jobs you have had prior to your current job in the past five (5) years:
    _____
    _____
    _____
    _____
    _____

8.  Are you currently:

    Married? _____

    Single, never married? _____

    Divorced/Separated? _____

    Widow/Widower? _____

9.  If married, your spouse's name:_____

10. Your spouse's current occupation: _____

11. If married, what is your spouse's education: _____

12. How many times have you been married? _____ _____

13. Have you any children?   YES_____          NO_____

    If yes, please fill out the chart below:

| NAME | AGE | SEX | EDUCATION | TYPE OF EMPLOYMENT |
|------|-----|-----|-----------|--------------------|
|      |     |     |           |                    |
|      |     |     |           |                    |
|      |     |     |           |                    |
|      |     |     |           |                    |

2

14.    What is your county of residence:_____

15.    Do you belong to a union?        YES _____        NO _____

16.    Please state who else in your household works outside the home and the type of work performed:

_____

_____

_____

17.    If you have supervised employees in the past or do so today, indicate the number of employees you supervise(d): _____

18.    What is your current income: _____

       What is the employment status of your spouse? (Circle ALL that apply.)

19.

       a.    Employed full-time (over 30 hours per week)

       b.    Employed part-time (5-30 hours per week)
       c.    Unemployed
       d.    Retired
       e.    Student: Part-time _____        Full-time _____
       f.    Homemaker
       g.    Disabled

20.    State the employment of your spouse for the past five (5) years, commencing with the most current. If he/she is retired or unemployed, state the date of his/her retirement/unemployment, and indicate his/her occupation for the five (5) years preceding his/her retirement/unemployment.   Briefly describe his/her functions as to each position during the five year period, if you know:

Job Title/                                                        Name of Business

Classification             Job Description                    and City, County

_____

_____

_____

_____

3

HB 000137

Bates No. 4729

| Job Title/ Classification | Job Description | Name of Business and City, County |
|---|---|---|

_____
_____
_____
_____

21. What is the general condition of your eyesight? _____
_____

Do you wear contacts or glasses?     YES _____   NO _____

22. What is the general condition of your hearing? _____
_____

Do you wear a hearing aid?     YES_____   NO _____

23. Do you require regular or frequent medication or medical care and attention?

YES _____       NO _____

If you require regular or frequent medication, please describe the nature of the medication, its effects upon you, and the frequency of taking such medication:
_____
_____

24. What is your current employment status? (Circle **ALL** that apply).

   a.  Employed full-time (over 30 hours per week)
   b.  Employed part-time (5-30 hours per week)
   c.  Unemployed
   d.  Retired
   e.  Student:  Part-time _____   Full-time _____
   f.  Homemaker
   7.  Disabled an unable to work

4

Bates No. 4730

25. State your employment for the past five (5) years, commencing with the most current. If you are retired or unemployed, state the date of your retirement/unemployment, and indicate your occupation for the five (5) years preceding your retirement/unemployment. Briefly describe your functions as to each position during the five year period:

| Job Title/ Classification | Job Description | Name of Business and City, County |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

26. Do you:
Own a home? _____

Rent? _____

Neither own nor rent, but live with family/friends? _____

27. What television news shows do you watch regularly? _____
_____

28. Do you belong to any clubs, associations or civic groups, such as, but not limited to, Kiwanis, Rotary Club, Knights of Columbus, Veterans of Foreign Wars, American Legion, American Civil Liberties Union, National Rifle Association, League of Women Voters or any other organization?

YES_____          NO _____

If yes, please list those to which you belong: _____
_____
_____

29. Do you have any relatives or close friends who are lawyers or who have attended law school ?

YES _____          NO _____

If yes, please describe your relationship with the person and, if you know, the type of law he or she practices (e.g., uncle -real estate law; neighbor-

5

criminal law).

_____

_____

_____

30.    Have you, or any family member or close friend, ever worked for a criminal defense lawyer or private investigator?

YES_____          NO _____

31.    (a)    Have you, or any family member or close friend, ever applied to work or actually worked in any area of law enforcement? (e.g., any prosecutor's office, whether federal or state; any federal investigative agency, such as the F.B.I., Drug Enforcement Administration, Customs Service, Bureau of Alcohol, Tobacco and Firearms, Postal Inspectors, any state or local police department; any probation office; any correctional facilities).

YES_____          NO_____

(b)    Are you planning, or do you know that anyone in your family or close circle of friends that is planning to apply for a law enforcement position?

YES _____          NO _____

(c)    If yes to either question, please describe:_____

_____

_____

32.    Have you, or any family member ever been arrested?

YES _____          NO _____

If yes, please describe:  _____

_____

_____

33.    Have you ever sued anyone or been sued by anyone?

YES _____          NO _____

If yes, please describe:  _____

_____

6

_____

34. Have you, or any family member or close friend, ever been charged with a crime or been the subject of a criminal investigation?

YES _____     NO _____

If yes, please describe: _____
_____
_____

35. Have you, or any family member or close friend, ever appeared or testified as a witness in any investigation or legal proceeding?

YES _____     NO _____

If yes, please describe: _____
_____
_____

36. Have you, or any family member or close friend, ever been questioned in any matter by any local, state or federal law enforcement agency?

YES _____     NO _____

If yes, please describe: _____
_____
_____

37. Have you ever worked in public or private law enforcement?

YES _____     NO _____

38. If yes, please answer the following:

a. What agency: _____

b. What was your highest rank: _____

c. Dates of service: _____

7

HB 000141

d. Your current status: _____

Has a family member of yours worked i~ public or private law enforcement?

39.

      YES _____     NO _____

If yes, please describe: _____
_____
_____

40.    Have you ever had a dispute with any local, state or federal agency or any of its employees?

      YES _____     NO _____

If yes, please describe: _____
_____
_____

41.    Have you, or any family member or close friend, ever been the victim of a crime (whether or not reported to the police)?

      YES _____     NO _____

If yes, please describe: _____
_____
_____

42.    Have you ever known anyone who was a victim of an intentional killing?

      YES _____     NO _____

If yes, please describe: _____
_____
_____

43.    Have you ever been in <u>any</u> branch of the armed forces of the United Slates (including the military reserves, National Guard, or ROTC)?
a. If yes, list branch, rank at discharge, place and date of service: _____

_____

HB 000142

Bates No. 4734

b. Were you in the military police or shore patrol?
   YES _____    NO _____


c. Were you ever involved in a court martial?

   YES _____    NO _____
d. Have you ever had military disciplinary action taken against you?


   YES _____    NO _____


e. Did you receive an honorable discharge?
   YES _____    NO _____


44.    a. What was your rank at discharge? _____

   b. What were your dates of service? _____

   c. List each place you were stationed: _____
   _____
   _____


   d.  Were you in combat? _____

45.    Was your spouse ever in the military?

   YES _____    NO _____

   a.  If yes, which branch? _____

   b.  Your spouse's rank at discharge: _____

   c.  Your spouse's dates of service: _____

   d.  List each place your spouse was stationed: _____

   e. Was your spouse in combat? _____

46.    If you are single and share living space with another adult, please indicate
   the sex of the adult with whom you share living space, and if they are
   employed, the nature or their employment and the level of their education:

9


HB 000143

Bates No. 4735

_____

_____

47.	(a) What was your highest level of education?
0-8 grade			_____

Some high school		_____

High school graduate		_____

Some college			_____

College graduate		_____

Some graduate school		_____

Post-graduate degree		_____

Trade or technical school _____

(b) If you are presently a student, please describe briefly your area of study:

_____

(c) Name any degrees you have earned and your major areas of study:
_____

(d) Even if you have never earned a law degree, please describe any law courses you have had (for example, business law courses in college, paralegal programs): _____
_____

48.	Have you or your spouse taken any classes in the following?

*	law			*	psychology
*	law enforcement	*	any health related field
*	criminology		*	social work
*	sociology		*	education

If yes, please list the courses taken and when: _____
_____

49.	What is the general condition of your health? _____

If you have any kind of health problems, please state briefly the nature of the problem: _____
_____

10

HB 000144

Bates No. 4736

_____

50.  Have you taken any extra precautions to protect yourself, your family, or your home from crime?

      YES _____     NO _____

    a.  If yes, please describe: _____
_____
_____

51.  (a) Have you ever served:

As a juror in a civil case? YES _____       NO_____
As a grand juror?        YES _____       NO_____
As a juror in a criminal case? YES_____    NO_____
If you have sat as a juror in a criminal case, please fill out the following

chart:

| DATE | STATE OR FEDERAL COURT | TYPE OF CASE | JURY VERDICT, IF THERE WAS ONE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

(b)    If you sat as a juror in a criminal case, were you ever the jury foreperson?

      YES _____     NO _____

(c)    If you have had any experience as a juror, did you find it to be a positive one?
      YES _____     NO _____

If no, please explain: _____
_____

52.  Do you know, or think you have ever heard of Aquilia Marcivicci Barnette or anyone related to him?

      YES _____     NO _____

If yes, please explain the circumstances: _____

11

HB 000145

Bates No. 4737

_____

53. Have you or anyone in your family ever owned a gun?

      YES _____         NO _____

If yes, please state whether the gun was owned by you or some other family member, the type of gun and the purpose for which it was kept: _____
_____

54. If you have children and/or stepchildren, please state the following:

(a) The age and sex of each child: _____
_____

(b) If your children and/or stepchildren are employed, please state the nature of their employment:_____
_____

(c) Please tell us the educational background of each of your children: _____
_____

Do you have brothers and sisters?    YES _____       NO _____

55.

If yes, please indicate the number of brothers and sisters you have:

     Brothers_____      Sisters_____

In your opinion, what is the most important thing you can teach your

56.

children? _____
_____

57. In your opinion, how important is it for an adolescent child to have a stable home environment that includes the support of his/her mother and his/her father?  _____
_____

58. Do you presently, or have you in the past, or has any member of your immediate family (spouse, children, stepchildren, parents, stepparents) done any type of civic club, organizational, church/religious or volunteer work?

      YES _____         NO _____

12

If yes, list civic, social or religious organizations and club(s) to which you or your immediate family members belong, indicate who holds membership and the nature of your/their work: _____

_____

_____

Do you or your spouse currently hold, or have you held any office in any of these organizations or clubs?

YES _____        NO _____

If yes, please indicate the offices held, the organization or club, and the responsibilities of that office: _____

_____

59.    What are your hobbies or interests outside of work or family?

_____

60.    Have you, a family member or close friend ever been the recipient of or applied for welfare benefits?

YES _____        NO _____

If yes, please identify who applied for and/or received these benefits: _____

_____

61.    Have you, a close friend, a spouse, or a relative ever sought employment, been employed by or associated with any of the following? (Please check **all** that apply and indicate who sought or obtained such employment and the approximate length and location of employment and position, if known):

_____ Federal Bureau of Investigation (FBI)

_____ Central Intelligence Agency (CIA)

_____ Drug Enforcement Administration (DEA)

_____ National Security Agency (NSA)

_____ Department of Justice (DOJ)

_____ Department of Treasury

_____ Defense Intelligence Agency (DIA)

_____ United States Customs Service (USCS)

_____ Internal Revenue Service (IRS)

13

HB 000147

_____ Bureau of Alcohol, Tobacco& Firearms (ATF)
_____ United States Attorney's Office

_____ Public Defender's Office

_____ Any Probation Department
_____ District Attorney's Office

_____ State, County, or City Law Enforcement Agency

_____ Corrections Officer
_____ North Carolina Attorney General's Office

_____ Any Court: State or Federal _____ (Please specify)

_____ Any law firm which represents clients in criminal litigation

_____ Any law firm which represent clients in civil litigation

_____ Security Guard

_____ Private Investigation Agency
_____ Any television station (local or national network) _____

(Please specify)
_____ Any radio station (local or network)_____

(Please specify)

_____ Any periodical magazine or journal, e.g., Time, People, Newsweek,
etc. _____(Please specify)
_____ Any newspaper _____(Please specify)

_____ Any foreign consulate or embassy _____

(Please specify)

Use these lines to tell us about the above noted employment, applications for
employment, or agency associations: _____
_____
_____

62. Have you ever been approached by the United States Government or any of

14

its agencies to assist or gather information on their behalf?

YES _____          NO _____

If yes, please explain: _____

_____

63.     Have you, or any family member, ever belonged to a neighborhood crime watch program or in any way supported a crime stoppers group?

YES _____          NO _____

If yes, please tell us who participated in that program and briefly describe your/their participation: _____

_____

64.     Have you taken special precautions, either at home or with your automobile, to protect yourself, your family and your possessions from crime?

YES _____          NO _____

If yes, please tell us what type(s) of precautions you have taken: (Circle all that apply)
a. Installation of burglar bars on windows

b. Purchase of a dog
c. Home alarm system
d. Installation of a fence
e. Automobile alarm system
f. Additional locks or dead bolts on exterior doors
g. Additional locks for windows or sliding glass doors
h. Purchase of a weapon (please specify type) _____
i. Self defense course(s) (please specify type of training) _____
j. Other _____
Have you ever been a member of or a supporter of any victim's rights group?

65.

YES _____          NO _____

15

HB 000149

Bates No. 4741

a. Have you ever utilized the services of a victim's rights group?

YES _____        NO _____

66. Have you ever been in Court before, <u>other than for a minor traffic violation?</u>

(e.g., accompany a friend, watch a court case, etc.)

YES _____        NO _____

If yes, what were the circumstances? _____
_____

67. Have you ever been a witness or given a statement in <u>any</u> type of legal

proceeding, including any experience as an expert witness?

YES _____        NO _____

If yes, please describe the case and your involvement:_____
_____

68. Have you, a close friend, or anyone in your immediate family, ever filed a lawsuit?

YES _____        NO _____

If yes, please tell us who filed the lawsuit and briefly describe the circumstances: _____
_____

69. Have you, any immediate family member or anyone close to you, ever had a lawsuit filed <u>against </u>them?

YES _____        NO _____

If yes, please tell us what was involved in the lawsuit and briefly describe the circumstances: _____
_____

70. Are you presently involved as either a plaintiff or a defendant in any court?

YES _____        NO _____

If yes, please explain:    _____

16

_____

71.    Have you ever been involved in a lawsuit?

       YES _____          NO _____

       a. How many lawsuits have you been involved in: _____
       b. Were you the plaintiff: _____
       c. Were you the defendant: _____
       d. What was the nature of the suit(s):_____
       e.  Were you satisfied with the results: _____

72.    Have you, a close friend, or immediate family member, ever been accused of, charged with, or convicted of any crime, or been the subject of a criminal investigation, other than a <u>minor traffic violation</u>?

       YES _____          NO _____

       a. If yes, please indicate who was accused or investigated, state the date, crime, charging authority, and the outcome: _____
       _____

       b. Do you feel you, the friend, or the family member were justly accused, charged and convicted or investigated?

       YES _____          NO _____

       If no, please explain: _____
       _____

73.    Have you or any member of your immediate family ever been audited, investigated by, or had a dispute, with any agency or department of the United States (including the IRS, Social Security Administration, Veterans Administration, Equal Employment Opportunity Commission (EEOC), Health and Rehabilitation Service (HRS), etc.)?

       YES _____          NO _____

       If yes, please tell us if you think you were treated fairly and the nature of the investigation, dispute or audit: _____
       _____

17

HB 000151

If no, please explain: _____

_____

74. Have you, any members of your immediate family, or close friends, ever been the victim of, or witnessed, any crime? (Whether or not the crime was reported)

YES _____          NO _____

a. If yes, please describe the crime(s) and which person was involved either as a victim or witness: _____

_____

b. Was anyone arrested?  YES_____          NO _____

c. If there was an arrest, what was the outcome? _____
d. If there was a trial, did you testify? YES_____  NO_____

e. Were you satisfied with the way law enforcement handled the matter?

YES _____          NO _____

f. If no, please explain: _____

_____

75. Have you ever known anyone who was the victim of a homicide?

YES _____          NO _____

76. Do you or any member of your household own any type of firearms?

YES _____          NO _____

If yes, please tell us who owns the weapon and what type(s) of firearm(s) you or a member of your household currently own and/or have owned, as well as the purpose, for owning such a weapon (i.e., sport, hobby, protection, etc.): _____

_____

77. Have you ever worked for a lawyer or in a law office?

18

YES _____          NO _____

If yes, what were your responsibilities: _____
_____

78.  Has your spouse worked for a lawyer or in a law office?

YES _____          NO _____

If yes, what were your spouse's responsibilities: _____
_____

79.  Have you or an "immediate family" member ever been associated with a District Attorney's Office or a United States Attorney's Office?

