## Affidavit of Mark D. Cunningham, Ph.D., ABPP

I, Mark D. Cunningham, Ph.D., ABPP, appearing before the undersigned and being duly sworn or affirmed, state the following:

1. I am over the age of 18 and competent to testify to the following facts.

2. I have a Bachelor of Arts degree from Abilene Christian University in Abilene, Texas. I received a Master Degree and Ph.D. from Oklahoma State University with a specialty in Clinical Psychology. I did a one year clinical psychology internship with the National Naval Medical Center in Bethesda, Maryland while I was on active duty as a naval officer. I then did a couple of years of post-doctoral training at Yale University School of Medicine in New Haven, Connecticut.

3. I am board certified in clinical psychology and forensic psychology by the American Board of Forensic Psychology, a specialty board of the American Board of Professional Psychology (ABPP). My current curriculum vitae is attached to this affidavit as Exhibit A.

4. I was appointed to provide expert risk assessment evaluation and possible testimony to assist the defense of Aquilia Marcivicci "Marc" Barnette on December 8, 1997. My subsequent evaluation identified factors that could be considered in mitigation. As reflected in my report dated 01/09/98, these mitigation-related perspectives overlapped and/or supplemented my findings regarding violence risk assessment for prison.

5. I testified on February 4, 1998 at the sentencing phase of Mr. Barnette's capital trial in Charlotte, North Carolina. At that time, I was accepted by the Court as an expert in the field of forensic psychology involving risk assessment at capital sentencings.

6. I was prepared to testify as a surrebutal witness in response to the testimony of the prosecution's testifying expert, Dr. Scott Duncan, but was not called to the stand. I later submitted an affidavit about what I was prepared to testify about in response to Dr. Duncan's testimony. That affidavit is attached hereto as Exhibit B.

7. I re-opened a case file on Marc Barnette in March 2002. I did this after speaking with Mr. Barnette's new attorneys, Harold Bender and Jean Lawson, about possibly providing expert testimony at Mr. Barnette's resentencing trial.

8. During Mr. Barnette's first trial, the primary focus of my testimony was on the issue of violence risk assessment for prison. For resentencing, Ms. Lawson and Mr. Bender asked to me address mitigation in addition to violence risk assessment for prison. Ultimately, defense counsel elected to not elicit testimony from me regarding violence risk assessment for prison. Defense counsel also did not have me testify about Mr. Barnette's adjustment to prison between the time of his conviction and the resentencing.

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 1 of 20
Bates No. 14845

9. For purposes of preparing this affidavit, I have reviewed my files and testimony from my involvement in Mr. Barnette's 1998 trial and his 2002 resentencing. I have also reviewed additional information provided by post-conviction counsel that was not previously made available to me, including: Dr. Richard Dudley's post-conviction mental health report; Zachary Rowles' post-conviction mitigation report; Cessie Alfonso's mitigation report that she prepared for trial counsel in 2002; affidavits executed by various witnesses (both lay and expert) in the post-conviction litigation; and pleadings filed on behalf of Mr. Barnette in support of federal habeas corpus relief.

10. During the first trial, I was provided family and background information that had been compiled by Sindy Maxwell. I was never told by Ms. Lawson, Mr. Bender, or anyone else from Mr. Barnette's defense team that his new lawyers believed—and had told the Court ahead of trial—that the work produced by Ms. Maxwell was "superficial and not-sufficiently in depth." Because the defense lawyers never suggested to me that I should question the accuracy or completeness of the information I had previously been given about Mr. Barnette's background, I did not have any reason to question it. I have since been informed by Mr. Barnette's post-conviction counsel that his own trial counsel questioned the credibility of that information, and I have reviewed information from post-conviction counsel that calls into question the completeness of the information I had previously been told to rely upon.

11. My review of the materials from post-conviction counsel makes clear that there were important pieces of information trial counsel had never shared with or provided to me. This information includes, but is not limited to, Cessie Alfonso's expert report; Jesse Cooper's medical and military records; and access to many social history witnesses (who apparently were readily available in 2002) and the important mitigating and mental health information they had to share. Because I did not have this information in 2002, the expert opinion I provided to Mr. Barnette's sentencing jury was unknowingly incomplete and rendered me vulnerable to damaging impeachment by the government. For example, because trial counsel did not provide me with this available information, my testimony in 2002 about (a) Sonia Cooper's denial of Derrick's paternity test results and the impact that had on Marc Barnette, (b) the scope and significance of Jesse Cooper's combat trauma (Korea) and post-traumatic stress symptoms, (c) the details of Marc Barnette's healthy, non-violent relationships, and (d) the abuse Marc Barnette endured at home was incomplete.

12. Had I been asked, I would have been willing and able to testify at Mr. Barnette's resentencing trial in 2002 about his positive adjustment to prison and his lack of disciplinary issues, and how it was consistent with my expectations for his future adjustment.

13. My evaluations of Mr. Barnette in 1998 and 2002 identified that he had suffered from longstanding affective instability and in the months preceding the capital

2

offenses, had exhibited symptoms consistent with a mood disorder. I was aware in 1998 and 2002 of Dr. Seymor Halleck's 1997-1998 diagnosis that Mr. Barnette suffered from a Major Depressive Disorder; and also that Mr. Barnette was treated with antidepressant medication (though not diagnosed with a mood disorder per se) during his evaluation at the Health Services Division, Federal Correctional Institution in Butner, North Carolina in 1997. I am aware the Dr. Park Dietz found mixed evidence for a Major Depressive Disorder in Mr. Barnette. I have reviewed the report of Dr. Richard Dudley dated 11-19-14 and find that he makes a strong case for Mr. Barnette was suffering from a longstanding major mood disorder at the time of the offense.

