# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO.: 3:12-CV-327-RLV

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **vs.** | **DEATH PENALTY § 2255** |
| **AQUILIA MARCIVICCI BARNETTE** | |

## PETITIONER AQUILIA MARCIVICCI BARNETTE'S
## SUPPLEMENTAL MOTION TO VACATE UNDER 28 U.S.C. § 2255

Aquilia Marcivicci Barnette, through undersigned counsel, hereby files a supplemental motion to set aside the judgments against him on Counts 1, 2, 3, 8, 10, and 11 in case number 3:97CR23-RV, pursuant to 28 U.S.C. § 2255. As explained below, those convictions must be vacated in light of the Supreme Court's recent decisions in *Johnson v. United States,* 135 S. Ct. 2551 (2015) and *Welch v. United States,* 136 S. Ct. 1257 (2016).

## INTRODUCTION

On January 27, 1998, Mr. Barnette was convicted of interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(1) & (b) (Count 1); use of a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count 2); using and carrying fire and explosive materials during commission of a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 3); making a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) & 924 (Count 4); making a firearm by sawing off the barrel of a shotgun without complying with the provisions of the National Firearms Act, in violation of 26 U.S.C. §§ 5821, 5822, 5861(f)

& 5871 (Count 5); possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) & 924 (Count 6); carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (Count 7); first-degree murder by use of a firearm, in violation of 18 U.S.C. §§ 924(c)(1) & (i)(1) (Count 8); transporting a stolen vehicle in interstate commerce, in violation of 18 U.S.C. § 2312 (Count 9); interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(1) & (b) (Count 10); and first-degree murder by use of a firearm, in violation of 18 U.S.C. §§ 924(c)(1) & (i)(1) (Count 11). Mr. Barnette was sentenced to death on Counts 7, 8, and 11. The death sentence was imposed pursuant to sentencing provisions specific to each statute of conviction. The applicable sentencing provision with respect to the § 924(c) convictions in Counts 8 and 11 was 18 U.S.C. § 924(j).

With respect to Counts 1, charging Mr. Barnette with interstate domestic violence, in violation of 18 U.S.C. § 2261, the Government did not indicate what crime it was alleging as the "crime of violence" Mr. Barnette had committed. Instead, the indictment alleged only facts—that the crime of violence was the "firebomb[ing of] Robin William's occupied apartment and an automobile parked in her driveway causing bodily injury to her." Similarly, with respect to Count 10, also charging Mr. Barnette with interstate domestic violence, in violation of § 2261, the Government also failed to indicate what crime it was alleging as the predicate "crime of violence." Again, the Government alleged only specific facts—here, that the crime of violence was that Mr. Barnette "shot and killed Robin Williams causing bodily injury and death to her."

On June 26, 2015, the Supreme Court held in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void

for vagueness. That clause, the Court held, cannot constitutionally define a "crime of violence" for purposes of the ACCA's sentence-enhancing provisions. *See Johnson,* 135 S. Ct. at 2557. On April 18, 2016, the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review, including Mr. Barnette's case. *Welch v. United States,* 136 S. Ct. at 1265.

As detailed herein, based on the Court's interpretation of the residual clause of § 924(e), it follows that the residual clause of § 924(c), the statute under which Mr. Barnette was convicted on Counts 2, 8, and 11, must also be deemed unconstitutionally void for vagueness. Indeed, after *Johnson,* both federal carjacking under 18 U.S.C. § 2119 and federal interstate domestic violence categorically fail to qualify as a "crime of violence." Therefore, Mr. Barnette's § 924(c) convictions on Counts 2, 8, and 11, and their attendant sentences, are invalid.

The Court's interpretation of the residual clause of § 924(e) must also render the unconstitutional the residual clause of 18 U.S.C. § 16(b), the federal statutory provision that defines "crime of violence" when it is used in statutes other than § 924. This is relevant to Mr. Barnette's case because he was convicted of crimes under 18 U.S.C. § 2261 which, like § 924(c) and (e), requires a finding that the defendant committed a predicate crime of violence and incorporates the statutory definition of 18 U.S.C. § 16. Thus, following *Johnson*, Mr. Barnette's convictions on Counts 1 and 10 are also invalid.

Further, as detailed below, it follows that Mr. Barnette's convictions and sentences on Counts 1, 2, 3, 10, and 11—each which rests on a finding of a "crime of violence" which should now be deemed invalid —must also be vacated.

**STATEMENT OF RELEVANT FACTS**

**A.      Conviction and First Sentencing.**

On January 27, 1998, a jury found Mr. Barnette guilty on all counts of the Indictment. At sentencing, the jury recommended that Mr. Barnette be sentenced to death on Counts Seven, Eight, and Eleven. On February 10, 1998, this Court entered a judgment sentencing Mr. Barnette to death. The Court also imposed sentences on the other eight counts, which resulted in a total sentence of life imprisonment, plus 540 months to be served consecutively.

**B.      Direct Appeal, Resentencing, and Subsequent Direct Appeal.**

Mr. Barnette's direct appeal to the United States Court of Appeals for the Fourth Circuit resulted in the reversal of the sentences of death on Counts Seven, Eight, and Eleven, and his case was remanded for resentencing. *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000). Following a new penalty phase trial in 2002, a jury again imposed the death penalty as to Counts Seven, Eight, and Eleven. On direct appeal, Mr. Barnette's new death sentences were affirmed. *United States v. Barnette*, 390 F.3d 775 (4th Cir. 2004).

