IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:12CV327
(3:97-CR-23)

AQUILIA MARCIVICCI BARNETTE, )
                                          )
         Movant,                     )
                                          )
vs.                                            )
                                          )
UNITED STATES OF AMERICA,    )
                                          )
         Respondent.             )
_____ )

**RESPONSE OF THE UNITED STATES TO**
**BARNETTE'S SUPPLEMENTAL 2255 MOTION**

## TABLE OF CONTENTS

I.  BACKGROUND ................................................................................................1

    A. ........................................................................Barnette murders two victims. ....................................................................................................1

    B. ......A jury convicts Barnette of eleven counts and sentences him to death on three of them. ....................................................1

    C. .........Barnette files his 2255 motion and, several years later, seeks leave to amend it.................................................................4

II. DISCUSSION ..................................................................................................7

    A. .This Court should apply the concurrent-sentence doctrine and decline to consider Barnette's supplemental motion....................................................................................................8

    B. Barnette's challenges to his convictions on counts 1 and 10 are untimely, procedurally barred, and unrelated to the constitutional rights recognized in *Johnson*, *Dimaya*, and *Davis*..........................................................................14

        1......Barnette's challenges to his convictions on counts 1 and 10 are untimely......................................................15

        2..Even if they were timely under section 2255's statute of limitations, Barnette's procedural default would preclude him from raising his arguments.........17

    C. Barnette's challenges to counts 2, 3, and 11, fail as a matter of law for the same reasons, among others...............................20

    D.Binding precedent forecloses Barnette's challenge to count 8...................................................................................................23

    E. .......The errors Barnette alleges in his supplemental motion would be harmless in any event. ................................................24

III. CONCLUSION ..............................................................................................25

The United States respectfully requests that this Court deny Aquilia Marcivicci Barnette's request for leave to amend his 2255 motion with the claims in his July 2016 supplemental motion. That motion seeks to challenge 6 of Barnette's 11 convictions. Each of Barnette's new claims fails as a matter of law for multiple reasons. And the outcome of his arguments would make no practical difference — he does not challenge his capital conviction on count seven, and the record makes clear that Barnette would have received the death penalty in any event. Barnette is, therefore, not entitled to relief on any of his new claims, and an amendment of Barnette's 2255 motion including them would be futile.

## I.  BACKGROUND

### A.  Barnette murders two victims.

In 1996, Barnette murdered two victims. *Response of United States to Barnette's 2255 Motion and Motion for Evid. Hr'g* (Doc. No. 98, 3:12CV327), Sept. 23, 2015 (hereinafter "*2015 Response*"), at 2–11. He firebombed Robin Williams's home in April of 1996, screaming "die, bitch, die," after she ended their relationship. *Id.* at 2–5. In June, after gathering weapons and making plans, he took Donald Allen's car at gunpoint and then shot him to death. *Id.* at 5–8. He used the car to drive to Robin's home in Virginia, where he chased her and shot her to death in front of her mother and others. *Id.* at 10.

### B.  A jury convicts Barnette of eleven counts and sentences him to death on three of them.

A grand jury in the Western District of North Carolina indicted Barnette in February of 1997. Ex. 1, at 69–74. It charged him with 11 offenses against the

United States.  Ex. 1, at 69–74.[1]

The first 3 counts of the indictment charged Barnette with offenses he committed in April of 1996, when he firebombed Robin's apartment.  *Id.* at 69–70. Count 1 charged Barnette with violating the Violence Against Women Act by "intentionally" committing a crime of violence — "firebomb[ing] Robin Williams's occupied apartment and an automobile parked in her driveway causing bodily injury to her" — when traveling in interstate commerce with intent to kill, injure, harass, or intimidate an intimate partner, 18 U.S.C. §§ 2261(a)(1), (b).  *Id.* at 69. Count 2 charged Barnette with using and carrying a firearm in the form of a destructive device during and in relation to a crime of violence — the "act of interstate domestic violence" set "forth in Count One," 18 U.S.C. § 924(c).  *Id.* Count 3 charged Barnette with using and carrying fire and explosive materials to commit an act of interstate domestic violence, 18 U.S.C. §§ 844(h)(1), 2261.  *Id.*

Counts 4 through 6 charged Barnette with efforts to procure and modify firearms between the time that he firebombed Robin's apartment and the time he returned to kill her.  *Id.* at 70–71.  Count 4 charged Barnette with making a false statement in connection with the acquisition of a firearm, 18 U.S.C. §§ 922(a)(6), 924.  *Id.*  Count 5 charged Barnette with making a firearm without complying with requirements of the National Firearms Act, 26 U.S.C. §§ 5821, 5822, 5861(f), 5871.  *Id.* at 71.  And Count 6 charged Barnette with possession of a firearm by a

---

[1] "Ex. 1" refers to Exhibit 1 filed with the United States' September 2015 response to Barnette's 2255 motion and motion for an evidentiary hearing.  (Docs. No. 99–108, 3:12CV327).

