**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO.: 3:12-CV-327-MOC**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **vs.** | **DEATH PENALTY § 2255** |
| **AQUILIA MARCIVICCI BARNETTE** | |

**PETITIONER AQUILIA MARCIVICCI BARNETTE'S**
**REPLY BRIEF IN SUPPORT OF SUPPLEMENTAL**
**MOTION TO VACATE UNDER 28 U.S.C. § 2255**

The government recognizes, as it must, that *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) and *United States v. Davis*, 139 S. Ct. 2319 (2019) hold that no offense can *ever* qualify as a "crime of violence" under the residual clauses of section 16 and section 924(c), respectively. [Doc. 132: Govt. Response at 16] Accordingly, Mr. Barnette's standalone claims that his § 2261 and § 924(c) convictions are void under the residual clause require this Court to vacate his convictions on counts 1, 2, 3, 8, 10, and 11, if the Court determines—as it must, after conducting a prejudice analysis—that the charged predicate crimes also fail to qualify as crimes of violence under the "force" or "elements" definitions found in these statutes.[1]

**I.      Mr. Barnette's standalone *Dimaya/Davis* claims are not procedurally defaulted.**

Mr. Barnette has raised a straightforward, standalone *Dimaya/Davis* claim alleging that his § 2261 and § 924(c) convictions are void under the residual clause.

---

[1] As noted in Mr. Barnette's Supplemental Motion to Vacate [Doc. 119], § 2261 incorporates the definition of "crimes of violence" found in 18 U.S.C. § 16(b). The residual clause of § 16(b) was invalidated in *Dimaya*. To avoid confusion, Mr. Barnette refers here to the definition as if it was directly found in § 2261.

*See Dimaya*, 138 S. Ct. at 1210; *Davis*, 139 S. Ct. at 2336. *Dimaya* and *Davis* invalidated the residual clauses encompassed by § 2261 and § 924(c), respectively; hence, no offense can *ever* qualify as a "crime of violence" under those clauses. *See Davis*, 139 S. Ct. at 2323 ("In our constitutional order, a vague law is no law at all."); *see also Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) ("the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges"). Accordingly, this Court must acknowledge that Mr. Barnette cannot be guilty of the § 2261 or § 924(c) crimes charged in counts 1, 2, 3, 8, 10, and 11 under the residual clause.

Once the Court makes the necessary determination that Mr. Barnette's convictions cannot stand under the now-invalidated residual clause—which the government has conceded [Govt. Response at 6]—all that remains is for the court to determine the issue of prejudice, *i.e.,* that the predicate offenses with which Mr. Barnette was charged were not definable as "crimes of violence" under the alternate definition found in § 2261 and § 924(c)—the so-called "force" or "elements" clause—which requires that the predicate offense have "as an element" the use, or threat of use, of strong physical force, the so-called "force" or "elements" clause. In conducting this prejudice analysis, the law requires that courts apply current substantive law. *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993) (concluding that the prejudice showing in a § 2255 proceeding may be made with the benefit of the law at the time the claim is litigated). As Mr. Barnette argued in his Supplemental Motion to Vacate and reiterates below, the predicate crimes with which he was charged in counts 1, 2, 3, 8, 10, and 11 do not constitute crimes of violence under the force clause because none of them requires "as an

element" the use, or threat of use, of strong physical force. [Doc. 119: Supplemental Motion to Vacate at 18-19, 26][2]

In its attempt to convince this Court that Mr. Barnette has somehow procedurally defaulted these claims, however, the government tries to re-frame Mr. Barnette's pleading by asserting that Mr. Barnette's claim is grounded in a right to be charged with a "crime of violence" in accordance with the "categorical approach," a right initially recognized under section 16 in *Leocal*. 543 U.S. at 7. [Govt. Response at 14] This is simply incorrect. Mr. Barnette's pleading argues that no crime charged in counts 1, 2, 3, 8, 10, and 11 constituted a "crime of violence" because the residual clauses of section 2261 (counts 1, 3, 10) and section 924(c) (counts 2, 8, 11) are unconstitutionally void under *Dimaya* and *Davis*. *Leocal* did not speak to the constitutionality of the residual clause. Only *Johnson, Dimaya*, and *Davis* did. The government's argument, therefore, is unavailing.