YES _____          NO _____

80.  Have you, a family member, or friend ever served on a Grand Jury?

YES _____          NO _____

81.  Did you, a family member, or friend serve on the Grand Jury that handed down the indictment in this case?

YES _____          NO _____

If yes, when did you serve? _____

82.  Have you ever served on a trial jury before?

YES _____          NO _____

a.  If yes, when did you serve? _____

b.  If yes, please answer the following:

_____ State Court        _____ Number of times        _____ Date
_____ Federal Court      _____ Number of times        _____ Date
_____ Civil Case         _____ Number of times        _____ Date
_____ Criminal Case      _____ Number of times        _____ Date
c. Were you ever the foreperson?    YES _____        NO _____

19

HB 000153

Bates No. 4745

d. Was there a verdict reached in each case?     YES _____     NO_____

e. Is there anything about your past service as a juror that would make it difficult for you to sit as a juror in this case?

          YES _____          NO _____

If yes, please explain: _____

f. Have you, a close friend, or immediate family member previously served on a Jury in a case which involved a homicide charge?

          YES _____          NO _____
Please tell us who served: _____

Without mentioning the outcome, briefly describe the case: _____
_____

83. What are your opinions and views about the practice of using witnesses in a criminal trial who have received benefits (e.g., a reduced sentence, dismissal of charges, immunity from prosecution or money) for their testimony?
_____
_____

84. Would you want to know if a witness in this case was being given benefits

(a reduced sentence, dismissal of charges, immunity from prosecution or money) by the United States Government or the State of North Carolina for assisting in this prosecution?

          YES _____          NO _____

Why/why not? _____

85. Would you agree or disagree with the following statement?

Law enforcement officers are more likely than other people to tell the truth, if they are called as a witness in a trial.
(Circle the response that most accurately reflects your feelings.)

20

HB 000154

AGREE     DISAGREE     AGREE SOMEWHAT     DISAGREE SOMEWHAT

NOT SURE

Please explain briefly your position:_____

_____

86.  Please tell us if you have ever heard, read, seen, discussed or know any of the following individuals: (Please place a check mark next to all that apply.)

**[LIST TO BE SUBMITTED FOR COURT APPROVAL BY THE PARTIES AT A LATER DATE.]**

Please tell us what you may have heard, read, seen or discussed about these individuals: _____

_____

Are there any people on the above list that you would have difficulty or

87.

would be unable to believe, or would always believe, based on your knowledge or opinion of that person, should that person take the witness stand?

YES _____          NO _____

If yes, please tell us who those people might be and why you feel you could

not objectively hear their testimony: _____

_____

88.  How often do you watch the news? _____
Do you ever watch any of the following television shows which focus on the

89.

investigation and resolution of legal problems? (Please check ALL that apply):

| | | |
|---|---|---|
| _____ 60 Minutes | _____ 20/20 | _____ Nightline |
| _____ America's Most Wanted | _____ PrimeTime Live | _____ Hard Copy |
| _____ Entertainment Tonight | _____ Inside Edition | |
| _____ Unsolved Mysteries | _____ Other news/docudrama - Please | |

21

Bates No. 4747

specify: _____

90. From what sources do you receive your news? (Please check all that apply):
_____ Printed Material (magazines, newspapers, etc.)

_____ Television

_____ Radio

91. How many days during the week do you read a daily newspaper?
_____ Days a week
a. Which newspapers do you read on a regular basis? _____

_____

b. What sections of the newspaper do you generally read? _____

_____

c. Have you followed any criminal trials in the newspapers or on television?

As a result of following this/these trial(s), what are your impressions about the criminal justice system? _____

_____

Have you seen, read or heard anything about this case?

92.

YES _____         NO _____

a. Please indicate <u>where</u> you heard about this case. (Please check all that apply)
_____ Television News   _____ Radio News _____ Newspapers
_____ Magazines         _____ Books       _____ Conversations
_____ Heard other people discussing the case

b. If you checked television news, radio news, newspapers, magazines or books, please indicate in which news programs, newspapers, magazines or books you saw or heard about this case, and how often you saw such references. (Check all that apply):

| Sometimes | Seldom | Never | |
| --- | --- | --- | --- |
| _____ | _____ | _____ | Channel 3 News |
| _____ | _____ | _____ | Channel 9 News |

22

Juror # _____

| | | |
|---|---|---|
| _____ | _____ | _____ |

Channel 18 News
Channel 36 News
Other TV News
(specify)
_____

_____  _____  _____

Other Radio News
(specify)
_____

_____  _____  _____
_____  _____  _____

Charlotte Observer
Other Newspapers
(specify)
_____

_____  _____  _____

Any other news
Sources not listed
(specify)
_____

c. If you heard people discussing or having conversations about any developments that have occurred in this case, please indicate what sort of conversation you recall and the nature of each of those conversations:

_____
_____
_____

d. If you have read, heard, seen, or discussed this case, please tell us everything you think you know about this case, in as much detail as possible:

_____
_____
_____

93. As a result of what you have seen, heard, or read or discussed about this case, have you formed an opinion concerning the innocence or guilt of anyone charged in this case?

   YES _____    NO _____

If yes, what opinion(s) have you formed, about whom, and on what are those opinions based?_____

_____

94. As a result of what you have seen, read, or heard or discussed about this case, have you formed an opinion or belief concerning the way this case has been handled by the United States Government?

23

HB 000157

YES _____          NO _____

If yes, what opinion(s) have you formed and on what are those opinions based?

_____
_____

95.   Do you have any religious, moral or personal convictions that could prevent you from returning a verdict of "Guilty" if the Government proves every element of its case beyond a reasonable doubt?

YES _____          NO _____

If yes, please explain:_____
_____

96.   The law does not require a defendant accused of a crime to take the witness stand. The defendant accused in this case, may or may not testify in this case. How would you feel if he did not testify?_____
_____

97.   The jury is responsible to decide this case only on the evidence presented at trial and, the law as instructed by the Court.  What lawyers say in their questions is not evidence.   Evidence consists of the answer of the witnesses and exhibits received. Will you follow thal instruction?

YES _____          NO _____

98.   It is the trial judge's responsibility to instruct you on the law. It is the jury's job to apply the law to the facts as the jury finds them. Do you believe you are able to apply the law as the Court explains it to you even if you disagree with it?

YES _____          NO _____

99.   Under our law, each defendant is presumed innocent.   Will you accept and apply this fundamental legal principle?

YES _____          NO _____
How do you feel about this basic concept? _____

HB 000158

Juror # _____

_____

100. The Government bears the burden of proof in a criminal case. In order for the jury to return a verdict of guilty, the Government must prove beyond a reasonable doubt each and every element of the crime charged. A person charged with a crime has absolutely no burden to prove anything.  Will you accept and apply this rule of law?

YES _____          NO _____

How do you feel about the Government being required to meet this burden of proof? _____
_____

101. No witness is entitled to more or less belief solely because of his/her occupation or profession. Will you accept and follow this instruction?

YES _____          NO _____

102. You are not to speak to anyone about this case; if anyone tries to speak to you about this case, you are required to report the fact to the judge immediately. Will you follow this instruction?

YES _____          NO _____

103. This trial may take four (4) weeks. Do you have any problem sitting as a juror on a case that may take up four (4) weeks to complete?

YES _____          NO _____

104. Are you willing, as a juror, to stay as long as is necessary to reach a verdict in this case?

YES _____          NO _____

a.  If no, please tell us why:_____
_____
b.  Some people who are called for possible jury service would like to be chosen to serve on a jury while other people would rather not be chosen. How do you personally feel?

\_\_\_\_\_Would like to serve   \_\_\_\_\_Would rather not serve \_\_\_\_\_ No opinion

HB 000159

Case 3:12-cv-00327-MOC   Document 76-18   Filed 12/22/14   Page 56 of 100
Bates No. 4751

105. Is there anything going on in your life either at home or at your place of employment that might cause you to be distracted if you were selected to sit as a juror on this case?

        YES _____         NO _____

        If yes, please explain: _____
_____

106. Have you talked with anyone about your possible involvement as a juror in this case?

        YES _____         NO _____

        If yes, please give the details of that discussion: _____
_____

107. Is there anything about this type of case that would cause you to feel under any pressure to return a specific verdict?
        YES_____         NO _____


        If yes, please tell us what that might be: _____
_____

108. Is there anything you think you should bring to the attention of this Court regarding your service as a juror on this case?

        YES _____         NO _____

        If yes, please explain: _____
_____

109. Have you consulted with anyone in order to complete this questionnaire?

        YES_____         NO_____


        If yes, with whom did you consult and why?_____
_____

26

110. As a result of filling out this questionnaire, have you formed any opinions about this case?

YES _____          NO _____

If yes, what are those opinions? _____
_____

111. Do you have any questions?

YES _____          NO _____

If yes, please specify: _____
_____

112. Regarding your health do you have:

a. Hearing difficulties:          YES_____          NO_____
b. Difficulties seeing:           YES_____          NO_____
c. Someone sick to care for:      YES_____          NO _____
d. Regular doctor appointments:   YES_____          NO_____
e. Small children to care for:    YES_____          NO_____

f. Some other problem which will make it difficult for you to serve for four or more weeks: _____

Have you or any member of your "immediate family" ever been under a

113.

Doctor's care for any of the following:

a. Mental problems:           YES_____          NO_____
b. Alcohol-related problems:  YES_____          NO_____
c. Drug-related problems:     YES_____          NO_____

114. Have you or an "immediate family" member been the victim of a violent crime?

YES _____          NO _____

115. Have you or any member of your family ever been charged with a felony?

YES _____          NO _____

27

HB 000161

Bates No. 4753

116. Have you ever been charged with a misdemeanor other than a minor traffic violation?

     YES _____          NO _____

117. Have you, or to your knowledge, any member of your "immediate family" ever had any legal dispute or claim with or against any department or agency of any state or federal government, including but not limited to the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco and Firearms, the Charlotte Police Department, and the Roanoke, Virginia, Police Department?
     YES_____          NO_____

     b. If your answer to the above question is "yes" state briefly what the

     disagreement involved: _____
     _____

118. Please list the names of all organizations to which you belong including

     clubs, unions, societies, Fraternal organizations, and professional organizations:_____
     _____

119. If you hold an office or official position in any organization, please state the organization and the position: _____
     _____

120. If you are affiliated with a church, temple, synagogue, or other religious organization, please give its name and location:_____
     _____

121. Do you have an active role in your church?   YES_____   NO_____

122. Have you ever studied for the ministry, priesthood or any other religious

     position?     YES_____          NO_____

     If so, please explain: _____

123. What newspapers and magazines do you usually read? _____
     _____

124. Have you ever owned any kind of firearm?   YES_____          NO_____

28

Bates No. 4754

125. Have you ever belonged to the National Rifle Association, Gun Owners of America, or any other organization which is concerned with protecting the right to own weapons?

    YES _____          NO _____

    If yes, please describe the extent of you participation in the organization:
    _____

126. Would you describe yourself politically?   Pick the spot on the scale which seems correct:

    1          2          3          4          5          6
    Extremely Liberal                                        Extremely Conservative
    or (check if applicable)


    _____ No overall classification fits in my case.
    Have you or anyone close to you ever been the victim of serious physical

127.

    violence (domestic or otherwise)?

    YES _____          NO _____

    If yes, please explain: _____
    _____

128. Have you or any person close to you been in a dating relationship or a marital relationship which involved physical and/or mental abuse or violence?

    YES _____          NO _____

    If yes, please explain: _____
    _____

129. Has anyone close to you been the victim of a homicide?

    YES _____          NO _____

    If yes, please explain: _____
    _____

29

HB 000163

Juror # _____

130. If the defendant is convicted, could you determine the appropriate penalty without considering the race of either the defendant or the victim?

       YES _____              NO _____

If yes, please explain: _____
_____

131. During the course of this trial, you may hear testimony from psychologists or psychiatrists. What is your opinion about the ability of psychologists or psychiatrists to identify and explain the reasons for human behavior?
_____
_____

132. Have you or any member of your immediate family ever worked for a psychiatrist, psychologist, therapist, mental health counselor, at a mental health clinic, or psychiatric hospital or similar setting?

       YES _____              NO _____

If yes, please explain:_____
_____

133. Have you ever received any training or engaged in the study of psychology or psychiatry?
       YES_____             NO_____

If yes, please explain:_____

_____

134. Have you or any member of your immediate family ever been hospitalized for mental illness?
       YES _____              NO _____

If yes, please explain: _____
_____

The United States Government provides for a two stage trial in cases where the

HB 000164

Bates No. 4756

Juror # _____

death penalty may be an issue. In effect, this means there may be two trials in this case. In the first trial, the jury's job is the same as it would be in any other case -to decide if the citizen accused is innocent or guilty. Only in the event the jury returns a verdict of guilty of capital murder against an accused, will the jury have the task of considering the penalty. Then the jury will sit on a second trial and hear additional evidence in order to decide a penalty.

Since the issue of penalty may be an issue in this case we need to ask you about your opinions and personal views towards the death penalty.

What is your personal view of the death penalty? _____

135.

_____

136. Do you have any strong religious, moral, social or political beliefs regarding the death penalty?

YES_____          NO_____

If yes, please describe and discuss those feelings:_____

_____

137. Would you <u>never</u> vote to impose the death penalty, under any circumstances?          YES_____          NO_____

138. Would you <u>always</u> vote to impose the death penalty in a case where a

person has been convicted of first degree murder?

YES _____          NO _____

139. Would you <u>never </u>vote to impose the penalty of life without the possibility of parole, under any circumstances, in a case where an accused has been found guilty of first degree murder?

YES_____          NO_____

140. Would you <u>always</u> vote to impose the penalty of life without the possibility of parole in a case where an accused has been found guilty of first degree murder?

YES_____          NO_____

31

HB 000165

Case 3:12-cv-00327-MOC   Document 76-18   Filed 12/22/14   Page 62 of 100

Bates No. 4757

141.  Would you favor abolishing the death penalty? *(Pick one answer)*.

_____Yes, Definitely
_____ Probably So
_____ Not Sure
_____ Probably Not
Add any comments you wish: _____

_____

142.  Which of the following describes you attitude toward the death penalty?
(You can check as many or as few as apply to you):

_____          The death penalty is acceptable, but it should be imposed in
                 fewer cases than it is.

_____          The death penalty should probably be imposed more frequently
                 than it is.

_____          The death penalty typically is imposed in appropriate cases.

_____          The death penalty should be abolished because it is wrong.

_____          Once the death penalty is imposed, courts should enforce it
                 more promptly than they do.

_____          I am uncertain how, feel about the death penalty.

Add any comments you wish: _____
_____

143.  Does your spouse have a different opinion of the death penalty from yours?

        YES _____                    NO _____

144.  If you favor the death penalty, would you say you favor it:

_____ Very Strongly

_____ Somewhat Strongly

_____ Not Very Strongly At All

32

_____ Other

Add any comments you wish: _____

_____

145. If you oppose the death penalty , would you say that you:

\_\_\_\_\_ could not support the death penalty in any case

\_\_\_\_\_ might sometimes support the death penalty in the most horrible cases

Add any comments you wish: _____

_____

I certify that I have answered all of the questions in this Juror Questionnaire myself and to the best of my ability.

_____

Signature

_____

Date

33

UNITED STATES OF AMERICA v. DEAN ANTHONY BECKFORD, CLAUDEGERALD DENNIS, LEONEL ROMEO CAZACO, RICHARD ANTHONY THOMAS, and LLEWELLENFERNANDO SMITH

Criminal No. 3:96CR66-01, Criminal No. 3:96CR66-05, CriminalNo. 3:96CR66-06, Criminal No. 3:96CR66-07, Criminal No. 3:96cr66-20

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OFVIRGINIA, RICHMOND DIVISION

964 F. Supp. 1010; 1997 U.S. Dist. LEXIS 9059

May 13, 1997, Decided
May 13, 1997, FILED

DISPOSITION: [**1] Government's Motion To Quash GRANTED IN PART.

### CASE SUMMARY

PROCEDURAL POSTURE: Before the court was the government's motion to quash ex parte subpoenas duces tecum returnable before trial which were issued under seal by the court upon ex parte application by individual defendants. The government also moved to stay delivery to the defendants' counsel of the documents, production of which had been required by the subpoenas.

OVERVIEW: Defendants were charged with the capital crime of intentional murder in furtherance of a continuing criminal enterprise and a drug trafficking conspiracy punishable under 21 U.S.C.S. § 841(b)(1)(A), in violation of 21 U.S.C.S. § 848(e), for which the death penalty was to be sought. With the approach of trial, defendants filed ex parte applications for subpoenas duces tecum requiring the pre-trial production of specified documents. The government also filed an ex parte application of its own for a subpoena duces tecum requiring pre-trial production of school records of one defendant. The issue before the court was whether, and to what extent, a district court may consider an ex parte motion for subpoenas duces tecum. Looking at Fed. R. Crim. P. 17(c) and to U.S. Const. amend. VI, the court concluded that an indigent defendant's full enjoyment of the right to compulsory process can be guaranteed only by providing an ex parte process by which to have trial subpoenas duces tecum issued, and that the judicial intervention required by the text of Rule 17(c) can best be accomplished by requiring use of a motion.