14. I was aware that Mr. Barnette testified on his own behalf at his resentencing trial. Trial counsel never sought my advice or insights in 2002 about putting Mr. Barnette on the stand as a witness. Had trial counsel asked my opinion, I would have told them that although Mr. Barnette expressed genuine remorse for what he had done, he had tremendously limited insight into his own behaviors and was likely to be unable to properly display his remorse when confronted with the stress of examination and cross examination. Indeed, I would have told trial counsel that I would anticipate that Mr. Barnette's testimony would likely come across to a jury as self-serving and unsympathetic.

Date 3/21/16

Mark D. Cunningham

Affirmed and subscribed before me on this the 21st day of MARCH, 2016 in SEATTLE, WASHINGTON.

Notary Public

Notary Public
State of Washington
WENDY C MAN
MY COMMISSION EXPIRES
November 14, 2019

My commission expires: NOVEMBER 14, 2019

3

# MARK D. CUNNINGHAM, PH.D., ABPP

*Board Certified in Clinical Psychology - Board Certified in Forensic Psychology*
*American Board of Professional Psychology*

Medical Dental Building, 509 Olive Way, Suite 703
Seattle, Washington 98101

737-210-8336
mdc@markdcunningham.com

*Licensed psychologist: Alabama #1564, Arizona #3662, Arkansas #98-17P, Colorado #2305, Delaware #B1-0001047,*
*Florida #PY8347, Idaho #PSY-379, Illinois #071-006010, Indiana #20041376A, Louisiana #794, Nevada #PY0625,*
*New Mexico #0768, New York #017111-1 [inactive], Oregon #1333, Pennsylvania #PS016942,*
*Tennessee #2255, Texas #22351, Washington #PY60207411*

## CURRICULUM VITAE
Updated 03-09-16

## EDUCATION

**Postdoctoral:**　　　　Yale University School of Medicine, New Haven, Connecticut
　　　　　　　　　　　NIMH-sponsored training program, two years (part-time)

**Internship:**　　　　　National Naval Medical Center, Bethesda, Maryland
　　　　　　　　　　　Specialty: Clinical Psychology, one year (APA accredited)

**Graduate:**　　　　　Oklahoma State University, Stillwater, Oklahoma
　　　　　　　　　　　*Doctor of Philosophy*
　　　　　　　　　　　*Master of Science*
　　　　　　　　　　　Specialty: Clinical Psychology (APA accredited)

**Undergraduate:**　　　Abilene Christian University, Abilene, Texas
　　　　　　　　　　　*Bachelor of Arts*
　　　　　　　　　　　Majors: Psychology, Mass Communications

## BOARD CERTIFICATIONS

Clinical Psychology: American Board of Clinical Psychology, a specialty board of the American
　　Board of Professional Psychology (ABPP), Diploma #6462

Forensic Psychology: American Board of Forensic Psychology, a specialty board of the American
　　Board of Professional Psychology (ABPP), Diploma #4551

## PROFESSIONAL PRACTICE

*Current:*
　　Clinical and Forensic Psychologist, independent practice
　　Research Scientist

*Previous:*
　　Clinical Psychologist (Lieutenant, MSC, USNR), Naval Submarine Medical Center, CT
　　　　(three years post-doctoral)

Case 3:12-cv-00327-MOC　　　Document 118-2　　　Filed 04/04/16　　　Page 4 of 20
Bates No. 14848

## AWARDS, DECORATIONS, AND DISTINCTIONS

### *For Research and Scholarship:*

*American Psychological Association Award for Distinguished Contributions to Research in Public Policy* – annual award bestowed for distinguished empirical and/or theoretical contribution to research in public policy, either through a single extraordinary achievement or a lifetime of work, 2006 recipient.

*Texas Psychological Association Award for Outstanding Contribution to Science* – annual award in recognition of significant scientific contribution in the discovery and development of new information, empirical or otherwise, to the body of psychological knowledge, 2005 recipient.

*American Psychology-Law Society Book Award* – annual award given to a scholarly book devoted to psychology and law issues to recognize outstanding scholarship in psychology and law, 2016 shared recipient [*Forensic Assessments in Criminal and Civil Law: A Handbook for Lawyers,* chapter author].

### *For Contributions to Science and Practice*

*National Register of Health Service Psychologists Alfred M. Wellner, Ph.D. Lifetime Achievement Award* – annual award that is the highest honor bestowed on a Registrant by the National Register to commemorate numerous and significant contributions to psychology during a distinguished career, 2012 co-recipient.

*Fellow, American Psychological Association (Division 41: American Psychology-Law Society)* – distinction reflecting outstanding and uncommon contributions having national impact on the science and practice of psychology, 2007 election.

*National Association of Sentencing Advocates John Augustus Award* - annual award bestowed for outstanding contributions to the profession of sentencing advocacy, 2004 recipient.

*Navy Commendation Medal* – decoration for meritorious service as a clinical psychologist, Naval Submarine Medical Center, United States Navy. The Commendation Medal may be awarded to service members who, while serving in any capacity with the Navy or Marine Corps, distinguish themselves by heroism, outstanding achievement or meritorious service. To be awarded for meritorious service, the service must be outstanding and worthy of special recognition.

### *Other Fellow distinctions:*

*Fellow, American Academy of Clinical Psychology* – distinction reflecting diplomate in clinical psychology by the American Board of Professional Psychology.