**C.      *Batson/Miller-El* Litigation.**

On May 15, 2005, Mr. Barnette filed a Petition for a Writ of Certiorari with the United States Supreme Court. Soon thereafter, the Supreme Court decided *Miller-El v. Dretke*, 545 U.S. 231 (2005). A supplemental petition for a writ of certiorari was filed on Mr. Barnette's behalf in light of *Miller-El*. The Supreme Court thereafter granted the supplemental petition, vacated the judgment of the Fourth Circuit, and remanded the case in light of *Miller-El. Barnette v. United States*, 546 U.S. 803 (2005). Following remand to

the Fourth Circuit, Mr. Barnette sought to remand the case to the District Court. After supplemental briefing on the issue, the Fourth Circuit entered an order granting his motion to remand the case to the District Court.

After additional briefing, an *in camera* review of jury questionnaires, and an additional hearing on the matter, the District Court refused to provide copies of the jury questionnaires to defense counsel. The Court then issued an Order on May 20, 2010, finding no *Batson* violation by the government, and further ruling that Mr. Barnette was not entitled to discovery under the Jencks Act. *United States v. Barnette*, Case No. 3:97CR23, 2010 WL 2085312 (W.D.N.C. May 20, 2010). Mr. Barnette appealed this Court's Order to the Fourth Circuit Court of Appeals.

Following oral argument on January 27, 2011, the Fourth Circuit issued a published opinion affirming the District Court's ruling. *United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). On March 19, 2012, the United States Supreme Court denied Mr. Barnette's Petition for a Writ of Certiorari. *Barnette v. United States*, 132 S.Ct. 1740 (Mar. 19, 2012).

**D.    Current § 2255 Litigation.**

On April 3, 2012, a sealed motion to appoint counsel for Defendant was filed. [Case No. 3:97CR23, Doc. 682]. On May 23, 2012, the Court appointed the undersigned, *nunc pro tunc* to April 3, 2012, as counsel in this capital § 2255 proceeding. [Doc. 1]

On March 15, 2013, the government filed its Notice of Government Stipulation to Extend Deadline for Filing Motion Under 28 U.S.C. § 2255 [Doc. 32], and stated as follows:

5

NOW COMES the United States, through the U.S. Attorney's Office for the Western District of North Carolina and undersigned counsel, and hereby files this notice of its consent and considered, intentional, affirmative decision to waive, forfeit and/or relinquish any statute of limitations defense regarding the extension of Defendant Aquilia Marcivicci Barnette's § 2255 filing deadline from March 19, 2013 to June 19, 2013. *See Wood v. Milyard*, 132 S. Ct. 1826, 1835 (2012); *see also Day v. McDonough*, 547 U.S. 198, 202 (2006). The government's consent and waiver is strictly limited to a three (3) month extension of the limitations period from March 19, 2013 to June 19, 2013 for Mr. Barnette to file a § 2255 motion.

*Id.* at 1.

On June 19, 2013, Mr. Barnette timely filed his § 2255 motion. [Doc. 48] On December 22, 2014, Mr. Barnette timely filed his motion for an evidentiary hearing on his § 2255 motion. [Doc. 73] On September 23, 2015, the government filed its opposition to Mr. Barnette's § 2255 motion and motion for an evidentiary hearing. [Doc. 98] On April 4, 2016, Mr. Barnette filed his reply brief in support of his motion for an evidentiary hearing. [Doc. 118] These matters are currently pending before the Court.

> E.     *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551. With *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011), and *James v. United States,* 550 U.S. 192 (2007), finding ACCA's residual clause too vague to provide adequate notice under the Due Process Clause of the Fifth Amendment.

Specifically, *Johnson* held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," therefore "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson,* 135 S. Ct. at 2557.

6

F.    *Welch v. United States.*

After *Johnson* was decided, federal prisoners throughout the country sought to challenge ACCA-enhanced sentences, as well as convictions and sentences imposed under materially indistinguishable residual clauses, such as those in 18 U.S.C. § 16(b) and in 18 U.S.C. § 924(c). This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively.

On April 18, 2016, the Supreme Court resolved the issue, finding *Johnson*'s rule substantive and thus applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265. After *Johnson* and *Welch,* Mr. Barnette's § 924(c) and § 2261 convictions, and the sentences imposed for them, cannot be sustained. Moreover, convictions under § 924(c) are necessary elements for convictions under § 924(j) and their attendant sentences. Thus, the § 924(j) convictions and sentences can likewise not stand.

 Given this circumstance, Mr. Barnette is filing the instant motion in order raise these supplemental arguments as part of his ongoing § 2255 litigation.

## ARGUMENT

I.    **IN LIGHT OF *JOHNSON,* MR. BARNETTE'S CONVICTIONS ON COUNTS 1, 2, 3, 8, 10, AND 11 ARE INVALID AND THEY, ALONG WITH THEIR ATTENDANT TERM-OF-YEAR SENTENCES, AND ALL OF THE DEATH SENTENCES IMPOSED, MUST BE VACATED.**

As noted above, on January 27, 1998, Mr. Barnette was convicted of interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(1) & (b) (Count 1); use of a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count 2); using and carrying fire and explosive materials during commission

of a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 3); making a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) & 924 (Count 4); making a firearm by sawing off the barrel of a shotgun without complying with the provisions of the National Firearms Act, in violation of 26 U.S.C. §§ 5821, 5822, 5861(f) & 5871 (Count 5); possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) & 924 (Count 6); carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (Count 7); first-degree murder by use of a firearm, in violation of 18 U.S.C. §§ 924(c)(1) & (i)(1) (Count 8); transporting a stolen vehicle in interstate commerce, in violation of 18 U.S.C. § 2312 (Count 9); interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(1) & (b) (Count 10); and first-degree murder by use of a firearm, in violation of 18 U.S.C. §§ 924(c)(1) & (i)(1) (Count 11). Mr. Barnette was sentenced to death on Counts 7, 8, and 11. The death sentence was imposed pursuant to sentencing provisions specific to each statute of conviction. The applicable sentencing provision with respect to the § 924(c) convictions in Counts 8 and 11 was 18 U.S.C. § 924(j).