2

convicted felon, 18 U.S.C. §§ 922(g)(1), 924. *Id.*

The remaining 5 counts charged Barnette with crimes on the day that he murdered Donald Allen and Robin Williams. Count 9 charged Barnette with transporting a stolen motor vehicle in interstate commerce, 18 U.S.C. § 2312. *Id.* at 72–73. And count 10 charged him again with violating the Violence Against Women Act by "intentionally" committing a crime of violence — "sh[ooting] and kill[ing] Robin Williams causing bodily injury and death to her" — when traveling in interstate commerce with intent to kill, injure, harass, or intimidate an intimate partner, 18 U.S.C. §§ 2261(a)(1), (b). *Id.* at 73.

Counts 7, 8, and 11 gave rise to the death sentences that Barnette challenges in his original 2255 motion. Exh. 1, at 2054, 2072, 2090, 2092. Count 7 charged Barnette with carjacking resulting in death, 28 U.S.C. § 2119(3). Exh. 1, at 72. Count 8 charged Barnette with first degree murder of Donald Allen by use of a firearm during and in relation to a crime of violence — the carjacking described in count 7, 18 U.S.C. § 924(c)(1), (i)(2)(1). *Id.* And count 11 charged Barnette with first-degree murder of Robin Williams by use of a firearm during and in relation to a crime of violence — the act of interstate domestic violence described in count ten, 18 U.S.C. §§ 924(c)(1), (i)(2)(i). *Id.* at 72–73.

A "jury found Barnette guilty on all 11 counts in the indictment" in 1998. *United States v. Barnette*, 211 F.3d 803, 810 (4th Cir. 2000). "No witnesses at trial disputed the facts of the crimes." *Id.* And the Fourth Circuit affirmed Barnette's conviction "in all respects." *Id.* at 826.

3

After the Fourth Circuit remanded for resentencing on his capital counts, the jury returned a verdict of death on each of Barnette's three capital counts. Ex. 1, at 2023, 2054, 2072, 2090. The Fourth Circuit originally affirmed that sentence in 2004. *United States v. Barnette*, 390 F.3d 775, 812 (4th Cir. 2004). The United States Supreme Court vacated that decision and remanded in the light of its decision about the method of analyzing claims of discrimination in juror selection, *Miller-El v. Dretke*, 545 U.S. 231 (2005). *United States v. Barnette*, 644 F.3d 192, 196, 205 (4th Cir. 2011). After additional proceedings in this Court, the Fourth Circuit again affirmed Barnette's death sentences in May of 2011. *Id.* The Supreme Court denied certiorari on March 19, 2012. *Barnette v. United States*, 565 U.S. 1263 (2012).

### C. Barnette files his 2255 motion and, several years later, seeks leave to amend it.

"A 1-year period of limitation" applies to 2255 motions, which ordinarily runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The parties entered a tolling stipulation extending "the limitations period from March 19, 2013 to June 19, 2013 for Mr. Barnette to file a § 2255 motion." *Stipulation* (Doc. No. 32, 3:12CV327), at 1.

On June 19, 2013, the last day of the ordinary limitations period, Barnette filed the 2255 motion currently before this Court. *2255 Mot.* (Doc. No. 48, 3:12CV327). Barnette challenged his death sentence but did not challenge his criminal convictions. *2255 Mot.* 1; *Petitioner's Brief in Support of Motion for*

4

*Evidentiary Hearing*, Dec. 22, 2014 (Doc. No. 74, 3:12-CV-327), at 1.

More than three years later, on June 24, 2016, Barnette filed what he styled as a "supplemental motion to vacate under 28 U.S.C. § 2255," accompanied by a request for leave to amend his motion. (Doc. No. 119, 3:12CV327), at 32. He asserts that the "supplemental motion" is timely because it asserts rights initially recognized by the United States Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Supp. Mot.* 28. And the date on which the Supreme Court initially recognizes a new retroactive rule restarts the limitations period for claims asserting that rule. 28 U.S.C. § 2255(f)(3); *Supp. Mot.* 28.

Barnette's supplemental motion seeks to challenge, for the first time, 6 of Barnette's 11 convictions, including 2 of the 3 for which he received the death penalty. *Supp. Mot.* 1. The jury convicted Barnette of counts 1 and 10 for violations of the Violence Against Women Act, an element of which is a "crime of violence," 18 U.S.C. § 2261(a) (1996), defined in 18 U.S.C. § 16. And the jury convicted Barnette of counts 2, 8, and 11, for using and carrying a firearm during and in relation to a "crime of violence," 18 U.S.C. § 924(c)(1), defined in 18 U.S.C. § 924(c)(3).