It is only in the context of the necessary prejudice analysis that Mr. Barnette relies on cases of statutory interpretation to demonstrate that federal interstate domestic violence fails to qualify as a "crime of violence" under the force clauses contained in § 2261 and § 924(c). This argument "is not an independent claim." *In re Adams*, 825 F.3d 1283, 1286 (11th Cir. 2016). *See also id.* at 1285-1286 (defendant's argument that state burglary offense did not qualify under the ACCA enumerated offenses clause under *Descamps v. United States*, 133 S. Ct. 2276 (2013)—a case of statutory interpretation— was not a "standalone" claim subject to §2255(h)(2) requirements; rather defendant's

---

[2] Briefly, interstate domestic violence does not require as an element the use of strong physical force but itself relies on the incorporation of charged predicate crimes. The indictment in Mr. Barnette's case fails to identify specific crimes as these predicates, so these predicate crimes do not—*canno*t—supply the necessary force elements, either.

successive § 2255 claim challenging the ACCA residual clause was based on *Johnson*, which satisfied the § 2255(h)(2) gatekeeping requirements). Whether an offense qualifies under the remaining § 924(c) or section 16's force clause is a question of prejudice. If an offense qualifies as "crime of violence" under one of these remaining provisions, then a petitioner has not demonstrated prejudice resulting from the *Johnson* error.

Importantly, when conducting prejudice analysis on collateral review, a court must apply the current substantive law that exists today. *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993) (concluding that the prejudice showing in a § 2255 proceeding may be made with the benefit of the law at the time the claim is litigated).

Several post-*Johnson* cases illustrate this point well. For example, in *In re Adams*, 825 F.3d 1283 (11th Cir. 2016), the Eleventh Circuit authorized a *Johnson* § 2255 challenge to the defendant's ACCA sentence. Specifically, in that case, the petitioner argued that his Florida burglary conviction was no longer a "violent felony" under the ACCA residual clause after *Johnson*. The petitioner also argued that in light of *Descamps v. United States*, 133 S. Ct. 2276 (2013), the burglary conviction was no longer a "generic burglary" under the remaining ACCA enumerated offense clause. Even though the Court concluded that *Descamps* itself was not a "new rule of constitutional law" that satisfied the § 2255(h)(2) procedural requirements, the Court held that § 2255 relief was not barred. *Id.* at 1286. The Court reasoned that the petitioner did not assert "*Descamps* as a standalone claim … Although *Descamps* bears on this case, it is not an independent claim that is itself subject to [§ 2255(h) requirements]." *Id.* Rather, the petitioner's independent claim was a *Johnson* claim because it was that case—not *Descamps*—that satisfied the gatekeeping requirements of 28 U.S.C. § 2255(h)(2) and opened the door for him to seek

relief from his ACCA sentence. *Id.* In so holding, the Court made plain that the relevance of *Descamps* and its impact on the remaining enumerated offenses clause of the ACCA was relevant only to the prejudice analysis—an analysis that is not constrained by § 2255 procedural requirements.

Numerous other courts have applied analogous reasoning to hold the same. *See United States v. Harris*, 205 F. Supp.3d 651, 665 (M.D. Penn. 2016) ("We reject the government's argument that Defendant's challenge to the burglary conviction is untimely or that Defendant's motion is really an untimely *Descamps* claim. His 2255 motion is properly based on *Johnson* (2015), as he has shown … that two prior convictions, escape and resisting arrest, could only have been based on the now-defunct residual clause, and thus, can no longer be considered predicate offenses. Having shown that he properly invoked *Johnson* (2015), Defendant can proceed to establish that his prior convictions do not qualify him as a[n] [armed career criminal] under the ACCA under the elements clause or enumerated-offenses clause"); *United States v. Winston*, 207 F. Supp.3d 669, 672 n.1 (W.D. Va. 2016) ("The Government's procedural attack on Defendant's petition as focusing solely on *Johnson I* is likely better understood as a substantive argument that—even after receiving the benefit of *Johnson II*—Defendant has not suffered prejudice, because his conviction nonetheless falls within the force clause); *Diaz v. United States*, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016) (petitioner's standalone claim was the 2015 decision in *Johnson* (*i.e.*, *Johnson II*); government's argument that his prior conviction no longer qualified as "violent felony" under the ACCA force clause in light of *Johnson I* was question of prejudice not independently subject to § 2255 requirements).

This prejudice determination, in turn, must be made employing current case law. *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993) (prejudice showing in § 2255 claim may be made with the benefit of the law at the time the claim is litigated); *Mosby v. Senkowksi*, 470 F.3d 515, 524 (2d Cir. 2006) ("[T]he Supreme Court has held that current law should be applied retroactively for purposes of determining whether a party has demonstrated prejudice under Strickland's second prong."); *United States v. Ladwig*, 192 F. Supp.3d 1153 (E.D. Wa. 2016) (in § 2255 case predicated on *Johnson*, the question of whether defendant's prior conviction qualifies under remaining force or enumerated offenses clause must be determined by "current case law").

In other words, given the government's (necessary) concession that, after *Dimaya* and *Davis*, Mr. Barnette's convictions for § 2261 and § 924(c) charges cannot rest on the residual clause definition of "crimes of violence," the only remaining issue is whether the "crime of violence" element is satisfied under the force clause. This is an issue of prejudice—not a separate claim—under which this Court must apply current law. Under current categorical approach law, *Descamps* and *Mathis v. United States*, 136 S. Ct. 2243 (2016), tell us that the "crime of violence" element *cannot* be satisfied under the force clause unless the government conclusively establishes that the defendant was convicted of an offense that required as an element the use of force. The government cannot do that here with respect to counts 1, 2, 3, 8, 10, and 11 because the indictment fails altogether to

6

allege as a predicate any specific statute Mr. Barnette violated.[3] This makes it a legal impossibility for the government to satisfy its burden of demonstrating that the predicate "crime" has an element that requires the use of force.