OUTCOME: The court granted in part the government's motion to quash, and any future applications for subpoenas duces tecum by either the government or a defendant were to be made in accordance with the requirements of the memorandum opinion.

CORE TERMS: subpoena, ex parte, pre-trial, subpoena duces tecum, duces tecum, issuance, subpoenaed, indigent, returnable, inspection, modify, discovery, ex parte application, Sixth Amendment, opposing party, state law, notice, financially, enforcement agencies, trial strategy, pre-issuance, right to compulsory process, motion to quash, motions to quash, adverse party, contemplate, seal, Jencks Act, compulsory process, pretrial

CORE CONCEPTS -

Criminal Law & Procedure: Discovery & Inspection: Subpoenas

HB 000168

Bates No. 4760

When a party requests issuance of a subpoena for the attendance of a witness at trial, Fed. R. Crim. P. 17(a) directs the clerk to issue the subpoena signed and sealed but otherwise in blank, to that party; the party then fills in the necessary information before service of the subpoena. To effectuate proper service, however, the party must deliver with the subpoena the appropriate fee for one day's attendance at trial and the cost of allowable mileage. If the requesting party has financial resources sufficient to satisfy these requirements, the entire process may be completed without any intervention by the court and without notice to the adverse party.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Fed R. Crim. P. 17(b) establishes a procedure by which indigent persons may acquire necessary subpoenas for trial witnesses.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Under the modern version of the Rule, an indigent defendant is entitled to submit to the court, without notice to the government, an ex parte application for a witness subpoena. In order to obtain the subpoena, the defendant must only make a satisfactory showing that he is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. Fed. R. Crim. P. 17(b). This places all defendants, whether impoverished or with ample financial resources, on equal footing, and it prevents the government from securing undue discovery.

The subpoena may require the designated production to be made either at trial, trial subpoena duces tecum, or before trial, pre-trial subpoena duces tecum. Documents, of course, may be produced at court proceedings other than trials. A subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, for determination of an issue of fact raised by a pretrial motion, or for post-trial motions.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
It has been held that the "subpoena" in the first sentence of Fed. R. Crim. P. 17(c) refers to the subpoena which is the subject of the immediately preceding two subsections, Rules 17(a) and 17(b). Specifically, the courts uniformly have recognized that the use of the words "may also command" in

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Fed. R. Crim. P. 17(c) confers discretionary power upon the courts to direct production before the court at a time prior to trial or prior to the time when they are to be offered in evidence. Discretion is also given the courts to provide for pre-trial inspection by the parties and their attorneys of the subpoenaed documents. And, the rule provides an opportunity for the holder of the subpoenaed documents to challenge a subpoena duces tecum by a motion to quash or modify the subpoena if compliance would be unreasonable or oppressive.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Fed. R. Crim. P. 17(c) reflects the command of the U.S. Const. amend. VI that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the government. And, because it was enacted in order to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials, Rule 17(c) is more far reaching than testimonial subpoenas. Rule 17(c) is not, however, intended to provide an additional means of discovery. Accordingly, to secure pre-trial document production, the party seeking information under Rule 17(c) must show that the requested information is relevant, admissible and specific.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas

subsection (c) means that a subpoena issued under Rule 17(a) or (b) may require the subpoenaed individual, in addition, or as an alternative, to testifying at trial, to produce specified books, records and documents at trial.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Fed. R. Crim. P. 17(c) does not specifically discuss a process for obtaining such subpoenas by an ex parte application. It is also true, however, that the section does not describe any process for obtaining the subpoena. Nothing in Rule 17(c) suggests that the initial application should be any different from the application for a subpoena which does not happen to require that the subpoenaed witness produce documents.

HB 000169

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Because a financially able defendant and the government may issue a trial subpoena ad testificandum without the need for court intervention under Fed. R. Crim. P. 17(a), a financially able party also need not seek leave of court by motion before issuance of a Rule 17(c) trial subpoena duces tecum. And, because today's Rule 17 contemplates that all parties in a criminal case, indigent or not, will be on equal footing as respects the ability to subpoena evidence without disclosure to its documents, an indigent defendant is entitled, under Rule 17(c), to issuance of subpoenas duces tecum returnable at trial by making the same showing as required by Rule 17(b) to secure issuance of a trial witness subpoena.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
To effectuate the rights provided by Fed. R. Crim. P. 17(c), the indigent defendant must secure an order requiring the United States Marshal to serve the subpoena duces tecum and to pay other associated fees. Therefore, it is necessary that a court authorize service and payment of fees from the government coffers. To that end, an application for service and funds must be made to the court.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
The right to apply ex parte for a trial subpoena duces tecum and payment of the associated fees is necessary to avoid disadvantaging defendants who are financially unable to pay. For those reasons, the U.S. Const. amend. V requires that Fed. R. Crim. P. 17(c) be construed as authorizing an ex parte procedure by which indigent defendants may have issued trial subpoenas duces tecum for documents to be used in mounting a defense, without disclosing the defense to the government. The five courts which have addressed the issue have held that Rule 17(c) provides for ex parte process for the application for, and the issuance of, a trial subpoena duces tecum.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Only with court intervention can the subpoena be utilized for production before the court at any time prior to the trial or prior to the time when the documents are to be offered in evidence. Only the court may, upon the production of the documents, permit the documents or objects to be inspected by the parties or their attorneys.

Criminal Law & Procedure: Trials: Defendant's Rights: Right to Compulsory Process
U.S. Const. amend. VI affords a criminal defendant the right to compulsory process in aid of the defense case. This right is considered fundamental to the right to a fair trial.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Fed. R. Crim. P. 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
To conclude that Fed. R. Crim. P. 17(a) and 17(c) permit an individual of financial means to subpoena both witnesses and documents without notice to the government, while Rules 17(b) and 17(c) only allow an indigent defendant to subpoena witnesses, would result in a disability based on financial status in violation of U.S. Const. amend. V.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Criminal Law & Procedure: Pretrial Motions: Pretrial Motions Generally
Although Fed. R. Crim. P. 17(c) does not clearly require it, the use of a motion as the procedural means for invoking the court's discretion in advance of issuance of a pre-trial subpoena duces tecum is an orderly and desirable procedure and one frequently followed.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
The chief innovation of Fed. R. Crim. P. 17 was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials. Specifically, it provided a mechanism to prevent delays at trial which typically had occurred when documents were produced in response to a subpoena duces tecum requiring production at trial. Those delays were necessary because opposing counsel were entitled to inspect and to read the documents before they were introduced, thereby consuming a great deal of time in those cases in which there is voluminous documentary evidence.

HB 000170

Bates No. 4762

Also, subsection (c) affords the requesting party the opportunity to inspect subpoenaed documents in advance of trial, for the purpose of course of enabling the party to see whether he can use it or whether he wants to use it.

Criminal Law & Procedure: Discovery & Inspection: Discovery by Defendant: Tangible Objects
Criminal Law & Procedure: Discovery & Inspection: Subpoenas
The Supreme Court has emphasized that it was not intended by Fed. R. Crim. P. 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. To avoid that result, the Supreme Court held that
Criminal Law & Procedure: Discovery & Inspection: Subpoenas
The decision whether to require production of the requested documents pre-trial rests ultimately within the sound discretion of the district court. That discretion must be exercised in remembrance of the responsibility to prevent Fed. R. Crim. P. 17(c) from being improperly used as a discovery alternative to Rule 16. Congress entrusted the district court with that task by providing that the return date of a subpoena duces tecum may be designated in advance of trial only if a court so directs or permits. Fed. R. Crim. P. 17(c). The requirement of court intervention in the process is not a mere formality. To the contrary, it represents a vital protection against misuse or improvident use of such subpoenas duces tecum. Indeed, without the court's supervision, Rule 17(c) would lend itself to discovery of the broadest sort, a result that the drafters of the Rule decried.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
The Supreme Court has emphasized that the burden is on the district court to see that the subpoena is good in its entirety and it is not upon the subpoenaed party to cull the good from the bad. And, the district court succinctly explained that the burden should not be shifted to the opposing party to move to vacate the subpoena. The court has an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties.

Criminal Law & Procedure: Discovery & Inspection: Pretrial Conferences
Criminal Law & Procedure: Discovery & Inspection: Subpoenas

pretrial production of evidence pursuant to Rule 17(c) is appropriate only where the moving party can show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare    for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition.

The government is entitled to participate in a hearing to address a third party's motion to quash should it arise, and Fed. R. Crim. P. 17(c) expressly contemplates the review of documents so subpoenaed by the other parties to that dispute.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Criminal Law & Procedure: Trials: Defendant's Rights: Right to Compulsory Process
U.S. Const. amend. VI supplies justification for interpreting Fed. R. Crim. P. 17(c) to permit ex parte procedures respecting the issuance of pre-trial subpoenas duces tecum in the rare instance in which a defendant would be required to disclose trial strategy, witness identities or attorney work-product to the government in his pre-issuance application.

Constitutional Law: Criminal Process: Right to Confrontation
Criminal Law & Procedure: Discovery & Inspection: Subpoenas
The government is entitled to ex parte procedure for the issuance of pre-trial subpoenas duces tecum where, in the absence of such procedure, it would be required prematurely to disclose to the defense its trial strategy, witness list, or other privileged information in its application to the court.

Criminal Law & Procedure: Discovery & Inspection: Subpoenas
Criminal Law & Procedure: Trials: Defendant's Rights: Right to Confrontation
Ordinarily, ex parte procedure will be unnecessary and thus inappropriate. However, in limited circumstances, a district court may be warranted in    exercising its discretion to permit ex parte process. In those rare situations where mere

HB 000171

Bates No. 4763

disclosure of the application for a pre-trial subpoena would: (i) divulge trial strategy, witness lists or attorney work-product; (ii) imperil the source or integrity of subpoenaed evidence; or COUNSEL: For METRO RICHMOND CRIME STOPPERS, INC. (0), interested party: William Thomas Lehner, Richmond, VA.

For DEAN ANTHONY BECKFORD (1), aka "Smiles" aka "Smiley" aka Daniel Davis aka "Milo": Robert James Wagner, For CLAUDE GERALD DENNIS (5), aka Jerry Lubin aka "Jerry" aka "G-Man": John C. Jones, Providence Forge, VA. Scott Brettshneider, Kew Gardens, NY.

For LEONEL ROMEO CAZACO (6), aka "Jimmy Fingers" aka Frank Nisbett aka James Romeo Nelson aka "Phil" aka "Scott": Reginald Moore Barley, Richmond, VA. Cary Breckinbridge Bowen, Cary Breckinbridge Bowen (see above), Bowen, Bryant, Champlin & Carr, Richmond, VA.

For RICHARD ANTHONY THOMAS (7), aka "Spooky" aka "Richie" aka Mark Andrew Taylor: Elizabeth D. Scher, Morchower, Luxton & Whaley, Richmond, VA. David Preston Baugh, Richmond, VA.

For ANDREW CHRISTOPHER O'BRIEN (8), aka "Indian" aka "Cuban", defendant: Raymond A. Carpenter, Boone, Beale, Carpenter & Cosby, Richmond, VA.

For DAVID LENDALL GANT (16), aka "Ryan" aka "Dreds" aka Ryan Clark aka Ryan Daniel aka Dwight[**2] Reed, defendant: William Joseph Doran, III, Richmond, VA.

For CRAIG MURPHY (17), aka Desie McKinzie aka "Voop" aka "Phil" aka Jimmy Cuebas aka Alphonzo Reid aka Robert Bullock, defendant: Arnold R. Henderson, Wilder & Gregory, Richmond, VA.

Before the Court is the Government's Motion to Quash ex parte subpoenas duces tecum returnable before trial which were issued under seal by the Court upon ex parte application by individual defendants. The Government also moved to stay delivery to the defendants' counsel of the documents, production of which had been required by the subpoenas. For

(iii) undermine a fundamental privacy or constitutional interest of the defiant, the ex parte process could be available on a proper showing.
Wagner & Wagner, Richmond, VA. Gerald Thomas Zerkin, Gerald T. Zerkin & Associates, Richmond, VA.

For DINO LOWE (19), aka "Tready" aka Shariff Walker aka Andrew Williams, defendant: Frederick S. Kaufman, Richmond, VA.

For LLEWELLEN FERNANDO SMITH (20), aka "Louie": Stephen Neil Stout, Flax, Embrey & Stout, Richmond, VA. Steven Paul Hanna, Richmond, VA. Jeffrey Lee Everhart, Richmond, VA.

For DAVID HALLMAN (21), aka "Pops" aka Anthony Cunningham aka "Big Maleek" aka David Hallman, defendant: Bradley Powell Butterworth, Hopewell, VA.

For LOUIS BRONSON KING (22), aka "Shala" aka Michael Thomas aka Louis Nutridge aka Malik Thomas aka Anthony Cunningham, defendant: Thomas Parrish Collins, Eck & Collins, Richmond, VA.

U. S. Attorneys: Stephen Wiley Miller, U. S. Attorney's Office, Richmond, VA. Andrew McBride, US Attorney's Office, Alexandria, VA. David John Novak, United States Attorney's Office, Eastern District of Virginia, Richmond, VA.

JUDGES: Robert E. Payne, United States District Judge

OPINIONBY: Robert E. Payne

OPINION: [**3] [*1012] MEMORANDUM OPINION

the reasons set forth below, the Government's motion is granted in part and denied in part.
BACKGROUND

HB 000172

Defendants Dean Anthony Beckford, Claude Gerald Dennis, Leonel Romeo Cazaco and Richard Anthony Thomas have been charged in the Superseding Indictment with the capital crime of intentional murder in furtherance of a Continuing Criminal Enterprise and a drug trafficking conspiracy punishable under *21 U.S.C. § 841*(b)(1)(A), in violation of *21 U.S.C. § 848*(e). Pursuant to *21 U.S.C. § 848*(h), the Government has notified each defendant that it intends to seek a penalty of death in the event of conviction and has posited with specificity the statutory and non-statutory aggravating factors which it will seek to prove as the basis for imposition of the death penalty. Pursuant to *18 U.S.C. §§ 3005* and [**4] 3006, the Court has appointed two attorneys to defend each of the death-eligible defendants, finding that the defendants were financially eligible for those services. n1

n1 Defendant Dennis was subsequently granted leave to substitute retained counsel for one of his court-appointed attorneys. The fees of that counsel are being paid by the defendant's family.

With the approach of trial, defendants Beckford, Cazaco and Thomas filed ex parte applications for subpoenas duces tecum requiring [*1013] the pre-trial production of specified documents. The documents subpoenaed by the defendants fall into three general categories:

(1) records from state and federal correctional facilities and other state governmental agencies concerning the requesting defendants;

At this point, it is necessary briefly to explain what seems to be the root problem respecting issuance of subpoenas in Category (2) to certain state law enforcement agencies: a lack of clarity in the identification of the law enforcement entities

Before late 1995, the investigation of many of the crimes charged or involved in this case was exclusively in the hands of state law enforcement agencies. As one would expect, some victims and other persons who the Government now says may be witnesses in this case provided statements to the state law enforcement agencies which were at the time handling the

(2) state law enforcement records concerning the statements, criminal activities, and general backgrounds of specified individuals who are victims of the crimes alleged in the Superseding Indictment and/or prospective Government witnesses in this case; [**5] and

(3) state court probation records respecting prospective Government witnesses.

The Government also has filed an ex parte application of its own for a subpoena duces tecum requiring pre-trial production of school records of one defendant     which the Government shared with the affected defendant (as has been represented in the ex parte motion for issuance of the subpoena).

The Court initially granted these ex parte applications of the Government and of the defendants, and issued the requested subpoenas ex parte and under seal. Some of the subpoenaed documents in Categories (1) and (3) were delivered to the Clerk and copies have been delivered to counsel at whose behest the subpoena was issued. A few of the documents listed in Category (2) also have been delivered to the Clerk and copies have been provided to counsel who issued the subpoena. Other documents in Category (2) have been delivered to the Clerk, but copies have not been provided to counsel. None of the documents delivered to counsel for defendants are of the sort which the Government apprehends might jeopardize its rights or the safety of its witnesses if information in them were publicly known. [**6]

involved in prosecuting this case. A brief look at the history of the case is therefore appropriate.

investigation. However, in late 1995, federal and state law enforcement agencies formed a working investigative unit called the Richmond Cold Homicide Task Force (hereinafter the "Task Force") which took over the investigation and prosecution of what is now this case. As the Court recently has been informed, the Task Force is comprised of members of the

HB 000173

Bates No. 4765

Richmond police Department, the Virginia State Police and the Federal Bureau of Investigation. It also involves the Commonwealth's Attorney[**7] for the City of Richmond. According to the defendants, the files of the state agencies contain: (i) exculpatory information; and (ii) statements which can be used to impeach the Government witnesses and otherwise aid presentation of the defense. On that basis, the defendants sought production of that information directly from the state agencies by subpoena duces tecum. The Government, however, asserts that the Rule 17(c) subpoenas duces tecum were improperly issued, because all files of the law enforcement agencies comprising the Task Force are in the hands, or under the control, of the Government; and that, therefore, production of statements and other information generated by the state law enforcement agencies before the formation of the Task Force is controlled by the rules of *Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), Giglio v. United States, 405 U.S. 150, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972),* and the Jencks Act, *18 U.S.C. § 3500,* and the Court's earlier orders respecting Brady, Giglio, and Jencks Act material.