*Fellow, American Academy of Forensic Psychology* – distinction reflecting diplomate in forensic psychology by the American Board of Professional Psychology.

Case 3:12-cv-00327-MOC     Document 118-2     Filed 04/04/16     Page 5 of 20
Bates No. 14849

*Education and training honors:*

*Al Brown Memorial Award* – award bestowed for outstanding achievement, National Institute of Mental Health (NIMH) Sex Therapy Training Program, Yale University School of Medicine.

*Magna cum Laude* - Bachelor of Arts, Abilene Christian University.


## CURRENT PROFESSIONAL LICENSES

*Licensed Psychologist:*

| | | |
|---|---|---|
| Alabama #1564 | Arizona #3662 | Arkansas #98-17P |
| Colorado #2305 | Delaware #B1-0001047 | Florida #PY8347 |
| Idaho #PSY-379 | Illinois #071-006010 | Indiana #20041376A |
| Louisiana #794 | Nevada #PY0625 | New Mexico #0768 |
| New York #017111-1 [inactive] | | Oregon #1333 |
| Pennsylvania #PS016942 | Tennessee #2255 | Texas #22351 |
| Washington #PY60207411 | | |


## PRIOR ACADEMIC APPOINTMENTS

Psychology Department Assistant Professor, two years post-USNR
    Hardin-Simmons University, Abilene, Texas

Psychology Department Instructor, three years (part-time, contemporaneous with USNR service):
    Old Dominion University (U.S. Submarine Base Extension);
    Mohegan Community College, Norwich, Connecticut

Psychology Department Graduate Teaching Assistant, three years (part-time):
    Oklahoma State University, Stillwater, Oklahoma


## PROFESSIONAL AFFILIATIONS

American Psychological Association – *Fellow* (Division 41)

American Board of Professional Psychology – *Diplomate (clinical, forensic)*
American Academy of Clinical Psychology - *Fellow*
American Academy of Forensic Psychology - *Fellow*
    Workshop faculty, 1998-2008
    ABFP examiner, 1996-2006

National Register of Health Service Psychologists #30073
Interjurisdictional Practice Certificate (IPC) #1303
    Association of State and Provincial Psychology Boards
Texas Psychological Association

---

Curriculum Vitae                                                                                          Page 3

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 6 of 20
Bates No. 14850

American Psychology Law Society (AP-LS)
American Association for Intellectual and Developmental Disabilities
American Correctional Association  (ACA)
International Association for Correctional and Forensic Psychology (IACFP)


## <u>SCHOLARSHIP AND RESEARCH</u>

### *Books and edited volumes:*

1.  Cunningham, M. D. (2010).  *Evaluation for capital sentencing.*  A volume in the *Oxford best practices in forensic mental health assessment* series, Series Editors: A. Goldstein, T. Grisso, and K. Heilbrun. New York: Oxford University Press.

2.  Cunningham, M. D. (Ed.) (2009). Capital sentencing (special issue). *Journal of Psychiatry and Law, 37 (2-3)*.

### *Chapters in edited books:*

3.  Cunningham, M. D. (*under review*). Institutional violence and misconduct. In R. D. Morgan (Ed.), *The Sage encyclopedia of criminal psychology*. Thousand Oaks, CA: Sage Publishing.

4.  Cunningham, M. D. (*under review*). Competency for execution. In R. D. Morgan (Ed.), *The Sage encyclopedia of criminal psychology*. Thousand Oaks, CA: Sage Publishing.

5.  Cunningham, M. D. (2016).  Forensic psychology evaluations at capital sentencing. In R. Jackson and R. Roesch (Eds.), *Learning forensic assessment: Research and practice (International perspectives on forensic mental health). 2nd edition* (pp. 202-228). New York: Routledge, Taylor & Francis Group.

6.  Macvaugh, G. S., Cunningham, M. D., & Tassé, M. J. (2015). Professional issues in *Atkins* assessments. In E. Polloway, (Ed.), *The death penalty and intellectual disability.* Washington: American Association on Intellectual and Developmental Disabilities.

7.  Cunningham, M. & Sorensen, J. (2014). Future dangerousness. In J.R. Acker, C. Lanier, & R. Bohm (Eds.) *America's experiment with capital punishment: Reflections on the past, present and future of the ultimate penal sanction, 3rd edition* (pp. 289-307). Durham, NC: Carolina Academic Press.

6.  Cunningham, M. D., & Goldstein, A. M. (2013). Sentencing determinations in death penalty cases. In R. Otto (Ed.), *Forensic psychology* (vol. 11 of 12). I. Weiner (Ed.), *Handbook of psychology, 2nd edition* (pp. 473-514). New York: John Wiley & Sons.

7.  Cunningham, M. D. (2013). Evaluations at capital sentencing. In R. Roesch and P. Zapf (Eds.), *Forensic assessments in criminal and civil law: A handbook for lawyers* (pp.103-117). New York: Oxford University Press.

Case 3:12-cv-00327-MOC     Document 118-2     Filed 04/04/16     Page 7 of 20
Bates No. 14851

8. Cunningham, M. D. (2013). Death-sentenced inmates. In L. Gideon (Ed.), *Special needs offenders in correctional institutions*. Thousand Oaks, CA: Sage Publications.

9. Cunningham, M. D. (2008). Competency to waive appeals. In B. L. Cutler (Ed.), *Encyclopedia of psychology and law* (pp. 123-125). Thousand Oaks, CA: Sage Publications. doi:10.4135/9781412959537.n48

10. Cunningham, M. D. (2008). Institutional misconduct among capital murderers. In M. DeLisi and P. J. Conis (Eds.), *Violent offenders: Theory, research, public policy, and practice* (pp. 237-253). Boston: Jones & Bartlett Publishers.