The counts of which Mr. Barnette was convicted under 18 U.S.C. § 2261 and under 18 U.S.C. § 924(c) both require determinations that he committed a "crime of violence," as one of the elements necessary to prove the violation. Section 924(c) contains a definition of "crime of violence;" § 2261 incorporates the definition of "crime of violence" found in 18 U.S.C. § 16. The two definitions are identical. They define a crime of violence as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b)    any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause of this definition is commonly referred to as the "force" or "elements" clause; the second is commonly referred to as the "residual" clause.

The residual clause of § 924(c) and of § 16(b) is materially indistinguishable from the residual clause of the Armed Career Criminal Act (the ACCA) that the Supreme Court in *Johnson* deemed unconstitutionally vague. *See Johnson,* 135 S. Ct. at 2557. Indeed, at least three federal courts of appeals have applied *Johnson* to invalidate the residual clause of 18 U.S.C. § 16(b). *See United States v. Gonzalez-Longoria,* 813 F.3d 225, 235 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719, 722 (7th Cir 2015); *Dimayo v. Lynch,* 803 F.3d 1110, 1117-20 (9th Cir. 2015). And relying on those circuits' reasoning, at least two district courts have held § 924(c)'s residual clause to be void for vagueness as well. *See United States v. Lattanaphom,* No. 2:99-00433, __ F. Supp. 3d __, 2016 WL 393545, at *3-*4 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* PWG–13–15, __ F. Supp. 3d __, 2015 WL 9582736, at *3 (D. Md. Dec. 30, 2015).

As explained below, these cases compel the same result in Mr. Barnette's case. Because § 924(c)'s and § 16(b)'s residual clauses must be considered void for vagueness, those clauses cannot constitutionally define a "crime of violence" for purposes of convictions obtained under statutes employing either statutory definition.

Furthermore, none of the predicate crimes Mr. Barnette was convicted of categorically qualifies as a "crime of violence" under the remaining force clause, as explained in detail below.

9

**A.** **Section 924(c)'s and § 16(b)'s residual clauses are materially identical to ACCA's residual clause and therefore like ACCA's clause are unconstitutionally void for vagueness.**

The ACCA, 18 U.S.C. § 924(e), provides for an enhanced penalty for individuals convicted of possessing a firearm after sustaining three or more convictions for a "serious drug offense" or a "violent felony." ACCA's definition of "violent felony" includes the residual clause struck down in *Johnson,* a clause that is materially indistinguishable from that in § 924(c)'s and § 16(b)'s residual clause. The ACCA provides:

> Any crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i)     Has as an element the use, attempted use, or threatened use against the person of another, or
>
> *(ii)*     Is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added).

The residual clauses in both Section 924(c) and 16(b) suffer from the same flaws that rendered ACCA's residual clause unconstitutionally vague under the required categorical approach. As with ACCA's residual clause, both of these other residual clauses also "require courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch v. United States,* 136 S. Ct. at 1262. "The 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson,* 135 S. Ct. at 2557).

The constitutional guarantee of due process, the *Johnson* Court found, cannot tolerate "condemn[ing] someone to prison for 15 years to life," the punishment prescribed under ACCA, based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at

2560. Likewise, due process cannot tolerate condemning a person to death based upon the equally shapeless residual clauses found in both § 924(c) and 16(b).

Moreover, courts have already invalidated the residual clause of 18 U.S.C § 16(b) following *Johnson. See United States v. Gonzalez-Longoria,* 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimayo v. Lynch,* 803 F.3d 1110 (9th Cir. 2015). Still further, at least two district courts have considered § 924(c)'s residual clause and have found it void for vagueness in light of *Johnson. See United States v. Lattanaphom,* No. 2:99-00433, __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* PWG–13–15, __ F. Supp. 3d __, 2015 WL 9582736 (D. Md. Dec. 30, 2015).

> **1.** ***Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

The Supreme Court began its analysis in *Johnson* by noting that the so-called categorical approach mandates the use of a two-step framework to determine whether a crime is a violent felony within the meaning of ACCA. *See Johnson,* 135 S. Ct. at 2557, 2562. As the Seventh Circuit described it: "In the first step, the court must determine 'the kind of conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the defendant's … case." *Vivas-Ceja,* 808 F.3d at 721 (quoting *Johnson,* 135 S. Ct. at 2557). The second step also depends on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury." *Id.*

But this required approach to ACCA's residual clause "conspire[d] to make it unconstitutionally vague." *Johnson,* 135 S. Ct. at 2557. The first step is problematic, the *Johnson* Court explained, because too much uncertainty exists about what constitutes the

"ordinary case" of a crime. *Id.* "[T]he residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' … involves." *Id.* at 2558. In fact, the Court explained further, statistical analysis of reported cases, Google, and gut instinct are all equally unreliable in identifying the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer,* 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing *en banc*)).

The second step, too, is fatally flawed because even if the "ordinary case" could indeed be determined, there would still be too much "uncertainty about how much risk it takes" before such "ordinary case" should be deemed sufficiently serious to be categorized as a violent felony. *Vivas-Ceja,* 808 F.3d at 722 (citing *Johnson,* 135 S. Ct. at 2558).