The Supreme Court has recently addressed the definitions of "crime of violence" relevant to Barnette's convictions and held parts of those definitions unconstitutionally vague. Both 18 U.S.C. § 16 and 18 U.S.C. § 924(c)(3) define the term "crime of violence" in two parts. The first part, known as the force clause, includes offenses that have "as an element the use, attempted use, or

5

threatened use of physical force against the person or property of another." 18

U.S.C. §§ 16(a), 924(c)(3)(A). The second part, the residual clause, includes an

offense that, "by its nature, involves a substantial risk that physical force against

the person or property of another may be used in the course of committing the

offense." 18 U.S.C. §§ 16(b), 924(c)(3)(B). The Supreme Court held in *Sessions v.*

*Dimaya* that the residual clause of section 16(b) is unconstitutionally vague. 138

S. Ct. 1204, 1210 (2018). And the Court held in *United States v. Davis* that the

residual clause of "§ 924(c)(3)(B) is unconstitutionally vague." 139 S. Ct. 2319,

2336 (2019). Offenses that meet the requirements of the "force clause" continue

to qualify as a "crime of violence." *See United States v. Mathis*, 932 F.3d 242, 265

(4th Cir. 2019).

Although Barnette challenges his convictions for counts 1 and 10, he does

not allege that he was improperly convicted of a violation of the Violence Against

Women Act predicated on an offense that qualifies as a "crime of violence" only

under that term's residual clause. *Supp. Mot.* 17–18. Instead he alleges that the

"language of the indictment" was defective because it alleges a "set of facts that

include violent acts" instead of a specific "predicate crime," leaving the court

unable to apply the "categorical approach." *Id.* at 18.

Barnette contends that the alleged infirmity in counts 1 and 10 requires

the reversal of his convictions on counts 2 and 11. *Id.* at 18–21. Counts 2 and 11

both charge violations of section 924(c). Ex. 1, at 70, 73. The counts allege the

predicate "crime of violence" to be the "act[s] of interstate domestic violence"

alleged in counts 1 and 10, respectively. *Id.*

Barnette also seeks to extend his theory about count one to his conviction on count 3, for using "fire or an explosive to commit any felony which may be prosecuted in a court of the United States." 18 U.S.C. § 844(h)(1). He contends that if his conviction under count one must be vacated, his conviction on count 3 also "cannot stand." *Supp. Mot.* 26.

Finally, Barnette contends that his conviction under section 924(c) on count 8 is infirm. *Supp. Mot.* 21–26. He contends that the predicate "crime of violence" for that count — carjacking, 18 U.S.C. § 2119 — no longer qualifies as a crime of violence under the force clause. *Id.*

## II.    DISCUSSION

This Court should deny Barnette's request for leave to amend his 2255 motion. Motions for leave to amend a 2255 motion should be denied when the amendment would be "futile." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). An amendment is futile to the extent that it presents matters that "would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999); *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014). And a 2255 motion warrants "dismiss[al] without a hearing" if "the petitioner's allegations, accepted as true, would not entitle the petitioner to relief." *Engleen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see Hill v. Ozmint*, 339 F.3d 187, 201 (4th Cir. 2003) (habeas petitioner "obliged to allege 'facts that, if true, would entitle him to relief.'" (emphasis in original)).

7

The claims Barnette seeks to present in his supplemental motion would, as a matter of law, not entitle him to relief under section 2255. At the outset, Barnette does not challenge his capital conviction on count 7 for which he received the death penalty. Because even successful challenges to his other counts will make no practical difference, this Court has discretion under the concurrent-sentence doctrine to decline to consider them. If it does consider them, it should reject them as a matter of law. Barnette's challenges to counts 1 and 10 have nothing to do with the recent residual-clause decisions by the Supreme Court, are untimely, and are barred by Barnette's procedural default. Because those challenges fail as a matter of law, so do his challenges to counts 2, 3, and 11, which rely on the same rationale. Fourth Circuit precedent forecloses Barnette's challenge to count 8. And, if this Court held invalid any or all of the convictions Barnette challenges, the errors would be harmless. Because Barnette's claims in his supplemental motion would not entitle him to any relief, this Court should not allow him to amend his 2255 motion to present them.

## A. This Court should apply the concurrent-sentence doctrine and decline to consider Barnette's supplemental motion.

Even if this Court were to conclude that all of the convictions Barnette seeks to challenge in his supplemental motion are invalid, he would remain convicted of a capital offense for which he was sentenced to death. The jury sentenced him to death on count 7 for carjacking resulting in death. And Barnette does not challenge the validity of his conviction on count 7. *See Supp.*

8

*Mot.* 32. The Fourth Circuit has, moreover, held that carjacking, "18 U.S.C. § 2119," remains a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A). *United States v. Evans*, 848 F.3d 242, 244 (4th Cir. 2017). This binding precedent forecloses Barnette's challenge to his capital conviction on count 8. *Cf. Supp. 2255 Mot.* 21–26. Even if this Court held Barnette's other convictions invalid, Barnette would remain convicted on counts 7 and 8 and sentenced to death.