Because Mr. Barnette's claims are based on *Dimaya* and *Davis*, and he brought these claims in a timely fashion, they have been properly raised and are not procedurally defaulted.

## II.     Additionally, procedural default does not apply due to a jurisdictional defect.

Even if the prejudice analysis Mr. Barnette has advanced were determined to be a claim in its own right, the government's assertion that Mr. Barnette's claims are procedurally defaulted fails because jurisdictional defects "cannot be waived and are not subject to procedural default." *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005); *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (same). *See also United States v. Cotton*, 535 U.S. 625, 630 (2002) (noting that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court.").

A jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside of the sweep of

---

[3] Concerning Mr. Barnette's challenge to count 8 of his indictment, which was raised in his Supplemental Motion to Vacate in 2016, the Fourth Circuit has subsequently held that carjacking in violation of 18 U.S.C. § 2119 is a crime of violence under § 924(c)'s force clause. *See United States v. Evans*, 848 F.3d 242, 247 (4th Cir. 2017). Accordingly, Mr. Barnette does not address the claim further here. However, despite this holding, Mr. Barnette continues to contend that no element of 18 U.S.C. 2119 requires the intentional use of strong physical force, as argued in his initial brief. [Doc. 119: Supplemental Motion to Vacate at 21-26]

the charging statute." *United States v. Brown*, 752 F.3d 1344, 1352 (11th Cir. 2014) (quoting *United States v. Peter*, 310 F.3d 709, 714 (11th Cir. 2002)). When such a defect exists, "proof of the alleged conduct, no matter how overwhelming, would [bring] it no closer to showing the crime charged than would … no proof at all." *Peter*, 310 F.3d at 715. "The problem [with such defect] is not that the government failed to allege a fact or an element that would have made the indictment's criminal charge complete. Instead, 'it is that the Government affirmatively alleged a specific course of conduct that is outside of the reach of the [statute charged.]'" *Brown*, 752 F.3d at 1352 (quoting *Peter*, 301 F.3d at 715)).

Here, the district court had no jurisdiction over the § 2261 and § 924(c) counts against Mr. Barnette because the charges affirmatively alleged conduct that post-*Johnson/Dimaya/Davis* is outside the sweep of both statutes. *See United States v. St. Hubert*, 883 F.3d 1319, 1326 (11th Cir. 2018) ("district court is without jurisdiction to accept a guilty plea to a 'non-offense'") (citation omitted). For example, count 1 alleged Mr. Barnette "committed a crime of violence" while "in the course of and as a result of" traveling across a state line. As detailed in Mr. Barnette's Supplemental Motion to Vacate, under the categorical approach, interstate domestic violence under § 2261, a defendant may be found guilty of interstate domestic violence without any evidence that he used violent physical force, or threatened to use violence physical force, no matter what the real world facts were in the case. [Doc. 119: Supplemental Motion to Vacate at 19-21] The same analysis holds true with respect to counts 2, 3, 8, 10, and 11: the conduct alleged therein is "outside the reach" of both § 2261 and § 924. *See Peter*, 310 F.3d at 715. Therefore, the indictment fails to state an offense, and Mr. Barnette's § 2261

8

and § 924(c) convictions are nullities. This jurisdictional defect is not an error that can be defaulted.

### III. Procedural default would be excused due to ineffective assistance of counsel at trial and on direct appeal.

Mr. Barnette's trial counsel (at both his original trial and resentencing trial) and his appellate counsel (on both direct appeals) failed to argue that the indictment charged Mr. Barnette with conduct outside the reach of both § 2261 and § 924(c). These failures constitute deficient performance and prejudiced Mr. Barnette, thus satisfying both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, to the extent that the government argues Mr. Barnette's claims for relief are defaulted, there is sufficient cause and prejudice to excuse the default. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982).

### IV. Procedural default would also be excused due to Mr. Barnette's actual innocence under counts 1, 2, 3, 8, 10, and 11.

Litigants may seek relief under § 2255 despite procedural default if barring them from such a pursuit would result in a miscarriage of justice. *See United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). A proper showing of 'actual innocence' is sufficient to satisfy the 'miscarriage of justice' requirement." *Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009) (explaining the meaning of "miscarriage of justice" in the context of procedural default).