In any event, the Court was left with the impression that the state and federal efforts were far more separate than, in fact, they were. Thus, the Court approved the issuance of defense subpoenas to state law enforcement agencies, considering those agencies not to be part[**9] of the Government for Jencks and Brady purposes. Although the Government argues otherwise, counsel for the defendants may have made the same mistake with respect to their subpoena requests to state law enforcement agencies as did the Court. Or, as the Government suggests, perhaps counsel for the

The Government's motion to stay and to quash was filed immediately after service of a subpoena (in Category (2)) on an officer of the Richmond Police Department. The Government, having learned of the issuance of that subpoena, immediately thereafter moved to stay production of all documents subpoenaed ex parte and to quash all ex parte subpoenas. The Government asserted two bases for the relief sought: (1) that the subpoenas could not properly have been issued [**10]ex parte given the nature of the documents which were the subject of the subpoenas; n2 and (2) that many of the requested documents constitute Brady, Jencks, or Giglio material, production of which is governed by previous court

The Jencks Act and Brady and its progeny govern the production by the Government of prosecution witness' pre-trial statements[**8] and favorable evidence to the defense which are in the possession of the Government. At the outset, then, in determining the applicability of the Jencks Act and the Brady doctrine, it is necessary for the court to determine what agencies comprise the "Government." Until required to do so recently, however, the Government [*1014]has not identified specifically what agencies it considers to be included within the scope of its obligations respecting production of Jencks, Giglio and Brady material. Moreover, in some pleadings respecting the nature and extent of its obligations, the Government disclaimed any obligation to search, or produce material from, the files of certain state law enforcement agencies. Although the Government's earlier disclaimer related only to state courts and state probation agencies, there was some doubt whether state prosecutor's offices were also within the reach of those statements.

defendants may have construed the Court's earlier decisions more narrowly than is warranted by their text. In either case, the defendants sought the requested information by subpoena under Rule. 17(c), apparently of the view that the material was not the subject of the Court's previous decision respecting the timing of production of Jencks, Giglio and Brady material in the possession or control of the Government.

orders, see *United States v. Beckford, et al., 950 F. Supp. 4, 1997 WL 168646 (E.D. Va. 1997),* and which is not permitted under Rule 17(c). The Government's previous pleadings have documented its concerns respecting the safety of its witnesses, some of whom had given statements which were called for by some of the subpoenas.

n2 The Government does not take the position that ex parte process is entirely unavailable to the defendants under Rule 17(c) On the contrary, the Government, in its papers, asserts that in limited circumstances ex parte process may be appropriate. However, with respect to the

HB 000174

Bates No. 4766

subpoenas of which the Government has learned, it contends that ex parte process should not have been employed.

Finding merit in the Government's second contention, [**11] the Court unsealed the ex parte subpoenas (and the orders pursuant to which they were issued). n3 The parties subsequently have resolved their disputes over most of the subpoenas, and the motions to quash and to stay many of the subpoenas previously at issue are now moot. See United States' Statement Regarding Subpoenas (filed April 28, 1997) at 1-3. However, there are several subpoenas duces tecum and the documents produced in response thereto which remain under seal. Further, there is pending another ex parte motion for subpoenas, and other such motions are to be filed as trial grows closer. For those reasons, and to resolve the

The challenged subpoenas were issued pursuant to Fed. R. Crim. P. 17(c), upon separate [*1015] ex parte motions by the United States, Dean Beckford, Leonel Cazaco, and Richard Thomas. It is therefore necessary to assess whether, and to what extent, a district court has authority to issue ex parte subpoenas under Rule 17(c). The parties were asked to brief

The rule controls issuance of subpoenas in criminal cases, and outlines the method by which the Government and defendants in those cases may procure subpoenas from the district court. Rule 17 provides both for the issuance of trial subpoenas ad testificandum and subpoenas duces tecum. When a party requests issuance of a subpoena "for the attendance of a witness" at trial, Rule 17(a) directs the clerk to issue the subpoena "signed and sealed but otherwise in blank," to that party; the party (most often counsel) [**13] then fills in the necessary information before service of the subpoena. To effectuate proper service, however, the party must deliver with the subpoena the appropriate fee for one day's attendance at trial and the cost of allowable mileage. If the requesting party has financial resources sufficient to satisfy these requirements, the entire process may be completed without any intervention by the court (other than the application to the Clerk) and without notice to the adverse party.

remaining general dispute over the availability of ex parte process under Rule 17(c), the Court has decided to reconsider the issue of whether, and to what extent, a district court may consider an ex parte motion for subpoenas duces tecum.

n3 The applications for the subpoenas contained information respecting trial strategy and hence the applications remain under seal. Some orders restricted the scope of the documents requested in the ex parte motions for issuance of the subpoenas. Others did not.

[**12]

DISCUSSION

I. FEDERAL RULE OF CRIMINAL PROCEDURE 17: A BRIEF PERSPECTIVE.

this issue, and their submissions have been helpful, but far from complete, for the issue is not a settled one. As a preface to consideration of this issue, it will be useful briefly to examine the structure and development of Rule 17.

Rule 17(b) addresses the rather common situation which arises when a defendant who requests issuance of a subpoena ad testificandum cannot pay the requisite fees which make the subpoena effective. Thus, Rule 17(b) establishes a procedure by which indigent persons may acquire necessary subpoenas for trial witnesses.

Before 1966, however, this provision was not so advantageous to indigent defendants. That is because, before its amendment in 1966, Rule 17(b) compelled indigent defendants to make a substantial showing that the requested evidence would be material and that "the defendant could not safely go to trial," without the witness. 2 Charles A. Wright, Federal Practice & Procedure: Criminal § 272 at[**14] 137 (2d ed. 1982, 1996 Supp.). Moreover, the indigent defendant was required to submit to the district court an affidavit, which was then made available to the Government, naming the requested witness and describing the testimony which the witness was

HB 000175

Bates No. 4767

expected to provide. Id. Of course, defendants with means were not required to make these showings because no federal funds were required to obtain service or to pay for witness fees.

Therefore, the rule effectively discriminated against impoverished defendants because, in order to obtain testimony essential to their defense, indigent defendants were obligated to reveal to the Government the identity of defense witnesses and the defense's trial strategy. n4 In other words, "Rule 17(b) [presented] an indigent with [a] Hobson's choice: either to make no defense or disclose his whole case to the Government before his trial." *Smith v. United States, 114 U.S. App. D.C. 140, 312 F.2d 867, 872 (D.C.Cir. 1962)* (Skelly Wright, J., concurring in part and dissenting in part) (quoted in *United States v. Hang, 75 F.3d 1275, 1281 (8th Cir. 1996)).* n5

n4 Moreover, it was even held that statements in the defendant's affidavit might be used to impeach the defendant at trial, despite the constitutional privilege against self-incrimination. See 2 Wright, Federal Practice and Procedure: Criminal 2d § 272 at 138 (citing *Smith v. United States, 114 U.S. App. D.C. 140, 312 F.2d 867 (D.C. Cir 1962)).*

Rule 17(b) in his oft-quoted concurrence and dissent in Smith v. United States:

To obtain witnesses under Rule 17(b), the indigent is compelled to tell the Government, under oath, who they are, where they live, and what they will testify to. In addition, the defendant, in his affidavit, shall show that the evidence of the witnesses is material to the defense, that the defendant cannot safely go to trial without them. Not only must the accused speculate as to what the witnesses will say, but he must explain, under oath, the materiality of the testimony to his defense.

[**15]

n5 Judge Wright succinctly stated the "Hobson's choice" which faced indigent defendants under the old version of

*312 F.2d at 873* (Wright, J., concurring in part and dissenting in part). No serious quarrel can be advanced in opposition to those observations about former Rule 17(b).

P. 17(b). This places all defendants, whether impoverished or with ample financial resources, on equal footing, and it prevents the Government from securing undue discovery.

*United States v. Hang, 75 F.3d at 1281.* In effect, then, the ex parte procedure provided for in the current iteration of Rule 17(b) secures for the indigent defendant the benefits of the rule which, for affluent defendants, authorizes compulsory attendance of witnesses without requiring notice or disclosure to the Government.

[*1016] The 1966 amendment ameliorated this inequity by enacting Rule 17(b) in its present form. The United States Court of Appeals for the Eighth Circuit summarized the amended procedure under Rule 17(b) as follows:

Under the modern[**16] version of the Rule, an indigent defendant is entitled to submit to the court, without notice to the Government, an ex parte application for a witness subpoena. In order to obtain the subpoena, the defendant must only make a satisfactory showing that he "is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. Fed. R. Crim.

Rules 17(a) and (b), of course, deal only with subpoenas compelling the attendance of witnesses at trial. It is Rule 17(c) that regulates the far different matter of "production of documentary evidence and of objects." Fed. R. Crim. P. 17(c). To that end, Rule 17(c) provides for the[**17] issuance of subpoenas duces tecum:

HB 000176

Bates No. 4768

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the Fed. R. Crim. P. 17(c).

Rule 17(c) authorizes a party to require, by subpoena, in addition, or as an alternative, to the attendance of a witness at trial, the production of documents or other physical evidence within the custody and control of the individuals who must respond to the subpoena. However, unlike a trial subpoena ad testificandum issued under Rule 17(a) or 17(b), a subpoena duces tecum may be made returnable before, as well as at, trial. To that end, the rule confers discretionary power upon the courts to direct production[**18] "before the court at a time

Of course, Rule 17(c) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the Government. And, because it was enacted in order to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials," *Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 95 L. Ed. 879, 71 S. Ct. 675 (1951),* Rule 17(c) is more far reaching than testimonial subpoenas. Rule 17(c) is not, however, "intended to provide an additional means of discovery." Id. Accordingly, to secure pre-trial document production, the party seeking information[**19] under Rule 17(c) must show that the requested information is relevant, admissible and specific. *United States v. Nixon, 418 U.S. 683, 699-700, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974).*

subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

prior to trial or prior to the time when they are to be offered in evidence." Id. Discretion is also given the courts to provide for pre-trial "inspection by the parties and their attorneys" of the subpoenaed documents. And, the rule provides an opportunity for the holder of the subpoenaed documents to challenge a subpoena duces tecum by a motion to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c). Id.

The correct interpretation of subsection (c) of Rule 17 lies at the heart of the disputes which are the subjects of this motion. Analysis of that not so simple issue follows.

[*1017] II. RULE 17 AND SUBPOENAS DUCES TECUM.

A subpoena duces tecum is the vehicle for securing production of documents and things at a specified time and place either before or after the time of trial. n6 Because Rule 17(c) does not articulate the device by which a party can invoke the court's discretionary power to decide the timing of production, the question arises whether the timing decision must be sought by motion. Additionally, it is necessary to decide whether a motion, if required, can be made ex parte and whether the documents, once produced, must be made available to the opposing party. These two issues will be addressed in turn with respect to both trial and pre-trial subpoenas duces tecum.

n6 See 25 James Wm. Moore, et al., Moore's Federal Practice § 617.03 at 617-11 (3rd Ed. 1997). The subpoena may require the designated production to be made either at trial ("trial subpoena duces tecum") or before trial ("pre-trial subpoena duces tecum") Documents, of course, may be produced at court proceedings other than trials. 2 Wright, Federal Practice and Procedure: Criminal 2d § 271

at 134 ("[Rule 17] is not limited to subpoena for the trial. A subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, for determination of an issue of fact raised by a pretrial motion, or for post-trial motions.") (citations omitted); see, e.g. *United States v. Florack, 838 F. Supp. 77* (materials to be subpoenaed in connection with a pre-trial suppression hearing).

HB 000177

Bates No. 4769

[**20]

A. SUBPOENA DUCES TECUM RETURNABLE AT TRIAL.

Although Rule 17(c) does not discuss the procedure for obtaining a subpoena duces tecum, the text of the rule suggests that an application for a subpoena duces tecum returnable at trial is governed by the procedural provisions in Rule 17(a) and (b). The first sentence of Rule 17(c) provides: "A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." Fed. R. Crim. P. 17(c) (emphasis added). It has been held that the "subpoena" in that sentence refers to the subpoena which is the subject of the immediately preceding two subsections, Rules 17(a) and 17(b). Specifically, the courts uniformly have recognized that the use of the words "may also command" in subsection (c) means that a subpoena issued under Rule 17(a) or (b) may require the subpoenaed individual, in addition, or as an alternative, to testifying at trial, to produce specified books, records and documents at trial. *United States v. Hang, 75 F.3d 1275, 1282 (8th Cir. 1996); United States v. Reyes, 162[**21] F.R.D. 468, 469 (S.D.N.Y. 1995); United States v. Florack, 838 F. Supp. 77, 79 (W.D.N.Y. 1993);* see also 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 150 n. 2 (noting that the first sentence of Rule 17(c) clearly indicates that the general provisions of Rule 17 apply to a subpoena duces tecum returnable at trial). n7 Thus, the courts have treated trial subpoenas duces tecum as simply a type of subpoena that can be issued under the procedures set forth in Rules 17(a) and (b).

n7 As noted by some courts and commentators, Official Form 21. (Subpoena to Produce Document or Object) in the Federal Rules provides support for the proposition that the general provisions of Rule 17 apply to subpoenas duces tecum returnable at trial. Form 21 commands a

It is, of course, true that Rule 17(c) does not specifically discuss a process for obtaining such subpoenas by an ex parte [*1018] application. It is also true, however, that the section does not describe any process for obtaining the subpoena. Nothing in Rule 17(c) suggests that the initial application should be any different from the application for a subpoena which does not

1. Necessity of a Pre-Issuance Application for Trial Subpoenas Duces Tecum.

subpoenaed party to appear at a place and time to be specified by the party filling out the subpoena to "testify in the case of United States v. John Doe and bring with you ." *United States v. Reyes, 162 F.R.D. at 469 n. 1;* 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 150 n. 3.

[**22]

The same analysis convinced a leading commentator that " [a] district court seems clearly right in construing Rule 17(b) as applying to a subpoena duces tecum as well as to a subpoena to testify. " 2 Wright, Federal Practice and Procedure: Criminal 2d § 272 (1996 Supp.) at 40 (citing *United States v. Florack, 838 F. Supp. at 79).* The premise for that assertion is that Rule 17(c) should be interpreted in perspective of the provisions of Rules 17(a) and (b). This view was succinctly stated by the district court in United States v. Florack:

happen to require that the subpoenaed witness produce documents.

*838 F. Supp. at 79* (emphasis added).

HB 000178

Based on these considerations, the Court finds that "the general provisions of the other subdivisions of the rule apply on such matters as[**23] form and issuance, defendants unable to pay, and service of the [trial] subpoena [duces tecum]." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 150. It follows, then, that because a financially able defendant and the Government may issue a trial subpoena ad testificandum without the need for court intervention under Rule 17(a), a financially able party also need not seek leave of court by motion before issuance of a Rule 17(c) trial subpoena duces tecum. And, because today's Rule 17 contemplates that

However, to effectuate the rights provided by Rule 17(c), the indigent defendant must secure an order requiring the United States Marshal to serve the subpoena duces tecum and to pay other associated fees. Therefore, it is necessary that[**24] a court authorize service and payment of fees from the government coffers. To that end, an application for service and funds must be made to the court.

It, therefore, is necessary to determine whether the indigent defendant may apply ex parte for the subpoena duces tecum and the funding and service necessary to effectuate it. Whereas, Rule 17(b) permits ex parte applications for trial witness subpoenas, Rule 17(c) does not contain a parallel provision. It is necessary, then, to assess Rule 17, as a whole, and to look to the Constitution to decide whether Rule 17(c) permits ex parte application for trial subpoenas duces tecum.

a. The Rule

As explained, the 1966 amendment to Rule 17 was effected to assure that all defendants, without regard to financial ability, could subpoena witnesses without having to reveal to the Government their witness lists or trial strategies. And, "whether a defendant seeks to subpoena a witness or a witness with documents should not affect the process that Congress created." *United States v. Florack, 838 F. Supp. at 79.* Hence, construed as a cohesive whole, Rule 17 itself affords authority for the ex parte issuance of subpoenas duces tecum returnable at trial, just as it permits the ex parte issuance of subpoenas for trial witnesses.