11. Cunningham, M. D. (2008). Forensic psychology evaluations at capital sentencing. In R. Jackson (Ed.), *Learning forensic assessment (International perspectives on forensic mental health)* (pp. 211-238). New York: Routledge, Taylor & Francis Group.

12. Cunningham, M. D., & Goldstein, A. M. (2003). Sentencing determinations in death penalty cases. In A. Goldstein (Ed.), *Forensic psychology* (vol. 11 of 12) (pp. 407-436). I. Weiner (Ed.), *Handbook of psychology*. New York: John Wiley & Sons.

*Articles in peer-reviewed journals:*

13. Cunningham, M. D., Reidy, T. J., & Sorensen, J. R. (2015, December 28). Wasted resources and gratuitous suffering: The failure of a security rationale for death row. *Psychology, Public Policy, and Law*. Advance online publication. http://dx.doi.org/10.1037/law0000072

14. Hanlon, R., Brook, M., Demery, J. A., & Cunningham, M. D. (2015). Domestic homicide: Neuropsychological profiles of murderers who kill family members and intimate partners. *Journal of Forensic Sciences,* online. doi: 10.1111/1556-4029.12908

15. Reidy, T. J., Sorensen, J. R., & Cunningham, M. D. (2013). Probability of criminal acts of violence: A test of jury predictive accuracy. *Behavioral Sciences and the Law, 31,* 286-305. doi:10.1002/bsl.2064

16. Reidy, T. J., Sorensen, J. R., & Cunningham, M. D. (2012). Community violence to prison assault: A test of the behavior continuity hypothesis. *Law and Human Behavior, 36*(4), 356-363. doi:10:1037/h0093934

17. Sorensen, J. R., Cunningham, M. D., Vigen, M. P., & Woods, S. O. (2011). Serious assaults on prison staff: A descriptive analysis. *Journal of Criminal Justice, 39,* 143-150. doi:10.1016/j.jcrimjus.2011.01.002

18. Cunningham, M. D., Sorensen, J. R., Vigen, M. P., & Woods, S. O. (2011). Correlates and actuarial models of assaultive prison misconduct among violence-predicted capital offenders. *Criminal Justice and Behavior, 38* (1), 5-25. doi:10.1177/0093854810384 830

Case 3:12-cv-00327-MOC     Document 118-2     Filed 04/04/16     Page 8 of 20
Bates No. 14852

19. Cunningham, M. D., Sorensen, J. R., Vigen, M. P., & Woods, S. O. (2011). Life and death in the Lone Star State: Three decades of violence predictions by capital juries. *Behavioral Sciences & the Law, 29* (1), 1-22. doi:10:1002/bsl.963

20. Cunningham, M. D., & Tassé, M. (2010). Looking to science rather than convention in adjusting IQ scores when death is at issue. *Professional Psychology: Research and Practice, 41* (5), 413-419. doi:10.1037/a0020226

21. Cunningham, M. D., Sorensen, J. R., Vigen, M. P., & Woods, S. O. (2010). Inmate homicides: Killers, victims, motives, and circumstances. *Journal of Criminal Justice, 38* (4), 348-358. doi:10.1016/j.jcrimjus.2010.03.008

22. Cunningham, M. D., & Sorensen, J. R. (2010). Improbable predictions at capital sentencing: Contrasting prison violence outcomes. *Journal of the American Academy of Psychiatry and the Law, 38* (1), 61-72.

23. Sorensen, J. R., & Cunningham, M. D. (2010). Conviction offense and prison violence: A comparative study of murderers and other offenders. *Crime & Delinquency, 56* (1), 103-125. doi:10.1177/0011128707307175

24. Cunningham, M. D., Sorensen, J. R., & Reidy, T. J. (2009). Capital jury decision-making: The limitations of predictions of future violence. *Psychology, Public Policy, and Law, 15* (4), 223-256. doi:10.1037/a0017296

25. Cunningham, M. D. (2009). Introduction to special issue: Progress, perspectives, and best practices in capital sentencing evaluations. *Journal of Psychiatry and Law, 37* (2-3), 125-130.

26. Macvaugh, G., & Cunningham, M. D. (2009). *Atkins v. Virginia*: Implications and recommendations for forensic practice. *Journal of Psychiatry and Law, 37* (2-3), 131-187.

27. Sorensen, J. R., & Cunningham, M. D. (2009). Once a killer always a killer? Prison misconduct of former death-sentenced inmates in Arizona. *Journal of Psychiatry and Law, 37* (2-3), 237-267.