Significantly, the Court's critique of the second step did not turn on the type of risk specified in ACCA's invalidated residual clause, namely, the "serious potential risk of *physical* injury." Rather, as with the first step, the Court's analysis turned on the shapeless "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Johnson,* 135 S. Ct. at 2558. Risk assessment, the Court made clear, is not inherently unconstitutional. *See id.* at 2561. But because risk assessment under ACCA's residual clause is based not on the facts of the actual case but on the amorphous "ordinary case," the clause is unconstitutionally vague. The indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is simply more than the Due Process Clause can bear, held the Court. *Id.* at 2558.

*Johnson* thus upended not just ACCA's residual clause, but the "ordinary case" analysis compelled by such a statutory framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

### 2. For the reasons identified in *Johnson*, § 924(c)(3)(B) and § 16(b) also are also unconstitutionally vague.

Notwithstanding that § 924(c)'s and § 16(b)'s residual clauses are not a mirror image of ACCA's, the clauses are functionally the same. The difference in exact wording does not affect the constitutional analysis that shows both to be void for vagueness.

For one thing, courts regularly equate ACCA's "violent felony" definition with other statutes defining crimes of violence, including 18 U.S.C. § 16(b), which as noted above is identical to § 924(c)(3)(B). *See, e.g., Chambers v. United States,* 555 U.S. 122, 133 n.2 (2009) (Alito, J., concurring) (collecting cases); *Roberts v. Holder,* 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis).

Further, although the risk at issue in ACCA is  risk of injury while the risk at issue in § 924(c) and in § 16(b) is that physical force will be used, both statutes require that risk be assessed via the "ordinary case" method. It is this analytical framework that infects both statutes with a due process problem.

Under § 924(c) and § 16(b), just as under ACCA, courts must follow the same two-step process. First, the court must envision the "ordinary case" embodied by a felony. Second, the court must assess the quantum of risk posed by such  "ordinary case." As the Fourth Circuit explained in the context of reviewing the § 16(b):

> [E]very set of conceivable facts covered by first-degree burglary does not
> have to present a serious risk of injury for it to qualify as a crime of
> violence. It is sufficient if "the conduct encompassed by the elements of
> the offense, in the ordinary case, presents a serious potential risk of injury
> to another." *James,* 550 U.S. at 208. As long as an offense is of a type that,
> *by its nature,* presents a substantial risk that physical force against the
> person or property of another may be used, it satisfies the requirements of
> 18 U.S.C. § 16(b).

*United States v. Avila,* 770 F.3d 1100, 1107 (4th Cir. 2014) (emphasis added). *See also Gonzalez-Longoria,* 813 F.3d at 235; *Vivas-Ceja,* 808 F.3d at 722; *Dimayo,* 803 F.3d at 1116-17.

It follows that the same analysis applies to the identical residual clause of § 924(c). *See, e.g., United States v. Fuerte,* 805 F.3d 485, 498 (4th Cir. 2015) (applying the "ordinary case" inquiry to the § 924(c) residual clause). Section 924(c)'s residual clause, just like that of § 16(b) and ACCA, suffers from the "double indeterminacy" the *Johnson* Court held the Due Process Clause cannot tolerate. *See Edmundson,* 2015 WL 9311983, at *4.

Indeed, in the course of litigating *Johnson,* the United States conceded that the residual clauses contained in ACCA and § 16(b) (and necessarily in the identical § 924(c)) pose the same problem:

> Although Section 16 refers to the risk that force will be used rather than
> that injury will occur, it is equally susceptible to petitioner's central
> objection to the residual clause. Like the ACCA, Section 16 requires a
> court to identify the ordinary case of the commission of the offense and to
> make a commonsense judgment about the risk of confrontations and other
> violent encounters.

*Johnson v. United States,* No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964) (Mar. 30, 2015).

The United States was correct in its analysis, and this Court should hold it here to the same concession.

In sum, § 924(c) and § 16(b), like ACCA, require courts to apply "ordinary case" analysis to assess the risk involved in a predicate offense. Because this analysis involves the same flawed steps that brought down the ACCA residual clause, neither § 924(c)(3)(B) nor § 16(b) can survive constitutional scrutiny.

### B. The Force Clause Analysis.

#### 1. The categorical approach applies to determining whether an offense qualifies as a "crime of violence" under the force clause.

Because statutes cannot be considered crimes of violence using the unconstitutionally void residual clause definition, a crime can only be legitimately deemed a crime "of violence" if it satisfies the remaining force clause. In determining whether an offense qualifies as a "crime of violence" under the force clause of § 924(c) or of § 16, courts must employ the categorical approach. *See Descamps v. United States,* 133 S. Ct. 2276, 2283 (2013). This approach requires that courts "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]." *Id.* In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute, including the least culpable conduct, matches or is narrower than the "crime of violence" definition. *See, e.g., United States v. Torres-Villalobos,* 487 F.3d 607, 616 (8th Cir. 2007); *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012). If the most innocuous conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

Given this, an offense will qualify as a "crime of violence" under the force clause of § 924(c) only if it has, as an element, the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. § 924(c)(3)(A). "Physical force," in turn, has two requirements. First, "physical force" must involve *violent* force—that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Second, the use of such force "must be intentional, not just reckless or negligent." *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004).

It is not enough that the statute includes some requirement of specific intent, such as the intent to deprive a person of property, or even the intent to cause injury. To qualify as a crime of violence under the "force" or "elements" clause, the statute must have as a required element the intent to *use* strong physical force.