"The 'concurrent sentence doctrine' authorizes" this Court to leave the validity of Barnette's other challenged convictions and sentences "unreviewed." *United States v. Charles*, 932 F.3d 153, 155 (4th Cir. 2019). That doctrine applies when a defendant is subject to another sentence that "is valid and carries the same or greater duration of punishment so long as there is *no substantial possibility* that the unreviewed sentence will adversely affect the defendant or, stated otherwise, so long as it can be foreseen *with reasonable certainty* that the defendant will suffer no adverse collateral consequences by leaving it unreviewed." *Id.* (emphasis in original).

Barnette is subject to indisputably valid capital convictions on counts 7 and 8, and the death sentences he received for those two counts are the "same" as or "greater" than what he received for any of his other convictions. *Id.* No substantial possibility exists that a decision by this court not to review Barnette's other convictions would adversely affect him. This court can, therefore, apply the concurrent sentence doctrine and deny as futile Barnette's motion for leave to

9

amend his 2255 motion.

The concurrent-sentence doctrine ordinarily "cannot be applied to avoid reaching a defendant's challenge to one of his federal *convictions*." *Id.* at 160. A statute, 18 U.S.C. § 3013, imposes a special monetary assessment for each count of conviction. *Id.* And "other collateral consequences" — such as delayed "eligibility for parole" or an "increased sentence under a recidivist statute for a future offense" — often attach to ordinary convictions. *Id.* (quoting *Rutledge v. United States*, 517 U.S. 292, 302 (1996)). Accordingly, courts ordinarily cannot say "*with reasonable certainty* that the defendant will suffer no adverse collateral consequences" if a conviction is left "unreviewed." *Id.* at 155 (emphasis in original).

The convictions Barnette challenges, however, are not ordinary. They are accompanied by a valid conviction that received a death sentence. If those other convictions go unreviewed, Barnette will not face "delay" in any determination of "eligibility for parole." *Charles*, 932 F.3d at 160. He will never be eligible for parole. Nor will he be at greater risk for "an increased sentence" for a "future offense." *Id.* He is already subject to the most serious penalty. Although he may well have paid a special assessment for each of his convictions, he cannot obtain relief from this special assessment — a monetary penalty — in a motion under 28 U.S.C. § 2255. "[S]pecial assessments are not reviewable in habeas corpus proceedings." *Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 104 (3d Cir. 2017). Simply put, Barnette will suffer no "adverse collateral consequences" if

10

this Court declines to consider his challenges to counts 1, 2, 3, 10, or 11, or even his challenge to count 8. *Id.* (declining to consider collateral attack on convictions by defendant who received "other life sentences" that would remain undisturbed).

Barnette's contention that he suffered prejudice at sentencing from his other convictions does not come close to undermining this Court's discretion to apply the concurrent-sentence doctrine. *Cf. Supp. Mot.* 29–32. The only information to which the sentencing jury was exposed that he alleges to be prejudicial consists of an instruction that "carjacking was a 'crime of violence'" and an instruction to "consider whether Mr. Barnette committed 'murder,' and acted 'with malice aforethought.'" *Id.* at 29–30. This argument is baseless for a number of reasons.

The most basic flaw in Barnette's prejudice argument is that it concerns instructions that the jury heard in connection with count 8, Ex. 1, at 1962, a count that remains valid under binding circuit precedent. *Evans*, 848 F.3d at 244. The sentencing jury, in other words, *properly* heard that Barnette had been convicted of using and carrying a firearm during and in relation to a "crime of violence . . . that is[] the carjacking set forth in Count 7." Ex. 1 at 1962. And it *properly* heard that Barnette had, in the course of that violation, "caused the death of Donald Lee Allen through the use of a firearm, which killing is a murder . . . in that the defendant, with malice aforethought, did unlawfully kill Donald Lee Allen by shooting him with a firearm, willfully, deliberately,

11

maliciously, and with premeditation." *Id.*[2]

Even if similar instructions were somehow improperly before the jury,
nothing close to a substantial possibility exists that the jury would have declined
to return a verdict of death on any of Barnette's capital counts. On count 7, the
validity of which Barnette does not dispute, the jury unanimously found that
Barnette "intentionally killed Donald Lee Allen." Ex. 1, at 2041. It unanimously
found that Barnette "intentionally inflicted serious bodily injury" which resulted
in his death. *Id.* It unanimously found that Barnette engaged in "substantial
planning and premeditation to cause the death of Donald Lee Allen." *Id.* at 2044.
It found that Barnette also "intentionally killed" another person — Robin
Williams — "in addition to killing Donald Lee Allen." *Id.* at 2046. And it
unanimously recommended "that a sentence of death shall be imposed for the
killing of Donald Lee Allen as to Count Seven." *Id.* at 2054. These uncontested
findings alone refute any possibility that the jury would have reached a different
verdict had it not been told that Barnette committed a "crime of violence" or
heard the term "malice aforethought." *Cf. Supp. Mot.* 29–31.