To establish actual innocence of a count of conviction, a petitioner must demonstrate that "in light of all the evidence," "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995) (internal quotation marks

omitted). The courts of appeals have uniformly held that this showing is satisfied when an intervening change in the law establishes that a petitioner has been "convicted for conduct not prohibited by law." *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011); *see also United States v. Adams,* 814 F.3d 178, 183 (4th Cir. 2016) (petitioner was actually innocent of his felon-in-possession conviction because intervening Fourth Circuit precedent established that he was no longer a felon); *Vosgien v. Persson,* 742 F.3d 1131, 1134 (9th Cir. 2014) ("One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a matter of law, have committed the alleged crime."); *Phillips v. United States,* 734 F.3d 573, 582 (6th Cir. 2013) ("One way to establish factual innocence is to show an intervening change in the law that establishes the petitioner's actual innocence.") (internal quotation marks and citation omitted); *United States v. Tyler*, 732 F.3d 241, 246 (3rd Cir. 2014) ("A petitioner can establish that no reasonable juror would have convicted him by demonstrating an intervening change in law that rendered his conduct non-criminal"); *United States v. Avery,* 719 F.3d 1080, 1085 (9th Cir. 2013) ("The government concedes that Avery is actually innocent of honest services fraud in light of [*Skilling v. United States*, 561 U.S. 358 (2010)] which confined the reach of the offense to paradigmatic cases of bribes and kickbacks") (citation and internal quotation marks omitted); *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003) (Supreme Court's intervening decision in *Jones v. United States,* 529 U.S. 848 (2000), which narrowed the interstate commerce element of arson, rendered defendant actually innocent of arson); *Reyes-Requena v. United States,* 243 F.3d 893, 903 (5th Cir. 2001) ("Courts have framed the actual innocence factor differently but the core

10

idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law."); *Jeffers v. Chandler*, 253 F.3d 827, 831 (5th Cir. 2001) (same).[4]

Of particular note is the Fourth Circuit's decision in *United States v. Adams,* 814 F.3d 178 (4th Cir. 2016). In that case, Adams argued that in light of intervening Fourth Circuit precedent, he was actually innocent of his conviction for being a felon in possession in violation of 18 U.S.C. § 922(g). *Id*. at 183. Specifically, he claimed that after *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011)—which redefined the meaning of "felony" under § 922(g)—none of his prior convictions could qualify as "felonies." *Id.* In turn, he asserted that the "felon" element of § 922(g) could no longer be satisfied, and hence, he was actually innocent. *Id.*

The government responded that "although Adams may no longer be legally convicted of a violation of § 922(g) after *Simmons*, he remains, nonetheless, somehow still factually guilty." *Adams*, 814 F.3d at 183. In so arguing, the government cited to the Supreme Court's decision in *Bousley*, which held that "actual innocence" means "factual innocence, not mere legal insufficiency." 523 at 623. However, the Fourth Circuit flatly rejected the government's argument upon concluding that "Adams, has indeed, shown 'factual innocence' as contemplated by *Bousley*." *Adams,* 814 F.3d at 183. The Fourth Circuit explained that Adams is factually innocent "because he has shown that it impossible for the government to prove one of the required elements of a § 922(g)(1) charge—that the defendant was a convicted felon at the time of the offense. This is so because [in light of *Simmons*] Adams was 'in fact' not a felon." *Id.*

---

[4] These decisions are all consistent with the Supreme Court's reasoning in *Davis v. United States,* 417 U.S. 333, 346-47 (1974), which held that when intervening precedent renders conduct that once criminal no longer criminal, it "inherently results in a complete miscarriage of justice."

Likewise, Mr. Barnette is factually innocent of the § 2261 and § 924(c) offenses for which he was convicted. An essential element of each of counts 1, 2, 3, 8, 10, and 11 is an underlying "crime of violence." As detailed herein, the Supreme Court's rulings in *Dimaya* and *Johnson* effectively invalidated the definition of "crime of violence" in the residual clauses of Section 16 and § 924(c), respectively. Because there is no underlying "crime of violence" in these counts, there are no facts under which he could have been convicted for those charged offenses. In other words, "it is impossible for the government to prove one of the required elements of [the § 924(c)] charge." *Adams*, 814 F.3d at 183.

Indeed, several district court judges have relied on precisely this reasoning to abrogate § 924(c) offenses after *Johnson*. *See, e.g., Royer v. United States*, 2018 WL 3676905, at *9 (E.D. Va. Aug. 2, 2018) ("Section 924(c) criminalizes using or carrying a firearm during and in relation to a crime of violence or possessing a firearm in furtherance of a crime of violence, and Royer's argument is that when his co-defendants used, carried, or possessed firearms, they were not, in fact, committing a crime of violence. *Therefore, Royer has appropriately presented a claim of actual innocence.*") (emphasis added); *Duhart v. United States,* 2016 WL 4720424, at *4 (S.D. Fla. Sept. 9, 2016) (finding actual innocence where petitioner's "§ 924(c) conviction relies on the fact that he was convicted of a predicate 'crime of violence' when he was actually not"); *United States v. Meza*, 2018 WL 2048899, at *7 (D. Mont. May 2, 2018) ("A defendant who uses a firearm during and in relation to a crime that is neither a 'crime of violence' nor a 'drug trafficking crime' has not, in fact, violated § 924(c)" and therefore is "actually innocent"); *United States v. Birdinground*, 2018 WL 3242294, at *10 (D. Mont. July 3, 2018) ("Birdinground is actually innocent. . . . A defendant who uses or carries a

firearm during and in relation to a crime that is neither a 'crime of violence' nor a 'drug trafficking crime' has not, in fact, violated § 924(c).").