The Sixth Amendment, of course, affords a criminal defendant the right to compulsory process in aid of the defense

all parties in a criminal case, indigent or not, will be on equal footing as respects the ability to subpoena evidence without disclosure to its documents, an indigent defendant is entitled, under Rule 17(c), to issuance of subpoenas duces tecum returnable at trial by making the same showing as required by Rule 17(b) to secure issuance of a trial witness subpoena.

2. Ex Parte Applications For Trial Subpoenas Duces Tecum.

By interpreting Rule 17(c) in perspective of its companion provisions in Rules 17(a) and (b), there is authority in Rule 17(c) for allowing indigent defendants to obtain trial subpoenas duces tecum under the same ex parte procedure provided by Rule 17(b) for obtaining trial witness subpoenas. The financially able defendant may secure service by paying a professional process server, and, make arrangements to pay the costs of the served party in complying with the subpoena. Thus, a financially able defendant may issue a trial [**25]subpoena duces tecum without leave of court and without providing notice to the Government. Were an indigent defendant not entitled to ex parte process to obtain the same subpoena, the defendant would be confronted, as to trial subpoenas duces tecum, with the precise dilemma that Congress intended to eliminate for trial witness subpoenas by its 1966 revisions to subsection (b).

b. The Constitution

There is also constitutional support for an interpretation of Rule 17(c) which authorizes an ex parte process for the acquisition of a trial[**26] subpoena duces tecum by indigent defendants. That support is to be found in the Sixth and Fifth Amendments.

[*1019] (i). The Sixth Amendment

case. U.S. Const. Amend. VI. This right is considered fundamental to the right to a fair trial. See *Pennsylvania v.*

HB 000179

Bates No. 4771

*Ritchie, 480 U.S. 39, 56, 94 L. Ed. 2d 40, 107 S. Ct. 989 (1987)* ("criminal defendants have the right to the Government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."); *Washington v. Texas, 388 U.S. 14, 18-19, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967);* see also 25 Moore's Federal Practice §§ 617.02[1] at 617-7, 617.07[1] at 617-17 (citing cases). "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp., 856 F.2d 619, 621 (4th Cir. 1988)* (citing *California v. Trombetta, 467 U.S. 479, 485, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984)),* cert. denied sub nom., *Martin Marietta Corp. [**27] v. Pollard, 490 U.S. 1011, 104 L. Ed. 2d 169, 109 S. Ct. 1655 (1989);* see also *United States v. Jenkins, 895 F. Supp. 1389, 1395 (D.Haw. 1995)* (The purpose of Rule 17(c) "is to provide compulsory process to insure that the defendant can obtain favorable evidence at trial."); 25 Moore's Federal Practice § 617.02[1] at 617-7 ("Rule 17 implements this guarantee by providing for the issuance of subpoenas in criminal trials."); 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134. Indeed, "the essential purpose of the Rule is to implement the Sixth Amendment guarantee that an accused have

An indigent defendant's right to subpoena, and to present, evidence rests also on the Fifth Amendment right to due process, which precludes subjecting a defendant to disabilities in the criminal justice system because of the defendant's financial status. The Supreme Court long ago made clear that the Constitution prohibits differentiating between defendants who are able to pay and those who are not, at least as to the process by which they may defend against criminal charges. See, e.g. *Douglas v. California, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963); Coppedge v. United States, 369 U.S. 438, 8 L. Ed. 2d 21, 82 S. Ct. 917 (1962); Griffin v. Illinois, 351 U.S. 12, 100 L. Ed. 891, [**29] 76 S. Ct. 585 (1956).* Indeed, one leading commentator has recognized that this line of Supreme Court authority "caused serious question to be raised about the constitutionality of [the pre-1966 version of Rule 17(b)]." 2 Wright, Federal Practice and Procedure: Criminal 2d § 272 at

*838 F. Supp. at 79.* The right to apply ex parte for a trial subpoena duces tecum and payment of the associated fees is necessary to avoid disadvantaging defendants who are

compulsory process to secure evidence in the accused's favor." 25 Moore's Federal Practice § 617.08[1] at 617-21 (emphasis added).

Forcing the indigent defendant to confront the choice between issuing no trial subpoenas duces tecum (to preserve his theory of defense and thus rely on voluntary production of requested evidence or "disclosing his whole case to the Government before trial," (to assure production of requested evidence) is an unconstitutional limitation on the defendant's right to compulsory process because "the indigent's Sixth Amendment right to compulsory[**28] process for obtaining witnesses would mean little indeed if he were required to" provide the Government with undue discovery in order to fulfill it. *Smith v. United States, 312 F.2d at 872* (Skelly Wright, J., concurring in part and dissenting in part). In essence, then an indigent defendant's full enjoyment of the right to compulsory process can be guaranteed only by providing an ex parte process by which to have trial subpoenas duces tecum issued.

(ii) The Fifth Amendment

139 (citing *Greenwell v. United States, 115 U.S. App. D.C. 44, 317 F.2d 108, 110 n. 5 (D.C. Cir. 1963)).*

A construction of Rule 17(c) which foreclosed the use of ex parte process to obtain a trial subpoena duces tecum likewise would raise serious question about the constitutionality of that rule. The district court, in United States v. Florack, correctly recognized that:

To conclude that Rules 17(a) and 17(c) permit an individual of financial means to subpoena both witnesses and documents without notice to the Government, while Rules 17(b) and 17(c) only allow an indigent defendant to subpoena witnesses, would result in a disability based on financial [*1020] status in violation of the Fifth Amendment.

financially[**30] unable to pay. See *United States v. Jenkins, 895 F. Supp. at 1395* ("Assuming that the application is for production at trial, the fact that a defendant with funds may

HB 000180

Bates No. 4872

proceed without application mandates that a defendant without funds also be allowed to proceed ex parte."). For those reasons, the Fifth Amendment requires that Rule 17(c) be construed as authorizing an ex parte procedure by which indigent defendants may have issued trial subpoenas duces tecum for documents to be used in mounting a defense, without disclosing the defense to the Government. The five courts which have addressed the issue have held that Rule 17(c) provides for ex parte process for the application for, and the issuance of, a trial subpoena duces tecum. See *United States v. Hang, 75 F.3d at 1281-1282; United States v. Jenkins, 895 F. Supp. at 1395; United States v. Reyes, 162 F.R.D. at 469-70; United States v. Florack, 838 F. Supp. at 79-80; United States v. Edwards, 142 F.R.D. 177, 179 (M.D. Fla. 1992).* n8

n8 See also *United States v. Urlacher, 136 F.R.D. 550, 557-58 (W.D.N.Y. 1991)* (suggesting that Rule 17 grants Unlike a trial subpoena ad testificandum issued under Rule 17(a) or (b), a subpoena duces tecum may also be made returnable before trial. The third sentence of Rule 17(c) provides:

The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

Fed. R. Crim. P. 17(c) (emphasis added). See also *United States v. Nixon, 418 U.S. 683, 698-99, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974)* (citing *Bowman Dairy Co. v. United States,* Looking first to the text, it is obvious that Rule 17(c) does not expressly require a party to make a motion to secure issuance of a subpoena duces tecum returnable before trial. However, the third sentence of Rule 17(c) clearly contemplates some intervention by the court before a subpoena duces tecum can be made returnable pre-trial and before parties may be permitted to inspect the subpoenaed documents pre-trial. See Fed. R. Crim. P. 17(c) ("The court may direct that [documents] be produced before the court at a time prior to the trial[**33] . . . and may upon their production permit the

indigent defendants the right to apply ex parte for a "subpoena duces tecum returnable upon trial. . .").

[**31]

For the reasons set forth above, the Court holds that Rule 17(c) permits indigent defendants to apply ex parte for subpoena duces tecum returnable at trial (and for the service and funding essential to effectual compulsory process).

B. SUBPOENA DUCES TECUM RETURNABLE BEFORE TRIAL.

1. Necessity of a Pre-Issuance Application for Pre-Trial Subpoenas Duces Tecum.

*341 U.S. 214, 95 L. Ed. 879, 71 S. Ct. 675 (1951)* ("Its [**32][Rule 17(c)] chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.")). Although the Supreme Court, in United States v. Nixon, set forth the standards by which district courts are to evaluate the enforceability of a subpoena duces tecum, the Supreme Court did not address the proper procedure to be used to obtain a subpoena duces tecum with a pre-trial return date. Nor, do Rules 17(a) and 17(b), which govern the issuance of subpoenas returnable at trial, provide guidance as to the proper procedure for obtaining a subpoena duces tecum returnable before trial.

[documents] to be inspected by the parties and their attorneys.") (emphasis added).

The "may direct" language confers judicial discretion to determine the time of production "prior to the trial." That, of course, affords the court authority to decide whether production before trial is permissible [*1021] at all, and, if so, when. And, by providing that the subpoenaed documents "be produced before the court," Rule 17(c) clearly contemplates court involvement in the process of securing production. The same may be said of the text which gives the court discretion

HB 000181

Bates No. 4173

to permit inspection (which obviously must occur after production at the time and place specified) by parties and counsel. In view of the rather extensive judicial involvement contemplated by Rule 17(c) as respects pre-trial subpoenas duces tecum, it is not insignificant that neither Rule 17(a) nor Rule 17(b) contains similar language insinuating the court into the process for obtaining trial witness subpoenas. Nor does the text of Rule 17(c) similarly involve the court in the issuance of trial subpoenas duces tecum. These textual differences must be given effect. To that end, [**34] it has been held that:

> n9 The decision whether to require subpoenaed documents to be produced pre-trial rests with the sound discretion of the district court. See *United States v. Nixon, 418 U.S. at 702* ("Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court because the necessity for the pretrial subpoena most often turns upon a determination of factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c)."); see also *In re Martin Marietta Corp., 856 F.2d at 621.*

[**35]

> n10 Some courts, and one leading treatise, have cited *United States v. Van Allen, 28 F.R.D. 329 (S.D.N.Y. 1961),* as standing for the proposition that "leave of court is not ordinarily required for issuance of a subpoena duces tecum." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 154 (citing *United States v. Van Allen, 28 F.R.D. at 334);* see also *United States v. Jenkins, 895 F. Supp. at 1395* (same). Although Van Allen concluded that "permission of the court is not needed to serve a subpoena pursuant to Rule 17(c)," that court addressed the issue in the context of subpoenas duces tecum producible at trial. See *United States v. Van Allen, 28 F.R.D. at 334, 336, 337.* The district court in *United States v. Gel Spice Co., Inc., 601*

only with court intervention can the subpoena be utilized for production before the court at any time prior to the trial or prior to the time when the documents are to be offered in evidence. Only the court may, upon the production of the documents, permit the documents or objects to be inspected by the parties or their attorneys.

*United States v. Santiago-Lugo, 904 F. Supp. 43, 46 (D.P.R. 1995).* n9

Courts and commentators which have addressed the issue nearly unanimously n10 have recognized that, although the rule "does not clearly require it," the use of a motion as the procedural means for invoking the court's discretion in advance of issuance of a pre-trial subpoena duces tecum "is an orderly and desirable procedure and one frequently followed." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 154; see *United States v. Finn, 919 F. Supp. 1305, 1329 (D.Minn. 1995); United States v. Jenkins, 895 F. Supp. at 1395-96; United States v. Ashley, 162 F.R.D. 265, 266 (E.D.N.Y. 1995); United States v. Urlacher, 136 F.R.D. at 554-555; United States v. Ferguson, 37 F.R.D. 6, 7-8 (D.D.C. 1965).* For the reasons set forth below, the Court agrees with that interpretation of Rule 17(c).

> *F. Supp. 1214 (E.D.N.Y. 1985),* recognized as much. *601 F. Supp. at 1224* (citing Van Allen for the proposition that: "A subpoena returnable on the day of trial may be issued without leave of court.") (emphasis added). To the extent, if any, that the holding in Van Allen is applicable to pre-trial subpoenas duces tecum, however, that case is clearly against the compelling weight of the more recent authority cited in this section of the Memorandum Opinion.

[**36]

First, it is important to recall the purpose of Rule 17(c). The "chief innovation [of the rule] was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States,*

HB 000182

*341 U.S. at 220.* Specifically, it provided a mechanism to prevent delays at trial which typically had occurred when documents were produced in response to a subpoena duces tecum requiring production at trial. Those delays were necessary because opposing counsel were entitled to inspect and to read the documents before they were introduced, "thereby consuming a great deal of time in those cases in which there is voluminous documentary evidence." *United States v. Ferguson, 37 F.R.D. at 7.* Also, subsection (c) affords the requesting party the opportunity to inspect subpoenaed documents in advance of trial, "for the purpose of course of enabling [*1022] the party to see whether he can use it or whether he wants to use it." *Bowman Dairy Co. v. United States, 341 U.S. at 220 n. 5* (citation omitted) (emphasis added). In sum:

The scope of the subpoena [returnable pre-trial] is the same as that of a subpoena returnable on the[**37] day of trial. It is returnable in advance of trial in exceptional cases only as a matter of convenience and for the purpose of saving time of the Court at the trial.

*United States v. Ferguson, 37 F.R.D. at 7-8.*

(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition.

As discussed above, the decision whether to require production of the requested documents pre-trial rests ultimately within the sound discretion of the district court. See *United States v. Nixon, 418 U.S. at 702; In re Martin Marietta Corp., 856 F.2d at 621.* That discretion must be exercised in remembrance of the responsibility to prevent Rule 17(c) from being improperly used as a discovery alternative to Rule 16. Congress entrusted the district court with that task by providing that the return date of a subpoena duces tecum may be designated in advance of trial only if a court so "direct[s]" or

Considering the need for efficient judicial procedures occasioned by the heavy demands on the federal courts today, the "exceptional cases" language may no longer be the rule. However, introduction of the delay-saving technique in Rule 17(c) clearly was not intended to displace the role of Rule 16 in circumscribing discovery to be allowed in criminal cases. The Supreme Court has emphasized that "it was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co. v. United States, 341 U.S. at 220; United States v. Nixon, 418 U.S. at 698* (citing *Bowman Dairy Co. v. United States, 341 U.S. at 220);* see also *In re Grand Jury 87-3 Subpoena Duces Tecum, 884 F.2d 772, 775 (4th Cir. 1989),* rev' d on other grounds, *498 U.S. 292 (1991); United States v. Cuthbertson, 651 F.2d 189, 192 (3rd Cir. 1981),* cert. denied, *454 U.S. 1056, 70 L. Ed. 2d 594, 102[**38] S. Ct. 604 (1981); United States v. Schembari, 484 F.2d 931, 936 (4th Cir. 1973).* To avoid that result, the Supreme Court, in United States v. Nixon, held that pretrial production of evidence pursuant to Rule 17(c) is appropriate only where the moving party can show:

*418 U.S. at 699* (adopting Judge Weinfeld's "generally followed" formulation in *United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)).* In short, the requesting party must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *418 U.S. at 700.* And, the burden is on the party seeking production . . . to show good cause for production prior to trial." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 155. [**39]

"permit[s]." Fed. R. Crim. P. 17(c). The requirement of court intervention in the process is not a mere formality. To the contrary, it represents a "vital protection against misuse or improvident use of such subpoenas duces tecum." *United States v. Ferguson, 37 F.R.D. at 8.* Indeed, without the court's supervision, "Rule 17(c) would lend itself to discovery of the broadest sort -- a result that the drafters of the Rule decried." *United States v. Finn, 919 F. Supp. at 1329* (citing 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 153 ("it

HB 000183

has always been[**40] clear that Rule 17(c) was not intended as a discovery device. . . " ) (citing cases).