28. Kuanliang, A., Sorensen, J. R., & Cunningham, M. D. (2008). Juvenile inmates in an adult prison system: Rates disciplinary misconduct and violence. *Criminal Justice and Behavior, 35* (9), 1186-1201. doi:10.1177/0093854808322744

29. Cunningham, M. D., Reidy, T. J., & Sorensen, J. R. (2008). Assertions of "future dangerousness" at federal capital sentencing: Rates and correlates of subsequent prison misconduct and violence. *Law and Human Behavior, 32* (1), 46-63. doi:10.1007/s10979-007-9107-7

30. Cunningham, M. D., & Sorensen, J. R. (2007). Capital offenders in Texas prisons: Rates, correlates, and an actuarial analysis of violent misconduct. *Law and Human Behavior, 31*, 553-571. doi:10.1007/s10979-006-9079-z

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 9 of 20
Bates No. 14853

31. Cunningham, M. D., & Sorensen, J. R. (2007). Predictive factors for violent misconduct in close custody. *Prison Journal, 87* (2), 241-253. doi:10.1177/0032885507303752

32. Sorensen, J. R., & Cunningham, M. D. (2007). Operationalizing risk: The influence of measurement choice on the prevalence and correlates of violence among incarcerated murderers. *Journal of Criminal Justice, 35*, 546-555. doi:10.1016/j.jcrimjus.2007.07.007

33. Cunningham, M. D. (2006). Dangerousness and death: A nexus in search of science and reason. *American Psychologist, 61* (8), 828-839. doi:10.1037/0003-066X.61.8.827

34. Cunningham, M. D. (2006). Informed consent in capital sentencing evaluations: Targets and content. *Professional Psychology: Research and Practice, 37* (5), 452-459. doi:10.1037/0735-7028.37.5.452

35. Cunningham, M. (2006). Special issues in capital sentencing. In Conroy, M. A., Lyons, P. M., Jr., & Kwartner, P. P. (Eds.). *Forensic mental health services in Texas* [special issue, electronic version]. *Applied Psychology in Criminal Justice, 2* (3), 205-236.

36. Cunningham, M. D., & Sorensen, J. R. (2006). Actuarial models for assessment of prison violence risk: Revisions and extensions of the Risk Assessment Scale for Prison (RASP). *Assessment, 13* (3), 253-265. doi:10.1177/1073191106287791

37. Cunningham, M. D., & Sorensen, J. R. (2006). Nothing to lose? A comparative examination of prison misconduct rates among life-without-parole and other long-term high security inmates. *Criminal Justice and Behavior, 33* (6), 683-705. doi:10.1177/0093854806288273

38. Cunningham, M. D., Reidy, T. J., & Sorensen, J. R. (2005). Is death row obsolete? A decade of mainstreaming death-sentenced inmates in Missouri. *Behavioral Sciences & the Law, 23,* 307-320. doi:10.1002/bsl.608

39. Cunningham, M. D., Sorensen, J. R., & Reidy, T. J. (2005). An actuarial model for assessment of prison violence risk among maximum security inmates. *Assessment, 12* (1)*,* 40-49. doi:10.1177/1073191104272815

40. Cunningham, M. D., Sorensen, J. R., & Reidy, T. J. (2004). Revisiting future dangerousness revisited: Response to DeLisi and Munoz. *Criminal Justice Policy Review, 15* (3)*,* 365-376. doi:10.1177/0887403404266462

41. Shuman, D. W., Cunningham, M. D., Connell, M. A., & Reid, W. H. (2003). Interstate forensic psychology consultations: A call for reform and proposal for a model rule. *Professional Psychology: Research and Practice, 34* (3)*,* 233-239. doi:10.1037/0735-7028.34.3.233

42. Cunningham, M. D., & Reidy, T .J. (2002). Violence risk assessment at federal capital sentencing: Individualization, generalization, relevance, and scientific standards. *Criminal Justice and Behavior, 29*(5), 512-537. doi:10.1177/009385402236731

Curriculum Vitae                                                                                     Page 7

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 10 of 20
Bates No. 14854

43. Cunningham, M. D., & Vigen, M. P. (2002). Death row inmate characteristics, adjustment, and confinement: A critical review of the literature. *Behavioral Sciences & the Law, 20* (1-2), 191-210. doi:10.1002/bsl.473

44. Cunningham, M. D., & Reidy, T. J. (2001). A matter of life or death: Special considerations and heightened practice standards in capital sentencing evaluations. *Behavioral Sciences & the Law, 19* (4), 473-490. doi:10.1002/bsl.460

45. Reidy, T. J., Cunningham, M. D., & Sorensen, J. (2001). From death to life: Prison behavior of former death row inmates in Indiana. *Criminal Justice and Behavior, 28* (1), 62-82. doi:10.1177/0093854801028001003

46. Cunningham, M. D., & Reidy, T. J. (1999). Don't confuse me with the facts: Common errors in violence risk assessment at capital sentencing. *Criminal Justice and Behavior, 26* (1), 20-43. doi:10.1177/0093854899026001002

47. Cunningham, M. D., & Vigen, M. P. (1999). Without appointed counsel in capital postconviction proceedings: The self-representation competency of Mississippi death row inmates. *Criminal Justice and Behavior, 26* (3), 293-321. doi:10.1177/0093854899026003002

48. Cunningham, M. D., & Reidy, T. J. (1998). Antisocial personality disorder and psychopathy: Diagnostic dilemmas in classifying patterns of antisocial behavior in sentencing evaluations. *Behavioral Sciences & the Law, 16* (3), 333-351.|

49. Cunningham, M. D., & Reidy, T. J. (1998). Integrating base rate data in violence risk assessments at capital sentencing. *Behavioral Sciences & the Law, 16* (1), 71-95.

*Articles in edited law reviews:*

50. Lyon, A. D., & Cunningham, M. D. (2006) Reason not the need: Does the lack of compelling state interest in maintaining a separate death row make it unlawful? *American Journal of Criminal Law, 33* (1), 1-30.

*Case reports, teaching points, profiles, and other commentary:*

51. Cunningham, M. D. (*under review*). Third party presence - attorneys [ethics case commentary]. In G. Pirelli, R. Beattey, and P. Zapf (Eds.), *The ethical practice of forensic psychology: A casebook.* New York: Oxford.