Moreover, unless "the full range of conduct" covered by charged predicate requires "violent force," it simply cannot qualify as a "crime of violence" under § 16(b)'s force clause. *Torres-Miguel*, 701 F.3d at 171. And it makes no difference, even if the possibility of violating the statute without violent force is small.

The Court in *Torres-Miguel* could not have made this clearer. The Government in that case argued that there was no "realistic probability" that the defendant could have violated the California terroristic threats statute in question without threatening violent physical force. *Id*. at 170-71. The Fourth Circuit, however, held that the "realistic probability" test did not apply to the force clause; therefore, the defendant had no burden to show a "realistic probability" that the terrorist threats statute could be violated without a threat of violent physical force. *Id*. Because a possibility—no matter how

slim—existed that one could be prosecuted under the statute without a threat of violent force, the Fourth Circuit found that the prior offense categorically failed to qualify as a "crime of violence." *Id*. This Court should find the same with respect to the predicate crimes of which Mr. Barnette was convicted.

In sum, under the due process principles articulated in *Johnson*, neither the § 924(c) nor the § 16(b) residual clause can be used to support a conviction on the counts for which Mr. Barnette was convicted. And none of the predicate crimes Mr. Barnette was convicted of, as the sections that follow will demonstrate, qualifies as a crime of violence can satisfy the remaining force or elements clause.

**C.** **Counts 1 and 10 Cannot Be Sustained Because 18 U.S.C. § 16(b)'s Residual Clause is Unconstitutionally Vague and the Alleged Offenses Do Not Meet the Definition of § 16(a)'s Force Clause.**

Counts 1 and 10 of Mr. Barnette's indictment in this case charged him with interstate domestic violence in violation of 18 U.S.C. §§ 2261(a)(1) and (b). Specifically, Count 1 alleged that Mr. Barnette:

> Did travel across a state line … with the intent to injure, harass, and intimidate an intimate partner, Robin Williams, and in the course and as a result of such travel intentionally committed a crime of violence, that is, did firebomb Robin Williams' occupied apartment and an automobile parked in her driveway causing bodily injury to her.

> In violation of Title 18, United States Code, Sections 2261(a)(1) and 2261(b).

Count 10 of the indictment alleged that Mr. Barnette:

> Did travel across a state line … with the intent to injure, harass, and intimidate an intimate partner, Robin Williams, and in the course and as a result of such travel intentionally committed a crime of violence, that is, shot and killed Robin Williams causing bodily injury and death to her.

> In violation of Title 18, United States Code, Sections 2261(a)(1) and 2261(b).

As noted above, the definition of crime of violence to be employed in connection with § 2261(a)(1) is contained in 18 U.S.C. §16. Because the federal definition of a "crime of violence" includes a residual clause—§ 16(b)—that is materially identical to § 924(e), no matter what crimes of violence might have been alleged under Counts 1 and 10, they could not legally qualify as crimes of violence under the unconstitutional residual clause. Thus, they must be analyzed under the remaining force clause.

    **1.    Because the indictment on Counts 1 and 10 fails to allege *any* statutory crime the government contended was violated, this Court cannot presume that a crime *might* have been alleged that would have satisfied the force clause.**

In Mr. Barnette's case, the language of the indictment for Counts 1 and 10 fails to identify what crime of violence the Government claims he committed, and instead simply describes a set of facts that include violent acts. Such a recitation of facts without an alleged crime leaves this Court unable to apply a categorical approach to the elements of the predicate crime. Under these circumstances, the Court cannot speculate as to what statutory violation the Government could have charged or intended to charge. The Court must instead simply find that the Government has failed to show that Mr. Barnette committed any crime that would have been deemed a crime of violence under the force clause.

For these reasons, this Court must vacate the convictions for Counts 1 and 10, and the sentences imposed under § 2261(b).

    **D.    Counts 2 and 11, Both of Which Presuppose Convictions Under Either Count 1 or 10, Must Likewise Be Deemed Invalid.**

Because this Court must vacate Mr. Barnette's convictions for Counts 1 and 10, it must also vacate his convictions on Counts 2 and 11. Count 2 charges him with using and

carrying a firearm, during and in relation to a crime of violence, that being "the act of interstate domestic violence as set forth in Count 1." If Count 1 is vacated, as it legally must be, Count 2 must fail, as well.

Count 11 charges Mr. Barnette with knowingly using and carrying a firearm, during and in relation to a crime of violence, that being "the act of interstate domestic violence as set forth in Count 10." If Count 10 is vacated, as it legally must be, Count 11 must fail, as well.

    **1.   Even if, under Counts 2 and 11, this Court were to analyze separately the elements of interstate domestic violence to determine if an element *other than* the "crime of violence" element in § 2261 satisfied the force clause, the Court would still have to conclude that none of the remaining elements satisfies the force clause.**

In addition to the element in § 2261 that the defendant be found to have committed a "crime of violence," § 2261(a) also requires that he or she travel "with the intent to kill, injure, harass or intimidate" an intimate partner. The most innocuous conduct that could satisfy this element is acting with the intent to intimidate.

    **2.   "Inten[ding] to intimidate" does not require the use, attempted use, or threatened use of violent physical force.**

"Intending to intimidate," which constitutes one of the means by which someone can satisfy the first element of the interstate domestic violence clause, does not require the use of violent physical force or the intent to threaten the use of violent physical force. Federal cases interpreting the federal bank robbery statute (18 U.S.C. § 2113(a))—which also has an intimidation element—are also instructive here. These cases uniformly hold that intimidation occurs when "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Woodrop*,

86 F.3d 359, 364 (4th Cir. 1996) (emphasis added); *see also United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (11th Cir. 2005) (same); *United States v. Yockel*, (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same). Thus, the fact that the defendant has to intend to intimidate the victim does not mean that the defendant has to intend to threaten any physical force—let alone violent physical force—to place the victim in fear.