Perhaps more importantly, the jury heard overwhelming and
uncontroverted evidence of Barnette's conduct that was both violent and
malicious in every sense of the word. *2015 Response* 2–11, 14–24, 104–06. The

---

[2] The sentencing jury was not the same jury that considered Barnette's guilt. Because
Barnette does not include citations in support of the assertion, it is not clear what portion of the
record he is referring to when he says that the jury was directed "to *consider* whether Mr.
Barnette committed 'murder,' and acted 'with malice aforethought.'" *Supp. Mot.* 2255 30
(emphasis added).

12

jury heard that Barnette drove to Roanoke, cut the telephone lines of Robin Williams's house, and firebombed the only exit while she and Benjamin Greene were inside. The jury heard that Barnette yelled to Robin, "[D]ie, bitch, die," and "you're going to die tonight. I'm going to kill you." *Id.* at 104. The jury heard that Robin escaped with severe burns, and while she attempted to recover, Barnette went out with friends, visited clubs, met girls, and drank. *Id.* It also heard that Barnette purchased a shotgun, sawed off the barrel, and assembled materials, planning and preparing to return to Roanoke to kill. *Id.* The jury heard that Barnette lied in wait for Donald Allen's blue Honda Prelude, and that even after Allen gave the car and his wallet up willingly, Barnette shot him multiple times. *Id.* The jury heard that Barnette followed his plan to drive to Roanoke with the shotgun and fired it into the door of the kitchen where Barnette's mother had been standing with her eight-month-old grandchild, baking brownies for a church bake sale. *Id.* And the jury heard that Barnette calmly chased, dragged, shot, and killed Robin Williams in front of Robin's mother, threatening multiple neighbors along the way. *Id.*

In addition to the firebombing and murders that Barnette carried out with extensive premeditation, the jury heard testimony about an extraordinary amount of violence that Barnette carried out against other women and those around them. *Id.* at 104–05. The jury heard that Barnette beat the mother of his children, Natasha Tolbert, while she was pregnant, slamming her against the concrete. *Id.* at 105. The jury heard that Barnette beat the children of Crystal

13

Dennis, cutting them open, and that he shot Dennis's brother. *Id.* at 105. And the jury heard that Barnette threatened Alesha Chambers at knifepoint, beat her with a baseball bat, cut her, kidnapped her, and raped her. *Id.* at 105.

This Court can conclude with confidence that the instructions Barnette contends render his challenged convictions prejudicial did not influence the jury's decision to impose the death penalty. Because the resolution of Barnette's claims presented in his supplemental motion will have no practical effect, this Court should decline to consider them and reject his request for leave to amend his 2255 motion.

> **B.   Barnette's challenges to his convictions on counts 1 and 10 are untimely, procedurally barred, and unrelated to the constitutional rights recognized in *Johnson*, *Dimaya*, and *Davis.***

The challenges Barnette presents in his supplemental motion to counts 1 and 10 fail as a matter of law in any event. As mentioned previously, *see* Section I, *supra*, Barnette argues that counts 1 and 10 are infirm because his 1997 indictment alleges a "set of facts that include violent acts" instead of following the "categorical approach" which requires a "predicate crime." *Id.* at 18. Although a timely version of this argument might have a ring of plausibility, Barnette raises it decades too late. The Supreme Court and the Fourth Circuit held that 18 U.S.C. § 16's definition of "crime of violence" required the categorical approach years before Barnette's criminal judgment became final. *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004); *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006). His

14

argument is untimely because he has no basis for raising it more than a year after the deadline for his original 2255 motion. He was also required to raise it during his criminal case and on direct appeal, and his procedural default precludes him from doing so now.

### 1. Barnette's challenges to his convictions on counts 1 and 10 are untimely.

Barnette's challenges to his convictions on counts 1 and 10 are untimely. He was required to bring those challenges within the "1-year period of limitation" that began on "the date on which [his] judgment of conviction became final." 28 U.S.C. § 2255(f)(1). That date, after the parties' three-month tolling stipulation, was June 19, 2013. Barnette's supplemental motion, which he filed in June of 2016, is more than three years too late for these claims. *See Zack v. Tucker*, 704 F.3d 917, 924 (11th Cir. 2013) (en banc) (statute of limitations operates on a claim-by-claim basis).