This Court should hold the same here. Because Mr. Barnette was convicted of conduct that is no longer criminal, he is actually innocent of the offenses for which he was convicted in counts 1, 2, 3, 8, 10, and 11, and the procedural default raised by the government does not apply.

## V.  Statute of limitations would also be excused due to Mr. Barnette's actual innocence under counts 1, 2, 3, 8, 10, and 11.

In *McQuiggin v. Perkins,* 569 U.S. 383 (2013), the Supreme Court held that AEDPA's one-year statute of limitations must be excused when the petitioner is actually innocent of the offense of conviction which he is challenging on collateral review. This "fundamental miscarriage of justice exception" is necessary to ensure "that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* at 392 (citation omitted).

For the reasons stated above, because Mr. Barnette was convicted of conduct that is no longer criminal, he is actually innocent of the offenses for which he was convicted in counts 1, 2, 3, 8, 10, and 11. Therefore, his § 2255 petition is timely.

## VI.  Mr. Barnette's sentences of death under counts 7 and 8 must be vacated because there is a possibility that at least one juror considered Mr. Barnette's unconstitutional convictions in voting for death.

### a.  The Eighth Amendment and the Due Process Clause require Mr. Barnette to receive a new sentencing hearing.

The Supreme Court has held that resentencing is required in a non-capital case where the original sentence was informed by a conviction that has subsequently been invalidated. *See United States v. Tucker*, 404 U.S. 443 (1972). Sixteen years later, the

Supreme Court similarly held that where "there is a possibility" that an invalid conviction has informed a death sentence, the Eighth Amendment requires resentencing. *See Johnson v. Mississippi*, 486 U.S. 578, 583 (1988). The Court in *Johnson* emphasized that allowing for this possibility is inconsistent with the Eighth Amendment's "special need for reliability in the determination that death is the appropriate punishment." *Id*. at 584 (internal quotations and citations omitted). Mr. Barnette's Supplemental Motion to Vacate discusses a number of other cases in which resentencing was required because of the possibility that, in determining the original sentence, a judge or jury considered a subsequently invalidated conviction. [Doc. 119: Supplemental Motion to Vacate at 29-30]

The "possibility" standard means that resentencing is required unless it can be established that the sentencer did not consider the invalid conviction in determining the sentence. This standard applies with special force in capital cases given the heightened need for reliability imposed by the Eighth Amendment. *See Mills v. Maryland*, 486 U.S. 367, 383-84 (1988). Importantly, under the possibility standard, resentencing is required when there is a possibility that an invalid conviction influenced even a single juror to recommend death. *See Johnson*, 486 U.S. at 586; *Kubat v. Thieret*, 867 F.2d 351, 373 (7th Cir. 1989) (finding a violation of petitioner's Eighth and Fourteenth Amendment rights based on the "substantial possibility that one or more" jurors was influenced by an erroneous jury instruction); *cf. Wiggins v. Smith*, 539 U.S. 510, 537 (2003) (recognizing that, to satisfy the prejudice requirement for a claim of ineffective effective assistance of counsel, a petitioner must show "a reasonable probability that at least one juror would

have struck a different balance.") (citations omitted); *Buck v. Davis*, 137 S. Ct. 759, 776 (2017) (same).[5]

Here, as in *Johnson*, *Tucker,* and the other cases discussed in the Supplemental Motion to Vacate, there is unquestionably a possibility that Mr. Barnette's multiple unconstitutional convictions influenced at least one juror to recommend death. It would, in fact, be entirely speculative—indeed, counterintuitive—to conclude that the jury set aside and disregarded what it had been instructed about concerning Mr. Barnette's underlying convictions when it sought to make the decision between life and death during the penalty phase. *See Johnson*, 486 U.S. at 586 (even without the prosecutor's argument to consider the invalid conviction, "there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be decisive in the choice between a life and a death sentence") (internal citation and quotations omitted); *Wren v. United States*, 540 F.2d 643, 644 (4th Cir. 1975) ("In short, to terminate further inquiry, the district judge must be able to say either from recollection or reconstruction that had he known at the time of sentencing that the earlier convictions were invalid, he would have nevertheless imposed the same sentence."); *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986) (resentencing required "unless it can be ascertained from the record that a trial