In order for a district court to perform its obligations, as defined by Bowman Dairy and Nixon, to assure that Rule 17(c) subpoenas are used only to require pre-trial production of specific evidence that would be both relevant and admissible at trial, district courts must have a means by which: (i) to control the issuance of pre-trial subpoenas duces tecum; and (ii) to direct the inspection [*1023] of the documents produced in response thereto. Although Rule 17(c) does not explicitly so state, and while there is no controlling authority on this issue, the Court finds that the judicial intervention required by the text of Rule 17(c) and by Nixon and Bowman Dairy can best be accomplished by requiring use of traditionally accepted means to invoke the judicial discretion contemplated by the rule. The usual method to achieve that end is to file a motion and brief explaining why, and on what terms, the court should issue

subpoenas duces tecum requiring pre-trial production. This requirement will ensure that the judicial supervision contemplated by subsection (c) occurs at an early stage. See [**41]    *United States v. Urlacher, 136 F.R.D. at 554; United States v. Ashley, 162 F.R.D. at 266.*

At least three district courts have read Rule 17(c) to require a motion as the procedural means by which to secure issuance of a pretrial subpoena duces tecum. See, e.g. *United States v. Finn, 919 F. Supp. at 1329; United States v. Jenkins, 895 F. Supp. at 1395-96; United States v. Ferguson, 37 F.R.D. at 7-8.* In addition, two district courts recently have held that a pre-issuance motion is desirable and "appropriate, although not strictly necessary, and should be entertained by the court." *United States v. Urlacher, 136 F.R.D. at 555; United States v. Ashley, 162 F.R.D. at 266.* n11

n11 Other courts have strongly suggested that a pre-issuance motion is the proper procedure for the application for a pre-trial subpoena duces tecum. See, e.g. *United States v. Santiago-Lugo, 904 F. Supp. at 46* ("Only with court intervention can the subpoena be utilized for production before the court at any time prior to the trial or prior to the time when the documents are to be offered in evidence."); *United States v. Noriega, 764 F. Supp. 1480, 1494 (S.D.Fla. 1991)* ("The court holds that trial subpoenas may not be used to obtain a defendant's prison-recorded conversations prior to the time they are to be offered in evidence unless leave of court is obtained."); *United States v. Poindexter, 725 F. Supp. 13, 28 (D.D.C. 1989)* ("Pre-trial return dates ought not be used improperly as blank checks for the use of trial subpoenas duces tecum as a supplemental discovery device."); *United States v. Gel*

*Spice Co., Inc., 601 F. Supp. at 1224-25* ("A subpoena returnable on the day of trial may be issued without leave of court. However, it is within the discretion of the trial court whether or not to order production of subpoenaed materials prior to trial."); *United States v. Jannuzzio, 22 F.R.D. 223, 227 (D.Del. 1958)* ("The fact that subpoenaed material may be evidentiary and subject to production at the trial pursuant under a subpoena duces tecum obtained by a defendant does not mean that the defendant is entitled as a matter of right to pre-trial production and inspection under Rule 17(c). Whether pre-trial production and inspection will     be required is discretionary.").

[**42]

It has been noted in both judicial decisions and in treatises that, as an alternative to requiring a pre-issuance motion, "the question [of the validity of a pre-trial subpoena duces tecum] can be raised as well on a motion to quash, a motion that is specifically authorized by Rule 17(c)." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 155; see 25 Moore's Federal Practice §§ 617.08[3][a], [b]; *Bowman Dairy Co. v. United States, 341 U.S. at 220* ("The court may

control the use of Rule 17(c) . . . by its power to rule on motions to quash or modify."); *United States v. Urlacher, 136 F.R.D. at 555; United States v. Ashley, 162 F.R.D. at 266.* However, a limitation of judicial control over the Rule 17(c) pre-trial subpoena process to resolution of motions to quash or modify would be insufficient to provide assurance that pre-trial subpoenas duces tecum are not abused. This is so because, although in some cases reliance upon the filing of a motion to

HB 000184

Bates No. 4176

quash or modify by the opposing party or subpoenaed entity may provide adequate assurance that the pre-trial subpoena satisfies the Nixon standard, there is no certainty that any such motion will [**43]be filed. In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents. See *United States v. Reyes, 162 F.R.D. at 470-471.* n12 Where that is the case, [*1024]the court's ability to review the use of Rule 17(c) pre-trial subpoenas duces tecum would hinge solely upon the potential filing of a motion to quash by a third party to the case, who often may lack the incentive or the wherewithal to make such a filing. n13 See *United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D.Fla. 1991)* ("While it is generally assumed that courts can

n12 See also *United States v. Raineri, 670 F.2d 702, 712 (7th Cir.)* (A party to a criminal case "has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."), cert. denied, *459 U.S. 1035, 74 L. Ed. 2d 601, 103 S. Ct. 446 (1982); Langford v. Chrysler Motors Corp., 513 F.2d 1121 (2nd Cir. 1975)* (absent claim of privilege, party usually has no standing to object to subpoena directed at non-party); *In re Grand Jury Subpoena Duces Tecum, May 9, 1990, 741 F. Supp. 1059, 1060 n.1 (S.D.N.Y. 1990)* (same), aff'd, *956 F.2d 1160 (2nd Cir. 1992); Ponsford v. United States, 771 F.2d 1305, 1308 (9th Cir. 1985)* (absent proprietary interest in documents sought, there lies no standing to quash).

[**45]

n13 For example, in the instant case, pre-trial subpoenas duces tecum have been issued to 29 entities or persons. Apart from the motion under consideration filed by the Government, only one of those subpoenaed entities has moved to quash the subpoena which it received.

protect against abuse through rulings on motions to quash or modify, this in turn assumes that the recipient of the subpoena has some interest or incentive in filing such a motion."). Where no motion to quash or to modify a subpoena duces tecum is raised to an overbroad or otherwise impermissible Rule 17(c) pre-trial subpoena, it is possible, if not likely, that improper pre-trial production and inspection will occur without[**44] the knowledge or intervention of the court. This is contrary to the explicit requirement in Rule 17(c) that only the court may "direct" or "permit" such pre-trial production and inspection. *United States v. Najarian, 164 F.R.D. 484, 487 (D.Minn. 1995)* ("Of course, the production of documents, outside of the Court's presence, would entirely defeat any attempt on our part to manage and facilitate the orderly screening of documentary trial evidence.").

The decision in *United States v. Noriega, 764 F. Supp. 1480 (S.D. Fla. 1991),* is instructive on the problems, and potential for abuse of Rule 17(c), inherent when the court's control over the Rule 17(c) pre-trial subpoena process is restricted to rulings on motions to quash or modify the subpoena. In Noriega, the Government, without applying to the court, served subpoenas duces tecum upon a correctional center, seeking pretrial production of tape recordings of the defendant's telephone conversations. *764 F. Supp. at 1492.* After evaluating the issued subpoenas under the Nixon standard, the court concluded that the subpoenas constituted "precisely the kind of unwarranted [discovery] expedition which Rule 17(c) does not permit." *Id. at 1493.* The court reasoned that the subpoena ran counter to the requirement[**46] of Rule 17(c) vesting the timing of production before trial within the discretion of the court. Id. ("This is to ensure that subpoenas are not used for impermissible discovery, which is more likely to be the case when advance production of materials is sought. . .").

The Noriega Court, based on the facts presented to it, concluded that limiting the judicial control of the Rule 17(c) pre-trial subpoena process to rulings on motions to quash or modify was insufficient to provide an adequate check on abuses of pre-trial subpoenas duces tecum. In that respect, the court observed:

HB 000185

Bates No. 4877

While it is generally assumed that courts can protect against abuse through rulings on motions to quash or modify, this in turn assumes that the recipient of the subpoena has some interest or incentive in filing such a motion. Yet it is wishful thinking to expect that prison officials will either oppose a government-requested subpoena which implicates an incarcerated defendant's interests or else enable the defendant to file his own motion to quash by notifying him that such subpoenas have been issued. If anything, the coinciding interests of prosecutors and prison authorities in law enforcement[**47] renders these subpoenas mere formalities and all but guarantees that prosecutorial overreaching such as that present here will go unchecked, a reality which . . . should have made manifest the need for prior court authorization. Given the potential for abuse apparent to the court, it is clear

The scenario presented in Noriega, of course, only illustrates the possibilities for abuse of Rule 17(c) inherent in the provision for unrestricted pre-trial production. See *United States v. Jenkins, 895 F. Supp. at 1395.* The Supreme[**48] Court has emphasized the district court's responsibility to prevent such abuses of Rule 17(c): "The burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad." *Bowman Dairy Co. v. United States, 341 U.S. at 221* (emphasis added). And, as the district court succinctly explained in United States v. Ferguson,

The burden should not be shifted to the [opposing party] to move to vacate the subpoena. The Court has an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties.

*37 F.R.D. at 8.*

Those authorities provide a cogent rationale for an interpretation of Rule 17(c) which requires a party to file a pre-issuance motion to secure judicial authorization for a subpoena duces tecum that is returnable before trial. n15 No other construction of Rule 17(c) will permit a district court properly to exercise the discretionary powers conferred under the rule.

that the limitation on advance production of subpoenaed materials must be strictly enforced . . .

[*1025] *Id. at 1493-94.* n14

n14 The Noriega Court's anticipation of the disparate treatment afforded a prosecution and defense subpoena came to fruition in that case: "Not surprisingly, the Bureau of Prisons was considerably less accommodating when served with a subpoena obtained by Noriega in connection with this action, which it promptly moved to quash." *Id. at 1493 n. 14.*

n15 This, of course, places an added burden on already limited, and heavily taxed, judicial resources. However, proper applications, proper briefing, and the use of standing pretrial orders and other management techniques ought to make the task manageable.

[**49]

2. Ex Parte Applications For Pre-trial Subpoenas Duces Tecum.

Having determined that Rule 17(c) requires a motion as the procedural vehicle to secure a pre-trial subpoena duces tecum, it is necessary next to determine whether Rule 17 (c) permits ex parte applications for subpoenas of this sort. The text of Rule 17(c) does not provide the right to secure ex parte subpoena duces tecum returnable before trial. That, of course, necessitates resort to decisional law and other factors.

Whether a district court is authorized to entertain an ex parte application for a subpoena duces tecum returnable before trial is an issue which has not been decided by the Fourth Circuit. Nor is guidance available from other district courts in the circuit.

HB 000186

Bates No. 4778

The issue recently has been addressed, however, by at least six district courts beyond this circuit. n16 Those decisions have yielded conflicting results. Two courts have held that Rule 17(c) permits the issuance of pre-trial subpoenas duces tecum upon ex parte application. See *United States v. Jenkins, 895 F. Supp. 1389 (D.Haw. 1995); United States v. Reyes, 162 F.R.D. 468, 1995 WL 412576 (S.D.N.Y. 1995).* n17 Four courts have held[**50] that ex parte process is generally improper under Rule 17(c). See *United States v. Stewart, 1997 U.S. Dist. LEXIS 2444, 1997 WL 103700 (E.D.Pa. 1997)* (unpublished) (suggesting, however, that ex parte process is appropriate in "extraordinary circumstances"); *United States v. Najarian, 164 F.R.D. 484 (D.Minn. 1995)* n18; *United States [*1026] v. Hart, 826 F. Supp. 380 (D.Colo. 1993); United States v. Urlacher, 136 F.R.D. 550 (W.D.N.Y. 1991);* see also 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 (1996 Supp.) at 43 ("If a motion is made it cannot be ex parte."), n19 For the reasons set forth below, the Court finds that a district court has the authority, in limited circumstances, to grant ex parte motions, from either the Government or a defendant, for pre-trial subpoenas duces tecum.

n16 A seventh district court, in *United States v. Ashley, 162 F.R.D. 265, 267 (E.D.N.Y. 1995),* also was presented with the issue but found it unnecessary to reach that issue as a result of its other rulings.

n17 Although the courts in Hang, Florack, and Edwards held that ex parte procedure was permissible under Rule 17(c) with respect to trial subpoena duces tecum, those decisions did not address the issue considered here -- whether ex parte process is authorized under the rule with respect to the issuance of subpoenas duces tecum returnable before trial. See *United States v. Florack, 838 F. Supp. at 80* (distinguishing the situation where the ex

[**52]
The analysis of this question must begin with an examination of the text of Rule 17(c) which, unlike its companion subsection (b), does not explicitly provide for an ex

parte request is for pre-trial production of documents); see also 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 (1996 Supp.) at 40, 43 (concluding that ex parte process is permissible for trial subpoenas duces tecum but not for pre-trial subpoenas duces tecum).

[**51]

n18 In *United States v. Finn, 919 F. Supp. 1305 (D.Minn. 1995),* the district court followed its previous ruling in Najarian that ex parte process under Rule 17(c) is impermissible.

n19 The Government cites *United States v. Santiago-Lugo, 904 F. Supp. at 46,* for the proposition that "the ex parte use of Rule 17(c) subpoenas is improper." Motion to Quash at 19. In Santiago-Lugo, the defendant issued a subpoena duces tecum which required documents to be produced directly to the defense counsel before trial, without the district court's knowledge or intervention. The district court held, based on the plain language of the Rule, that: (1) Rule 17(c) requires application to the court or other "court intervention" in order for a party to inspect subpoenaed documents before trial; and (2) Rule 17(c) does not authorize the private return of subpoenaed documents to an attorney but instead provides that documents shall be produced to the court. The Santiago-Lugo Court, however, did not address the propriety of an ex parte application for a pre-trial subpoena duces tecum. Thus, Santiago-Lugo is inapposite with respect to this issue.

parte process. This has proven to be the dispositive factor in the decisions holding that ex parte procedure is impermissible under Rule 17(c) for pre-trial subpoenas duces tecum. See

HB 000187

Bates No. 4779

*United States v. Najarian, 164 F.R.D. at 487; United States v. Hart, 826 F. Supp. at 381; United States v. Urlacher, 136 F.R.D. at 556.* Also, the text of Rule 17(c) suggests an adversarial process wherein the opposing party will be provided notice and an opportunity to challenge a party's motion for the issuance of a pre-trial subpoena duces tecum. n20 Furthermore, by explicitly providing for the filing of motions to quash or modify a pre-trial subpoena duces tecum, Rule 17(c) contemplates that litigation over the scope of such subpoenas will be conducted upon notice which, unless provided otherwise, would run to all parties to the case. See *United States v. Najarian, 164 F.R.D. at 487* ("The Government is entitled to participate in [a hearing to address a third party's motion to quash] should it arise, and Rule [**53]17(c) expressly contemplates the review of documents so subpoenaed by the other parties to that dispute."); *United States v. Urlacher, 136 F.R.D. at 556* ("One cannot easily imagine that such a motion [to quash or modify] should be heard and decided in secret, without the knowledge of all parties.").

n20 The Rule states that the district court may, at its discretion, "permit the [documents produced pre-trial] or portions thereof to be inspected by the parties and their attorneys." Fed. R. Crim. P. 17(c) (emphasis added). In so doing, and by providing that the "parties and their attorneys" may review the subpoenaed documents, the Rule has been read to contemplate that both the

n21 The suggestion by the text of Rule 17(c) of an adversarial process is undercut by two important considerations. First, it bears revisitation that pre-trial production and inspection under Rule 17(c) is entrusted to the sound discretion of the district court. See *United States v. Nixon, 418 U.S. at 702; In re Mortin Marietta Corp., 856 F.2d at 621.* Indeed, Congress explicitly provided for this discretion in the plain language of the Rule. See Fed. R. Crim. P. 17(c) ("The court may direct [pre-trial production of documents] and may . . . permit [pre-trial inspection].")

Second, while ordinarily notice of a third party's filing of a motion to quash or modify a subpoena would run to the issuing party's adversary in the case, where the adverse party does not itself have standing to be heard on such a motion, as is often the case, an ex parte disposition of the

Government and the defense should know about the documents at some point after they are subpoenaed. See, e.g. *United States v. Stewart, 1997 U.S. Dist. LEXIS 2444, 1997 WL 10700* at *2; see also *United States v. Jenkins, 895 F. Supp. at 1394* ("Rule 17(c) makes no provision for allowing only one party access to the documents."); *United States v. Hart, 826 F. Supp. at 381; United States v. Urlacher, 136 F.R.D. at 555-56.*

[**54]

The explicit language of Rule 17(c) must, of course, be heeded by the courts and be given its full and proper effect. And, as discussed above, the rule suggests (although it does not specify), the existence of an adversarial process wherein the opposing party is notified by the adversary of an application for a pre-trial subpoena duces tecum. However, even though the text of Rule 17(c) does not explicitly contemplate ex parte procedure, neither does it foreclose entirely the use of such a process. n21 For the reasons [*1027] which follow, the Court finds that, in exceptional circumstances, ex parte procedure may be employed with respect to the application for, and the issuance of, a subpoena duces tecum returnable before trial.

(emphasis added). Although Rule 17(c) provides that, if the court determines the documents shall be produced before the court prior to trial, the court "may permit" the documents "to be inspected by the parties and their attorneys," there is nothing in the rule which forecloses the district court, at its discretion, from permitting only one party, or neither party, to inspect the subpoenaed documents. Cf. *United States v. Reyes, 162 F.R.D. at 470; United States v. Florack, 838 F. Supp. at 80.*

motion would not infringe upon the rights of the adverse party.

[**55]

HB 000188

First, and most importantly, the Sixth Amendment right to compulsory process requires, in limited circumstances, the provision of ex parte procedure by which a defendant may secure issuance of pre-trial subpoenas duces tecum. All defendants, whether indigent or financially able, are afforded the constitutional right of compulsory process. As discussed in detail above, Rule 17(c) implements this essential constitutional right. Forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's right to compulsory process. Congress recognized as much when it amended Rule 17(b) to eliminate this choice for indigent defendants as to the issuance of trial subpoenas ad testificandum.