52. Cunningham, M. D. (*under review*). Addressing multiple psycholegal questions in a single evaluation [ethics case commentary]. In G. Pirelli, R. Beattey, and P. Zapf (Eds.), *The ethical practice of forensic psychology: A casebook.* New York: Oxford.

53. Cunningham, M. D. (2014). Report on capital sentencing [case report]. In K. Heilbrun, D. DeMatteo, S. Brooks Holliday, and C. LaDuke (Eds.), *Forensic mental health assessment: A casebook, 2nd Edition* (136-144). New York: Oxford.

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 11 of 20
Bates No. 14855

54. Cunningham, M. D. (2011). [Professional profile]. In C. R. Bartol and A. M. Bartol (Eds.), *Introduction to Forensic Psychology: Research and Application, 3rd Edition* (177-179). Thousand Oaks, CA: Sage.

55. Cunningham, M. D. (2010). [Professional profile]. In R. M. Regoli and J. D. Hewitt, *Exploring criminal justice: The essentials*. Boston: Jones & Bartlett Publishers.

56. Cunningham, M. D. (2007) Capital violence risk assessment [case report]. In Mary A. Conroy and D. Murrie, *Forensic assessment of violence risk: A guide for risk assessment and risk management* (287-290). New York: John Wiley & Sons.

57. Cunningham, M. D. (2002). Capital sentencing [case report]. In K. Heilbrun, G. Marczyk, and D. DeMatteo, *Forensic mental health assessment: A casebook* (152-171). New York: Oxford University Press.

58. Cunningham, M. D. (2002). Competence to be executed [case report]. In K. Heilbrun, G. Marczyk, and D. DeMatteo, *Forensic mental health assessment: A casebook* (96-114). New York: Oxford University Press.

59. Cunningham, M. D. (2002). How do you evaluate the accuracy of different sources of third-party information? [teaching point]. In K. Heilbrun, G. Marczyk, and D. DeMatteo, *Forensic mental health assessment: A casebook* (171-173). New York: Oxford University Press.

60. Cunningham, M. D. (2002). Why and how do you attribute information to sources in a forensic mental health assessment? [teaching point]. In K. Heilbrun, G. Marczyk, and D. DeMatteo, *Forensic mental health assessment: A casebook* (114-115). New York: Oxford University Press.

*Articles in professional periodicals:*

61. Cunningham, M. D. (2001). Bias in capital sentencing evaluations [invited opinion column]. *American Psychology and Law Society News, 21, 2,* 8-9.

62. Cunningham, M. D., & Reidy, T. J. (1998). Antisocial personality disorder vs. psychopathy as diagnostic tools. *Prosecutor's Brief: California District Attorneys Association, 20,* 9-11.


## INVITED SCHOLARLY SYMPOSIA / ADDRESSES

1. Deadly error: The inability of capital juries to predict future violence. XXXIII International Congress on Law and Mental Health. Amsterdam, Netherlands, July 2013.

2. Who is the death penalty for? Determining who lives and who dies at capital sentencing. Goldman Trust Colloquium. Oklahoma State University, Stillwater, Oklahoma, February 2013.

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 12 of 20
Bates No. 14856

3. Sources of vicarious traumatization in death penalty cases. In the symposium: "The cost of being an expert: Vicarious traumatization and forensic psychologists," with William E. Foote, Ph.D., Alan M. Goldstein, Ph.D., Dawn Hughes, Ph.D., and Julie Brovko, American Psychology-Law Society Annual Conference. Miami, Florida, March 2011.

4. Have credentials will travel: Questions and answers regarding interjurisdictional practice. Symposium with Solomon M. Fulero, Ph.D., Alex M. Siegel, Ph.D., Joseph Rollo, Ph.D., and Joel A. Dvoskin, Ph.D., American Psychology-Law Society Annual Conference. San Antonio, Texas, March 2009.

5. How research can inform death penalty determinations. Invited address. Sam Houston State University: Spring Colloquium. Huntsville, Texas, February 2009.

6. Informed consent: Essential consultations with attorneys in death penalty cases. Invited seminar for doctoral psychology students. Sam Houston State University. Huntsville, Texas, February 2009.

7. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. San Francisco, California, May 2008.

8. Death penalty on trial. Symposium with Joel Dvoskin, Ph.D., Solomon Fulero, Ph.D., & Christopher Slobogin, J.D., Ph.D., American Psychological Association 115th Annual Convention. San Francisco, California, August 2007.

9. Implications of developmental research for juvenile adjudications. Invited address. Alabama Council of Community Mental Health Boards, Southern Poverty Law Center: 33rd annual conference. Birmingham, Alabama, May 2007.

10. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. San Diego, California, January 2007.

11. Dangerousness and death: A nexus in search of science and reason. Invited award address, American Psychological Association 114th Annual Convention. New Orleans, Louisiana, August 2006.

12. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. La Jolla, California, March 2005.

13. Informed consent in forensic evaluations. Symposium with Mary Connell, Ph.D., William Foote, Ph.D., & Daniel Shuman, J.D., American Psychology-Law Society Annual Conference.  LaJolla, California, March 2005.

14. Psychological evaluations in death penalty litigation. Presenter. Texas Psychological Association, Pre-convention workshop. Dallas, Texas, November 2003.

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 13 of 20
Bates No. 14857

15. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. Cincinnati, Ohio, September 2003.

16. Competency to be executed. Symposium with Stanley Brodsky, Ph.D. & Patricia Zapf, Ph.D., American Psychology-Law Society Annual Conference. Austin, Texas, March 2002.

17. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. San Diego, California, February 2002.

18. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. Monterey, California, January 2000.

19. Psychological expertise and criminal justice. Panel member. American Psychological Association / American Bar Association Conference. Washington, DC, October 1999.

20. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. Austin, Texas, February 1999.

21. The role of the forensic psychologist in death penalty litigation. Presenter. American Academy of Forensic Psychology: Workshop Series. Milwaukee, Wisconsin, March 1998.


**EDITORIAL**

Consulting editor:  *Assessment* (2006-2016)
Editorial board:  *Open Access Journal of Forensic Psychology* (2009- )
Guest editor:  *Journal of Psychiatry and Law* (special issue, 2009)
Ad hoc reviewer:  *American Psychologist: 2015*
 *Behavioral Sciences & the Law:* 2004, 2007, 2008, 2009, 2010, 2013
 *Criminal Justice and Behavior:* 2009, 2011
 *Criminal Justice Policy Review:* 2006
 *Criminal Justice Review:* 2008
 *Criminology:* 2011
 *Journal of Criminal Justice:* 2010, 2012
 *Journal of Forensic Psychology Practice:* 2009
 *Justice Quarterly:* 2009, 2011, 2013, 2014, 2015
 *Law & Human Behavior:* 2004
 *Personality Disorders: Theory, Research, and Treatment*: 2009
 *Psychological Assessment:* 2010, 2012, 2013, 2014
 *Psychology, Public Policy, and the Law:* 2009, 2010, 2011, 2012
 *Southwest Journal of Criminal Justice:* 2007
 *The Prison Journal:* 2012
 *Violence and Victims:* 2014, 2015
 *Women & Criminal Justice:* 2015

---

Curriculum Vitae                                                                          Page 11

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 14 of 20
Bates No. 14858

Pre-publication book manuscript reviewer: John Wiley & Sons, Inc. (2007)
Professional Resource Press (2003)
Taylor & Francis (proposal, 2010)

**TESTIMONY BEFORE COMMISSIONS AND LEGISLATIVE COMMITTEES**

Texas State Senate, Criminal Justice Committee, 79th Legislative Session, Austin, 2005
Texas State Senate, Criminal Justice Committee, 78th Legislative Session, Austin, 2003
Illinois Governor's Commission on Capital Sentencing, Chicago, 2002

**AMICI CURIAE**

*Consultation and assistance in preparation of:*

Brief of *Amici Curiae* [Tassé, M., Everington, C., Salekin, K., Olley, J., Cunningham, M., Macvaugh, G., American Association on Intellectual and Developmental Disabilities] in Support of Warren Lee Hill, Jr.'s Petition for Writ of Habeas Corpus, in the Supreme Court of the United States (2013).

Brief of the *Amici Curiae*, Texas Psychological Association and Texas Appleseed in Support of Appellant, *Noah Espada vs. The State of Texas*, in the Court of Criminal Appeals of Texas at Austin (2007).

Brief of *Amicus Curiae*, American Psychological Association in Support of Defendant-Appellant, *U.S. v. Sherman Lamont Fields* in the United States Court of Appeals for the Fifth Circuit (2005).

*Cited as authority:*

Brief of *Amici Curiae*, Corrections Experts, in Support of Petitioner, in *Alfred Prieto v. Harold Clark, Director, A. David Robinson, Deputy Director, and E. Pearson, Warden*, No. 15-31, in the Supreme Court of the United States (2015), on Petition for a Writ of Certiorari to the United States Court of Appeals for the Fourth Circuit.

Brief of *Amici Curiae*, American Association on Intellectual and Developmental Disabilities (AAIDD), and ARC of the United States, in Support of the Petition for a Writ of Certiorari in *Juan Lizcano v. Texas*, No. 15-65, in the Supreme Court of the United States (2015) on Petition for a Writ of Certiorari to the Court of Criminal Appeals of Texas.

Brief of *Amici Curiae*, American Psychological Association, American Psychiatric Association, American Academy of Psychiatry and Law, Florida Psychological Association, National Association of Social Workers, and National Association of Social Workers Florida Chapter in Support of Petitioner in *Freddie Lee Hall v Florida*, No 12-10882, in the Supreme Court of the United States (2013).

Case 3:12-cv-00327-MOC     Document 118-2     Filed 04/04/16     Page 15 of 20
Bates No. 14859

Brief as *Amici Curiae*, Capacity for Justice, Disability Rights Texas, Texas Appleseed, and the National Alliance on Mental Illness of Texas in Support of Petitioner, *Billie Wayne Coble*, in the Supreme Court of the United States on Petition for a Writ of Certiorari to the Texas Court of Criminal Appeals, No. 10-1271 (2011)

Case 3:12-cv-00327-MOC    Document 118-2    Filed 04/04/16    Page 16 of 20
Bates No. 14860

<u>**Affidavit of Jean Lawson**</u>

I, Jean Lawson, appearing before the undersigned and being duly sworn or affirmed, state the following:

1. I am over the age of 18 and competent to testify to the following facts.

2. I previously executed an affidavit on December 8, 2014 in connection with Marc Barnette's capital post-conviction litigation.

3. In my earlier affidavit, I referenced a number of issues and investigative leads that I and my co-counsel had identified as necessary to explore in preparation for Marc's resentencing trial in 2002. We wanted to explore these issues and leads because we believed we would learn valuable mitigating information.

4. Any shortcomings or deficiencies in our investigation on behalf of Marc Barnette had nothing to do with any concern that the information we would learn or present might be "double-edged" or more aggravating than mitigating. We could not determine what could possibly be a "double-edged sword" until we knew what the information was in the first place.