For example, in *United States v. Yockel,* 320 F.3d 818, 824 (8th Cir. 2003), the Eighth Circuit upheld the defendant's bank robbery conviction under § 2113(a) even though there was no evidence he intended to put the teller *in fear of injury. Yockel,* 320 F.3d at 821. The defendant never made any sort of physical movement towards the teller, nor did he display any sort of weapon. In fact, the evidence failed to establish that he claimed to have a weapon, or even gave any appearance of possessing a weapon. *See id.* The Eighth Circuit nevertheless found the "intimidation" element satisfied, making clear that the element requires neither the use or threat of violent force nor the intentional use or threat of force. *See id.*

A defendant thus may be found guilty of interstate domestic violence without any evidence that he used violent physical force, or threatened to use violence physical force. All the government must prove is that the defendant intended to intimidate the victim and that, whatever the defendant's manner of doing this, the victim reasonably feared injury from the defendant's actions, whether or not the defendant intended to create that fear.

Indeed, a defendant could intimidate her victim by threatening to take away his necessary medication, or by taking his car keys and throwing them out of reach so he has no means of leaving a remote location late at night, or by asking if he would like it if his

children were locked in a room without a means to call him. These are all forms of intentional intimidation involving acts that do not constitute or threaten use of violent force.

Because this element of interstate domestic violence criminalizes conduct that does not require an intentional threat of violent physical force, it cannot qualify as a "crime of violence" under § 924(c)'s force clause.

Thus, if the other element necessary to prove interstate domestic violence—the crime alleged to be a "crime of violence"—no longer qualifies as such because of the invalidation of the residual clause, no other element of § 2261 fills in the gap by satisfying the force clause. Under such a circumstance, § 2261 does not constitute a valid crime of violence such that it can support a conviction under § 924(c).

This is the case at hand. Accordingly, Mr. Barnette's convictions on Counts 2 and 11 must fail.

### E. Count 8 Cannot Be Sustained Because Federal Carjacking Under 18 U.S.C. § 2119 Does Not Qualify as a "Crime of Violence."

Mr. Barnette's conviction in Count 8 for using or carrying a firearm during and in relation to a "crime of violence" is void because the "crime of violence" element cannot be satisfied here, either. After *Johnson,* the predicate offense of carjacking cannot, as a matter of law, qualify as a "crime of violence" for purposes of § 924(c). As explained herein, federal bank robbery under 18 U.S.C. § 2119 categorically fails to qualify as a predicate "crime of violence" under § 924(c) because it does not meet the definition of the force clause and because, as explained *supra*, the unconstitutional residual clause cannot define a valid federal crime.

1. **Carjacking under 18 U.S.C. § 2119 does not qualify as a "crime of violence" under the force clause of § 924(c)(3) because it can be violated without the use, attempted use, threatened use of violent physical force and without the intentional use, attempted use, or threatened use of the same.**

As explained *supra* with regard to § 2261 and using the same rationale, 18 U.S.C. § 2119 categorically fails to qualify as a crime of violence under § 924(c)'s force clause because it may be committed by intimidation as well as by the use of force. Carjacking, as defined by 18 U.S.C. § 2119 categorically fails to qualify as a "crime of violence" because it can be accomplished by "intimidation," which (1) does not require the use, attempted use, or threatened use of violent physical force and (2) does not require the intentional use, attempted use, or threatened use of the same.

This analysis proceeds in much the same fashion as the analysis did of intimidation under the interstate domestic violence statute except that, whereas interstate domestic violence requires that the defendant "intend to intimidate," the carjacking statute requires only that the defendant *actually* intimidate, and there need be no proof that he intended to do so. As such, federal cases interpreting the federal bank robbery statute (18 U.S.C. § 2113(a)) – which has an identical intimidation element – are also instructive here. As noted above, these cases uniformly hold that intimidation occurs when "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) (emphasis added); *see also United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (11th Cir. 2005) (same); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same). No reason exists why this same

definition of "intimidation" should not apply here. Applying this "intimidation" definition here, carjacking can never qualify as a "crime of violence."

> ### 2. Carjacking does not require the use, attempted use, or threatened use of violent physical force.

As noted in conjunction with the intimidation element of the interstate domestic violence statute, the act of placing another in fear of bodily harm, at best, constitutes a threat of physical injury to another, which plainly does not require the use or threatened use of "violent force" against another. *See United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012), in which the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."

As noted *supra,* , at issue in *Torres-Miguel* was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or great bodily injury to another." 701 F.3d at 168 (citing Cal. Penal Code § 422(a)) (emphasis added). The specific question in the case was whether the statute had an element equating to a threat of "violent force" under the force clause of U.S.S.G. § 2L1.2 – a clause that is identical in all relevant respects to the § 924(c)(3)(A) force clause. *Id*. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause. *Id*. at 168 69. The Court held that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id*. at 168. The Court, in strong words, proclaimed that "of course, a crime may result in death or serious injury without involving use of physical force." *Id*.

(emphasis added).

The Court, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury—even death—can result without use of "violent force." *Id*. at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

In reaching its decision, the *Torres-Miguel* Court also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003). In that case at issue was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at 193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute a crime of violence … because there is a difference between causation of an injury, which is all that the Connecticut statute [] required, and an injury's causation by the use of physical force." *Torres-Miguel*, 701 F.3d at 169 (citing *Chrzanoski*, 327 F.3d at 194) (internal quotation marks omitted).