Contrary to what Barnette contends, *Supp. 2255 Mot.* 28, the basis for his challenge to counts 1 and 10 does not receive the benefit of the limitations-period trigger of 28 U.S.C. § 2255(f)(3). That subsection restarts the limitations period on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The "right . . . initially recognized by the Supreme Court," *id.*, in *Johnson* was the right not to have a criminal sentence "increased . . . under the residual clause of

15

the Armed Career Criminal Act." *Johnson*, 135 S. Ct. at 2563. The rights initially recognized in *Dimaya* and *Davis* are the rights not to be convicted under the residual clauses of section 16 and section 924(c), respectively. *Dimaya*, 138 S. Ct. at 1210; *Davis*, 139 S. Ct. at 2336.

None of the residual-clause decisions from the Supreme Court in recent years initially recognized the right that Barnette asserts — to be charged with a "crime of violence" in accordance with the "categorical approach" instead of with a "set of facts that include violent acts." *Supp. Mot.* 18. The Supreme Court initially recognized that section 16 requires the categorical approach in 2004, in *Leocal*. 543 U.S. at 7. *See Davis*, 139 S. Ct. at 2326 ("[O]ur precedent under § 16's residual clause required courts to use the categorical approach to determine whether an offense qualified as a crime of violence." (citing *Leocal*, 543 U.S. at 7, 10)). Because *Leocal* was decided before Barnette's criminal judgment became final, it does not affect the limitations period. 28 U.S.C. § 2255(f).

Barnette's suggestion that nonconformity with the categorical approach somehow requires the conclusion that Barnette was convicted under the residual clause of 18 U.S.C. section 16(b), *Supp. 2255 Mot.* 18, is baseless. The force clause, 18 U.S.C. § 16(a), and the residual clause, § 16(b), have *both* required the categorical approach for at least the past decade and a half. *Leocal*, 543 U.S. at 381. And the "set of facts that include violent acts" alleged in the indictment — Barnette's intentionally firebombing Robin Williams's occupied apartment causing bodily injury to her, and Barnette's intentionally shooting and killing

16

Robin causing bodily injury and death, Ex. 1, at 69, 73 — plainly include the "use, attempted use, or threatened use of force," 18 U.S.C. § 16(a). *See United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017) (knowingly and willfully inflicting bodily injury requires the use of force). That the indictment alleged these facts instead of a specific code provision simply has nothing to do with the rights recognized in *Johnson*, *Dimaya*, or *Davis*.

Indeed, Barnette's allegation of error in counts 1 and 10 is no stronger because of *Johnson*, *Dimaya*, or *Davis*, than it was when he filed his initial 2255. Whether the argument was strong or weak, he could have argued those convictions were out of conformity with the "categorical approach," *Supp. Mot.* 18, in 2013, along with the many other arguments he made in his 107-page 2255 motion. Barnette chose not to include that argument in his timely 2255 motion, and recent cases about the residual clause do not open the door for him to raise it now.

Barnette's challenge to his convictions on counts 1 and 10 are untimely. This Court should reject his challenge on that basis.

> ### 2. Even if they were timely under section 2255's statute of limitations, Barnette's procedural default would preclude him from raising his arguments.

Even if Barnette's new claims complied with section 2255's limitations period, his failure to raise them both during his criminal case and on direct appeal would preclude him from raising them now. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). The Supreme Court has held that Barnette can raise

his procedurally defaulted claim on collateral review "only" if he can "first demonstrate either 'cause' and actual 'prejudice'" or that he is "actually innocent." *Id.* at 622. Barnette cannot meet either of these two requirements. *Id.*

Barnette cannot establish the cause necessary to overcome his procedural default. Cause requires a "factor external to the defense" that impeded his attorney's efforts to comply with the requirement that he timely raise objections. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). No external factor limited Barnette's attorneys' ability to raise the arguments he seeks to raise in his supplemental 2255 motion. That Barnette's arguments would have been unlikely to succeed would not be enough, even if the arguments would have been futile. *Whiteside v. United States*, 775 F.3d 180, 185 (4th Cir. 2014) (en banc). But Barnette has not identified any precedent that would have foreclosed his arguments. Although he has alleged various forms of ineffective assistance of counsel, a failure to raise the arguments Barnette presents in his supplemental 2255 motion is not among them. In short, Barnette has not and cannot establish cause for his failure to raise his claim earlier.