---

[5] As in *Johnson*, other cases of ineffective assistance of counsel, including *Wiggins* and *Buck*, require resentencing where a constitutional error may have affected a single juror's decision to recommend death. Notably, though, the legal standard for establishing prejudice in the reliance-on-an-invalid conviction context under *Johnson* is *less stringent* than the standard for establishing prejudice in the ineffective assistance of counsel context. Under *Johnson*, as explained above, a capital defendant need only show a possibility that an invalid conviction affected at least one juror's decision to recommend death, whereas a capital defendant claiming ineffective assistance must show a reasonable probability that counsel's deficient performance did so. "A 'reasonable probability' [for the purposes of an ineffective assistance claim] is a higher standard than *Johnson's* 'possibility.'" *Powell v. Kelly*, 531 F. Supp. 2d 695, 732 n.40 (E.D. Va. 2008).

court's sentence on a valid conviction was not affected" by the invalid conviction); *cf. Mills*, 486 U.S. at 384 ("The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing.").

In light of what the jury heard and what the Court instructed the jury to consider in deciding the question of punishment, there is indisputably a possibility that Mr. Barnette's invalid convictions affected at least one juror's decision to recommend death. To conclude otherwise—that is, to conclude that the jury "undoubtedly" would have delivered the same verdict in the absence of those unconstitutional convictions—would entail rank speculation and thus would be unconstitutionally "callous." *Tucker*, 404 U.S. at 449 n.8. That is especially so given that this is a capital case necessitating heightened reliability in sentencing. *Johnson*, 486 U.S. at 584. Under *Tucker*, *Johnson*, and related cases, the invalidation of Mr. Barnette's convictions in counts 1, 2, 3, 8, 10, and 11, necessitates a new sentencing hearing.

b. **The Sixth Amendment requires that weighing of aggravating and mitigating factors is fact-finding that must be done by a jury, not a judge.**

As noted in Mr. Barnette's Supplemental Motion for Relief, the Sixth Amendment requires that a jury, and not the court, determine whether a defendant should be sentenced to death. *See Hurst v. Florida*, 136 S. Ct. 616, 624 (2016) ("The Sixth Amendment protects a defendant's right to an impartial jury. This right required Florida to base [the defendant's] death sentence on a jury's verdict, not a judge's factfinding."); *see also Ring v. Arizona*, 536 U.S. 584 (2002). After *Hurst*, any death sentence rendered by a court is unconstitutional. A post-conviction court may not engage in *post hoc*

reweighing, or otherwise make its own determination about whether the defendant deserves a death sentence.

### c. The "concurrent sentence" doctrine does not apply here.

The invalidation of Mr. Barnette's convictions and sentences on counts 1, 2, 3, 8, 10, and 11 requires a new sentencing hearing. Under the plain terms of § 2255, the invalidation of Mr. Barnette's convictions and sentences in those counts obligates the Court to either "correct" Mr. Barnette's total sentence or "resentence" him on the remaining counts. Because it is impossible to conclude that the jury's vote for death was wholly unaffected by their own consideration of the invalid counts, a re-sentencing on the remaining counts is necessary. *See Johnson v. Mississippi*, 486 U.S. 578 (1988).

The government contends that even if that Mr. Barnette's convictions under counts 1, 2, 3, 8, 10, and 11 are unlawful, this Court should not disturb his concurrent sentence on the remaining counts. The government relies on the "concurrent sentence doctrine" in arguing as such. This doctrine "provides that, if a defendant is given concurrent sentences on several counts and the [sentence] on one count is found to be valid, an appellate court need not consider the validity of the [sentence] on the other counts." *In re Davis,* 829 F.3d 1297, 1299 (11th Cir. 2016) (citation omitted). The government cannot benefit from this doctrine in this case.

It is important to note at the outset the Supreme Court's hesitancy with the concurrent sentence doctrine. In *Benton v. Maryland*, the Supreme Court suggested that the concurrent sentence doctrine's only "continuing validity" is as a "rule of judicial convenience." 395 U.S. 784, 791 (1969). The Court further complained that no precedent gave "a satisfactory explanation for the concurrent sentence doctrine." *Id*. at 789. And the

Court cautioned that "whatever the underlying justifications for the doctrine, it seems clear to us that it cannot be taken to state a jurisdictional rule." *Id*. at 789-90.