In the absence of ex parte procedure, however, the constitutionally-prohibited "Hobson's choice" would be forced upon all defendants, whether indigent and financially able, with respect to the issuance of Rule 17(c) pre-trial subpoenas duces tecum. That is because, as set forth in Section II, B, 1, a

n22 The indigent defendant's Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status is thus not implicated with respect to the issuance of pre-trial subpoenas duces tecum. In contrast to trial subpoenas ad testificandum and subpoenas duces tecum returnable at trial, which may be issued by the Government or a financially able defendant without any court involvement or notice to the adverse party, Rule 17(c) requires a pre-issuance motion to the Court by any party seeking a pre-trial subpoenas duces tecum. Therefore, with respect to the issuance of pre-trial subpoenas duces tecum, all defendants, and, indeed, the Government, are in the same position. Therefore, indigent defendants are not singled-out for less preferential treatment as was the case under the old Rule 17(b). The district court in United States v. Jenkins overlooked this important distinction by advancing a Fifth Amendment discrimination argument in support of its conclusion that ex parte process obtained to the application for and

party must file a pre-issuance motion with the Court before a pre-trial[**56] subpoena will be issued. n22 And, of course, defendants must make the Nixon showing of specificity, relevance, and admissibility. If the motion could never be made ex parte, the defendant would, in some cases, be forced to reveal his trial strategy, witnesses' identities or his attorney's work-product in order to secure the issuance of a pre-trial subpoena. n23 If Rule 17(c) were interpreted to force that result, the defendant's Sixth Amendment right to compulsory process for obtaining [favorable evidence] would mean little indeed." *Smith v. United States, 312 F.2d at 872* (Wright, J., concurring in part and dissenting in part). Therefore, the Sixth Amendment supplies justification for interpreting Rule 17(c) to permit ex parte procedures respecting the issuance of pre-trial subpoenas duces tecum in the rare instance in which a defendant would be required to disclose trial strategy, witness identities or attorney work-product to the Government in his pre-issuance application. See *United States v. Jenkins, 895 F. Supp. at 1396-97; United States v. Reyes, 162 F.R.D. at 470.*

issuance of pre-trial subpoenas duces tecum. *895 F. Supp. at 1396-97.*

[**57]

n23 In the absence of ex parte procedure, the Government would be privy to this discovery even if a court declined to issue the subpoena. *United States v. Reyes, 162 F.R.D. at 470.*

Although there is no corresponding constitutional right of the prosecution to compulsory process, the ability to subpoena evidence under Rule 17(c) extends to both the Government and defendants. See 25 Moore's Federal Practice § 617.02[1] at 617-8; 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134. For the Government, Rule 17(c) implements the

HB 000189

public duty to testify and to produce evidence, which every person within the jurisdiction of the Government is bound to perform when properly summoned. [*1028] See 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134 (citing *Branzburg v. Hayes, 408 U.S. 665, 689, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972)* (Recognizing the "long-standing principle that the public . . . has a right to every man's evidence, except for those persons protected by a constitutional, common law, or statutory privilege.")).

Because "whatever else[**58] may be said of Rule 17(c), it is unqualifiedly even-handed in its approach" to applications from defendants and the Government, *United States v. Finn, 919 F. Supp. at 1330 n.28, n24* the Government is entitled to ex parte procedure for the issuance of pre-trial subpoenas duces tecum where, in the absence of such procedure, it would be required prematurely to disclose to the defense its trial strategy, witness      list, or other privileged information in its application to the court. See *United States v. Reyes, 162 F.R.D. at 470-71.* Moreover, in some cases, if a source of the Government's evidence were to be identified before the issuance of a subpoena, the source or integrity of the evidence

might be imperiled.      *Id. at 470.* n25 This is of special concern in this case, where four of the defendants are alleged to have committed multiple murders and other violent acts, and have in the past allegedly expressed their willingness to assault law enforcement officers. See *United States v. Beckford, 950 F. Supp. 4, 1997 WL 168642* at *9 (E.D.Va. 1997).

n24 See also *United States v. Najarian, 164 F.R.D. at 488 n.3* (same).

[**59]

n25 The concern over the safety of the source or integrity of the subpoenaed evidence may also obtain where a defendant identifies evidence which may be inculpatory, impeaching, or otherwise unfavorable to a co-defendant.

The Government's concern that an ex parte procedure will cause subpoenas duces tecum to be issued without a showing of relevance, admissibility, and specificity is unfounded. The Government's position ignores the fact that, in support of an ex parte application, the requesting party must still demonstrate to the court that the subpoena meets the Nixon standards. See *United States v. Reyes, 162 F.R.D. at 471.* And, in reviewing applications for subpoenas duces tecum, "a court needs no assistance [from the opposing party] in applying the Nixon standard." *United States v. Jenkins, 895 F. Supp. at 1397.* Second, as discussed above, Rule 17(c) provides an alternative check on the judicial issuance of a pre-trial subpoena duces tecum -- a motion to quash or modify by the subpoenaed party. Where the subpoenaed party brings a motion to quash or modify, the[**60] court must reconsider the Nixon standard in determining whether "compliance with the subpoena would be unreasonable or oppressive." Fed. R. Crim. P. 17(c); see also *Bowman Dairy Co. v. United States, 341 U.S. at 220.* n26

n26 In United States v. Reyes, the court reasoned, in support of its holding that ex parte procedure was available under Rule 17(c), that "if ex parte applications were prohibited, the adverse party would be able to challenge subpoenas issued to third parties without any claim of privilege or proprietary interest in the requested material." *162 F.R.D. at 471.* To the extent that this statement implies that, in the absence of ex parte procedure, an application for the issuance of pre-trial subpoenas duces tecum would confer standing on the opposing party to move to quash or modify the subpoena, it is clearly mistaken. For, independent of whether ex parte procedure is employed, an adverse party lacks standing to challenge a subpoena absent a claim of privilege, a proprietary interest in the subpoenaed material, or other legitimate interest. At most, then, a pre-issuance application made upon notice to an adverse party would provide that party with knowledge and the opportunity to assert its standing to challenge the subpoena before the court. See *United States v. Jenkins,*

HB 000190

Bates No. 4782

*895 F. Supp. at 1393* ("The question whether a defendant seeking a pre-trial subpoena duces tecum must notify the Government does not decide the question whether, once issued, the Government may move to quash the subpoena issue to a third-party."). This, however, counsels neither for nor against the propriety of ex parte procedure under Rule 17(c).

[**61]

The reasons advanced by the decisions which have held that ex parte process is not available under Rule 17(c) with

Second, the theory advanced in United States v. Urlacher, that ex parte process would be futile, is not persuasive. In Urlacher, the court held that ex parte process was unavailable for pre-trial subpoenas duces tecum in part because a court "may direct" that the subpoenaed material be produced to the adverse party. *Urlacher, 136 F.R.D. at 556;* see also *United States v. Hart, 826 F. Supp. at 381* (citing Urlacher in reaching The fact that a court "may" order subpoenaed materials produced prior to trial does not mean that an ex parte application is necessarily superfluous; indeed, the ex parte nature of the procedure will not vanish if the court exercises its discretion not to order production.

*United States v. Reyes, 162 F.R.D. at 470;* see also *United States v. Florack, 838 F. Supp. at 80.* Moreover, upon a proper showing, the court could exercise its discretion under Rule 17(c) to permit pre-trial inspection by only the requesting party. n27

n27 In Urlacher, the defendant had requested in his ex parte application that both the defense and the Government be permitted to inspect the subpoenaed materials. See *United States v. Urlacher, 136 F.R.D. at 556;* see also *United States v. Stewart, 1997 U.S. Dist. LEXIS 2444, 1997 WL 103700* at *2 (Government conceded that defendant should have access to the subpoenaed documents but nevertheless requested that its filings and the related court orders remain under seal). Under those circumstances, where both parties will have pre-trial access to the subpoenaed documents, it would be entirely

respect to pre-trial subpoenas duces tecum are not compelling. First, as previously discussed, some decisions have relied upon the text of Rule 17(c) in holding that ex parte procedure is unavailable under the Rule. See *United States v. Najarian, 164 F.R.D. at 487; United States v. Hart, 826 F. Supp. at 381; United States v. Urlacher, 136 F.R.D. at 556.* [*1029] The textual rationale is not persuasive, however, because the text of the rule neither permits nor forecloses the employment of ex parte process. Rather, it simply does not address the issue.

the same conclusion). For that reason, the court found[**62] that the ex parte nature of the proceeding would vanish once such production is ordered and, therefore, that there was no authority in Rule 17(c) for an ex parte procedure respecting issuance of the subpoena. Id. As other courts have recognized, however, this argument is not convincing.

unnecessary to have an ex parte proceeding. See *United States v. Stewart, 1997 U.S. Dist. LEXIS 2444, 1997 WL 103700* at *2; *United States v. Reyes, 162 F.R.D. at 470 n.2.*

[**63]

Third, as in Urlacher, some decisions have invoked principles respecting public access to court proceedings as justification for denying ex parte process under Rule 17(c). See *United States v. Urlacher, 136 F.R.D. at 556-58;* see also *United States v. Hart, 826 F. Supp. at 382* (citing Urlacher in reaching the same conclusion). However, these concerns were significantly overstated in Urlacher. It is true, of course, that there is a presumption in favor of a First Amendment right of access to pre-trial criminal proceedings for which "the place and process have historically been open to the press and general public." *Press-Enterprise Company v. Superior Court of California (Press-Enterprise II), 478 U.S. 1, 8-9, 92 L. Ed. 2d 1, 106 S. Ct. 2735 (1986).* And, recent decisional law in the Fourth Circuit shows a trend in favor of recognizing a qualified right of access, either founded in the First Amendment or the

HB 000191

common law, to documents filed in connection with pre-trial proceedings in criminal prosecutions. See, e.g. *Matter of the Application & Aff. For A Search Warrant (The Washington Post Company), 923 F.2d 324, 326-29* (4th Cir.) (affidavit supporting[**64] search warrant application), cert. denied sub nom., *Hughes v. Washington Post Co., 500 U.S. 944 (1991); In*

The right to access is not, however, an absolute one. Id. And, in many cases the qualified right of access may conflict with the defendant's Sixth Amendment rights, as was the case in both The Washington Post Company and In re The State Record Company, Inc. In an appropriate case, therefore, the qualified right of access can be outweighed by a constitutional

Whether ex parte process or the sealing of documents is appropriate must necessarily be determined based on the specific circumstances presented in a particular case. The [*1030] *Washington Post Company, 923 F.2d 324, 326-29;* [**65] *In re The State Record Company, Inc., 917 F.2d at 127-29.* Here, it suffices to note that the slight burden imposed upon the free access to the courts by the secrecy of the pre-and post- issuance process of a subpoena duces tecum most often will be overcome by a defendant's Sixth Amendment right to compulsory process without being required to disclose his witnesses, trial strategy and other aspects of his defense to the Government and the public at large. Cf. *United States v. Jenkins, 895 F. Supp. at 1397.*

For the foregoing reasons, the Court finds that Rule 17(c) authorizes ex parte procedure with respect to the issuance of pretrial subpoenas only in exceptional circumstances. Ordinarily, ex parte procedure will be unnecessary and thus inappropriate. For example, where one party subpoenas documents from the files of the opposing party, ex parte procedures would not be available. The same would obtain for defense subpoenas seeking documents from state law enforcement agencies officially involved in the federal investigation of the crimes on trial. Nor could ex parte process be used to seek documents as to which both parties will have pre-trial access. See United [**66] *States v. Urlacher, 136 F.R.D. at 556;* see also supra note 27.

n28 Indeed, even courts which have rejected parties' attempts to obtain pre-trial subpoenas ex parte have recognized that, in extraordinary circumstances, ex parte

*re The State Record Company, Inc., 917 F.2d 124, 127-29 (4th Cir. 1990)* (Government response to defendant's Brady and Rule 404(b) motions which were alleged to be prejudicial and which would be subject of intense publicity).

or other interest of the defendant. *The Washington Post Company, 923 F.2d 324, 326-29; In re The State Record Company, Inc., 917 F.2d at 127-29.* Indeed, the Urlacher Court recognized as much. *United States v. Urlacher, 136 F.R.D. at 556.*

However, in limited circumstances, a district court may be warranted in exercising its discretion to permit ex parte process. In those rare situations where mere disclosure of the application for a pre-trial subpoena would: (i) divulge trial strategy, witness lists or attorney work-product; (ii) imperil the source or integrity of subpoenaed evidence; or (iii) undermine a fundamental privacy or constitutional interest of the defendant, the ex parte process could be available on a proper showing. n28 For example, ex parte process might be proper where a defendant seeks from medical providers records of his own mental or physical health where that is in issue in the case. The same would be true where a defendant seeks records about himself from public agencies such as federal or state social service agencies or from his military service. And, where state law enforcement agencies or courts have concluded investigations or proceedings and are not involved in the federal prosecution, subpoenas for those records might be obtainable by ex parte process where the requested records are obviously linked to a[**67] specific defense theory. All of these examples present circumstances where documents could be expected to be of use to the defense and, as to which, a satisfactory Nixon showing could result in the disclosure of the trial tactics, the actual defense to be advanced at trial, or other undue disclosure to the Government.

process may be authorized under Rule 17(c). See, e.g. *United States v. Stewart, 1997 U.S. Dist. LEXIS 2444, 1997 WL 103700* at *2 ("The plain language of Rule 17(c) does

Bates No. 4784

not contemplate an ex parte procedure, at least not absent extraordinary circumstances. . . . The government has not established that secrecy is required to preserve the source or integrity of evidence."); *United States v. Najarian, 164 F.R.D. at 488* (rejecting categorical approach to the denial of ex parte process under Rule 17(c) and noting that, the evidentiary documents, which the Defendant may appropriately request, do not, even inferentially, disclose any of his work product or litigation strategies."); *United States v. Urlacher, 136 F.R.D. at 557* (in rejecting defendant's attempt to invoke ex parte process, the court noted that, "it is difficult to discern how an adversary presentation of the motion for issuance of the subpoena duces tecum would impinge on the defendant's rights against, for example, premature disclosure of trial strategy.") (quotations omitted).

[**68]

In most instances, it will not be necessary to disclose trial strategy, divulge witnesses or work product, or implicate a privacy right merely to make the application for issuance of a pre-trial subpoena duces tecum. And, a party seeking to proceed ex parte will have to meet a heavy burden to proceed in that fashion.

For the most part, a party seeking an ex parte pre-trial subpoena duces tecum will be able to serve a motion on the adversary asking that the subpoena ultimately be issued ex parte and explaining why it is necessary to proceed ex parte. That affords the opposing party an opportunity to be heard on the need for the ex parte procedure. Indeed, that procedure has been followed in implementing the recent amendments to *28 U.S.C. § 848*(q)(9) in habeas corpus actions. See *18 [*1031] U.S.C. § 848*(q)(9) ("No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality."). Of course, that route will require lawyers to write more precisely than usual and to think through their

*Id. at 699* (emphasis added). If a satisfactory showing is made, the court, at its discretion, may issue the subpoena, require

reasons for proceeding ex parte. That, however, is a salutary development. [**69] The by-product inevitably will be that, upon careful analysis, most lawyers will realize that they cannot satisfy these requirements or those of Nixon and ex parte applications will be filed rarely and likely will be granted less frequently. Of course, that is as it should be.

Guided by these controlling principles, the Court will now consider the Government's Motion To Quash.

III. DISPOSITION OF THE GOVERNMENT'S MOTION TO QUASH

When presented with an ex parte motion for a Rule 17(c) pre-trial subpoena duces tecum, the district court must first determine whether the ex parte nature of the application is appropriate. If ex parte procedure is unwarranted, the court should unseal the motion, and provide notice to the opposing party. If the application implicates one of the limited circumstances in which proceeding ex parte is proper, the application and proposed subpoena should be filed under seal.

In either case, the court must next assess the proposed subpoena and the motion in support thereof under the standards set forth in *United States v. Nixon, 418 U.S. at 699-700.* To secure issuance of a subpoena, the requesting party must satisfy Nixon's[**70] burden of proof as to the relevancy, admissibility and specificity of the requested documents. *Id. at 700.* To do that, the party must show:

(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

pre-trial production, and permit pre-trial inspection by one or more of the parties.

HB 000193

Bates No. 4785

In this case, the Court, pursuant to ex parte orders filed under seal, has issued a total of twelve pre-trial subpoenas duces tecum on behalf of defendants. The Government has moved to quash many of the subpoenas on the basis that: (1) the ex parte nature of the subpoenas was impermissible given the nature of the documents which were[**71] the subject of the subpoenas; and (2) that many of the requested documents constitute Brady, Jencks, or Giglio material, production of which is governed by previous orders of this Court and which is not permitted under Rule 17(c). n29 The Court will consider the challenged subpoenas in turn.

n29 For purposes of decision, the Court assumes that the Government has standing to challenge the issued subpoenas; neither party raised the issue at argument or in the papers.