5. Any failure to provide our experts with any information was not done in an effort to shield our experts from information that we thought might possibly be detrimental to our case or their opinions.

6. If any of our experts had suggested to us that Marc had been suffering from a significant mental health crisis at or around the time of the crimes—including, but not limited to, that he may have been psychotic or suffering from a mood disorder—I would not have been concerned that such information would have been a "double-edged sword" or of little to no mitigating value. Instead, I would have considered such information to be valuable and mitigating.

_Jean B. Lawson_  
Jean Lawson

_3/31/16_  
Date

Affirmed and subscribed before me on this the _31_ day of _March_, 2016 in Mecklenburg County, North Carolina

_Steven Arant_  
Notary Public  
My commission expires: _6-29-2016_

1

## AFFIDAVIT OF CHAD DIAMOND

I, Chad Diamond, appearing before the undersigned and being duly sworn or affirmed, state the following:

1. I am over the age of 18 and competent to testify to the following facts.

2. I am an attorney in Charlotte, North Carolina. I am currently in private practice.

3. From April 2012 to March 2013, I was an Assistant Federal Defender at the Federal Defender's Office of Western North Carolina. In that capacity, I worked with post-conviction counsel Jake Sussman and Mark Olive on *United States v. Aquilia Marcivicci Barnette*.

4. During that time, I assisted Mr. Sussman and Mr. Olive with contacting the expert witnesses who testified on Mr. Barnette's behalf during his 1998 trial and 2002 resentencing for the purpose of obtaining copies of their case files. This would be the first step before later interviewing the expert, if possible.

5. In June and July 2012, I tried to contact each expert witness who had testified for Mr. Barnette.

6. One of the experts I tried to contact was Dr. Seymour Halleck. Dr. Halleck previously evaluated Mr. Barnette, testified at Mr. Barnette's 1998 trial, and testified again at his 2002 resentencing.

7. In or around late June or early July of 2012, I called a telephone number listed for Dr. Halleck's office. I was informed by his office manager that Dr. Halleck had retired, that he had destroyed all his files, including his file from the Barnette case, and that he was unavailable to discuss the matter further.

I swear or affirm that the information in the foregoing paragraphs is true to the best of my knowledge.

_____     4/1/16
Chad Diamond                                      Date

Affirmed and subscribed before me on this the 1st day of Apri, 2016 in Mecklenburg County, North Carolina.

_____
Notary Public

My commission expires: 1-24-2020

MARIE S. GARFIELD
Notary Public
Mecklenburg County
My Commission Expires
01/24/2020
NORTH CAROLINA

## Affidavit of Zachary Rowles

I, Zachary Rowles, appearing before the undersigned and being duly sworn or affirmed, state the following:

1. I am over the age of 18 and competent to testify to the following facts.

2. I am a Mitigation Specialist employed by the Center for Death Penalty Litigation in Durham, North Carolina.

3. I began working as a mitigation specialist in *USA v Aquilia Marcivicci Barnette* in 2012 after being contacted by one of Mr. Barnette's post-conviction attorneys, Jacob Sussman.

4. Post-conviction counsel asked me to contact Dr. Seymour Halleck, who previously evaluated Mr. Barnette, and testified at Mr. Barnette's 1998 trial and his 2002 resentencing.

5. To date, my efforts to speak with Dr. Halleck have been unsuccessful.

6. During the course of my efforts to speak with Dr. Halleck, I have learned that he is 86 years old and living in an apartment on Cedar Club Circle in Chapel Hill, NC. This is an apartment associated with The Cedars of Chapel Hill. The website for The Cedars of Chapel Hill states that they are a "Continuing Care Retirement Community."

7. On February 4, 2016, I searched the North Carolina Medical Board website which revealed that Dr. Halleck's medical license expired in 2013.

8. On February 4, 2016, I called a number indicated by a background search to be Dr. Halleck's phone number. A woman answered. I asked for Dr. Halleck and started to explain who I was. She told me I would need to call back another time. I attempted to continue the conversation to ask when would be a good time to do that but she did not respond and the call was disconnected.

9. On March 15, 2016, I went to the address I had for Dr. Halleck at The Cedars. His apartment door was answered by a painter who informed me that Dr. Halleck was not there. The apartment was cleared out for the painting and the painter did not know if Dr. Halleck would be returning to live in the apartment. The painter showed me a sign affixed to the inside of the door indicating that Dr. Halleck is not to be woken up, and with instructions about calling a nurse and checking his pulse and blood pressure.

10. On March 15, 2016, I spoke to a resident in the same apartment building at The Cedars. He informed me that Dr. Halleck had a stroke a couple months ago and has since moved to a more intensive assisted living facility in Raleigh, NC.

1

11. On March 15, 2016, I spoke with a woman at concierge in the main building of The Cedars who said she thought the Hallecks had moved away on March 10, 2016. She directed me to the main office for more information. A woman in the main office said she could not give me any information about Dr. Halleck's current contact information.

I swear or affirm that the information in the foregoing paragraphs is true to the best of my knowledge.

_____  
Zachary Rowles

_3/31/16_  
Date

Affirmed and subscribed before me on this the 31st day of March, 2016 in Mecklenburg County, North Carolina.

_____  
Notary Public

My commission expires: _1-24-2020_

MARIE S. GARFIELD  
Notary Public  
Mecklenburg County  
My Commission Expires  
01/24/2020  
NORTH CAROLINA

2

Bates No. 14864