The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." *Chrzanoski*, 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a

tranquilizer in the victim's drink. *Id*. at 195-56.

For even further support, in *Torres-Miguel*, 701 F.3d at 169, the Fourth Circuit embraced the Tenth Circuit's decision in *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005). In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury, imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: … intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F.3d at 1286.

Therefore, *Torres-Miguel* and all the other cases discussed above command that carjacking, which can be accomplished by putting another in fear of bodily harm, does not require "violent force." If threat of serious bodily injury or death does not equal violent force, then certainly, "bodily harm" does not. Indeed, a defendant can place another in fear of bodily harm by threatening to poison that person if he does not turn over his car to the defendant, to release hazardous chemicals into the car, to place a barrier in front of the car if the person attempts to drive off, or to lock the person up in the car on a hot day—some of the very examples that the Fourth Circuit in *Torres-Miguel* as well as the other Courts mentioned above held do not constitute "violent force."

Because "the full range of conduct" covered by the carjacking statute does not

require "violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *Torres-Miguel*, 701 F.3d at 171. And it makes no difference, even if the possibility of violating the carjacking statute without violent physical force is slim. Because the possibility exists, this Court cannot legally find that carjacking is a "crime of violence." Indeed, in *Torres-Miguel*, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." *Id*. at 171. The Court should find the same here with respect to the carjacking statute, which leaves open the same possibility.

In sum, federal carjacking fails to qualify as a "crime of violence" under the § 924(c)(3)(A) force clause for two independent reasons. First, the statute does not require a threat of violent force. Second, the statute does not require the intentional threat of violent force.

### F. Because Count 1 Must Be Vacated, Mr. Barnette's Conviction in Count 3 Under § 844(h)(1) Cannot Be Sustained.

On January 27, 1998, the Honorable Robert D. Potter, Senior U.S. District Court Judge, instructed Mr. Barnette's jury with respect to Count 3, in pertinent part:

> Now, you may find the defendant guilty of Count 3 if you find him guilty as charged in Count number 1, and that he knowingly used fire and explosive materials or carried an explosive in the commission of that offense.

Transcript, Jan. 27, 1998 at 666.

Because Count 1 must be vacated, as explained *supra*, Count 3 cannot stand.

## II. MR. BARNETTE IS ENTITLED TO RELIEF UNDER 28 U.S.C. § 2255 BECAUSE HIS CLAIM UNDER *JOHNSON* IS COGNIZABLE AND TIMELY.

### A. Mr. Barnette's Claim is Cognizable Under § 2255(a).

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Barnette's convictions on Counts 1, 2, 3, 8, 10, and 11 violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief on the claims raised in this supplemental petition under § 2255(a).

As explained above, Mr. Barnette's convictions on Counts 1, 2, 3, 8, 10, and 11 all fail because they depend on an unconstitutionally vague "residual clause." Further, as also explained above, federal carjacking under 18 U.S.C. § 2119 and federal interstate domestic violence under of 18 U.S.C. §§ 2261(a)(1) and 2261(b) cannot satisfy § 924(c)'s or § 16's force clause. Mr. Barnette's indictment therefore failed to state an offense under § 2261 or § 924(c), and Mr. Barnette now stands convicted of offenses that are no longer criminal. Given this, his convictions, and the sentences—including sentences of death attendant upon these convictions—violate the laws of the United States and result in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255"). Third, Mr. Barnette's convictions

exceed this Court's jurisdiction because the indictment, in part, affirmatively alleged conduct that is outside that statute's reach. *See United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute"); *United States v. Barboa,* 777 F.3d 1420, 1423 n.3 (10th Cir. 1985).

      **B.    Mr. Barnette's Motion for Relief is Timely.**

Section 2255(f) requires that § 2255 motions be filed within a one-year limitations period. That period runs from the latest applicable triggering event. 28 U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.*

The Supreme Court decided *Johnson* on June 26, 2015. Mr. Barnette has filed this application within one year of that date. Further, on April 18, 2016, the Supreme Court expressly made *Johnson*'s new rule retroactively applicable to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016). This motion therefore is timely filed.

**III.    IN ADDITION TO VACATING THE SENTENCES IMPOSED ON ALL OF THE COUNTS FOR WHICH THE CONVICTIONS HAVE BEEN VACATED, MR. BARNETTE'S DEATH SENTENCE ON COUNT 7 MUST ALSO BE VACATED AND HE MUST BE GRANTED RESENTENCING BY A JURY.**

Mr. Barnette was sentenced to death on three separate counts: Counts 7, 8, and 11. On Count 7, Mr. Barnette was sentenced to death under 18 U.S.C. § 2119(3). On Counts 8 and 11, he was sentenced to death under 18 U.S.C. § 924(i) (redesignated § 924(j)).

As discussed, after *Johnson,* Mr. Barnette's death sentences on Counts 8 and 11 must fall because they rely on his having been convicted of use of a firearm in relation to crimes of violence under § 924(c), which, as explained above, must be found invalid pursuant to *Johnson.* But that is not all. The invalidation of Mr. Barnette's § convictions under §§ 2261 and 924(c) requires that he be resentenced on Count 7, as well.

When a defendant has been convicted and sentenced on multiple charged offenses, one of which subsequently is invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid offense. *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986). The Eighth Circuit has explained that "the critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the time of the sentencing that … conviction [on another count] was invalid." *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973) (per curiam); *United States v. Starr,* No. 13–2191, 603 F. App'x 517, 518 (8th Cir. Mar. 11, 2015) (per curiam) (quoting *James*).