Even if he could somehow establish cause, Barnette would remain unable to establish the requisite "actual prejudice." *Bousley*, 523 U.S. at 622 (cleaned up). Had Barnette successfully argued during his criminal case that his indictment on counts 1 and 10 was required to conform to the categorical approach, the United States would undoubtedly have obtained a superseding indictment. Count 1 arose out of Barnette's firebombing of Robin Williams in her

18

home, while armed with a bat and screaming "die, bitch, die," *Barnette*, 390 F.3d at 780.  Count 10 arose out of Barnette's later intentional killing of Robin Williams with a gun.  *Id.* at 782.  "Crimes of violence" include state-law offenses, *see Dimaya*, 138 S. Ct. at 1211; *Leocal*, 543 U.S. at 4.  Evidence in the record establishes that the United States could have charged any number of specific predicate offenses under Virginia law that qualify as crimes of violence under the force clause, including, most obviously, murder and attempted murder.  *United States v. Villegas*, 777 F. App'x 660, 661 (4th Cir. 2019) (unpublished decision) (holding attempted murder under Virginia law to qualify as a crime of violence under the force clause); *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019) (holding murder under Virginia law to qualify as a crime of violence under the force clause).  The evidence in support of these charges would have been the same and would have remained overwhelming.  Barnette, therefore, cannot establish that his failure to raise his challenge to counts 1 and 10 during his criminal case "worked to his actual and substantial disadvantage."  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (cleaned up); *see also Strickler v. Greene*, 527 U.S. 263, 295 (1999) (explaining that prejudice requires "a reasonable probability that his conviction or sentence would have been different" absent the alleged error).

Nor can Barnette establish "actual innocence" as required to overcome his procedural default.  *Bousley*, 523 U.S. at 624.  Barnette has the burden to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Id.* (cleaned up).  "'[A]ctual

19

innocence' means factual innocence, not mere legal insufficiency." *Id.* The record, which includes Barnette's confession and admission in court that he crossed state lines to firebomb Robin in her home, screaming for her to die, and later crossed state lines again to shoot her to death in front of her mother and others, *2015 Response* 18, 25; *Barnette*, 390 F.3d at 780, would preclude Barnette from meeting his burden to establish actual innocence of the Violence Against Women Act. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

### C. Barnette's challenges to counts 2, 3, and 11, fail as a matter of law for the same reasons, among others.

This court should also reject Barnette's challenges to counts 2, 3, and 11, for the same reasons that it should reject his challenges to counts 1, and 10. Barnette's challenges to counts 2, 3, and 11 ask this Court to hold that those counts fail automatically if Barnette is entitled to relief from counts 1 and 10. *Supp. Mot.* 18–19, 26. By the same reasoning, because he is *not* entitled to relief from counts 1 and 10, he is also not entitled to relief from counts 2, 3, and 11. The same statute of limitations and procedural-default doctrine apply, and they preclude relief for the reasons described above.

Barnette's challenges to counts 2 and 11 also fail for an additional reason, which Barnette's supplemental motion anticipates, *see Supp. Mot.* 19–21. Both of those counts allege use and carriage of a firearm during and in relation to a "crime of violence" under section 924(c). Ex. 1 at 69, 73. And both of them allege "act[s] of interstate domestic violence" under 18 U.S.C. § 2261(a)(1), as set forth

20

in counts 1 and 10, respectively, to be the predicate "crime[s] of violence." *Id.*

Offenses under section 2261(a) categorically qualify as predicate "crimes of violence" under section 924(c). One element of the offense, of course, is itself a "crime of violence." 18 U.S.C. § 2261 (1996). But even without that requirement, the elements of the offense would necessarily include the "use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The elements of the offense require proof that the defendant (1) "travel[ed] across a State line"; (2) harbored "the intent to injure, harass, or intimidate" his "spouse or intimate partner"; (3) "intentionally commit[ted] a crime"; and (4) "thereby caus[ed] bodily injury" to the spouse or intimate partner he intended to injure, harass, or intimidate. 18 U.S.C. § 2261(a) (1996).

Apart from section 2261's own requirement of a "crime of violence," the offense requires that the defendant undertake significant acts, including committing a crime; that he harbor specific "intent to injure, harass, or intimidate" his victim; and then he actually "caus[e] bodily injury" to that victim. 18 U.S.C. § 2261(a). The force clause requires only the actual, attempted, or threatened use of "force *capable* of causing physical pain or injury to another person." *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (emphasis added). The clause "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Id.* at 554. "[H]itting, slapping, shoving, grabbing, pinching, biting, and hair pulling,"

21

therefore, all suffice. *Id.* (quoting *United States v. Castleman*, 572 U.S. 157, 182 (2014) (Scalia, J., concurring)). Intentional conduct like that prescribed by the Violence Against Women Act, which actually causes injury, well meets this requirement, particularly when coupled with a specific intent to harm the person injured. *See Reid*, 861 F.3d at 527; *United States v. Townsend*, 886 F.3d 441, 447 (4th Cir. 2018).