Consistent with this warning, it is well settled that the concurrent sentence doctrine only applies if leaving the prison term on the unchallenged count of conviction undisturbed would result in no "adverse collateral consequences" for the defendant. *United States v. Beckham*, 2016 WL 4402827, at *3 (E.D. Wash. 2016) (citing *Benton*, 395 U.S. 784); *see also United States v. Truong Dihn Huns*, 629 F.2d 908, 931 (4th Cir. 1980) (same). To be clear, this means the government has a heavy burden to affirmatively show that the "defendant will suffer no harm" if the sentences on the unchallenged counts of conviction are kept in tact. *United States v. Hill*, 859 F.2d 325, 326 (4th Cir. 1988); *see also Willits v. United States*, 182 F. Supp.3d 1278, 1281 (M.D. Fla. 2016) ("The Government bears the burden of proving that no collateral consequences will follow" from applying the concurrent sentence doctrine); *United States v. Davis*, 730 F.2d 669, 671 n.2 (11th Cir. 1984) (declining to apply the concurrent sentence doctrine because "the government made no affirmative showing that the likelihood of harm to the defendant in the form of adverse collateral consequences was so remote as to be insignificant"). Even if the government meets this burden, the Court has discretion not to apply the doctrine. *See Davis*, 730 F.2d at 671 n.2; *United States v. Mullens*, 583 F.3d 134, 142 (5th Cir. 1978).

The government cannot satisfy its heavy burden under the collateral sentence doctrine because it cannot prove that the jury's sentencing decision on the remaining capital counts was not informed by convictions contained in counts 1, 2, 3, 8, 10, and 11, as well as its consideration of death on counts 8 and 11. In other words, the government

cannot demonstrate that absent the unlawful § 2261 and § 924(c) convictions, Mr. Barnette's sentence on count 7 would remain the same. In fact, this Court must assume the opposite: that Mr. Barnette suffered "adverse collateral consequences" from the unlawful counts 1, 2, 3, 8, 10, and 11.

The Eleventh Circuit's decision in a non-capital case, *In re Davis*, 829 F.3d 1297, 1300 (11th Cir. 2016), is very instructive. In *Davis*, the defendant was sentenced to both a 327-month ACCA term on a felon-in-possession count, and a separate-but-concurrent 327-month term on a federal drug conspiracy offense. *Id*. The defendant subsequently challenged his ACCA status based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). The government argued that the defendant's concurrent sentence on the drug count was "unrelated" to his ACCA sentence, and therefore, that sentence should go undisturbed under the concurrent sentence doctrine. *Id*. at 1299. The Eleventh Circuit flatly rejected the government's argument, concluding that "this is not a case where the applicant's non-ACCA sentence was unrelated to his ACCA status." *Id*. The Court elaborated that "[t]o the contrary, the judge sentenced Davis based on a single Sentencing Guidelines range for Davis's ACCA violation combined with his conspiracy crime. The judge's sentencing decision was therefore no doubt informed by the Davis's ACCA designation, which means Davis may have suffered 'adverse collateral consequences' if his ACCA sentence turns out to be unlawful." *Id*. at 1299-1300.

Likewise, in *United States v. Beckham*, the district court similarly rejected the government's concurrent case doctrine argument. In that case, the defendant was sentenced to a 188-month ACCA term on a felon in possession of a firearm count and a separate-but-concurrent 188-month term on a federal drug count. 2016 WL 4402827, at

*3. However, the court rejected the application of the concurrent sentence doctrine. *Id*. The court reasoned that "the Sentencing Guidelines calculation in this case was a single calculation grouping both counts of conviction together. The court consulted the Guidelines in deciding whether to accept the plea agreement." *Id*. Thus, the court concluded that "[t]his court's sentencing decision on the drug count was no doubt informed by Petitioner's ACCA designation. Accordingly, it is not clear Petitioner did not suffer adverse collateral legal consequences from the unlawful sentence." *Id*.; *see also Willits*, 182 F. Supp.3d at 1281-83 (refusing to apply the concurrent sentence doctrine in case where defendant's unlawful ACCA sentence was concurrent with prison term on federal drug count).

Under the express terms of 18 U.S.C. § 2255, the invalidation of counts 1, 2, 3, 8, 10, and 11 presents the Court with two options: "resentence" Mr. Barnette or "correct" his sentence. *See United States v. Hadden*, 475 F.3d 652, 661, 667 (4th Cir. 2007) ("the end result of a successful § 2255 proceeding must be the vacatur of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence.").

A sentence correction is an "arithmetical, technical or mechanical" exercise that entails no "reevaluation of the appropriateness of [the defendant's] original sentence." *United States v. Flack*, 941 F.3d 238, 241 (6th Cir. 2019); *see also United States v. Palmer*, 854 F.3d 39, 47-48 (D.C. Cir. 2017); Fed. R. Crim P. 35 (sentence correction is limited to corrections of "arithmetical, technical, or other clear error"). A resentencing, by contrast, requires such a re-evaluation. In a non-death case, that re-evaluation

necessarily entails a trial court revisiting the 18 U.S.C. § 3553(a) factors. *Flack*, 941 F.3d at 241; *Palmer*, 854 F.3d at 47. In a death case, it necessarily entails a jury revisiting the life/death determination under 18 U.S.C. §§ 3591 – 3593 in the first instance.