Four of the challenged subpoenas issued on behalf of individual defendants directed various state and federal correctional facilities and other state governmental agencies to produce records concerning the requesting defendant. As to these subpoenas, ex parte process is proper because the defendants' various Nixon disclosures implicate the rights of defendants not to disclose their trial strategy and to maintain the privacy of their confidential records. The subpoenas were issued upon the satisfactory Nixon showings in support[**72] thereof.

Seven of the challenged subpoenas required the production of material which, arguably, may constitute Brady, (h) Information Not Subject to Subpoena. Statements made by witnesses or prospective witnesses may not be subpoenaed from the government or the defendant under this rule, but

Fed. R. Crim. P. 17(h). Rule 26.2, in turn, follows the restrictions set forth in the Jencks Act.

There being no showing that ex parte procedure was proper for the issuance of those subpoenas which arguably

Jencks, or Giglio impeachment material. The Government correctly notes that a Rule 17(c) subpoena duces tecum is improper where it calls for the production of Brady, Jencks, or Giglio material. That is because those materials are subject only to limited discovery pursuant to Fed. R. Crim. P. 16, *Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963),* and the Jencks Act, *18 U.S.C. § 3500.* [*1032] Thus, none of that material can be said to be "not otherwise procurable reasonably in advance of trial." *United States v. Nixon, 418 U.S. at 699.* Indeed, pursuant to this Court's previous orders in this case, the Government has already produced Brady material and it must produce all Giglio impeachment evidence and Jencks Act material not later than three days before the commencement of the jury selection process.

The courts uniformly have rejected attempts at procuring additional or advance discovery through the use of Rule 17(c) subpoenas. See, e.g., *United States v. Nixon, 418 U.S. at 701* ("Generally, the need for evidence to[**73] impeach witnesses is insufficient to require its production [under Rule 17(c)] in advance of trial."); *United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990)* (Rule 17(c) subpoena to third party for impeachment material improper); *United States v. Cuthertson, 651 F.2d at 195* (Rule 17(c) subpoenas are not available to obtain exculpatory information in the possession of the prosecution); *United States v. Jenkins, 895 F. Supp. at 1394* (Rule 17(c) not to be used to gather impeachment material). Moreover, Rule 17 itself prohibits procuring Jencks material through the use of a Rule 17(c) subpoena. To that effect, Rule 17(h) states:

shall be subject to production only in accordance with the provisions of Rule 26.2.

implicated Brady, Jencks, and Giglio, the    [**74]Court unsealed the subpoenas by Order dated April 23, 1997. The parties have subsequently resolved their disputes over those subpoenas and consequently the subpoenas, although previously at issue, are now moot.

HB 000194

Bates No. 4786

Lastly, a subpoena duces tecum was issued to the Richmond Office of Probation and Parole requiring the production of the state pre-sentence report of one Tracy Lavache, an expected Government witness in this case. Although the subpoena was issued upon the ex parte application of Defendant Beckford, the Court previously held that Beckford was entitled to compulsory process to secure the pre-sentence report. See *United States v. Beckford, et al., 950 F. Supp. 4, at      , 1997 WL 168646* at *21 n.15. The Government, which was, then, on notice of Beckford's intent to subpoena the Lavache report, agreed to assist Beckford in obtaining the report. Id. at *21 n.14. And, Beckford has already inspected the report, which has been produced to the Court pursuant to the subpoena. Although, upon further review, ex parte process was not necessary with respect to this subpoena, the issue was not raised here by the Government and is, in any event, now moot. n30

n30 It should be noted that the Court granted an ex parte motion by the Government for a pre-trial subpoena duces tecum upon a sufficient Nixon showing by the Government. That subpoena required the production of certain school records for Defendant Thomas. The order pursuant to which the subpoena was issued provided that the produced documents be filed under seal and that only the Government and Thomas were permitted to inspect the records. This limitation upon the review of the records was necessary to protect Thomas' legitimate interest in the privacy of the school records. Moreover, the process was

ex parte only insofar as Thomas' co-defendants were concerned; both parties as to which the records were relevant -- the Government and Thomas -- were permitted pre-trial access to the records. Therefore, ex parte procedure was appropriate.

[**75]

For the reasons set forth in this Memorandum Opinion, the Government's Motion To Quash is GRANTED IN PART. Any future applications for subpoenas duces tecum by either the Government or a defendant shall be made in accordance with the requirements of this Memorandum Opinion.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

Robert E. Payne

United States District Judge

Richmond, Virginia
Date: MAY 13 1997

ORDER

United States District Judge

Richmond, Virginia
Date: MAY 13 1997

For the reasons set forth in the accompanying Memorandum Opinion, the United States' Motion to Quash Ex Parte Subpoenas Duces Tecum is GRANTED IN PART AND DENIED IN PART.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

Robert E. Payne

HB 000195

```
****------------------------------------------------------------
-----------****

*     39 PAGES              1665 LINES              JOB  51638
100BQZ         *
*   2:17 P.M. STARTED    2:18 P.M. ENDED              04/03/02
        *
****------------------------------------------------------------
-----------****
****------------------------------------------------------------
-----------****
*                      EEEEE    N   N     DDDD
        *
*                      E        N   N      D   D
        *
*                      E        NN  N      D   D
        *
*                      EEE      N N N      D   D
        *
*                      E        N  NN      D   D
        *
*                      E        N   N      D   D
        *
*                      EEEEE    N   N     DDDD
        *

****------------------------------------------------------------
-----------****

****------------------------------------------------------------
-----------****
```

HB 000196

```
SEND TO: MCNALLY, KEVIN
         COMMUNITY DEFENDER ORGANIZATION
         101 MARIETTA TOWER STE 3512
         ATLANTA, GEORGIA 30323-0001
```

HB 000197

Bates No. 4789

# USA v. JOHN G. BENNETT, JR.

| 43 | Dietz is government witness, although Tp. Shows him as defense witness; defense stipulates to his expertise as forensic psychiatrist |
|----|---|
| 44 | Evaluation began with me reviewing documents, which has been my practice for many years. |
| 45 | I videotaped the interview, in keeping with a custom that I adopted while I has head of an institute at the University of Virginia in the early '80s. |
| 47 | Dr. Martel did a neuropsych and discussed his findings with me.  I also reviewed reports done by experts retained by the government, but I didn't receive those reports until after I had prepared my own. |
| 48 | I have listened to the testimony of this sentencing hearing and have read the transcript of earlier proceedings, in part. |
| 48 | Defense doctors concluded defendant suffered from Brain Damage.  Dietz does not agree. |
| 49 | Dietz prepared a chart to explain his findings to the jury |
| 54 | Delusions and hallucinations do not appear on any particular schedule; so, hallucinations do not appear every Sunday |
| 55 | When individuals have true hallucinations, they respond emotionally to the experience on the early occasions; they see something vivid but not life-like; they may be confused as to whether it is real or not and seek information from other people around them; try to find out what is happening, but it is not taken by them a just an ordinary day. |
| 56 | Stress makes delusions worse, not better |
| 57 | Delusions are fixed beliefs and, without medication, the beliefs will continue |
| 57 | It is not possible for a delusion to be maintained for a period of years, suddenly stop for a period between one day and two weeks and start again. |
| 61 | When people suffer from mental illness, they change.  Mental illness changes their behavior and demeanor.  And that's what families and friends notice about people who become mentally ill- they change. |
| 62 | Hypomania is a term given to episodes in which a person has a pattern of behavior reflective of excessive energy and activity that is not sufficiently severe to warrant the classification as what's called a manic episode…. It's a less serious elevation in moods than the more familiar manic episodes….   Having a condition of hypomania would not cause the commission of the crime, but would allow the defendant to commit the crime more rapidly. |
| 63 | Uses a chart to go through diagnostic criteria for hypomania |
| 65 | The most germane element of hypomanic episode for this particular crime, for Dietz, is "marked impairment in social or occupational functioning". |
| 66 | It is questionable whether characteristics of "driven" people should be regarded as pathology or a benefit to people who have it. |
| 73 | Difference between hallucination and illusion.  Hallucination is a sensory experience that has no basis in reality.  Illusion is where there is a basis, but it has been misinterpreted.  Illusion is driving along a dark road, thinking you see a |

HB 000198

| | |
|---|---|
| | hitchhiker, but it's actually a bush. |
| 74 | It's in the normal range to have occasional illusions |
| 74 | Narcissistic Personality Disorder-pervasive pattern beginning by age 18 of feeling that one is a special person and acting in accordance with that feeling. Defendant talks of having known quite early that he was special and felt he had some destiny. "OJ Simpson starts his biography with a similar statement." A person who is narcissistic exploits others in order to promote self. And feels entitled to do so because of the specialness. The features include wanting to associate only with other special people, interpersonal exploitation, self-aggrandizement and grandiosity. An unwillingness to endure what other people have to endure. For example, people who are narcissistic resent waiting in line. Don't like to do things others must do. And expect to receive special treatment because they believe they are entitled to it.<br><br>But, they can be very charming. And can be highly productive. And it is one of the essential ingredients for charisma to have some degree of narcissism.<br><br>So, we see strong narcissistic traits in many leaders in many fields. That is, it is a condition that while it may not always work to the benefit of one's family and immediate associates, probably does have societal value in many ways.<br><br>And the individual who is narcissistic, as long as they get the admiration they seek, can be sustained and happy. It's just difficult to carry that out long enough because eventually we age. And eventually we do not have the energy we once had. And when all of the things that allowed the achievement that will sustain a successful narcissistic being to evaporate, he or she is left feeling rather empty.<br><br>And it is for that reason that we classify it as pathology. And also because they can create a lot of trouble for everyone around them. |
| 75 | Narcissistic personality disorder is not a psychotic disorder; it is serious to the victims because they can be victimized. It is not a mental illness, not a mental disease and does not deserve consideration as a significant mental impairment. |
| 77 | CROSS |
| | Dietz knows and respects other psychiatrists named… |
| 79 | Dietz has reviewed reports of defense experts. There are things in their reports that I agree with, but disagree with the conclusions of diminished capacity. |
| 84 | After 20 years of evaluating offenders, I know sometimes they don't tell me the truth |
| 84-5 | I've had more experience with violent offenders than with white-collar offenders |
| 85 | Of all the violent offenders I evaluate who are raising a defense of insanity, I imagine it's somewhere between 3 and 5% where my opinion would be insanity. |
| 85 | Dietz questioned about a statement attributed to him in the book, MIND HUNTER, page 344: "Dr. Park Dietz , who works with us frequently, has |

HB 000199

Bates No. 4791

| | |
|---|---|
| | stated, 'None of the serial killers that I've had the occasion to study has been legally insane. But none has been normal either. They've all been people who've got mental disorders. But despite their mental disorders which have to do with their sexual interests and their character, they've been people who knew what they were doing, knew what they were doing was wrong, but chose to do it anyway.'" Dietz says he agreed with that statement at the time he made it. |
| 87 | Since making the above statement, Dietz has found a serial killer who was insane. |
| 88 | Defense plays portion of video of evaluation trying to show Dietz bias against defendant |
| 89 | REDIRECT |
| 90 | Per Dietz, defendant and defense expert were friends before defense expert began treating him. I don't think it's possible to treat a friend or to come to objective opinions about a friend's mental condition in relation to potential imprisonment. |
| 91 | Q. Do you have any hesitation in telling the party that hires you that you cannot support their position?<br>A. Let me be fully disclosing on this. I try to make that decision in the first phone call. Because as soon as one starts working on a case, there's a tendency to want to please the client and you have to fight against that to stay objective.<br><br>So, if I can screen out a case before we've done any work, that's the best. Sometimes we'll have done some hours of reading or work before we realize it, then it's still fairly easy. But it gets tough to stick to your opinion against the client's wishes once you're very far into a case.<br><br>And it's an issue we struggle with. I think my office struggles successfully on that. We talk to each other about it. And we try to make sure that we get it right no matter who's paying the bill.<br><br>But it's, the world does try to make us less than objective and we always have to guard against those biases. |

HB 000200

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Docket No.   3:97CR-23 |
| v. | ) | |
| | ) | **UNDER SEAL** |
| AQUILIA MARCIVICCI BARNETTE, | ) | *Ex Parte* |
| Defendant | ) | |
| _____ | ) | |

**MOTION TO COMPEL THE UNITED STATES BUREAU OF PRISONS TO COOPERATE WITH THE DEFENSE**

**INVESTIGATION OF THIS CASE**

NOW COMES Aquilia Marcivicci Barnette (hereinafter, Marc Barnette) by and through his undersigned

attorneys, and requests that the Court compel the United States Bureau of Prisons to cooperate with ongoing

investigation of this case.     This request is made pursuant to the Fifth, Sixth and Eighth Amendments to the

Constitution of the United States.     In support of this Motion, the undersigned show as follows:

1.     This case involves re-sentencing of the defendant whose three death sentences were set aside by the

Fourth Circuit Court of Appeals.

2. During the pendency of these proceedings, the defendant has been in the custody of the United States

Bureau of Prisons and has been held at FCI Butner, at the Virginia Prison in Mecklenburg County, Virginia and at FCI

Terre Haute.     Counsel are informed and believe there are extensive records concerning the defendant in the

possession of the Bureau of Prisons arising from the detention of the defendant at these facilities.

3.     A central issue at the defendant's first sentencing was the government's assertion that the defendant

would present a future danger to others.     The government presented "expert" testimony that the defendant

Bates No. 4793

would be a future danger even if sentenced to Life Imprisonment without the possibility of release. As a component part of the aggravation sentencing decision at his first trial, the sentencing jury unanimously found that the government had proven, beyond a reasonable doubt, that the defendant would be a future danger to others. Without that finding, the defendant may not have been sentenced to death.

4. Based upon defense investigation to date, the defendant has maintained an exemplary record of conduct and performance while in the custody of the United States Bureau of Prisons. This information is of critical importance in the re-sentencing because it specifically rebuts the government contention of future dangerousness and presents affirmative information that the defendant *will not* be a danger to others while serving a sentence of Life Imprisonment without the possibility of release.

5. In making important tactical decisions, the defense has relied on the defendant's excellent reputation while in the custody of the United States Bureau of Prisons. In order to present this information to the jury in a meaningful and effective way, counsel sought the defendant's prison records and attempted to interview employees of the Bureau of Prisons who were very familiar with the defendant's functioning on a day to day basis and his reputation for peacefulness and cooperation while in prison, both before and after he was sentenced to death.

6. A defense investigator spoke to V. Henry and T. Boyer , employees at BOP Terre Haute who indicated they were willing to talk to the defense about Marc Barnette. Based on information counsel had at that time, the defense believed that their likely testimony would be extremely favorable to the defendant and might persuade a jury to sentence him to Life without Parole instead of death. However, since that initial expression of interest in cooperating with the defense investigation, these BOP employees have refused defense attempts to contact them.

7. Upon information and belief, the United States Bureau of Prisons actively and passively discourages employees to communicate with defense counsel who attempt to interview them about clients in custody of the

2

HB 000202

Bates No. 4794

Bureau of Prisons. Continued obstruction of the defense investigation and presentation of information that is pivotal on the question of whether the defendant lives or dies violates the defendant's rights guaranteed to him under the Fifth, Sixth and Eighth Amendments to the Constitution of the United States.

8. The United States Bureau of Prisons, through its records and employees, has specific information that the defendant is an exemplary prison inmate. The mandate of *Brady v. Maryland*, 373 U.S.83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995) that the government has an affirmative obligation to disclose to the defendant favorable evidence that is material to either guilt or punishment applies to the United States Bureau of Prisons. See e.g., *United States v. Antone*, 603 F.2d 566, 569-70 (5th Cir. 1979). Indeed, the Bureau of Prisons contends that its attorneys are the same people who are prosecuting the defendant.

9. The government, through its client the Bureau of Prisons, is impeding the defense investigation and presentation of critical evidence at the defendant's capital re-sentencing hearing. This situation demands intervention by the Court or the defense will be required to move to continue the re-sentencing hearing while engaging in lengthy litigation on the issue of how and when the defense receives access to this critical information and these important witnesses.

10. It is well recognized that the defendant has a Fifth Amendment right to equal access to witnesses, particularly in the case of a capital re-sentencing hearing. Unless the government that is prosecuting the defendant directs its client, the US Bureau of Prisons, to cooperate fully with the defense investigation and presentation, the defendant's interests and rights secured by the United States Constitution will be violated, to the defendant's irreparable prejudice.

11. The defense has identified the following current or former employees of the United States Bureau of Prisons whom they should be allowed to contact and interview with a view to determining whether they can furnish

3

HB 000203

Bates No. 1795