This principle applies with equal force in the case of jury sentencing. The record in Mr. Barnette's case shows at least a reasonable likelihood that the inclusion of the unconstitutional counts influenced the jury's decision to sentence him to death. For example, Mr. Barnette's jury was allowed to consider not just that he participated in a carjacking in which a death resulted, but that this carjacking was a "crime of violence." The jury was told that this "crime of violence" was so egregious that using a gun in connection with it amounted to a separate federal felony that qualified for a separate potential basis for a death sentence. And yet that so-called "crime of violence" was not a

crime at all, and should never have been presented to the jury at all, during either stage of Mr. Barnette's original trial and at resentencing.

Even worse, under the sentencing provision attached to § 924(c), 18 U.S.C. § 924(j), the jury was directed to consider whether Mr. Barnette committed "murder," and acted "with malice aforethought." That state of mind is widely understood by the general public to involve evil, depravity, and wanton disregard for the value of human life.[1]

Given the likelihood that invalid convictions influenced the jury's sentencing verdict on the remaining valid count, this Court must order that Mr. Barnette be resentenced by a jury. As the Supreme Court recently made clear in *Hurst v. Florida,* 136 S. Ct. 616 (2016), the Sixth Amendment requires that a jury, and not the court, determine whether a defendant should be sentenced to death. *Hurst,* 136 S. Ct. at 624. The Supreme Court was unequivocal: "The Sixth Amendment protects a defendant's right to an impartial jury. This right required Florida to base [the defendant's] death sentence on a jury's verdict, not a judge's factfinding." *Id.*

After *Hurst,* any death sentence rendered by a court is unconstitutional. An appellate or post-conviction court that finds non-structural error in the defendant's death sentence therefore must remand for a new penalty phase before a jury. It may not engage in *post hoc* reweighing, or otherwise make its own determination about whether the defendant deserves a death sentence. To the extent any prior Supreme Court decisions,

---

[1] Merriam-Webster's online dictionary provides the following "legal definition of malice:

    a: the intention or desire to cause harm . . . to another through an unlawful or wrongful
    act without justification or excuse;
    b: wanton disregard for the rights of others or for the value of human life;
    c: an improper or evil motive or purpose . . . ;
    d: actual malice.

http://www.merriam-webster.com/dictionary/malice#legalDictionary (last visited on June 24, 2016).

such as *Brown v. Sanders,* 546 U.S. 212, 224-25 (2006), *Stringer v. Black,* 503 U.S. 222, 237 (1992), or *Clemons v. Mississippi,* 494 U.S. 738, 745-46 (1990), authorized such judicial refashioning of a compromised death sentence, *Hurst* necessarily overrules them.

What is more, given the unparalleled need for reliability in capital sentencing, allowing Mr. Barnette's death sentence on Count 7 to stand despite the jury's exposure to the invalid count and its prejudicial elements, would necessarily implicate the Eighth Amendment. The Supreme Court's decision in *Johnson v. Mississippi,* 486 U.S. 576 (1988), provides an instructive analogy. There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment. As the Court explained, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Id.* at 584 (citations and internal quotations omitted).

Because the petitioner's prior conviction in *Johnson v. Mississippi* was invalid, the Court deemed it "apparent that the [prior] conviction provided no legitimate support for the death sentence imposed on petitioner." *Id.* at 585. Equally apparent, the Court said, was "that the use of that conviction in the sentencing hearing was prejudicial." *Id.*

And while the prosecutor had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without express argument, there would be a possibility that the jury's belief the petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life

sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida,* 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional convictions under Counts 1, 2, 3, 8, 10, and 11 convictions had a profoundly prejudicial impact on Mr. Barnette's case as a whole, and undermine confidence in his death sentence on Count 7.

Indeed, Mr. Barnette likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Barnette prior to his initial trial and later prior to resentencing, it was presented with an indictment alleging not one but three capital offenses, including two capital § 924(c) counts. The Department's capital-case review process was almost certainly skewed by the presence of the unconstitutional charge just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

Thus, this Court should vacate Mr. Barnette's sentences under Counts 1, 2, 3, 8, 10, and 11 in their entirety and order that he be resentenced by a jury on Count 7 alone.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Barnette respectfully asks this Court to vacate his convictions and sentences as set forth above and grant the following further relief:

(1) That this Court remand this case for a new penalty phase trial on Count 7 alone.

(2) That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

(3) Any other relief that may be necessary to correct Mr. Barnette's invalid conviction and sentence.

Dated: June 24, 2016                    /s/ Mark E. Olive
                                           N.C. State Bar No. 10615
                                           LAW OFFICES OF MARK OLIVE
                                           320 W. Jefferson Street
                                           Tallahassee, FL 32301
                                           850-224-0004 (tel)
                                           850-224-3331 (fax)
                                           meolive@aol.com

                    /s/ Jacob H. Sussman
                                           N.C. Bar No. 31821
                                           TIN FULTON WALKER & OWEN PLLC
                                           301 East Park Avenue
                                           Charlotte, NC 28203
                                           704-338-1220 (tel)
                                           704-338-1312 (fax)
                                           jsussman@tinfulton.com

                    /s/ Ross Richardson
                                           Ross Richardson
                                           FEDERAL DEFENDERS OF WESTERN
                                            NORTH CAROLINA, INC.
                                           129 West Trade Street, Suite 300
                                           Charlotte, NC 28202
                                           704-374-0720 (tel)
                                           704-374-0722 (fax)
                                           ross_richardson@fd.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has served the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Anthony J. Enright
anthony.enright@usdoj.gov

Dated: June 24, 2016

/s/ Jacob H. Sussman
Counsel for Mr. Barnette