Fourth Circuit precedent forecloses Barnette's argument that section 2261's inclusion of a specific intent to "intimidate" makes the offense broader than what the force clause requires. Barnette contends that the term "intimidate" mirrors the intimidation element of the "federal bank robbery statute," 18 U.S.C. § 2113(a). The Fourth Circuit, however, has specifically held that bank robbery *does* qualify as a crime of violence under the force clause, *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016). "Intimidation," the court explained, "means the threat of force." *Id.* at 153 (quoting *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991)).

More importantly, Barnette's argument ignores the other requirements of the statute. A defendant must not only "inten[d] to injure, harass, or intimidate" his victim. 18 U.S.C. § 2261(a). He must also intentionally commit a crime that actually "caus[es] bodily injury" to that victim. 18 U.S.C. § 2261(a). No "realistic probability" exists, *United States v. Drummond*, 925 F.3d 681, 688 (4th Cir. 2019), that a person could commit these elements without intentional conduct he knows to be at least "capable of causing physical pain or injury to another

22

person." *Stokeling*, 139 S. Ct. at 553. No realistic probability exists, therefore, that the offense would apply to any person who does not use, attempt, or threaten force.

**D. Binding precedent forecloses Barnette's challenge to count 8.**

Barnette's challenge to his conviction for first-degree murder by use and carriage of a firearm during and in relation to a "crime of violence" in the form of carjacking also fails as a matter of law. At the outset, Barnette's challenge is barred by his procedural default. *See* Section II.B.2, *supra*. He cannot establish cause to overcome that default because nothing external to the defense prevented him from raising his challenge during his criminal case or on direct appeal. He cannot establish prejudice because his argument is meritless, as explained below. And he cannot establish actual innocence because a jury found him guilty of the offense in the light of overwhelming evidence.

In addition to being barred by Barnette's procedural default, Barnette's challenge to count 8 fails on the merits under the Fourth Circuit's decision in *United States v. Evans*, 848 F.3d 242, 244 (4th Cir. 2017). As mentioned above, *see* Section II.A., *supra*, *Evans* held that the federal carjacking offense that served as the predicate for Barnette's count 8 categorically qualifies as a "crime of violence" under the force clause. 848 F.3d at 246 & n.3, 247–48. The validity of the residual clause is therefore irrelevant to the validity of his conviction on count 8. *Cf. Br. of Appellant* 21–26.

23

### E. The errors Barnette alleges in his supplemental motion would be harmless in any event.

Finally, even if this Court were to hold any or all of the convictions Barnette challenges invalid, the errors would be harmless. The harmless-error rule relates closely to the concurrent-sentence doctrine but involves a different formulation. *Charles*, 932 F.3d at 158–59. Errors on collateral review — even the most serious kind — do not warrant relief unless they "had a substantial and injurious effect or influence" on the outcome of the proceedings. *United States v. Smith*, 723 F.3d 510, 518 (4th Cir. 2013).

As discussed above, Barnette does not challenge his capital conviction on count seven, and the record makes clear that he would have received the death penalty regardless of the status of the other convictions that he challenges. *See* Section II.A., *supra*. Even on direct review, where the standard for harmlessness is much more stringent and the burden rests firmly with the United States, the Fourth Circuit has repeatedly held that an error is harmless when the record makes clear that the defendant would receive the same total sentence in any event. *United States v. Mills*, 917 F.3d 324, 330 (4th Cir. 2019); *United States v. McDonald*, 850 F.3d 640, 644–45 (4th Cir. 2017); *United States v. Shrader*, 675 F.3d 300, 315 (4th Cir. 2012). When a defendant receives a sentence under the advisory Sentencing Guidelines regime, the harmless-error rule applies so long as the sentence is substantively reasonable. *Mills*, 917 F.3d at 330. Barnette instead received his death sentence consistently with the substantive and

24

procedural requirements for the death penalty, and his death sentence was affirmed after thorough consideration by this Court and the Fourth Circuit. *Barnette*, 644 F.3d at 217.

Because the record makes clear that Barnette would have received the death penalty regardless of the outcome of the challenges to his convictions he presents in his supplemental motion, he is not entitled to relief on that motion. This court should, therefore, reject as futile Barnette's motion for leave to amend his 2255 motion.

## III.     CONCLUSION

Each of the claims that Barnette seeks to present in his supplemental 2255 motion fails as a matter of law.  And because the record makes clear that he would have received the death penalty in any event, none of those claims would entitle him to relief even if they had merit or could be considered at this stage. The United States, therefore, respectfully requests that this Court deny as futile Barnette's motion for leave to amend his 2255 motion.

RESPECTFULLY SUBMITTED, this 21st day of November, 2019.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

/s/Anthony J. Enright
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (phone)

25

(704) 344-6629 (fax)
anthony.enright@usdoj.gov

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 21st of November, 2019, I caused to be served a copy of the foregoing motion to be served on counsel for Barnette via electronic case filing

s/ANTHONY J. ENRIGHT
Assistant United States Attorney

27