In crafting a remedy for Mr. Barnette's meritorious challenges to his unlawful convictions under counts 1, 2, 3, 8, 10, and 11, the Court must satisfy the purpose of Section 2255, which is to "place the defendant in exactly the *same* position he would have been had there been no error in the first instance." *United States v. Louthian*, 771 Fed. Appx. 208, 209 (4th Cir. 2019) (quoting *United States v. Hadden*, 475 F.3d 661, 665 (4th Cir. 2007) (emphasis in original). A mere sentence correction will not put Mr. Barnette in "exactly the same position he would have been" at sentencing had there been no error. That is because it is impossible to conclude with any confidence that the sentencing jury was wholly unaffected in its life-or-death determination by the instructions they received before sentencing deliberations. For example, the jury was instructed to accept findings of guilt based on unlawful counts in the indictment. *See* 8/12/02 Tr. 3992 ("Now, then, members of the jury, the defendant has been found guilty of the offense[] alleged in Count … 11 of the indictment."). The jury also received multiple pages worth of instructions about count 11—the only capital count concerning Robin Williams, Mr. Barnette's ex-girlfriend, which under *Johnson* is unlawful. It would therefore be inappropriate—as well as impossible—for the Court here to step into the shoes of the jury and draw that conclusion by way of a mere "correction" of Mr. Barnette's sentence.

Indeed, the only remedy that will put Mr. Barnette in the same position he would have been had there been no illicit counts 1, 2, 3, 8, 10, and 11 is a full re-sentencing on

21

the non-invalidated capital counts. That is especially so because in this case, a death penalty case, the need for "reliable decisionmaking" in sentencing is "acute." *Deck v. Missouri*, 544 U.S. 622, 632 (2005). Indeed, in a non-capital case, in the wake of the invalidation of a § 924(c) conviction, the need for scrupulously reliable sentencing customarily results in full re-sentencing, rather than sentence correction, under the sentencing package doctrine. It is unfathomable that the same result would not obtain in a capital case like Mr. Barnette's.

A judge's determination of the appropriate sentence in a multi-count conviction case and the jury's life-or-death decision in a capital case are both holistic endeavors. *Compare United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses.") *with* 8/12/02 Tr. 3997 (instruction to Mr. Barnette's jury that "[i]n making all of the determinations you are required to make in the sentencing phase, you may consider any evidence that was presented during the sentencing hearing in which you just participated over the last several weeks."). Thus, just as the sentencing package doctrine recognizes that "merely excising the mistaken sentence for one count won't put the defendant in the same position as if no error had been made," *Brown*, 879 F.3d at 1239, merely excising Mr. Barnette's invalid convictions and death sentence for count 11 will not put him in the same position as if the jury had never considered and deliberated about them. But putting him in the same position is what the habeas corpus statute requires. *See Louthian*, 771 Fed. Appx. at 209 (citing *Hadden*, 475 F.3d at 665).

In fact, in this case, full resentencing is even more essential and more appropriate than in the typical non-capital sentencing package context. That is because "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Johnson*, 486 U.S. at 584 (internal citation and quotations omitted); *see also Deck*, 544 U.S. at 632. But there is another reason: in this case, a death penalty case, a jury, rather than a judge, drove the sentencing determination.

When a Section 924(c) conviction is invalidated in a non-capital case, the sentencing package doctrine applies as a matter of course to require full resentencing. That is so even though the district court itself imposed the original sentence and arguably could "correct" that total sentence, without resentencing, based on its presumptive knowledge of whether and how the invalidated conviction influenced the sentence. By contrast, in a capital case, the district court has no knowledge of whether the invalidated conviction affected a death sentence: the jury, not the court, made the critical sentencing determination. Inasmuch as the sentencing package doctrine prophylactically obligates a district court to conduct a resentencing as a matter of course in the wake of the invalidation of one Section 924(c) conviction, even though the district court itself determined the entire original sentence, it would be anomalous and illogical for a district court simply to correct a sentence, without a new sentencing hearing, in the wake of the invalidation of multiple convictions in a death penalty case—including a capital count upon which the death penalty was returned by a jury.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in Mr. Barnette's prior briefing, the convictions and sentences on counts 1, 2, 3, 8, 10, and 11 should be vacated, Mr. Barnette's remaining sentences should be vacated and set aside, and Mr. Barnette should be granted a resentencing on the remaining counts of conviction.

Dated: February 20, 2020

/s/ Mark E. Olive
N.C. State Bar No. 10615
LAW OFFICES OF MARK OLIVE
320 W. Jefferson Street
Tallahassee, FL 32301
850-224-0004 (tel)
850-224-3331 (fax)
meolive@aol.com

/s/ Jacob H. Sussman
N.C. Bar No. 31821
P.O. Box 79225
Waverly, MA 02479
857-242-6740 (tel)
jakesussmanlaw@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he has served the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Anthony J. Enright
anthony.enright@usdoj.gov

Dated: February 20, 2020

/s/ Jacob H. Sussman
Counsel for Mr. Barnette